# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALCATEL USA RESOURCES, INC., a Delaware Corporation, and ALCATEL INTERNETWORKING, INC., a California Corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 1:05 CV 418 |
| FOUNDRY NETWORKS, INC., a Delaware Corporation, | ) ) ) ) | (JURY TRIAL DEMANDED) |
| Defendant. | ) ) | |

## DECLARATION OF ERIC S. LUCAS

1.    I, Eric S. Lucas, hereby declare and state as follows:

2.    I reside in Laguna Beach, California. I have personal knowledge of the facts stated herein and am competent to testify to those facts at a hearing or trial.

3.    Since September 13, 2004, I have been employed as the director of patent licensing for the parent company of Alcatel USA Resources, Inc. and Alcatel Internetworking, Inc. ("Alcatel"). As part of my responsibilities, I regularly contact other companies to discuss licensing of Alcatel's intellectual property, including the patents which are at issue in this case.

4.    I was informed at the time I began working for Alcatel that there were ongoing patent licensing negotiations with Microsoft involving certain Alcatel patents. Since that time, I have been responsible for the continuing

- 1 -

EXHIBIT

3

Microsoft on this issue. My discussions have included the potential licensing of

U.S. Patent No. 6,339,830 (the "'830 patent").

5.      Earlier this year, Microsoft proposed a cross license agreement

under which some Microsoft products would be licensed by Alcatel and some

Alcatel products would be licensed by Microsoft. One of the Alcatel products

identified by Microsoft for licensing was the Alcatel VoIP OmniPCX system.

6.      Negotiations with Microsoft on the above cross license are ongoing

and as yet unresolved. The most recent meeting occurred on August 22, 2005.

7.      I believe Alcatel may need additional services from Howrey relating

to the Microsoft negotiations and/or the '830 patent.

8.      At no time have I ever been informed by Howrey that it no longer

represents Alcatel in this matter. Also, the confidential background documents

that I understand Alcatel provided to Howrey in 2002 have not been returned to

me.

I declare under penalty of perjury under the laws of the United States that the

foregoing is true and correct.

Dated: _Sept 7, 2005_                          _____

                                               Eric S. Lucas

- 2 -

# EXHIBIT 4

# HOWREY.



**Joseph P. Lavelle**
**Partner**
Antitrust
Intellectual Property
Patent Litigation

1299 Pennsylvania Ave., N.W.
Washington, DC 20004
202-383-6888
202-383-6610 (FAX)
LavelleJ@howrey.com

## OVERVIEW

Joseph Lavelle is the vice-chair for litigation in the Intellectual Property practice group. He has substantial experience in various aspects of the firm's intellectual property practice, including counseling, trial practice, appellate advocacy, and antitrust/IP matters.

His litigation and counseling experience involves a variety of complex technologies including memory modules, microprocessors, CCD arrays, computers, capacitive transducers, auto-focus cameras, laser keratomes, image processing equipment, electronic voice mail systems, CD-ROMs and acrylate polymerization. He also has extensive experience handling litigation for biotechnology companies.

He is very active in matters where intellectual property and antitrust law intersect. He has handled several Section 337 investigations before the United States International Trade Commission and the Court of Appeals for the Federal Circuit.

He is an adjunct professor of law at Georgetown University Law Center where he teaches courses on patent, antitrust and misuse law.

## EDUCATION

University of Pittsburgh, J.D., *summa cum laude*, 1982
Wilkes College, B.S., Physics, 1979

## STATE BAR MEMBERSHIPS

District of Columbia Bar, 1982 to present, Member

## COURT AND ADJUDICATIVE BODIES

United States Courts of Appeals for the Second, Third, Sixth and Federal Circuits
United States Patent and Trademark Office

## PROFESSIONAL ASSOCIATIONS

- American Association for the Advancement of Science, Member
- American Bar Association, Member Intellectual Property and Antitrust Section
- American Physical Society, Member

## LAW REVIEW

- Managing Editor, *University of Pittsburgh Law Review*, 1981 to 1982.

Copyright © 2005 Howrey LLP™

EXHIBIT

tabbies

**4**

# HOWREY.



**Vivian S. Kuo**
**Senior Associate**
Antitrust
Intellectual Property
Patent Litigation

1299 Pennsylvania Ave., N.W.
Washington, DC 20004
202-383-7220
202-383-6610 (FAX)
KuoV@howrey.com

## OVERVIEW

Vivian Kuo is a senior associate in the Intellectual Property group at Howrey. Ms. Kuo specializes in various aspects of intellectual property practice, including litigation and counseling and antitrust/IP matters.

