IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ALCATEL USA RESOURCES, INC.,  )
a Delaware Corporation, and  )
ALCATEL INTERNETWORKING, INC.,  )   **Civil Action No. 05 418-SLR**
a California Corporation,  )
  )
      Plaintiffs,  )
  )   (JURY TRIAL DEMANDED)
      v.  )
  )
FOUNDRY NETWORKS, INC.,  )
a Delaware Corporation,  )
  )
      Defendant.  )

### DEFENDANT FOUNDRY NETWORK INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY HOWREY LLP OR, IN THE ALTERNATIVE, FOUNDRY'S MOTION TO SEVER

OF COUNSEL:

Henry C. Bunsow
K. T. Cherian
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, CA 94105
(415) 848-4900

Attorneys for Count II
Defendant and Counterclaimant
Foundry Networks, Inc.

Dated: September 22, 2005

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

**TABLE OF CONTENTS**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ..........................................................1

II. FACTUAL BACKGROUND ..........................................................................................................3

III. ARGUMENT ..........................................................................................................................................5

    A. Plaintiffs Bear A Heavy Burden Of Proof On A Motion To Disqualify..........................................................................................................................5

    B. One Limited Engagement Nearly Three Years Ago With An Affiliate Corporation (Alcatel) Does Not Establish That Either Plaintiff Is A Current Client Of Howrey ..........................................6

    C. There Is No "Substantial Relationship" Between Howrey's Prior Opinion Letter Concerning The '830 Patent And Its Representation Of Foundry With Respect To Its '864 Patent ........................10

IV. CONCLUSION ..................................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abbott Labs. v. Centuar Chemical Co.,*
    497 F. Supp. 269 (N.D. Ill. 1980) ................................................................. 9

*Alexander v. Primerica Holdings, Inc.,*
    822 F. Supp. 1099 (D.N.J. 1993) .................................................................. 6

*Artromick Int'l, Inc. v. Drustar, Inc.,*
    134 F.R.D. 226 (S.D. Ohio 1991) ................................................................. 6

*Carlyle Towers Condo. Ass'n v. Crossland Sav.,*
    944 F. Supp. 341 (D.N.J. 1996) ............................................................... 5, 13

*Century Glove, Inc. v. Iselin,*
    62 B.R. 693 (Bankr. D. Del. 1986) ............................................................. 10

*Cohen v. Oasin,*
    844 F. Supp. 1065 (E.D. Pa. 1994) .............................................................. 6

*Duncan v. Merrill Lynch, Pierce, Fenner and Smith,*
    646 F.2d 1020 (5th Cir. 1981) ................................................................... 10

*Elonex I.P. Holdings, Inc., v. Apple Computer, Inc.,*
    142 F. Supp. 2d 579 (D. Del. 2001) ........................................................ 5, 14

*International Bus. Mach. v. Levin,*
    579 F.2d 271 (3rd Cir. 1978) ....................................................................... 8

*Kabi Pharmacia v. Alcon Surgical, Inc.,*
    803 F. Supp. 957 (D. Del. 1992) ............................................................. 8, 9

*Leber Assocs., LLC v. The Entertainment Group Fund, Inc.,*
    2001 U.S. Dist. LEXIS 20352 (S.D.N.Y. 2001) .......................................... 9

*Manchester v. Narragansett Capital, Inc.,*
    1989 Del. Ch. LEXIS 141 (Del. Ch., Oct. 18, 1989) .................................. 5

*Proxim v. 3Com,*
    C.A. No. 01-155-SLR, Mem. Order (D. Del. Nov. 28, 2001) .................. 13

*Tackett v. State Farm Fire & Cas.,*
    653 A.2d 254 (Del. 1995) .......................................................................... 14

*Unanue v. Unanue,*
    2004 Del. Ch. LEXIS 37 (Del. Ch. Mar. 25, 2004) ................................ 5, 6

*United States v. Miller*,
    624 F.2d 1198 (3rd Cir. 1980) .................................................................................... 6

**RULES**

Fed. R. Civ. P. 21 ................................................................................................................ 3, 12

