**REDACTED -- Public Version, filed 10/12/05**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ALCATEL USA RESOURCES, INC., )
a Delaware Corporation, and )
ALCATEL INTERNETWORKING, INC., )
a California Corporation, )
                    )
         Plaintiffs, )
                    )    Civil Action No. 05 418-SLR
      v. )
                    )    **CONFIDENTIAL –**
FOUNDRY NETWORKS, INC., )    **FILED UNDER SEAL**
a Delaware Corporation, )
                    )    (JURY TRIAL DEMANDED)
         Defendant. )

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO DISQUALIFY HOWREY, LLP**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
John W. Shaw (#3362)
Adam W. Poff (#3990)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone 302 571-6600

Dated: September 29, 2005

                                                         

**REDACTED -- Public Version, filed 10/12/05**

## TABLE OF CONTENTS

Page

I.    SUMMARY OF ARGUMENT IN REPLY ....................................................1

II.   ALCATEL IS A CURRENT CLIENT OF HOWREY ......................................2

    A.    Howrey Represents All Alcatel Entities Who Have an Interest in the '830 Patent .....................................................................3

    B.    Alcatel Had No Duty To Confirm Current Client Status.........................5

    C.    Howrey Never Informed Alcatel of Conflicts in European Patent Cases ......................................................................6

    D.    Paying Howrey Too Little Does Not Forgive Its Breach of Ethics ...........................................................................7

III.   REDACTED ..........................................8

IV.   THE ACCUSED PRODUCTS HAVE MUCH IN COMMON ........................8

V.    CONCLUSION..............................................................................10

i

**REDACTED -- Public Version, filed 10/12/05**

## TABLE OF AUTHORITIES

### FEDERAL CASES

Page

Kabi Pharmacia AB v. Alcon Surgical, Inc.,
803 F. Supp. 957 (D. Del. 1992)...................................................................................7

Manoir-Electroalloys Corp. v. Amalloy Corp.,
711 F. Supp. 188 (D.N.J. 1989) ...................................................................................7

DB01:1863742.1                                                    064207.1001

**REDACTED -- Public Version, filed 10/12/05**

I.    <u>Summary of Argument in Reply</u>

The opposition filed by the defendant, Foundry Networks, Inc, ("Foundry")

depends on the unsupported conclusion that there is no current client relationship

between the Howrey firm and either of the plaintiffs, Alcatel USA Resources, Inc, or

Alcatel Internetworking, Inc. ("Alcatel"). Foundry tacitly agrees to Howrey's

disqualification if the Court finds a current client relationship. In its opposition, Foundry

argues that there is ambiguity about the client status and insists that the plaintiffs must

bear the burden of that ambiguity because they: 1) did not complain about other Howrey

conflicts in patent cases filed in France and The Netherlands (Foundry Opp. at 1 and

Declaration of Bart Van Den Broek); and 2) that Alcatel failed to affirmatively inform

Howrey that Alcatel was still a current client when Howrey sought a waiver in June 2005

(Foundry Opp. at 4).

It is not surprising that Foundry cites no authority that supports this novel theory,

however because any such authority would squarely contradict the Delaware Lawyer's

Rules of Professional Conduct. Comment 4 to DLRPC 1.3 explains that "[d]oubt about

whether a client-lawyer relationship still exists should be clarified **by the lawyer**

**preferably in writing**." Thus the burden is on the lawyer (Howrey), not the client

(Alcatel) to make clear the nature of the relationship. Foundry offers no evidence or

argument that Alcatel received any such clarification, in writing or otherwise. It is also

uncontested that the Howrey attorneys who are working for Alcatel are still employed by

Howrey.

**REDACTED -- Public Version, filed 10/12/05**

Foundry's former client argument is an attempt at misdirection. Even when considered on its merits it offers no help to Foundry because Alcatel's VoIP OmniPCX system is a substantial part of both Foundry's counterclaim and Alcatel's negotiations with Microsoft. Moreover, the differences suggested by Foundry between the accused products are illusory.

**REDACTED**

Finally, Foundry's claim that it has exclusively depended on the Howrey firm to assert its rights in the '864 patent does not square with the facts.

