

Potter
Anderson
&Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

Philip A. Rovner
Partner
provner@potteranderson.com
302 984-6140  Direct Phone
302 658-1192  Fax

August 7, 2006

**BY E-FILE**

The Honorable Sue L. Robinson
Chief Judge
United States District Court
  for the District of Delaware
U.S. Courthouse
844 N. King Street
Wilmington, DE  19801

Re:    Alcatel USA Resources, Inc., et al. v. Foundry Networks, Inc.,
        D. Del., C.A. No. 05-418-SLR

Dear Chief Judge Robinson:

We write on behalf of Defendant/Counterclaimant Foundry Networks, Inc. ("Foundry")
in anticipation of tomorrow's 5:00 p.m. hearing in the above-referenced action.

## INTRODUCTION

This letter explains Foundry's basis for opposing the discovery sought by Plaintiffs
Alcatel USA Resources, Inc. and Alcatel Internetworking, Inc. (collectively, "Alcatel").
Pursuant to the Court's instructions during last Tuesday's telephone conference, Foundry will
bring related documentation to tomorrow's hearing.  In summary, Foundry opposes discovery
sought by Alcatel related to Foundry products as to which Alcatel has not provided infringement
charts and, consequently, has no good faith basis to proceed.  As a plaintiff in a patent case,
Alcatel must conduct an adequate pre-filing inquiry comparing, on a claim-by-claim and
element-by-element basis, each accused product with each asserted patent.  Discovery should be
denied to Alcatel with respect to products for which it has not conducted such an analysis. [1]

---

[1] Before a plaintiff accuses multiple products of infringing a patent, it must have a reasonable
evidentiary basis to conclude that *each* such product actually infringes. *See Antonious v.
Spalding & Evenflo Cos.*, 275 F.3d 1066, 1075-76 (Fed. Cir. 2002) ("the evidence uncovered by

The Honorable Sue L. Robinson
August 7, 2006
Page 2

Here, in an interrogatory, Foundry asked Alcatel to state in a chart how each accused Foundry product infringes each asserted patent claim. Alcatel's response provides no information for Foundry products other than those with the IronCore™ or JetCore™ hardware architectures. Foundry's other products have substantially different hardware architectures.[2] They are not, as Alcatel's counsel has represented, simply new marketing names applied to the same or similar hardware. Several product features that Alcatel has identified as a basis for its infringement claims are not present in Foundry's other product architectures. In addition, even as to the IronCore™ and JetCore™ products, Alcatel has failed to identify *any* product features corresponding to certain required claim elements. Thus, Foundry is unable to determine whether its other products have the accused product features.[3]

For these reasons, Alcatel has no good faith basis to allege that Foundry products other than those with the IronCore™ and JetCore™ architectures infringe the patents-in-suit and Foundry should not have to comply with related discovery requests.

## ARGUMENT

### A.    Foundry Products Have Employed Several Hardware Architectures That Differ Substantially From Each Other

This discovery dispute relates to two of the Alcatel patents-in-suit: U.S. Patent Nos. 5,301,192 (the "'192 patent") and 5,506,840 (the "'840 patent"). Alcatel's theory of infringement with respect to those two patents relates in large part to hardware features of the accused Foundry products. Because Foundry's products employ several hardware architectures that differ substantially from each other in relevant ways, Foundry should not have to respond to discovery related to products as to which Alcatel has not stated its infringement contentions.

---

the patent holder's investigation must be sufficient to permit a reasonable inference that all the accused products infringe"); *S. Bravo Sys., Inc. v. Containment Techs. Corp.*, 96 F.3d 1372, 1375 (Fed. Cir. 1996) (infringement analysis under Rule 11 "requires that the patent claims be interpreted and that the claims be found to read on the accused devices").

[2] One such architecture is called Terathon™. Foundry has produced documents and other discovery related to products with the Terathon™ architecture. Accordingly, those products are not subject to the present discovery dispute. Foundry's counsel mentioned the Terathon™ architecture during last week's telephone conference merely as an example of the deficiencies in Alcatel's infringement charts.

[3] Foundry's interrogatories are entirely consistent with Federal Circuit law which mandates that a plaintiff may not file a patent infringement suit without a good faith basis for doing so. Before filing suit, plaintiff's counsel must interpret the patent claims and conduct an infringement analysis. *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 985 (Fed. Cir. 2000). Plaintiff's counsel must conclude there is a reasonable basis for a finding of infringement of at least one claim of each asserted patent. *Id.* at 986. To do this, plaintiff's counsel must conduct an element-by-element analysis of infringement with respect to each such claim. *E.g. Network Caching Tech., LLC v. Novell, Inc.*, 2002 WL 32126128, at *5 (N.D. Cal. Aug. 13, 2002).

