# YOUNG CONAWAY STARGATT & TAYLOR, LLP

REDACTED VERSION - PUBLICLY FILED

JOSY W. INGERSOLL (NO. 1088)
DIRECT DIAL: 302-571-6672
DIRECT FAX: 302-576-3301
jingersoll@ycst.com

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(302) 571-1253 FAX
(800) 253-2234 (DE ONLY)
www.youngconaway.com

August 25, 2006

**BY HAND DELIVERY**                    **CONFIDENTIAL – FILED UNDER SEAL**

The Honorable Sue L. Robinson
United States District Court
844 North King Street
Wilmington, DE 19801

    Re:    *Alcatel USA Resources et al. v. Foundry Networks, Inc.*,
           Civil Action No. 05-418 (SLR)

Dear Chief Judge Robinson:

    This is the Alcatel parties' reply submission in support of our motion for discovery of Foundry products and in response to Foundry's opening submission.

**I.    FOUNDRY'S SUBMISSION OMITS IMPORTANT INFORMATION**

    The most striking thing about Foundry's "Opening Submission Addressing Scope of Discovery Re: Foundry Products" is what it does *not* say. It does *not* take any position on whether or not, in fact, the Foundry products under consideration actually contain the features which Alcatel contends correspond to the patent claim elements. The only thing it says of substance is that the BigIron-RX devices are not "Terathon based," but see Alcatel USA Resources, Inc.'s ("Alcatel's") opening submission for why this is not true.

    For each and every product, Foundry simply resorts to the argument that "Those pages [which Alcatel cites] say nothing about [such features]." (E.g., Foundry Br. 6). What truth hides behind this careful wordplay? Foundry's omissions speak loudly. For example, if specific named products truly lack queues, if specific products lack buffer numbers indicating where packets are stored, if specific products lack the so-called CAM and PRAM features, and if specific products lack VLAN floods into trunk groups under control of "internal Foundry headers," (in other words, the features identified in the existing infringement claim charts as corresponding to '192 and '840 claim elements), then Foundry could easily have said so. Instead, Foundry bootstraps the lack of detail in the few documents it grudgingly produced so far, and chides Alcatel for failing to cite documents having more detail. Conveniently, whatever documents Alcatel should have cited fall under Foundry's exclusive control.

YOUNG CONAWAY STARGATT & TAYLOR, LLP    REDACTED VERSION – PUBLICLY FILED
The Honorable Sue L. Robinson
August 25, 2006
Page 2

## II. FOOTNOTE 5 CONTAINS ADMISSIONS

The second most striking thing about Foundry's submission is footnote 5. Having carefully worded its submission to avoid saying what features its products actually do contain, footnote 5 says, in effect, that all data networking devices must have buffers and queues. Foundry may intend to suggest that Alcatel has lumped "prior art" technologies into its definition of Accused Products, allegedly undercutting Alcatel's good faith. However, the Foundry products (like JetCore) for which Alcatel *has* gotten discovery contain far more than merely prior art features – they contain the complete infringement. Alcatel has already shown in its opening submission how one may reasonably infer that the remaining withheld product lines likewise contain the complete infringement, not a reversion to ancient prior art techniques. At a minimum, Foundry should produce sufficient discovery to allow Alcatel to determine whether or not an Accused Product, once completely revealed, actually does infringe. If discovery shows Alcatel's good faith inferences were in hindsight not correct, Alcatel will remove such products from the infringement allegations. That is why it is called "discovery."

## III. ALCATEL'S REQUESTS ARE NOT BURDENSOME

Contrary to Foundry's submission, Alcatel does not want every single document on every single product. Instead, the following limited subcategories ought to provide sufficient information for Alcatel and its expert to explain infringement to the jury (or, as mentioned above, remove a product from the case if warranted):

a)  architecture briefs or other "plain English" descriptions of internal hardware;
b)  chipset functional specifications;
c)  VERILOG computer files (a special kind of design document);
d)  software architecture documents / functional specifications / source code concerning any relevant feature; and
e)  user / installation / configuration manuals.