## EDUCATION

George Washington University Law School, J.D., 1998
George Washington University, M.S., Environmental and Water Resources Engineering, 1995
Rensselaer Polytechnic Institute, B.S., Mechancial Engineering, 1989

## STATE BAR MEMBERSHIPS

District of Columbia Bar, 2002 to present
Virginia State Bar, 1998 to present

## COURT AND ADJUDICATIVE BODIES

United States Patent and Trademark Office, 1999 to present
United States Court of Appeals for the Fourth Circuit, 1998 to present
United States District Court for the Eastern District of Virginia, 1998 to present

## PROFESSIONAL ASSOCIATIONS

● ABA Litigation Section

## ARTICLES

● Kuo, Vivian S. and Gerald J. Mossinghoff. "Post-Grant Review of Patents: Enhancing the Quality of the Fuel of Interest," *43 IDEA 83*, (2002).
● Kuo, Vivian S. and Gerald J. Mossinghoff. "World Patent System, Circa 20XX, A.D.," *38 IDEA 529* , (1998).

Copyright © 2005 Howrey LLP™

# EXHIBIT 5

securities (part of our Structured Finance practice), based on the number of issues. The American Lawyer defines asset-backed securities as when multiple classes of securities are issued together with one legal adviser, offerings are counted as one. Separate legal advisers are credited with the separate securities they handled.

**Ranking**

**April 2004**
**Corporate Scorecard - Mortgage-Backed Securities**
Orrick ranks as one of the nation's top-ranked law firms in the corporate finance area for transactions completed in 2003. This ranking is based on publicly-filed data compiled by Thomson Financial, a leading financial information supplier.

**Ranking**

**April 2004**
**Corporate Scorecard - Municipal Bonds**
Orrick ranks as the number one bond underwriter's counsel and the number two-bond counsel in the nation, based on the number of issues. This data is based on long-term bond issues only.

**Ranking**

**October 2003**
**Midlevel Associates Survey**
Orrick ranks 8th among Am Law 100 law firms for associate job satisfaction. Among Am Law 100 firms of San Francisco origin, Orrick is ranked 1st.

**June 2003**
**Swords & Shields: Top Intellectual Property Plaintiff and Defense Firms**
Orrick ranks as the No. 2 Intellectual Property (IP) defense firm in the nation, based on the number of IP cases filed in 2002. Orrick ranks ninth in the nation for the number of plaintiffs cases filed in 2002.

**Ranking**

**April 2003**
**Corporate Scorecard - This Year's Leaders: Firms with the Most Top-Ten Rankings**
Orrick ranks as one of the nation's top-ranked law firms in the corporate finance area for transactions completed in 2002. This ranking is based on publicly filed data compiled by Thomson Financial, a leading financial information supplier.

**Ranking**

**Chambers & Partners USA**

*A peer-recommended directory listing of the "best" in the legal market place.*

**Antitrust**
In 2005, in California, Orrick ranks among the top 15 law firms in Antitrust.

California

**Banking & Finance**

EXHIBIT

tabbies

5

# EXHIBIT 6

*2002 U.S. Dist. LEXIS 2586, \*; 27 Employee Benefits Cas. (BNA) 2295*

END OF ROAD TRUST., et al., Plaintiffs, v. TEREX CORPORATION, RANDOLPH W. LENZ and MARVIN ROSENBERG, Defendants.

C.A. No. 99-477 (GMS)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2002 U.S. Dist. LEXIS 2586; 27 Employee Benefits Cas. (BNA) 2295

February 20, 2002, Decided

**DISPOSITION: [\*1]** Defendant Lenz's Motion to Disqualify plaintiff's attorneys DENIED.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff filed an Employee Retirement and Income Security Act (ERISA) action, at <u>29 U.S.C.S. § 1132</u>(a)(2), against defendants. Before the court was defendant objector's motion to disqualify the law firm representing plaintiff. The objector argued that the firm violated the Model Rules of Professional Conduct Rule **1.7**(a) by simultaneously representing the objector in a Florida proceeding while representing plaintiff in the ERISA action.