I.  INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs Alcatel USA Resources, Inc. ("Alcatel USA Resources") and Alcatel Internetworking, Inc. ("Alcatel Internetworking") seek to disqualify Howrey LLP from representing Foundry Networks, Inc. ("Foundry") in this litigation, based upon a limited prior engagement with plaintiffs' global affiliate conglomerate Alcatel, a French corporation headquartered in Paris, France. The work Howrey performed for Alcatel in connection with that engagement is unrelated to the work that Howrey will do for Foundry in this action against Alcatel's affiliate, Alcatel Internetworking. Howrey represented Alcatel some three years ago with respect to a single opinion letter concerning a standard-setting issue relating to United States Patent Number 6,339,830 ("'830 patent"). Alcatel has not asked Howrey to do any additional work for nearly three years. Now, however, plaintiffs claim that Alcatel "very well may have further need for the assistance of Howrey" with respect to licensing negotiations for the '830 patent which they assert have been ongoing during that entire time. Motion at 4.

Plaintiffs' motion should be denied. Plaintiffs' claim that Alcatel is a current client of Howrey is belied by Alcatel's own conduct. Alcatel has not sought Howrey's services for years, and has not raised any claim of conflict in other litigation in which Howrey has represented a client with adverse interests. Plaintiffs' contention that Alcatel has some previously undisclosed intention of asking for further legal services from Howrey at some point in the future does not create a current client relationship between Howrey and Alcatel, Alcatel USA Resources or Alcatel Internetworking for purposes of a motion to disqualify. The contention is motivated by litigation tactics, and should be rejected.

Because neither Alcatel USA Resources, nor Alcatel Internetworking, nor their affiliated global conglomerate Alcatel are current Howrey clients, there is no ground for disqualification in

1

the absence of at least a substantial relationship between the prior work that Howrey did for Alcatel and its current representation of Foundry in this lawsuit. There is no such relationship. Howrey is not representing Foundry in this action with respect to the '830 patent (Count I of plaintiffs' amended complaint). Howrey is representing Foundry *only* with respect to Alcatel Internetworking's declaratory judgment action against Foundry (Count II of plaintiffs' amended complaint) and Foundry's related counterclaims on Foundry's United States Patent Number 6,118,864 ("'864 patent"). That representation is unrelated to the analysis that Howrey performed for Alcatel on the '830 patent.

The two patents involve different Alcatel affiliates, and concern different fields of invention and different accused technologies. Specifically, while the '830 patent claims (and indeed, the claims of all patents asserted against Foundry in this action) are allegedly directed to *data network routing and switching technologies*, Foundry's '864 patent claims are generally directed to *telephony systems* and *communication platforms* for providing global private branch exchange services (such a telephone call forwarding, call conferencing, call transfer and the like) or other telecommunication services (such as voice-over-IP). *Compare* U.S. Patent No. 6,339,830 (attached hereto as Exhibit 1) *with* U.S. Patent No. 6,118,864 (attached hereto as Exhibit 2). Foundry's accused data network routers and switches are distinctly different from Alcatel Internetworking's accused OmniPCX communication platforms. *Compare* technical descriptions of Foundry's accused routers and switches (attached hereto as Exhibit 3) *with* technical description of Alcatel Internetworking's accused OmniPCX communication platform (attached hereto as Exhibit 4). Furthermore, the two counts of the amended complaint are wholly disjoint: Alcatel USA Resources is the sole plaintiff that allegedly "owns all right title and interest in and has standing to sue for infringement" for the '830 patent and all other patents

asserted against Foundry in Count I of the amended complaint, while Alcatel Internetworking is the sole plaintiff seeking a declaratory judgment against Foundry in Count II of the amended complaint relating to the '864 patent.

Alcatel USA Resources' infringement claim on its '830 patent and Alcatel Internetworking's unrelated declaratory judgment action on Foundry's '864 patent could easily have been filed as separate lawsuits, and can properly be severed under Fed. R. Civ. P. 21. That those two separate entities chose to join their two unrelated counts, involving two unrelated patents, in one lawsuit by including Alcatel Internetworking's request for a declaratory judgment of non-infringement on the '864 patent does not affect the conclusion that there is no substantial relationship between the issues surrounding the two patents. Thus, the limited scope of Howrey's representation in this lawsuit is not substantially related to its prior work for Alcatel, and there is no basis for disqualification. However, should the Court conclude that severance would be necessary to address the alleged conflict that plaintiffs have raised, Foundry hereby respectfully moves the Court to sever Alcatel USA Resources' Count I and Alcatel Internetworking's Count II into separate actions.