**REDACTED**

## II.    Alcatel is a Current Client of Howrey

Foundry makes three related arguments in support of its contention that Alcatel is not a current client. First, Foundry claims that Howrey was retained to represent only the Alcatel parent corporation to the exclusion of any subsidiary including the plaintiffs in this action. Second, Foundry argues that Alcatel failed to meet an affirmative duty to tell

Howrey that Alcatel was still a current client, and to know and object to adverse

representation in patent cases pending in France and The Netherlands. Third, Foundry

argues that Alcatel has failed to provide enough ongoing billable work to Howrey to

retain its status as a current client. Noticeably, none of these theories are supported by

citation to authority. They are principles that exist only in the mind of Foundry. Further,

they are based on a hindsight analysis of the facts and the application of unreasonable

expectations on Alcatel.

**A.    Howrey Represents All Alcatel Entities Who Have an Interest
        in the '830 Patent**

In hindsight, Foundry is picking through the details of the Howrey representation

agreement and billing practices to create the appearance of confusion over the identity of

the Alcatel parties represented by Howrey since 2002. Considering all the facts and

circumstances as they appeared in 2002 however it is clear that Howrey was retained to

represent all Alcatel entities with rights or interests in the '830 patent. Whether the holder

of the rights to the '830 patent was Alcatel, Alcatel USA Resources, Inc. or Alcatel

Internetworking, Inc. made no difference in the scope of work given to Howrey.

Howrey's job was, and still is, to assist in the licensing discussions with Microsoft

regardless of which Alcatel entity currently owns the patent. Further, Foundry points to

nothing in the representation agreement that suggests that all Alcatel subsidiaries are

excluded from representation. Indeed, if Howrey believes that the plaintiffs in this case

are not its clients, why did Howrey seek a waiver in the first place? Foundry provides no

answer.

064207.1001

**REDACTED -- Public Version, filed 10/12/05**

Alcatel's in-house counsel, John Berres, was responsible for obtaining legal counsel for the Alcatel parent company **and** its subsidiaries including the plaintiffs in this action. (Ex. A, Second Declaration of John Berres at ¶2). It is clear from the assignment history of the '830 patent that in 2002, when the Howrey firm was retained, Alcatel was actively working on securing and transferring rights in the '830 patent, including rights assigned to the Alcatel parent company **and** Alcatel Internetworking, Inc. In fact, Alcatel Internetworking received an ownership interest in the '830 patent during the time when Howrey was preparing the October, 2002 report to Microsoft. Exhibit 5 of Foundry's Opposition shows that Alcatel Internetworking received an assignment of inventor Michele Wright Goodwin's interest in the '830 patent on October 24, 2002.

To adopt Foundry's reasoning, Alcatel should have stopped the Howrey representation before the Microsoft letter was sent and executed a new agreement specifically naming Alcatel Internetworking as a client. This exalts form over substance. Foundry points to nothing that Howrey would have or should have done differently if the '830 patent was owned by a different Alcatel subsidiary. Taking Foundry's reasoning to its logical outcome, Howrey would be allowed to represent a parent company while simultaneously representing a subsidiary company's adversary against the subsidiary, on a related subject matter.

Also, the location where Howrey sent its invoices does not distinguish one Alcatel entity from another. The general practice at Alcatel when any outside counsel is retained by any Alcatel entity on matters relating to the licensing of intellectual property is to have

4

**REDACTED -- Public Version, filed 10/12/05**

the invoices processed through the Paris office. (Ex. A, Second Declaration of John
Berres at ¶3).

### B.    Alcatel Had No Duty To Confirm Current Client Status

Foundry describes the June, 2005 exchange between Alcatel's John Berres and
Howrey's Joe Lavelle as if it were a conversation (Foundry Opp. at 4-5). It was not. Mr.
Lavelle left a voicemail for Mr. Berres, who responded with an e-mail. (Ex. A, Second
Declaration of John Berres at ¶4-5). As a voicemail, Mr. Lavelle's message was
necessarily brief describing Howrey's request in broad terms (Id.). There was nothing in
Mr. Lavelle's voicemail message to suggest that Howrey's waiver request applied to
some claims or parties, but not others. The impression Mr. Lavelle's message left was
that Howrey was asking for Alcatel's permission to any form of Howrey's participation
in the case. Mr. Berres' message declining the waiver was not conditioned by the scope
of the representation planned by Howrey. (Ex. A, Second Declaration of John Berres at
¶5).

In fact, Mr. Lavelle's request is an admission that Howrey understood that it had a
conflict with the named plaintiffs and that Mr. Berres worked on their behalf. Further,
nothing in Mr. Lavelle's request sought information from Alcatel about current client
status or the timing of additional work needed from Howrey. Significantly, Comment 4
to DLRPC 1.3 explains that "[d]oubt about whether a client-lawyer relationship still
exists should be clarified **by the lawyer preferably in writing.**" Also, Foundry
acknowledges by its silence that Alcatel was correct in its opening memorandum that

Howrey has never communicated to Alcatel that the representation ended. (See Alcatel Mem. at 4).