The Honorable Sue L. Robinson
August 7, 2006
Page 3

Each Foundry product contains a series of computer chips. The chips are custom-designed to perform certain computer networking functions. A group of chips in a product is sometimes referred to as a "chipset." The chipset, together with other product components, may also be referred to as the "hardware architecture" of the product. Over the years, Foundry has introduced product lines with substantially different chipsets and other hardware components.

Foundry gave marketing names to some of its early chipsets, with which the Court is now familiar. In 1998, Foundry introduced a series of products with the IronCore™ chipset. In 2001, Foundry introduced products with the JetCore™ chipset. In 2003, Foundry introduced a third series of products with the Terathon™ chipset. Foundry has produced documents and other discovery related to all three of these chipsets.

Foundry has many other products, however, that do not use any of these chipsets. As discussed below, these products lack several components that Alcatel's infringement charts list as the basis for Alcatel's infringement allegations. Each of the following groups of Foundry products has a unique hardware architecture that differs substantially from IronCore™, JetCore™, and Terathon™:

- AccessIron

- BigIron RX

- EdgeIron

- FastIron Edge Switch (FES)

- FastIron Edge Switch X-Series (FES-X), FastIron Workgroup Switch X-Series (FWS-X), and FastIron SuperX

- NetIron MLX and NetIron XMR

**B.    Alcatel's Infringement Charts Are Inadequate Even as to Foundry's IronCore™ and JetCore™ Products, and Alcatel Has Not Stated Any Basis for Asserting That Other Foundry Products Infringe**

During last week's telephone conference, Your Honor said that the purpose of tomorrow's hearing was to allow you to determine (1) "the claim construction and the parameters that have been established by the plaintiff through their claim construction" and (2) whether "defendants are, in fact, complying with discovery within the parameters of that claim construction."

To date, formal claim construction has not taken place. The scheduling order provides that the claim construction process will not begin until mid-October, when the parties will exchange their proposed claim constructions. However, Alcatel has set forth its infringement contentions in response to a Foundry interrogatory. The parameters of discovery therefore should be established by reference to Alcatel's response to that interrogatory.

The Honorable Sue L. Robinson
August 7, 2006
Page 4

On March 15, 2006, Foundry propounded a set of interrogatories to Alcatel. The first two interrogatories asked Alcatel to identify all Foundry products that were accused of infringing the patents-in-suit, state the patent claims each such product was accused of infringing, and "identify specifically where each element of each asserted claim is found within each Foundry product."

Foundry's interrogatories asked for additional information with respect to means-plus-function elements of the patents-in-suit. Each of the asserted claims of the '192 and '840 patents contains several claim elements. Such claim elements are construed narrowly. They do not read on any product that performs the stated function; rather, they are limited to "the corresponding structure, material, or acts described in the specification [of the patent] and equivalents thereof." 35 U.S.C. § 112(6). With respect to means-plus-function elements, Foundry asked Alcatel to also identify "the structures, acts, or materials in each Foundry product that performs the claimed function."

On April 21, 2006, Alcatel provided its initial response to those interrogatories. The response included a chart listing the accused products and additional charts stating Alcatel's infringement contentions. In a letter dated May 4, 2006, Foundry's counsel pointed out deficiencies in Alcatel's interrogatory responses, including the fact that they listed many accused Foundry products that were not addressed in Alcatel's infringement charts.[4] On June 23, 2006, Alcatel supplemented its interrogatory responses. Although Alcatel clarified and supplemented the list of accused products, it did not supplement its infringement charts in any way. On July 20, 2006, Foundry's counsel sent another letter noting the continued disparity between the list of accused products and the infringement chart. Alcatel has not responded to that letter.

### 1.    '192 Patent

Claim 1 is the only independent claim of the '192 patent. It is a long, complex claim with many elements. A copy is attached to this letter.

Alcatel's corresponding infringement chart is deficient. First, it merely quotes from Foundry marketing materials. It does not appear that Alcatel has ever obtained or examined an actual Foundry product.