(Of course, Alcatel also needs financial summaries for its damages case – a category Foundry still has not provided even for the admittedly-discoverable products.) Alcatel has reason to believe these document categories all conveniently reside in easy-to-locate files on Foundry's internal computer system. Given the parties' practices exchanging electronic discovery, Alcatel anticipates Foundry can fill these gaps within a week.

## IV. CASELAW SUPPORTS ALCATEL

Alcatel's good faith in seeking this discovery is consistent with all the caselaw Foundry cites (Foundry Br. 14-15). First, Foundry's Rule 11 cases are inapposite. The issue before the Court is not whether Alcatel had a Rule 11 basis to bring suit, but rather the discoverability of additional products once a good faith basis already exists on initially-identified products. Foundry does not contest the caselaw Alcatel has already cited to the Court permitting Alcatel to take discovery. See, e.g., Andco Environmental Processes, Inc. v. Niagara Environmental

YOUNG CONAWAY STARGATT & TAYLOR, LLP REDACTED VERSION – PUBLICLY FILED
The Honorable Sue L. Robinson
August 25, 2006
Page 3

Associates, Inc., 215 USPQ (BNA) 224, 226 n.3 (W.D.N.Y. 1982) ("Plaintiff is not required to prove its case on the pleadings. Certainly, the fact that it has found three instances of potential infringement entitles it to determine *whether other such instances exist*.") (emphasis added); Rohm and Haas Co. v. Brotech Corp., 1990 U.S. Dist. LEXIS 20117 at *20 (D. Del. 1990) ("[A] defendant cannot simply claim noninfringement and limit discovery according to its view of the case.") (Robinson, M.J.). See also, The Chamberlain Group, Inc. v. Interlogix, Inc., 2002 U.S. Dist. LEXIS 3046 at *4-5 (N.D. Ill. 2002) (permitting accused product scope discovery).

Nonetheless, Alcatel's discovery requests do comport with its Rule 11 obligations. Foundry cites Antonious v. Spalding & Evenflo Cos., 275 F.3d 1066, 1075-76 (Fed. Cir. 2002) for the unremarkable premise that Alcatel must have a reasonable evidentiary basis to conclude infringement as to *each* of multiple accused products. (Foundry Br. 14-15). Alcatel agrees. However, Foundry fails to cite important parts of the Antonious decision, including that such "evidentiary basis" may be built upon reasonable inferences:

> To be sure, when a number of different products are charged with infringement it is not always necessary for the plaintiff's attorneys to inspect each product separately to verify the facts on which the plaintiff bases its infringement allegations. At a minimum, however, the evidence uncovered by the patent holder's investigation must be sufficient to permit *a reasonable inference* that all the accused products infringe.

Id. at 1075 (emphasis added). The Federal Circuit noted that the attorneys who had been accused of Rule 11 violations "inferred" the presence of claim elements in products they did not physically inspect, and remanded for "the trial court [to] decide whether that inference was reasonable, given the other information the Finnegan Henderson attorneys had at the time." Id. at 1076. Foundry simply fails to address that Alcatel's "evidentiary basis" may include, and does include, reasonable inferences. As noted in the prior submission, those reasonable inferences are based on (a) the presence of specific features according to Foundry's own documents; (b) the fact that the software family is the same across all Foundry product lines (implying the hardware it manipulates is substantially the same); and (c) the re-use of identical labels (BigIron, NetIron, etc.) for allegedly "different" product architectures.

If Rule 11 caselaw applies, Foundry fails to cite the most apposite Federal Circuit Rule 11 case: Hoffmann La Roche, Inc. v. Invamed Inc., 213 F.3d 1359, 1364 (Fed. Cir. 2000). In Hoffmann, the patentee admitted that it had insufficient information to conclude infringement when it filed its complaint. When discovery confirmed non-infringement, the patentee dismissed the suit voluntarily. The district court denied Rule 11 sanctions:

> As it stated, although Hoffman and Syntex "could have assumed non-infringement" when "at the end of the plaintiff's pre-suit investigation it had neither evidence of infringement nor non-infringement . . ., *that they chose to file suit and engage in discovery instead does not subject them to sanctions.*" Hoffman-La Roche, slip op. at 8. If Torpharm initially had told them, under a

YOUNG CONAWAY STARGATT & TAYLOR, LLP                    REDACTED VERSION – PUBLICLY FILED
The Honorable Sue L. Robinson
August 25, 2006
Page 4

>confidentiality agreement, the process used to manufacture the drug – as it subsequently did – it could have avoided this litigation and the expenses incurred in defending it.