**OVERVIEW:** Plaintiff argued that the simultaneous representation was the result of an oversight as a result of the merging of the law firm with the firm that initially represented the objector. Plaintiff further stated that the Florida matter was ended and that the attorney who represented the objector had been screened from this representation. Finally, plaintiff argued that the objector would suffer no prejudice as a result of the law firm's continued representation, but that plaintiff may suffer prejudice if forced to find new counsel due to the complexity and age of the case. The court agreed with plaintiff, and therefore, denied the objector's motion for disqualification. The court found that since the objector was no longer represented by the firm, the danger of divided loyalty was not great, if it was present at all. Also, the potential for breached confidences was minimal. The objector had not put forward a single fact or argument that would have permitted the court to find that he would have been prejudiced by the firm's continued representation of plaintiff. Conversely, great prejudice would have result to plaintiff if the objector's motion was granted.

**OUTCOME:** The objector's motion to disqualify the firm was denied.

**CORE TERMS:** disqualification, loyalty, continued representation, confidential information, countervailing, new counsel, disqualify, simultaneous, disciplinary rule, court to find, unsupported, implicated, confidences, automatic, breached, vague, Model Rules of Professional Conduct, discovery, ethical, terminated, oversight, notified, merger, weigh

**LexisNexis(R) Headnotes** ✦ Show Headnotes

EXHIBIT

*6*

**COUNSEL:** For END OF THE ROAD TRUST, JACKSONVILLE SHIPYARDS, INC., PENSION TRANSFER CORP., plaintiffs: John C. Phillips, Jr., Phillips, Goldman & Spence, P.A., Wilmington, DE.

For TEREX CORPORATION, RANDOLPH W. LENZ, MARVIN B. ROSENBERG, defendants: Lawrence C. Ashby, Philip Trainer, Jr., Ashby & Geddes, Wilmington, DE.

For TEREX CORPORATION, RANDOLPH W. LENZ, MARVIN B. ROSENBERG, third-party plaintiffs: Lawrence C. Ashby, Philip Trainer, Jr., Ashby & Geddes, Wilmington, DE.

For TEREX CORPORATION, RANDOLPH W. LENZ, MARVIN B. ROSENBERG, counter-claimants: Lawrence C. Ashby, Philip Trainer, Jr., Ashby & Geddes, Wilmington, DE.

For END OF THE ROAD TRUST, PENSION TRANSFER CORP., counter-defendants: John C. Phillips, Jr., Phillips, Goldman & Spence, P.A., Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION: MEMORANDUM AND ORDER**

## I. INTRODUCTION

On September 22, 1999, plaintiff End of the Road Trust ("ETR") filed its complaint in this court. Discovery began in November 2000, but was stayed for 90 days after defendants were required to obtain new **[\*2]** counsel due to a conflict. The defendants are now represented by Weil, Gotshal, and Manges. The plaintiffs are represented by Greenberg Traurig. The case is set for trial before this court on June 3, 2002.

Presently before the court is defendant Randolph Lenz's Motion to Disqualify Greenberg and Traurig. Lenz argues that Greenberg Traurig violated Rule **1.7**(a) of the Model Rules of Professional Conduct by simultaneously representing Lenz in a Florida proceeding while representing ETR in this action. In its reply, ETR argues that the simultaneous representation was the result of an oversight as a result of the merging of Greenberg Traurig with the firm that initially represented Lenz. ETR further states that the Florida matter is ended and that the attorney who represented Lenz has been screened from this representation. Finally, ETR argues that Lenz will suffer no prejudice as a result of Greenberg Traurig's continued representation, but that ETR may suffer prejudice if forced to find new counsel due to the complexity and age of the case. The court agrees with ETR and will, therefore, deny Lenz's motion for disqualification.

## II. FACTS

ETR filed this complaint on behalf **[\*3]** of Fruehauf Trailer Corporation, a bankrupt debtor. Defendant Lenz served as chair of Fruehauf's board of directors during the relevant period. ETF alleges that Lenz operated Fruehauf for his own interests and is asserting several causes of action against him. Most important for the present motion, ETR alleges that Lenz breached his fiduciary duties under the Employee Retirement and Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(2).

When this action commenced, ETR was represented by Camhy, Karlinsky & Stein ("Camhy"). By July 2000, Greenberg Traurig and Camhy had entered into negotiations to discuss the possibility of merger. The firms agreed to merge on August 21, 2000. Camhy began winding up its affairs and both firms began a computerized conflicts check to determine any potential conflicts of interest between Greenberg Traurig and Camhy clients.