## II.     FACTUAL BACKGROUND

In July 2002, Alcatel retained Howrey to prepare an opinion letter concerning a standards issue relating to the '830 patent. Joseph Lavelle, a partner in Howrey's Washington D.C office, prepared such a letter with the assistance of one associate. That letter, which is attached as Exhibit 2 to plaintiffs' motion, addressed the single issue of whether Alcatel's contact with the standard-setting process for an IEEE specification was likely to make the '830 patent unenforceable. Declaration of Joseph P. Lavelle ("Lavelle Decl."), ¶2. The opinion letter was

prepared on behalf of Alcatel[1] as a written communication of a legal opinion to third party Microsoft Corporation. It did not concern in any way the IP telephony product(s) at issue in Alcatel Internetworking's declaratory judgment action and Foundry's counterclaim in this case.

Work on that opinion letter occurred from July through October 2002, when Mr. Lavelle provided the completed letter to Alcatel. *Id.*, ¶4. Other than one and a half hours of additional work on the matter in November 2002, Howrey did nothing further for Alcatel, and Alcatel did not ask for any additional work from Howrey. *Id.*, ¶¶4, 6. Thus, when Foundry approached Howrey to represent it in this lawsuit in June 2005, over two and a half years later, Mr. Lavelle did not consider Alcatel to be a current client of the firm. *Id.*, ¶6.

However, because the prior work that Mr. Lavelle had done for Alcatel related to the '830 patent, one of the nine patents asserted against Foundry in Count I of plaintiffs' amended complaint, Mr. Lavelle called John Berres of Alcatel in June 2005 to discuss the possibility of a waiver that would permit Howrey to represent Foundry on *all of the claims* in this litigation— *i.e.*, Alcatel USA Resources' Count I allegations of infringement concerning several of its patents (including the '830 patent), each of which relate to data network routing and switching technologies allegedly embodied in Foundry's accused network routers, as well as Alcatel Internetworking's wholly disjoint Count II declaratory judgment action concerning Foundry's '864 patent, which relates to IP telephony systems and services that Foundry alleges are provided by Alcatel Internetworking's accused OmniPCX products. *Id.*, ¶6. Mr. Berres indicated that Alcatel was not willing to provide such a waiver. However, Mr. Berres also did not state that he intended to call upon Howrey for any additional work, or that he considered Alcatel to be a current client of Howrey. *Id.* At the time of Mr. Lavelle's call, he was not aware of, and did not

---

[1] All invoices for Howrey's legal services were billed to Alcatel, located at 54 Rue La Boetie, 75008 Paris, France, and which is not a plaintiff in this action. Those invoices are available for *in-camera* review if the Court should wish.

4

raise or discuss with Mr. Berres, the possibility of Howrey's limited representation of Foundry in this litigation with respect to the '864 patent only. *Id.*

Howrey has appeared in this action on Foundry's behalf only on Count II of plaintiffs' First Amended Complaint ("FAC") and on Foundry's counterclaim. *See* Answer to Count II of Plaintiffs' Amended Complaint and Counterclaim. Both Count II of the FAC (which asserts a claim for declaratory judgment of non-infringement and invalidity) and Foundry's counterclaim concern the '864 patent only. Howrey does not represent Foundry with respect to Count I of the FAC, which include Alcatel USA Resources' claims under the '830 patent. Alcatel Internetworking is *not* alleged in Count I of the FAC to own any right, title or interest in any of the patents asserted against Foundry, including the '830 patent, nor is it alleged to have any standing to sue for infringement of that patent or any other patent asserted in Count I of the FAC.[2]