### C.    Howrey Never Informed Alcatel of Conflicts in European Patent Cases

Foundry claims that relevant evidence to the determination of current client status includes Alcatel's failure to object to conflicts where Howrey represents an adverse party in patent actions in France and The Netherlands. Foundry never explains why or how the Delaware Rules or the ABA Model Rules or any American Rules of Professional Conduct would apply in foreign jurisdictions. No authority is cited for this proposition.

Moreover, Foundry does not explain how Alcatel should have known of Howrey's presence in those cases. Naturally, cases brought in France have filings prepared in French. Similarly cases brought in The Netherlands have filings prepared in Dutch. Mr. Berres, who is responsible for supervising these cases for Alcatel, does not read or speak these languages. Instead, counsel for Alcatel provide summaries of the cases prepared in English for Mr. Berres' review. (Ex. A, Second Declaration of John Berres at ¶6). Alcatel, through Mr. Berres, was simply unaware of Howrey's connection to these cases until informed by the filing of Foundry's opposition. (Ex. A, Second Declaration of John Berres at ¶6).

In fact, this new information from Foundry says more about Howrey than it does about Alcatel. If the American style rules of conduct apply as Foundry urges, it was

064207.1001

Howrey's duty to inform Alcatel of the conflict and seek a waiver.  That never happened in either of the cases cited by Foundry.  (Ex. A, Second Declaration of John Berres at ¶6).

### D.    Paying Howrey Too Little Does Not Forgive Its Breach of Ethics

Foundry misstates the issue when it argues that Howrey has not received enough billable work from Alcatel to justify its status as a current client.  The rules do not specify any minimum annual amount of billable work required to sustain a current client relationship.  In fact cases cited in Alcatel's opening brief are clear that $0 per year is an acceptable amount (see Kabi Pharmacia AB v. Alcon Surgical, Inc., 803 F.Supp. 957, 962 (D. Del. 1992), citing Manoir-Electroalloys Corp. v. Amalloy Corp. 711 F.Supp. 188, 193 (D.N.J. 1989)(four years since last active work)).  In any case, Alcatel's proffered in camera submission contradicts Foundry's argument that it did not expect Alcatel's ongoing need for services.

In summary, none of the unusual theories advanced by Foundry change the conclusion that a current client relationship remains between Howrey and the plaintiffs.  Since there is a current client relationship, Howrey's conduct falls under DLRPC Rule 1.7, not DLRPC Rule 1.9.  Therefore, the arguments advanced by Foundry regarding a substantial relationship between this case and Howrey's representation of Alcatel are moot, and disqualification is appropriate.

7

**REDACTED -- Public Version, filed 10/12/05**

III.                    REDACTED

Foundry claims that the Howrey firm is indispensable to the assertion of its rights in the '864 patent. History contradicts this.

REDACTED

IV.    <u>The Accused Products Have Much In Common</u>

Foundry has proposed a conditional motion to sever the counts of the complaint if the Court agrees with Alcatel that there is a conflict requiring disqualification. Foundry's informal motion to sever is not desired even by Foundry, except as alternative relief. Moreover, it is not feasible, as severance would not remedy the Howrey conflict. A severance would only cause duplication of effort by proper counsel for the parties in this case.

Foundry claims that the pool of accused products are unrelated.

REDACTED

8

REDACTED

. Also, in both the Microsoft negotiations and Foundry's counterclaim, Alcatel's VoIP OmniPCX product is at issue. Therefore adversity remains even if the claims are severed.

Foundry cites the court's decisions in the Proxim case as a model for handling the issues presented here (Foundry Opp. at 13 and Ex. 6). But Proxim was decided on substantially different facts. First, the grounds for denying Symbol's motion to disqualify Proxim's counsel were based on conditions not applicable here. The court found that "none of the attorneys who represented Symbol in the patent prosecutions is currently an attorney at Howrey, Simon, Arnold & White, LLP." (Foundry Ex. 6 at ¶2.c.). Given this fact, the court concluded that "there are no attorneys within Howrey, Simon, Arnold & White, LLP who have the requisite confidences requiring disqualification." (Foundry Ex. 6 at ¶2.g.). Here, there is no dispute that Mr. Lavelle and Ms. Kou are still working at Howrey and that they are in possession of confidences relating to the '830 patent. (See Alcatel Mem. at 4, not challenged by Foundry's opposition).