Second, the infringement chart provides an element-by-element analysis only for Foundry's JetCore™-based products. For Foundry's IronCore™-based products, the chart cites

---

[4] The plaintiff may be denied discovery related to products as to which inadequate infringement contentions have been provided. *See New York Univ.*, 2006 WL 559573, at *2-*4 ("*NYU*"). In *NYU*, the scheduling order provided that the plaintiff had to provide Preliminary Infringement Contentions. The court ruled that document production would be limited to products as to which the patent owner had provided sufficient Preliminary Infringement Contentions. *See id.* This case applies here because Foundry has asked Alcatel to provided similar information in the form of interrogatory responses. *See id.* at *2 (observing that Preliminary Infringement Contentions "take the place of a series of interrogatories the defendants would likely have propounded."); *Network Caching Tech.*, 2002 WL 32126128 at *4 (same).

The Honorable Sue L. Robinson
August 7, 2006
Page 5

two pages from Foundry's document production and says that "[s]imilar quotes can be found there." No information is given for any other Foundry product.

Foundry's other hardware architectures do not contain some of the features of the JetCore™ architecture on which Alcatel relies to allege infringement of the '192 patent. For example, Alcatel's infringement chart states that two memory devices called a CAM and PRAM constitute a "first means for identifying a specific said queue associated with said respective destination with which said respective individual outlet is associated." With one exception, the CAM and PRAM exist only in Foundry's IronCore™, JetCore™, and Terathon™ products (to Foundry's knowledge).

Even for the JetCore™ products, the infringement chart is deficient. It provides no analysis of how the quoted passages from Foundry's marketing materials supposedly map onto the claim language.[5] Only in a few instances does the chart even state which Foundry product features correspond to which claim terms. Indeed, with respect to several claim elements, Alcatel's infringement chart does not identify any corresponding feature in the accused JetCore™ products. As a result, it is impossible to say whether other Foundry products contain the same features.

For example, Alcatel appears to assert that the "buffer manager" in Foundry's JetCore™ products is the "data block and outlet selection queue management logic" described in Claim 1. Claim 1 teaches that this logic feature comprises a "data block selection means," which in turn comprises a "first means," "second means," and "third means" for performing specified functions.[6] As noted above, Foundry asked Alcatel to identify in its infringement charts the "structures, acts, or materials" in the accused Foundry products that correspond to these means elements. Alcatel did not do so, except with regard to the "first means" (discussed above). With regard to the "data block selection means," the "second means," and the "third means," Alcatel merely quoted passages in Foundry's marketing materials that describe generic functions of the buffer manager. No corresponding structures are identified. As other Foundry products do not contain the "buffer manager" per se, Foundry has no way to determine whether the specific logic features corresponding to the other means elements are present in those other products.

For these reasons, discovery with respect to the '192 patent should be limited to Foundry products that contain the IronCore,™ JetCore™, and/or Terathon chipsets.

### 2.     '840 Patent

Claim 8 is the only asserted independent claim of the '840 patent. Like Claim 1 of the '192 patent, this claim contains several means-plus-function elements. A copy of Claim 8 is attached to this letter.

---

[5] A plaintiff may not quote passages from marketing materials in its Preliminary Infringement Contentions without linking those passages to corresponding language in the asserted patent claims. *Network Caching Tech.*, 2002 WL 32126128, at *6.

[6] Alcatel must identify the logic structures in the specification of the '192 patent that correspond to these mean elements.

The Honorable Sue L. Robinson
August 7, 2006
Page 6

Alcatel's infringement chart for the '840 patent is deficient. Like the '192 chart, it merely quotes from Foundry marketing materials. It does not appear that Alcatel has ever obtained or examined an actual Foundry product.

As with the '192 chart, Alcatel's infringement chart for the '840 patent provides an element-by-element analysis only for the JetCore™-based products. No information is given for any other Foundry product, not even the IronCore™-based products.

Like the '192 chart, Alcatel's '840 infringement chart identifies the CAM and PRAM memory devices as product features that correspond to certain claim elements. As noted above, the CAM and PRAM exist only in Foundry's IronCore™, JetCore™, and Terathon™ products (to Foundry's knowledge, and with one exception).

Once again, there are entire claim elements as to which Alcatel has identified no corresponding feature in the accused Foundry products. For example, Claim 8 requires a "selection means . . . to select said route from said at least one preselected set." Alcatel's infringement chart claims that Foundry's JetCore™ products perform the stated function, but no corresponding structure in those products is identified. As a result, it is impossible to say whether other Foundry products contain the same structure.

For these reasons, discovery with respect to the '840 patent should be limited to Foundry products that contain the IronCore,™ JetCore™, and/or Terathon chipsets.