Id. (emphasis added). The Federal Circuit affirmed. Id. In the affirmance, the Federal Circuit quoted Cambridge Products, Ltd. v. Penn Nutrients, Inc., 962 F.2d 1048, 1050 (Fed. Cir. 1992) for its observation, "Without the aid of discovery, any further information was not practicably obtainable." The same applies here. Foundry has never pointed to *any* fact about *any* of its products that would *refute* infringement. Thus Hoffman (not cited by Foundry) supports Alcatel. It shows that when facts supporting alleged noninfringement reside exclusively with the accused infringer, the patentee may seek infringement discovery without violating Rule 11. In other words, if the few facts in-hand are consistent with either infringement or non-infringement, a patentee may take discovery to determine which is ultimately the case. Again, that is why it is called "discovery."

The only discovery case Foundry discusses is New York Univ. v. E.piphany, Inc., 2006 U.S. Dist. LEXIS 9157, at *10-11 (S.D.N.Y. 2006) (Foundry Br. 15). But Foundry misstates its facts and holding. Foundry says "The court in *NYU* limited document production to products as to which the patent owner had provided sufficient Preliminary Infringement Contentions," and urges that the same approach should be followed here. (Foundry Br. 15). On the contrary, NYU involved an agreement by both parties that of forty (40) products, discovery was necessary only on the six (6) for which the patentee wrote detailed claim charts: "At the November 8, 2005 conference, the parties discussed this discovery dispute and came to *an agreement*: E.piphany would produce responsive documents for those six products for which NYU had presented more detailed PICs." Id. (emphasis added). The court then noted that the patentee's motion to compel discovery on the other thirty-four (34) products reflected a departure from that agreement, which it decided to enforce. Id. ("[T]his Court's previous *order reflecting the parties' agreement* that E.piphany would produce responsive documents only for those products for which NYU had presented detailed PICs limits the scope of production. . . .") (emphasis added). No such agreement exists here; Alcatel seeks the withheld discovery where NYU did not (at least initially before NYU changed positions). NYU does not apply.

V.  **FOUNDRY'S OWN SUBMISSION SUPPORTS ALCATEL'S REQUESTS**

This section responds to Foundry's comments about specific product lines.

1.  **BigIron-RX**

Foundry states the document Alcatel cites (starting at FN A_00382797) says nothing about the BigIron-RX having queues or buffer memories. However, Foundry's footnote 5 admits that such devices have these features. Cf. Antonious, 275 F.3d at 1076 ("the trial court must decide whether that inference was reasonable, *given the other information the Finnegan Henderson attorneys had at the time*."). Foundry also incorrectly states that BigIron-RX is not a Terathon product, when this very document states the product contains the same features as

YOUNG CONAWAY STARGATT & TAYLOR, LLP REDACTED VERSION – PUBLICLY FILED
The Honorable Sue L. Robinson
August 25, 2006
Page 5

Terathon products (with exceptions that do not apply here). See FN A_382818, 382827-28. Based on this document and the other information that exists about BigIron-RX, Alcatel may reasonably infer BigIron-RX infringes the '192 patent. Discovery is appropriate.

### 2. FES-X/FWS-X

Foundry also states the document Alcatel cites (starting at FN A_00382797) says nothing about the FEX-X or FWS-X having queues or buffer memories. Again, Foundry's footnote 5 admits that such devices have these features. The illustrations and the text of the document also show these devices have ports. The devices necessarily have the buffer memory, buffer manager, priority queues and output ports relevant to '192 infringement. Based on this document and the other information that exists about the products, Alcatel may reasonably infer FES-X and FWS-X infringe the '192 patent. Discovery is appropriate.