On July 12, 2000, prior to the Greenberg Traurig/Camhy merger, Lenz was sued by Equity Merchant Banking Corporation and the Connecticut Bank of Commerce in Florida state court ("the Florida action"). Lenz hired the Miami office of Greenberg Traurig to represent him. On August 15, 2000, the Greenberg Traurig **[*4]** attorneys filed motions to dismiss the Florida action. Greenberg Traurig's Miami office continued to represent Lenz until he terminated the representation on October 12, 2000. Lenz was never aware - and Greenberg Traurig never notified him - that there was a potential conflict of interest in his continued representation.

Lenz allegedly learned of the conflict when his former counsel - Skadden, Arps, Slate, Meagher & Flom - notified him on March 14, 2001. Lenz's personal attorney, Thomas Gallagher, wrote Greenberg Traurig on that same day regarding the conflict. Greenberg Traurig responded that there had been no simultaneous representation, and that it did not seek a waiver from Lenz because he had terminated the representation. Greenberg Traurig asserts that the conflict was inadvertently overlooked in the conflicts check process.

## III. DISCUSSION

### A. The Ethical Standard & The Court's Disciplinary Power

An attorney's conduct is measured by the ethical standards of the court before which the attorney appears. See *In re Corn Derivatives Antitrust Litig., 748 F.2d 157, 160 (3d Cir. 1984).* Pursuant to Local Rule 83.6(d)(2), the District of Delaware has adopted **[*5]** the Model Rules of Professional Conduct. Model Rule **1.7**(a) provides that an attorney may not represent two clients when representation of one would be "directly adverse" to or would "materially limit" representation of the other, unless the attorney "reasonably believes" that the representation of the other will not be "adversely affected" and both clients consent to the representation. See *Elonex I.P. Holdings v. Apple Computer, 142 F. Supp. 2d 579, 582 (D. Del 2001)* (citing *Lease v. Rubacky, 987 F. Supp. 406, 407 (E.D. Pa. 1997)).*

The court has the power to supervise the professional conduct of attorneys appearing before it. See *United States v. Miller, 624 F.2d 1198, 1201 (3d Cir. 1980).* This includes the power to disqualify an attorney. *Id.* Nevertheless, motions to disqualify are generally disfavored. See *Cohen v. Oasin, 844 F. Supp. 1065, 1067 (E.D. Pa. 1994).* The party seeking disqualification must clearly demonstrate that "continued representation would be impermissible." *Id.* Thus, "vague and unsupported allegations are not sufficient to meet this standard." *Id.*

Greenberg Traurig does not argue **[*6]** that its conduct was appropriate under Rule **1.7**(a). Rather, the firm argues that "disqualification is not an appropriate sanction for what, at most, was a brief, harmless, and unintended oversight of the rules of professional responsibility." (D.I. 91 at 2.) Thus, the court's inquiry is limited to whether disqualification is appropriate in this case.

### B. Greenberg Traurig Should not be Disqualified

Although Greenberg Traurig admits that it violated Rule **1.7**(a), this alone will not warrant disqualification. Contrary to Lenz's arguments, disqualification is not automatic. See *Elonex, 142 F. Supp. 2d at 583* ("Although disqualification is ordinarily the result of a finding that an ethical rule has been violated, disqualification is never automatic.") (quoting *Miller, 624 F.2d at 1201.)* Indeed, the court has "wide discretion in framing its sanctions to be just and fair to all parties involved." *Id.*

In *In re Corn Derivatives Antitrust Litigation*, the Third Circuit indicated that it had "often employed a balancing test in determining the appropriateness of disqualification of an attorney." *Corn Derivatives, 748 F.2d at 162.* In **[*7]** the Miller case, the Third Circuit noted

that:

> The court should disqualify an attorney only when it determines, on the facts of a
> particular case, that disqualification is an appropriate means of enforcing the
> applicable disciplinary rule. It should consider the ends that the disciplinary rule
> is designed to serve and any countervailing policies, such as permitting a litigant
> to retain counsel of his choice and enabling attorneys to practice without
> excessive restrictions.

*Miller*, 624 F.2d at 1201.