## III.  ARGUMENT

### A.  Plaintiffs Bear A Heavy Burden Of Proof On A Motion To Disqualify

This Court has the inherent power to supervise the professional conduct of attorneys appearing before it, including the power to disqualify an attorney. *Elonex I.P. Holdings, Inc., v. Apple Computer, Inc.*, 142 F. Supp. 2d 579, 581 (D. Del. 2001). However, motions to disqualify are "generally disfavored." *Id.* This is because a litigant " 'should, as much as possible, be able to use the counsel of his choice.' " *Unanue v. Unanue*, 2004 Del. Ch. LEXIS 37 (Del. Ch., Mar. 25, 2004). Thus, a moving party in a motion to disqualify counsel bears a heavy burden to prove the necessary facts. *Manchester v. Narragansett Capital, Inc.*, 1989 Del. Ch. LEXIS 141 at *9 (Del. Ch., Oct. 18, 1989); *Carlyle Towers Condo. Ass'n v. Crossland Sav.*, 944 F.Supp. 341, 345 (D.N.J. 1996) ("the party seeking disqualification must carry a 'heavy burden' and must meet a

---

[2] The "Patent Assignment Abstract of Title" that appears on the United States Patent and Trademark Office website appears to confirm that Alcatel USA Resources, Inc. is the sole owner of the '830 patent. *See* Exhibit 5.

5

'high standard of proof' before a lawyer is disqualified") (quoting *Alexander v. Primerica Holdings, Inc.*, 822 F.Supp. 1099, 1114 (D.N.J. 1993)).

To meet this burden, plaintiffs must "clearly show[] that continued representation would be impermissible." *Elonex, supra*, 142 F.Supp. at 581. " '[V]ague and unsupported allegations are not sufficient to meet this standard.'" *Id.* (quoting *Cohen v. Oasin*, 844 F.Supp. 1065, 1067 (E.D. Pa. 1994)).

Moreover, even when a moving party shows that a conflict exists under the Delaware Rules of Professional Conduct, disqualification is not automatic. *Elonex*, 142 F.Supp. at 583. Disqualification is a "severe sanction" and a district court therefore has " ' wide discretion in framing its sanctions to be just and fair to all parties involved.'" *Id.* (quoting *United States v. Miller*, 624 F.2d 1198, 1201 (3rd Cir. 1980)).

### B. One Limited Engagement Nearly Three Years Ago With An Affiliate Corporation (Alcatel) Does Not Establish That Either Plaintiff Is A Current Client Of Howrey

The question whether a party is a current client of a law firm for disqualification purposes is inherently factual and depends upon the evidence of the particular case. *See, e.g., Unanue, supra*, 2004 Del. Ch. LEXIS 37 (finding that a law firm had terminated its attorney-client relationship with a company and certain board members despite a prior long-term relationship); *Artromick Int'l, Inc. v. Drustar, Inc.*, 134 F.R.D. 226, 230 (S.D. Ohio 1991) (question whether party was a current client "can be decided only upon close examination of its specific facts and their relationship to the actual or reasonable expectations of the parties involved.").

No reasonable interpretation of the evidence supports plaintiffs' contention that Alcatel is currently a client of Howrey. Howrey represented Alcatel for the purpose of an opinion letter that was completed nearly three years ago, in October 2002. Howrey has not performed any work on that matter since November 2002, when Mr. Lavelle devoted one and a half hours to the file. Alcatel has not called upon Howrey for any additional work concerning this or any other

6

matter since that time. Lavelle Decl., ¶¶4, 6. Plaintiffs have not presented any evidence to the contrary.

The lack of ongoing contact is consistent with the specific nature of Howrey's engagement. As reflected in the opinion letter attached to plaintiffs' motion, Alcatel asked Mr. Lavelle only to provide an analysis of "whether Alcatel's membership with the IEEE's Standards Association ("IEEE-SA") and its limited contact with the standard-setting process for the IEEE Specification, 802.1X . . . constrain in any way Alcatel's right to enforce" the '830 patent. *See* Exhibit 2 to Motion. Alcatel did not call upon Howrey for any other services.

The limited nature of Howrey's prior engagement is also confirmed by the written retainer agreement between Alcatel and Howrey. That agreement refers to the subject matter of the engagement as "Retention of Howrey Simon for Standards Issue Opinion." In the "time to completion" estimate that Howrey provided on the budget forms that Alcatel provided, Howrey estimated "1 month."[3] Lavelle Decl., ¶ 5.