Similarly, the facts leading to severance are also inapposite to this case. On its face, the caption from the Proxim case identifies seven different parties to the action, rightly qualifying it as "an already complex case" as described by the court. (Foundry Ex. 6 at ¶1).

REDACTED

Foundry points to no economy gained by severing the counts of this case.

9

064207.1001

V.    <u>Conclusion</u>

Alcatel respectfully requests that its motion be granted.


Respectfully Submitted,

Alcatel USA Resources, Inc., and
Alcatel Internetworking, Inc.


Josy W. Ingersoll (#1088)
John W. Shaw (#3362)
Adam W. Poff (#3990)
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
phone 302 571-6600
jingersoll@ycst.com


Timothy J. Haller
NIRO, SCAVONE, HALLER & NIRO
181 West Madison Street, Suite 4600
Chicago, Illinois 60602
phone (312) 236-0733
haller@nshn.com

Attorneys for Plaintiffs

Dated:  September 29, 2005

**REDACTED -- Public Version, filed 10/12/05**

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ALCATEL USA RESOURCES, INC., )
a Delaware Corporation, and )
ALCATEL INTERNETWORKING, INC., )
a California Corporation, )
)
          Plaintiffs, )
)    Civil Action No. 1:05 CV 418
     v. )
)
FOUNDRY NETWORKS, INC., )
a Delaware Corporation, )
)    (JURY TRIAL DEMANDED)
)
          Defendant. )

## SECOND DECLARATION OF JOHN BERRES

I, John Berres , hereby declare and state as follows:

1.    I reside in Arlington, Virginia, USA. I have personal knowledge of the facts stated herein and am competent to testify to those facts at a hearing or trial.

2.    My job responsibilities at Alcatel include obtaining outside counsel for Alcatel and its subsidiaries including Alcatel USA Resources, Inc. and Alcatel Internetworking, Inc. For example, it was my responsibility to obtain outside counsel to represent the plaintiffs in this case.

3.    Generally, when any outside counsel is retained by any Alcatel entity for the purpose of assisting with the licensing of intellectual property, the bills for their services are sent to the Paris office for payment.

4. Mr. Lavelle contacted me in June, 2005 by voicemail requesting a waiver of conflict for Howrey to represent Foundry Networks, Inc. Mr. Lavelle's voicemail was necessarily brief describing Howrey's request in broad terms.

5. I responded to Mr. Lavelle's voice mail with an e-mail declining his request. Since, Mr. Lavelle and I never spoke directly about any detail or limitation of his request, I understood my denial of his request to exclude any form of Howrey's participation in this case.

6. It is part of my job at Alcatel to supervise ongoing litigation in European courts, including the two patent actions involving Alcatel and Koninklijke KPN N.V. that are described in the Declaration of Bart Van Den Broek. I understand that all the filings for these cases are written in French or Dutch, therefore Alcatel's counsel prepares summaries of the cases in English to facilitate Alcatel's internal review. I am unaware of any summary that identifies the Howrey firm being involved in these cases. I am also unaware of any Howrey attorney ever seeking a waiver of conflict from Alcatel in order to work on these cases.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: SEPT 29 2005

John Berres

2

# EXHIBIT B

# REDACTED

**REDACTED -- Public Version, filed 10/12/05**

# EXHIBIT C

# REDACTED

**REDACTED -- Public Version, filed 10/12/05**

## CERTIFICATE OF SERVICE

I, Josy W. Ingersoll, Esquire, hereby certify that on September 29, 2005 I caused to be electronically filed a true and correct copy of the **PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION TO DISQUALIFY HOWREY, LLP** with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Philip A. Rovner, Esquire
> POTTER ANDERSON & CORROON LLP
> Hercules Plaza
> 1313 N. Market Street
> P.O. Box 951
> Wilmington, Delaware 19899

I hereby certify that on September 29, 2005 I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and by E-Mail on the below listed counsel:

> William L. Anthony, Esquire
> Orrick, Herrington & Sutcliffe LLP
> 1000 Marsh Road
> Menlo Park, CA 94025

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> Josy W. Ingersoll (#1088)
> John W. Shaw (#3362)
> Adam W. Poff (#3990)
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19801
> (302) 571-6600
> jingersoll@ycst.com
>
> *Attorneys for Plaintiffs*