## OTHER MATTERS

If time permits, Foundry would like to address two other matters at tomorrow's hearing:

(1)     At the discovery status conference in this case on June 13, 2006, the Court ruled that Foundry could distill its document requests down to 20 requests that Alcatel would present to its foreign affiliates. It is crucial that Foundry obtain such documents, because several such affiliates are former owners of the patents-in-suit. Thus, they may possess key documents related to conception, reduction to practice, patent prosecution, licensing, participation in standards bodies, and other relevant issues. Foundry sent its list of 20 requests to Alcatel on June 20, 2006. Alcatel has not responded or produced any responsive documents from its foreign affiliates. As the close of fact discovery is just two months away and depositions are beginning in full force, Foundry is concerned about additional delay.

(2)     Foundry has several concerns related to inventor depositions:

(a)     On May 17, 2006, Foundry's counsel sent a letter to Alcatel's counsel asking for proposed deposition dates for the inventors of the patents-in-suit. Alcatel still has not provided dates for four of the twelve inventors. These inventors all reside outside the U.S. On the one hand, Alcatel's counsel claims to represent these inventors so that Foundry's counsel is prohibited from contacting them directly. On the other hand, Alcatel's counsel has said that the inventors have not agreed to be deposed. Foundry is left in an unfair Catch-22 position. Given that the inventors are contractually bound to assist Alcatel in its endeavors related to the patents-in-suit, Alcatel should be required to exercise those rights in order to persuade the inventors to be deposed.

The Honorable Sue L. Robinson
August 7, 2006
Page 7


      (b)      Foundry recently took the deposition of an inventor named Leon
Sangroniz in Salt Lake City, Utah. Although Foundry's counsel informed Alcatel's counsel in
advance that more than 7 hours of deposition time might be needed, Alcatel's counsel refused to
permit questioning beyond 7 hours. Foundry seeks an order requiring Alcatel to produce this
inventor for several more hours. As counsel will be traveling to Salt Lake City for another
inventor deposition next week, the second day of deposition of Mr. Sangroniz should take place
on an adjacent date.

      (c)      Foundry will be deposing Bart Pauwels in Chicago later this week. Not
only is Foundry paying for its counsel to fly from San Francisco to Chicago for the deposition,
but Foundry is also paying for Mr. Pauwels to travel from Brussels, Belgium. Alcatel's counsel
has stated that Foundry will again be limited to 7 hours of deposition time with Mr. Pauwels. To
avoid the expense of after-the-fact motion proceedings and re-travel, Foundry asks that the Court
order Alcatel to produce Mr. Pauwels for a second day of deposition if necessary (although
Foundry will make every reasonable effort to limit this deposition to a single, 7-hour day).

      Should Your Honor have any questions prior to tomorrow's hearing, counsel is available
at the Court's convenience.


                        Respectfully,

                        Philip A. Rovner
                        provner@potteranderson.com

PAR/mes/744356
cc: Karen Pascale, Esq. – by e-file and hand delivery

## TEXT OF CLAIM 1 OF U.S. PATENT NO. 5,301,192

**1.** Temporary information storage system comprising

a buffer memory storing data structure as fixed or variable length blocks of data, each of said data blocks comprising one or more data elements, and

a data block and outlet selection queue management logic comprising

    a plurality of queues for interlinking each of the data blocks to a respective destination of a plurality of destinations, such that when a data block is assigned to a destination it is sufficient to write its identity in the respective queue specific to this destination, and

data block selection means for assigning each of said data blocks to a respective individual outlet of a respective plurality of outlets associated with said respective destination, said data block selection means further comprising

    first means for identifying a specific said queue associated with said respective destination with which said respective individual outlet is associated,

second means for obtaining from said specific queue an address of said each data block and

    third means for transferring said each data block to said respective individual outlet.

## TEXT OF CLAIM 8 OF U.S. PATENT NO. 5,506,840

**8.** Routing logic means for a switching element (S11, . . ., S3N) having at least one inlet and a plurality of outgoing routes each comprising at least one outlet, said routing logic means (MC1; MC2; RL) selecting for cells received at said at least one inlet at least one of said plurality of outgoing routes as a selected route based on an internal routing label associated with said cells and routing said cells to said at least one outlet of said selected route, wherein

said routing logic means (MC1; MC2; RL) includes preselection means (MB; M; RM) which preselect under control of said internal routing label, at least one preselected set having at least one of said plurality of outgoing routes and includes selection means (MX; MX; SEL) to select said selected route from said at least one preselected set.