Foundry also states the document says nothing about these products having VLAN flooding or trunk groups (relevant to the '840 patent). Foundry's Exhibit E received by Alcatel is missing the page that contains that relevant information: FN A_00382801 (attached hereto as Exhibit K). This page shows the "FES" contains "tagged port with 802.3ad." In fact, 802.3ad is the IEEE standard related to "link aggregation," which only applies when there are trunk groups. (See Exhibit L, "IEEE 802.3ad is an industry standard created to allow the trunking solutions of various vendors to interoperate."). Moreover, page FN A_0382806 mentions that these products have VLANs, leading to a reasonable inference that they perform VLAN floods of unknown-destination packets. Alcatel may reasonably infer FES-X and FWS-X infringe the '840 patent. Discovery is appropriate.

### 3. EdgeIron

Regarding the '192 patent, Foundry concedes that Alcatel cited a document mentioning the EdgeIron products have "priority queues." (Foundry Br. 8). In addition, Foundry's footnote 5 admits that such devices have the queue and buffer memory features. And again, Foundry's Exhibit G received by Alcatel is missing the page that contains relevant information: FN A_00355012 (attached to Alcatel's previous submission as Alcatel Exhibit G) shows presence of buffer memories. Alcatel may reasonably infer EdgeIron products infringe the '192 patent. Discovery is appropriate.

Foundry also concedes the document mentions VLAN flooding and trunk groups (Foundry Br. 13). Foundry argues, though, that these are "software features that implement VLAN functionality and trunk groups," and that "Alcatel has told the Court that the '840 patent is implemented in *hardware* features." (Id.). This convoluted argument is wrong. Alcatel has never told Foundry or the Court that it was excluding products from discovery based on Foundry's characterization of the relative roles played by software and hardware in deploying a feature. By Foundry's own admissions, Alcatel may reasonably infer EdgeIron products infringe the '840 patent. Discovery is appropriate.

YOUNG CONAWAY STARGATT & TAYLOR, LLP  REDACTED VERSION – PUBLICLY FILED
The Honorable Sue L. Robinson
August 25, 2006
Page 6

### 4. FastIron Edge Switch

Once again, regarding the '192 patent, Foundry concedes that Alcatel cited a document mentioning the FastIron Edge Switch products have "priority queues." (Foundry Br. 9). In addition, Foundry's footnote 5 admits that such devices have the queue and buffer memory features. Foundry's Exhibit I contains information on page FN A_00064809 showing the presence of buffer memories. Alcatel may reasonably infer FastIron Edge Switch products infringe the '192 patent. Discovery is appropriate.

### 5. NetIron XMR

Foundry says the "only" document Alcatel cited for NetIron XMR infringement of the '840 patent does not mention VLAN floods or trunk groups. Foundry misread our chart, which clearly shows Alcatel cited a second document – the Foundry NetIron MLX/XMR Configuration guide. Foundry knows the NetIron XMR performs these functions. Attached as Exhibit M are pages from the NetIron MLX/XMR Configuration Guide showing "VLAN-multicast-flood" at the bottom of page FN A_00396093 as a configuration parameter, and the presence of "trunk groups" at the bottom of page FN A_00396103. Alcatel may reasonably infer NetIron XMR products infringe the '840 patent. Discovery is appropriate.

## VI. CONCLUSION

For the foregoing reasons, Alcatel respectfully requests that the Court order Foundry to produce the so-far withheld non-burdensome technical (as limited above in Section III) and financial discovery. Alcatel has a reasonable basis for seeking it, and simply wants to conclude its preparations for trial.

Respectfully submitted,

*[signature: Andrew A. Lundgren for Josy W. Ingersoll]*

Josy W. Ingersoll (No. 1088)

JWI:cg
cc:  Clerk of the Court (by e-filing and hand delivery)
     Philip A. Rovner, Esquire (by e-filing and hand delivery)
     Matthew H. Poppe, Esquire (by e-mail)
     Henry C. Bunsow, Esquire (by e-mail)
     Robert P. Greenspoon, Esquire (by e-mail)