Rule **1.7**(a) was enacted to prevent divided loyalties and to protect against the disclosure of client confidences. *See IBM v. Levin*, 579 F.2d 271, 280 (3d Cir. 1978). Neither policy is implicated here. Lenz alleges that Greenberg Traurig's loyalty was divided during the simultaneous representation. Although this is arguably true, Greenberg Traurig has not represented Lenz since October 2000. If Greenberg Traurig currently represented both clients, its loyalty might be more questionable. Since Lenz is no longer represented by Greenberg Traurig, however, the danger of divided loyalty is not as great, if it is present at all.

Lenz also argues **[*8]** that there is a danger that confidential information will be exchanged between the attorneys that represented him in the Florida action and ETR's attorneys. His concern arises from his assertion that the Florida action is connected to the ERISA claims in this case. Nevertheless, the court finds that the potential for breached confidences is minimal. First, the attorneys that represented Lenz worked in Greenberg Traurig's Miami office, whereas ETR is represented by attorneys in the New York office. The geographic separation militates against a finding that confidential information will be shared. *See Elonex, 142 F. Supp. 2d at 584* (noting that work was "done out of different offices in different cities"). Second, although Lenz argues that the ethical screen employed by Greenberg Traurig will be ineffective, a party seeking disqualification cannot rest on "vague and unsupported allegations." *Id.* In this case, Lenz has not alleged sufficient facts that would permit the court to find that there is a specific or immediate danger that confidential information will be released, or that it has been released in the past. In the absence of such allegations, the court gives **[*9]** Lenz's arguments little weight.

The court further finds that strong countervailing policies weigh against disqualification. First, although Greenberg Traurig arguably did violate Rule **1.7**(a), the violation was of an extremely short duration, and was, apparently, inadvertent. Moreover, Lenz has not put forward a single fact or argument that would permit the court to find that he would be prejudiced by Greenberg Traurig's continued representation of ETR. Conversely, great prejudice will result to ETR if Lenz's motion is granted. This is a complex case. It is over two years old, and Greenberg Traurig has invested a substantial amount of time and effort. Moreover, the trial date is imminent. At this point, disqualifying Greenberg Traurig would further delay this case because new counsel will incur great difficulty in reviewing the case, completing discovery, writing any dispositive motions, and preparing for trial by June 3, 2002. This difficulty implicates the interests of both fairness and judicial economy. On balance, therefore, even if the policy concerns raised by Rule **1.7** (a) were implicated, the countervailing policy arguments weigh heavily against disqualification.

## IV. [*10] CONCLUSION

For the foregoing reasons, the court concludes that disqualification is inappropriate and unnecessary. The court will, therefore, deny Lenz's Motion to Disqualify Greenberg Traurig.

NOW, THEREFORE, IT IS HEREBY ORDERED that:

1. Defendant Lenz's Motion to Disqualify Greenberg Traurig (D.I. 81) is DENIED.

Dated: February 20, 2002

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT 7

# HOWREY LLP

525 Market Street
Suite 3600
San Francisco, CA 94105-2708
www.howrey.com

K.T. "Sunny" Cherian
Partner
T 415.848.4930
F 415.848.4999
cheriank@howrey.com

September 1, 2005

BY FACSIMILE

FILE 02721.0006.000000

Timothy J. Haller
Niro, Scavone, Haller & Niro
181 West Madison Street, Suite 4600
Chicago, IL 60602-4515

    Re:   *Alcatel v. Foundry Networks*

Dear Mr. Haller:

    We are in receipt of your letter requesting the Howrey firm to withdraw from the above-referenced action.

    I regret that you misunderstood our brief conversation. Howrey has not and will not claim that Alcatel consented to Howrey's representation of Foundry Networks in the above-captioned litigation. Having said that, Alcatel has not provided Howrey with any basis for withdrawing and Howrey is not aware of any legitimate reason that precludes it from representing Foundry Networks in the assertion of United States letters patent 6,118,864. Howrey has in separate actions represented Foundry Networks in asserting the '864 patent against Nortel Networks and Lucent.

    Please call me if I can be of any further assistance.

        Very truly yours,

        K. T. Sunny Cherian

**EXHIBIT**

8

AMSTERDAM   BRUSSELS   CHICAGO   HOUSTON   IRVINE   LONDON   LOS ANGELES   MENLO PARK   SAN FRANCISCO   WASHINGTON, DC