Alcatel's failure to request any additional services from Howrey over the last three years belies plaintiffs' assertion that "further services from Howrey may be required" in ongoing license negotiations with Microsoft. In his declaration submitted in support of plaintiffs' motion, Eric Lucas states that, when he began working for Alcatel a year ago, he was "informed" that there were "ongoing patent licensing negotiations with Microsoft involving certain Alcatel patents." Declaration of Eric S. Lucas [in support of plaintiffs' motion], ¶4. Yet neither Mr. Lucas nor anyone else at Alcatel has asked Howrey to do anything at all with respect to those negotiations since November 2002. Alcatel did not disclose its purported intention to call upon Howrey for additional services until its affiliates, Alcatel USA Resources and Alcatel Internetworking, filed their motion to disqualify. Plaintiffs' claim that its global affiliate conglomerate Alcatel remains a client of Howrey (and the *implied* assumption that such alleged

---

[3] The retainer agreement and budget forms are available for *in-camera* review if the Court should wish.

7

relationship is imputed to at least one of the affiliated plaintiffs) is simply an opportunistic litigation ploy.

This conclusion is supported by Alcatel's response to other litigation. Since early this year Howrey has represented a client in a patent matters in Europe adverse to Alcatel without any complaint by Alcatel that it is a current client of Howrey. *See* Declaration of Bart van der Broek. Plaintiffs' assertion of an alleged current client conflict in this litigation is strategic, not principled, and should not be given any credence.

The cases plaintiffs have cited in their supporting brief do not establish that Alcatel is a current Howrey client, or that either affiliate plaintiff was or is a current Howrey client. Indeed, the facts here are quite different from those cases that have found a current attorney-client relationship.

For example, in *International Bus. Mach. V. Levin*, 579 F.2d 271, 277 (3rd Cir. 1978), there was no dispute that the law firm in question accepted multiple labor law engagements from IBM during the time that it represented the plaintiff in an antitrust action against IBM. Here, in sharp contrast, Howrey's prior engagement with plaintiffs' global affiliate conglomerate Alcatel was (a) limited in scope (a single opinion letter) of relatively short duration (no more than five months), and (b) has been completely dormant and thus perceived by Howrey to be terminated for almost three years. Furthermore, while plaintiffs' motion implies (however misguided) that Howrey would have provided legal services to plaintiff Alcatel USA Resources *indirectly* through its earlier work for Alcatel on the '830 patent (since that patent is now allegedly owned by Alcatel USA Resources), Howrey has not provided any legal services to Alcatel Internetworking, the sole plaintiff concerned in Count II of the FAC, for which Howrey has been retained in this action.

The facts in *Kabi Pharmacia v. Alcon Surgical, Inc.*, 803 F.Supp. 957 (D.Del. 1992), are also dissimilar. There, the law firm in question had a continuing prior relationship with the plaintiff, Pharmacia, including representation in an ongoing litigation matter, and the firm billed Pharmacia for services during the same time period it represented the defendant, Alcon. *Id.* at

8

959-960. Here again, unlike the facts in *Kabi Pharmacia*, when Foundry approached Howrey to represent it in the present lawsuit, over two and a half years after a final invoice for legal services had been provided to Alcatel, Alcatel was not considered by Howrey to be a current client of the firm. Lavelle Decl., ¶6.

On the other hand, other cases with facts similar to this case have found no current attorney-client relationship sufficient to cause disqualification. For example, in *Abbott Labs v. Centuar Chemical Co.*, 497 F.Supp. 269 (N.D. Ill. 1980), the court held that an attorney's prior representation of Abbott in a patent interference action did not establish an ongoing attorney-client relationship, despite Abbott's claim that the attorney "may again be called upon" to represent Abbott in appeals or a civil action relating to the interference action. The court cited *IBM v. Levin, supra*, for the standard applicable to current client conflicts, but concluded that the standard did not apply because Abbott was not a current client:

> In light of the fact that Abbott grounds its motion on little more than a possibility that Mr. Cheslow may continue to represent Abbott in the Corbin matter, and in light of the fact that nearly eleven months have passed since Mr. Cheslow last was asked to act on behalf of Abbott, this Court does not believe that the Dressler firm must await the passing of every possible deadline for appeal or other action before assuming that their representation of Abbott has terminated.

497 F. Supp. at 271.

Here, as in *Abbott Laboratories*, plaintiffs ground their motion on "little more than a possibility" that Alcatel may decide to call upon Howrey for additional work. Moreover, in contrast to the eleven months without a request for additional services in *Abbott Laboratories*, here nearly three years have passed since Alcatel asked Howrey to do anything, providing even stronger support for Howrey's reasonable conclusion that its representation of Alcatel had terminated. *See also Leber Assocs., LLC v. The Entertainment Group Fund, Inc.*, 2001 U.S. Dist. LEXIS 20352 (S.D.N.Y. 2001) (finding no current client relationship based upon a firm's prior work in preparing a will and setting up a trust in the absence of credible evidence that the client returned to the firm for additional work for four years).

9

The limited nature of Howrey's engagement, the passage of nearly three years' time, and the lack of any request by Alcatel for additional services all support the conclusion that Alcatel is not a current client of Howrey. Furthermore, the legal services rendered to plaintiffs' global affiliate conglomerate Alcatel regarding a discrete issue relating to the enforceability of the '830 patent provides no evidence that Howrey ever provided services to Alcatel Internetworking, the sole plaintiff concerned in Count II of the FAC, for which Howrey has been retained in this action. Plaintiffs have failed to meet their heavy burden of proving that disqualification is warranted based upon any current client relationship.

### C. There Is No "Substantial Relationship" Between Howrey's Prior Opinion Letter Concerning The '830 Patent And Its Representation Of Foundry With Respect To Its '864 Patent

As discussed above, Alcatel is not a current client of Howrey, nor is either plaintiff a current client of Howrey. Although Alcatel is a former Howrey client, there is no basis for plaintiffs to seek Howrey's disqualification in a matter adverse to Alcatel absent a substantial relationship between that matter and Howrey's prior work for Alcatel.

To prove such a substantial relationship, plaintiffs must delineate with specificity the subject matter, issues and causes of action presented in the prior and current representation. *Century Glove, Inc. v. Iselin*, 62 B.R. 693, 695 (Bankr. D. Del. 1986). Merely pointing to a superficial resemblance between the past and present representation is insufficient. *Id.* (citing *Duncan v. Merrill Lynch, Pierce, Fenner and Smith*, 646 F.2d 1020 (5th Cir. 1981)).

There is no substantial relationship between Howrey's work in preparing the opinion letter on the '830 patent and its limited representation of Foundry with respect to Count II of the FAC and Foundry's counterclaim in this litigation. Howrey has limited the scope of its representation of Foundry in this action to allegations concerning Alcatel Internetworking's declaratory judgment action and related counter-allegations of infringement by Foundry of the '864 patent, precisely to avoid the conflict claim that plaintiffs now assert. *See* Restatement of the Law Governing Lawyers, Section 132, comment "e" ("the lawyer may limit the scope of

10

representation of a later client so as to avoid representation substantially related to that undertaken for a previous client."). Howrey is representing Foundry *only* with respect to Foundry's claims concerning its '864 patent, *not* with respect to its defense against Alcatel USA Resources' infringement allegations concerning the unrelated '830 patent.

The two patents are separate and distinct, and are joined in this litigation only because Alcatel Internetworking decided to assert a claim for declaratory judgment of non-infringement and invalidity on the '864 patent along with affiliate Alcatel USA Resources' affirmative claims on its '830 patent (and other patents allegedly owned by that affiliate). Thus, the relevant question on plaintiffs' motion is not whether there is a substantial relationship between Howrey's prior work relating to the '830 patent and Alcatel USA Resources' claims under the '830 patent here, but whether there is a substantial relationship between Howrey's prior work for Alcatel and *Foundry's* claims under the '*864* patent in this case. There is no such relationship.

Howrey's work for Alcatel was limited to a standards issue concerning the '830 patent. Howrey's opinion letter analyzed whether a reasonable judge or jury would likely find that the '830 patent is unenforceable as a result of Alcatel's contact with the standard-setting process for an IEEE specification, 802.1X. Howrey's analysis of the enforceability of the '830 patent has nothing to do with issues of claim interpretation, validity or infringement of Foundry's '864 patent, which has different claims that are directed to a different field of invention, and is not related to the 802.1X standard. Howrey's prior analysis of the '830 patent did not concern in any way the IP telephony product(s) at issue in Alcatel Internetworking's declaratory judgment action in this case.

The lack of any relationship between the two patents is also reflected in the fact that they concern two distinct corporate entities. According to the FAC, Alcatel USA Resources, Inc., a Delaware corporation with its headquarters in Plano, Texas, owns the '830 patent. In contrast, Foundry's counterclaim alleges that *Alcatel Internetworking*, a separate California corporation, has infringed the '864 patent through its products, including the OmniPCX integrated communication system. Howrey's work for Alcatel involved only analysis of standards issues

11

surrounding the '830 patent, now allegedly owned by Alcatel USA Resources, not any products marketed or manufactured by Alcatel Internetworking. Thus, Howrey did not provide any services on behalf of Alcatel Internetworking, the cross-defendant on Foundry's counterclaim.

Plaintiffs do not offer any evidence of a substantial relationship between Howrey's standards analysis for the '830 patent and its representation of Foundry on its '864 patent. They do not even argue that such a substantial relationship exists. Rather, plaintiffs focus solely on the fact that the '830 patent is at issue in Count I of their FAC, and suggest that Howrey's limited representation of Foundry in this litigation is "illusory" and impractical.

That limitation is not illusory. Foundry has separate counsel for all issues concerning Alcatel USA Resources' affirmative claims under Count I. Howrey need not, and will not, act for Foundry with respect to those claims. That a bright line can be drawn between the two counts is apparent from the nature of the claims at issue. This litigation could have been filed as two separate actions. The two separate patents are at issue in the same case only because two separate entities chose to combine them into a single complaint. The two patents concern different technology spaces and different products: the '830 patent (characterized by plaintiffs as a "LAN Authentication Patent") relates to data networking routing and switching technologies allegedly embodied in Foundry's accused Internet routers and switches, while Foundry's '864 patent relates to IP telephony products, systems and services, which are provided by Alcatel Internetworking's accused OmniPCX products. *See* Foundry Accused Product Descriptions, attached hereto as Exhibit 3, in comparison to Alcatel Internetworking's OmniPCX Product Description, attached hereto as Exhibit 4. Foundry's accused products do not embody the inventions claimed in the '864 patent, and do not compete with the Alcatel Internetworking's accused OmniPCX products.

Thus, the counts can easily be severed under Fed.R.Civ.P. 21. Should the Court conclude that severance would be necessary to address the alleged conflict that plaintiffs have raised, Foundry hereby respectfully moves the Court to do so. Here, severance would answer any concern that Howrey could be in a position to assist in challenging an Alcatel patent for which it

12

offered an opinion on enforceability. This Court has previously severed claims on unrelated patents that otherwise would have created an alleged conflict. In *Proxim v. 3Com*, No. 01-155-SLR, the Court granted a motion to sever claims on patents that a predecessor firm to Howrey had prosecuted, and simultaneously denied a motion to disqualify. *See e.g.* Memorandum Order in *Proxim, Inc. v. 3Com Inc., et al.* (D. Del., Civil Action No. 01-155-SLR), dated November 28, 2001, attached hereto as Exhibit 6.

However, severance should not be necessary. The purported practical problems that plaintiffs raise concerning Howrey's limited role will not prejudice either Alcatel USA Resources or Acatel Internetworking. The substantial relationship rule exists primarily to protect against the possibility that an attorney will misuse a former client's confidential information. *See Carlyle Towers, supra*, 944 F. Supp. at 350. There is no such danger here. Howrey's participation in depositions and other discovery in this case will not result in the misuse of confidential information that Howrey may have obtained in connection with its prior engagement. The relevant question here is not what information Howrey might *learn* through discovery, but whether the firm would be placed in the position of *disclosing* or *using* confidential information (if any) obtained through the prior engagement. Because Howrey will not act on Foundry's behalf in this case with respect to any issues related to its prior work, that is not a danger.

Plaintiffs attempt to manufacture some prejudice by asserting that Alcatel is engaged in cross-licensing negotiations with Microsoft involving the Alcatel OmniPCX system, the product identified as an infringing device in Foundry's counterclaim concerning the '864 patent. Plaintiffs claim that they will each be prejudiced because Alcatel will be "unable to obtain effective assistance from Howrey on any further negotiations with Microsoft." Motion at 11. But plaintiffs do not argue that Howrey's prior work on the standards issue concerning the '830 patent has any relationship to cross-licensing issues concerning the OmniPCX. Plaintiffs do not explain why Alcatel would need Howrey's assistance with respect to any such cross-licensing talks, which presumably involve some different patent for which Microsoft is seeking a license.

13

Nor do plaintiffs claim that Alcatel has made any request of Howrey for further assistance in its negotiations with Microsoft over the past three years. This argument does not identify any real problem, but is merely another litigation ploy. *See Elonex, supra,* 142 F. Supp. at 584 (motions to disqualify are viewed with caution because of the potential for their misuse as litigation tactics.)

The nature of Howrey's prior engagement minimizes any risk that confidential information (if any) might actually be disclosed or misused in this litigation. Howrey's prior work for Alcatel was limited to two attorneys in its Washington, D.C. office, who are not, and will not be, involved in the representation of Foundry in this case, which is being handled by attorneys in Howrey's San Francisco and Los Angeles offices. Moreover, the prior work for Alcatel was directed solely to the preparation of an opinion letter that was sent to a third party and which plaintiffs have filed in support of their motion. A party that chooses to disclose legal advice necessarily has a lessened expectation of confidentiality for other attorney-client communications on the same subject matter. *Cf. Tackett v. State Farm,* 653 A.2d 254, 259 (Del. 1995) (disclosure of otherwise privileged information can result in loss of the privilege for other facts on the same subject matter where fairness dictates).

Finally, the prejudice to Foundry of losing its counsel of choice in this litigation weighs heavily against disqualification. Although this lawsuit is still young, Howrey has represented Foundry for nearly two years in other litigation concerning the '864 patent, and has therefore developed an extensive knowledge of the relevant technology and the legal issues that will be difficult, and expensive, for Foundry to replace. Howrey has devoted well over five thousand (5000) attorney hours to other cases on Foundry's behalf involving the same patent.[4] Foundry will therefore be severely prejudiced if it is required to obtain new counsel in this matter

---

[4] *Foundry Networks, Inc. v. Lucent Technologies, Inc.*, Civil Action No. 2:04-CV-40 (TJW) (E.D. Tex.), and *Foundry Networks, Inc. V. Nortel Networks, Inc.*, Civil Action No. C02 04909 (CRB) (N.D. Cal). Howrey will provide invoices for *in-camera* review if the Court should wish.

regarding claims concerning the '864 patent. *See Elonex, supra* (finding that, even if there were a violation of the current client rule, disqualification would not be warranted based in part on the prejudice resulting from the need for new counsel in a matter where the attorneys had already devoted thousands of hours).

Neither plaintiff will be prejudiced by Howrey's limited representation of Foundry in this action. In contrast, Foundry will be unfairly prejudiced by the need to seek new counsel that is not familiar with the claims that it asserts against Alcatel Internetworking. Plaintiffs have not presented any evidence justifying this result, and their motion should be denied.

## IV. CONCLUSION

For all the foregoing reasons, plaintiffs' motion to disqualify Howrey should be denied. In the alternative, Foundry hereby respectfully moves the Court to sever plaintiffs Counts I and II into separate actions.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Henry C. Bunsow
K.T. Cherian
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, California 94105
(415) 848-4900

By: /s/ Philip A. Rovner
Philip A. Rovner (#3215)
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

Dated: September 22, 2005
700631

Attorneys for Count II Defendant and
Counterclaimant
Foundry Networks, Inc.

15

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, Philip A. Rovner, hereby certify that on September 22, 2005, the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

**BY HAND DELIVERY**

Josy W. Ingersoll, Esq.
Adam W. Poff, Esq.
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391

I hereby certify that on September 22, 2005 I have sent by Federal Express the foregoing document to the following non-registered participant:

Timothy J. Haller, Esq.
Niro, Scavone, Haller & Niro
181 W. Madison Street, Suite 4600
Chicago, IL 60602

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com