# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ALCATEL USA RESOURCES, INC.      )
   a Delaware Corporation, and      )
ALCATEL INTERNETWORKING, INC.,   )
   a California Corporation,      )
                                   )
              Plaintiffs,      )
                                   )    Civil Action No. 05-418-SLR
   v.      )
                                   )    (JURY TRIAL DEMANDED)
FOUNDRY NETWORKS, INC.,          )
   a Delaware Corporation,      )
                                   )
                                   )
            Defendant.      )

## FOUNDRY NETWORKS, INC.'S FIRST AMENDED ANSWER
## TO COUNT I OF PLAINTIFFS' AMENDED COMPLAINT AND COUNTERCLAIM

### ANSWER TO COUNT I

      Foundry Networks, Inc. ("Foundry") answers Count I of the Amended Complaint of

Alcatel USA Resources, Inc. ("Alcatel USA Resources") and Alcatel Internetworking, Inc.

("Alcatel Internetworking") (collectively "Plaintiffs") as follows:

      1.     Foundry admits the allegations of paragraph 1 of the Amended Complaint.

      2.     Foundry admits that it is a Delaware corporation. Foundry denies that it has a

principal place of business at 2100 Gold Street, San Jose, California 95164. Foundry's principal

place of business is 4980 Great America Parkway, Santa Clara, California. Foundry maintains

offices in the United States and world-wide, and it conducts business and has a registered agent

for service of process in this judicial district. Foundry admits that venue is proper in this judicial

district under 28 U.S.C. §§ 1391(c)-(d) and 1400(b). Except as so admitted, Foundry denies each

and every allegation of paragraph 2 of the Amended Complaint.

3. Foundry is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 of the Amended Complaint, and on that ground Foundry denies those allegations.

4. Foundry admits that ServerIron, NetIron, NetIron with MPLS Module, BigIron, FastIron, and EdgeIron are Foundry products. Except as so admitted, Foundry denies each and every allegation of paragraph 4 of the Amended Complaint.

5. Foundry denies each and every allegation of paragraph 5 of the Amended Complaint.

6. Foundry admits that, prior to the filing of the Complaint, Alcatel USA Resources informed Foundry of its allegation that Foundry infringed U.S. Patent Nos. 5,301,192, 5,461,615, 5,506,840, 6,339,830, and 6,697,329. Foundry further admits that it received actual notice of Alcatel USA Resources' allegation that Foundry infringed U.S. Patent Nos. 6,865,153, 6,874,090, and 6,882,647 upon receipt of the Complaint and of Alcatel USA Resources' allegation that Foundry infringed U.S. Patent No. 5,521,923 upon its receipt of the Amended Complaint. Except as so admitted, Foundry denies each and every allegation of paragraph 6 of the Amended Complaint.

7. Foundry denies each and every allegation of paragraph 7 of the Amended Complaint.

## AFFIRMATIVE DEFENSES

### A. FAILURE TO STATE A CLAIM

8. As its first separate and affirmative defense, Foundry alleges, on information and belief, that Alcatel USA Resources has failed to state a claim upon which any relief may be granted against Foundry.

## B. NONINFRINGEMENT

9.      As its second separate and affirmative defense, Foundry alleges, on information and belief, that it does not infringe any valid and enforceable claim of the Alcatel Patents-in-Suit.

## C. PATENT INVALIDITY

10.     As its third separate and affirmative defense, Foundry alleges, on information and belief, that one or more claims of the Alcatel Patents-in-Suit are invalid because they fail to meet the conditions of patentability of 35 U.S.C. §§ 101, 102, 103, and/or 112.

## D. EQUITABLE ESTOPPEL

11.     As its fourth separate and affirmative defense, Foundry alleges that Alcatel USA Resources is equitably estopped from enforcing the '830 and '090 patents against Foundry due to the misconduct of Alcatel USA Resources, Alcatel Internetworking, and/or one or more other affiliated Alcatel entities, including on information and belief at least Alcatel S.A. and/or Compagnie Financière Alcatel (collectively "Alcatel"), at the Institute of Electrical and Electronics Engineers (the "IEEE").

12.     On information and belief, all rights, title, and interest in and to the '830 and '090 patents and the applications from which they issued were owned by Alcatel at all relevant times.

13.     On information and belief, Alcatel was, at all relevant times, a member of and/or a participant in the IEEE, the IEEE Standards Association, and/or the IEEE 802.1 Working Group, such that it was bound by the applicable patent policies of each of those bodies.

14.     Said patent policies imposed upon Alcatel (1) a duty to disclose to the 802.1 Working Group all patents and patent applications that Alcatel believed might be essential to the implementation of any standard under development or consideration by the 802.1 Working Group and (2) a duty to provide written assurance to the IEEE that Alcatel either would disclaim enforcement of such patents or would license them on a reasonable, nondiscriminatory basis.

Alcatel was under a duty to perform these acts prior to the IEEE's adoption of the standard to which the patents and patent applications related.

15.    As construed by Alcatel, the '830 and '090 patents and the applications from which they issued are essential to the implementation of the IEEE 802.1X standard.

16.    On information and belief, the IEEE 802.1X standard was under consideration and development by the 802.1 Working Group beginning in approximately March of 1999; the initial standard was adopted by the IEEE in 2001; a revised 802.1X standard was adopted by the IEEE in 2004; and further revisions to the 802.1X standard have been and currently are under discussion within the 802.1 Working Group.

17.    On information and belief, Alcatel believed at all relevant times that the '830 and '090 patents and the applications from which they issued were essential to the implementation of the 802.1X standard.

18.    On information and belief, Alcatel did not disclose to the IEEE the existence of the '830 patent or the application from which it was issued or offer to license the patent until January 13, 2003, 1½ years after the IEEE adopted the 802.1X standard and after Foundry had made a significant investment in reliance on the standard.

19.    On information and belief, the January 13, 2003 letter provided by Alcatel to the IEEE stating Alcatel's alleged willingness to license the '830 patent on reasonable and non-discriminatory terms was fraudulent in that Alcatel did not intend to license the '830 patent on reasonable and non-discriminatory terms, and in particular did not intend to license the '830 patent to Foundry on reasonable and non-discriminatory terms.

20.    On information and belief, Alcatel never informed the 802.1 Working Group about the '090 patent or the application from which it issued, nor did Alcatel provide a letter of

assurance to the IEEE, the IEEE Standards Association, the IEEE Standards Department, the 802.1 Working Group, or any other relevant division, department, or group within the IEEE in the required form agreeing either to forego enforcement of the '090 patent or to license the patent on reasonable and non-discriminatory terms.

21.    By virtue of the above facts, Alcatel violated its duty of disclosure and its duty to provide a letter of assurance with respect to the '830 and '090 patents as required by the patent policies of the IEEE, the IEEE Standards Association, and the 802.1 Working Group.

22.    On information and belief, the 802.1 Working Group relied on Alcatel's silence in deciding to recommend adoption of the 802.1X standard, and the IEEE relied on Alcatel's silence in deciding to adopt the 802.1X standard.

23.    Foundry has relied on Alcatel's silence in deciding to implement the 802.1X standard, in whole or in part, in certain of its products.

24.    Foundry has suffered material prejudice as a result of the 802.1 Working Group's reliance, the IEEE's reliance, and its own reliance on Alcatel's silence.

25.    By virtue of the above facts, Alcatel USA Resources is equitably estopped from enforcing both the '830 and '090 patents against Foundry.

### E.  PATENT MISUSE

26.    As its fifth separate and affirmative defense, Foundry alleges that Alcatel USA Resources is barred from enforcing the '830 and '090 patents against Foundry due to Alcatel's misuse of those patents.

27.    Foundry incorporates the allegations of the above paragraphs herein by reference.

28.    By virtue of the above conduct, Alcatel intentionally and wrongfully expanded the scope of its patent rights by deceiving other industry participants and Foundry in particular into using, manufacturing, selling, and offering to sell products that Alcatel contends can be used in a

manner that infringes the '830 and '090 patent claims. Alcatel failed to purge its misuse before the filing of this lawsuit. As a result, Alcatel USA Resources is barred from asserting the '830 and '090 patents against Foundry.

## F. ESTOPPEL

29.      As its sixth separate and affirmative defense, Foundry alleges that Count I of the Amended Complaint is barred, in whole or in part, under the doctrine of estoppel. By way of example, and without limitation, Foundry alleges that by reason of the proceedings in the United States Patent and Trademark Office during the prosecution of the applications for one or more of the Alcatel Patents-in-Suit, specifically the admissions, representations, and amendments made on behalf of the applicants for said patents, Alcatel USA Resources is estopped from (1) asserting any construction of the claims of said patents such that they would read upon any product made, used, sold, or offered for sale in, or imported into, the United States by Foundry, or (2) extending the coverage of the claims of said patents under the doctrine of equivalents such that they would read upon any such Foundry product. Foundry also alleges, by way of example and without limitation, that by reason of statements to the Institute of Electrical and Electronics Engineers, including but not limited to the statements and representations in the January 13, 2003 letter from David A. Cordeiro to Secretary, IEEE-SA Standards Board Patent Committee, Alcatel USA Resources is estopped from claiming that it is entitled (1) to enjoin any person, including but not limited to Foundry, from infringing the '830 or '090 patents, or (2) to obtain anything other than reasonable and non-discriminatory license terms for use of the purported inventions described in the '830 and '090 patents.

## G. CONTRACTUAL LIMITATION ON REMEDIES

30.      As its seventh separate and affirmative defense, Foundry alleges that Alcatel USA Resources is bound by contract with the IEEE, of which contract Foundry is an intended third

party beneficiary, to offer licenses under the '830 and '090 patents on reasonable and non-discriminatory terms, and by virtue of that fact Alcatel USA Resources may not enjoin Foundry from infringing the '830 and '090 patents and may not obtain from Foundry anything other than a reasonable and non-discriminatory royalty within respect to those patents.

## H. LACHES

31.    As its eighth separate and affirmative defense, Foundry alleges that Count I of the Amended Complaint is barred, in whole or in part, under the doctrine of laches. By way of example, and without limitation, Foundry alleges, on information and belief, that Alcatel USA Resources' claims under the Alcatel Patents-in-Suit are barred by the doctrine of laches because (1) Alcatel USA Resources and its predecessors-in-interest knew of Foundry's allegedly infringing actions, (2) Alcatel USA Resources and its predecessors-in-interest inexcusably failed to pursue their infringement claims in a timely and diligent manner from the time they became aware they had claims against Foundry, and (3) Foundry has been materially prejudiced by their inexcusable lack of diligence.

## I. AUTHORIZATION AND CONSENT OF THE UNITED STATES GOVERNMENT

32.    As its ninth separate and affirmative defense, Foundry alleges that it used and/or manufactured some of the products accused of infringing the Alcatel Patents-in-Suit for and with the authorization and consent of the United States Government and that, accordingly, Alcatel USA Resources' claims against Foundry with respect to such products may not be pursued in this Court and are subject to other limitations pursuant to 28 U.S.C. § 1498.

## J. PROSECUTION LACHES

33.    As its tenth separate and affirmative defense, Foundry alleges, on information and belief, that one or more of the Alcatel Patents-in-Suit are unenforceable under the doctrine of

prosecution laches because one or more of the Patents-in-Suit issued only after an unreasonable and unexplained delay in prosecution.

### K. PATENT UNENFORCEABILITY FOR INEQUITABLE CONDUCT

34.    As its eleventh separate and affirmative defense, Foundry alleges that the '830 and '090 patents are unenforceable for inequitable conduct during their prosecution and during the prosecution of the '243 patent. In addition, Foundry alleges that the '192 patent is unenforceable for inequitable conduct during its prosecution.

### INEQUITABLE CONDUCT AS TO U.S. PATENT NOS. 6,070,243, 6,339,830, AND 6,874,090

35.    On information and belief, at least Michael E. See, John W. Bailey, Charles Panza, Yuri Pikover, Geoffrey Stone, and Michele Wright Goodwin made material misstatements and intentionally failed to disclose prior art, which each recognized to be material, to the Patent Office. In addition, on information and belief, Scot A. Reader and Art Hasan, intending to deceive the Patent Office, failed to disclose prior art each knew to be material.

36.    The '243 patent recites Michael E. See, John W. Bailey, Charles L. Panza, Yuri Pikover, and Geoffrey C. Stone as applicants. Later Michele Wright Goodwin was added as an applicant. The '830 patent is a continuation of the '243 patent and similarly recites Michael E. See, John W. Bailey, Charles L. Panza, Yuri Pikover, and Geoffrey C. Stone as applicants. During the prosecution of the '830 patent, Michele Wright Goodwin was added as an applicant. The '090 patent is a continuation of the '830 patent and recites Michael E. See, John W. Bailey, Charles L. Panza, Yuri Pikover, and Geoffrey C. Stone as applicants. During the prosecution of the '090 patent, Michele Wright Goodwin was added as an applicant. The assignee and the applicants have also sought to add Leon Robert Sangroniz as an applicant with respect to the '090 patent.

-8-

37.    The '243 patent was assigned to Xylan Corporation ("Xylan"), where each of the applicants was originally employed.  Through the assignment that conveyed the '243 patent to Xylan, the applicants also assigned the '830 and '090 patents.  On information and belief, Alcatel acquired Xylan in 1999, at which time Xylan was renamed as Alcatel Internetworking, Inc.

38.    On information and belief, Alcatel Internetworking, Inc. assigned its interest in the '243, '830, and '090 patents to Alcatel in June 2002.  On May 10, 2005, Alcatel assigned its interest in the '830 and '090 patents to plaintiff Alcatel USA Resources, Inc.

39.    On information and belief, Mr. Reader is an attorney who is registered to practice before the Patent Office.  Mr. Reader was in-house counsel to Xylan and was responsible for patent prosecution.  During the prosecution of each of the '243 and '830 patents, the Patent Office sent correspondence to Mr. Reader at Xylan's address.  Mr. Reader was substantially involved in the prosecution of the '243, '830, and '090 patents.

40.    On information and belief, Mr. Hasan is an attorney who is registered to practice before the Patent Office.  During the prosecution of the '243, '830, and '090 patents, Mr. Hasan was an attorney in the law firm Christie, Parker & Hale.  Mr. Hasan acted as counsel to the applicants and assignees of the '243, '830, and '090 patents.  Mr. Hasan was substantially involved in the prosecution of the '243, '830, and '090 patents.

41.    As applicants of the '243, '830, and '090 patents, Messrs. See, Bailey, Panza, Pikover, and Stone owed a duty not to make misrepresentations to the Patent Office and to disclose to the Patent Office all material prior art of which each was aware.  As persons who were substantially involved in the prosecution of the '243, '830, and '090 patents, Mr. Sangroniz and Ms. Goodwin each owed a duty not to make misrepresentations to the Patent Office and to disclose to the Patent Office all material prior art of which each was aware.  As attorneys

-9-

registered to practice before the Patent Office and as persons substantially involved in the

prosecution of the '243, '830, and '090 patents, Mr. Reader and Mr. Hasan each owed a duty not

to make misrepresentations to the Patent Office and to disclose to the Patent Office all material

prior art of which he was aware. Finally, all employees of any assignee of the '243, '830, and

'090 who were significantly involved in the prosecution of these patents owed a duty not to make

misrepresentations to the Patent Office and to disclose to the Patent Office all material prior art

of which he was aware.

42.    On information and belief, each of the applicants Messrs. See, Bailey, and

Pikover, Panza, and See made material misrepresentations to the Patent Office and/or

intentionally withheld material prior art from the Patent Office during the prosecution of the

'243, '830, and '090 patents. On information and belief, each of Mr. Sangroniz and Ms.

Goodwin intentionally withheld material prior art from the Patent Office during the prosecution

of the '243, '830, and '090 patents. On information and belief, each of Mr. Reader and Mr.

Hasan intentionally withheld material prior art from the Patent Office during the prosecution of

the '243, '830, and '090 patents. In addition, on information and belief, Messrs. Reader and

Hasan prosecuted the '243, '830, and '090 patents, thereby facilitating the material omissions of

the others. The material misrepresentations and failures to disclose prior art include:

- misrepresentations in the oath concerning inventorship and intent to comply
  with duty to provide material prior art;

- misrepresentations in declarations that misjoinder of inventors concerned
  without deceptive intent;

- failure to disclose prior art references and to disclose analysis of prior art
  references as identified in documents produced pursuant to subpoena in this

-10-

action by Christie, Parker & Hale LLP, but which since have been returned
at the request of Alcatel's counsel and withheld on grounds of purported
privilege;

- failure to disclose documents produced by Alcatel in this action concerning
products with user authentication capabilities developed and offered for sale
by CheckPoint Software Technologies, Ltd., including but not limited to the
CheckPoint FireWall-I product; and

- failure to disclose four IETF RFCs authored by C. Rigney that were
disclosed to the Patent Office in connection with the '830 patent but were
withheld during the prosecution of the '243 patent.

43.    On information and belief, the withheld references were material prior art with
respect to the '243, '830, and '090 patents because a reasonable examiner would have considered
them to be important in deciding whether to allow one or more claims pending during the
prosecution of the '243, '830, and '090 patents to issue, and they were not cumulative to
information already of record.  They established, by themselves or in combination with other
information, a *prima facie* case of unpatentability of one or more claims of the '243, '830, and
'090 patents.

## INEQUITABLE CONDUCT AS TO U.S. PATENT NO. 5,301,192

44.    On information and belief, at least Michel Henrion made material misstatements
and intentionally failed to disclose prior art, which he recognized to be material, to the Patent
Office.  In addition, on information and belief, at least John M. May, intending to deceive the
Patent Office, failed to disclose prior art he knew to be material.

45.    The '192 patent recites Mr. Henrion as the applicant.

-11-

46.    On information and belief, the '192 patent was assigned to Alcatel NV, where Mr. Henrion was employed.  Alcatel NV assigned the '192 patent to Alcatel USA Resources, Inc. on or about May 10, 2005.

47.    The subject matter of the '192 patent was used in an Alcatel product known as the MPSR switch (standing for MultiPath Self-Routing).

48.    Mr. Henrion was a key developer of the MPSR switch, and was responsible for defining the architecture of the MPSR switch beginning in approximately the fourth quarter of 1988.

49.    On information and belief, Mr. May is an attorney who is registered to practice before the Patent Office.  During the prosecution of the '192 patent, Mr. May was an attorney at the law firm of Christie, Parker & Hale and was substantially involved in the prosecution of the '192 patent.

50.    As the applicant of the '192 patent, Mr. Henrion owed a duty not to make misrepresentations to the Patent Office and to disclose to the Patent Office all material prior art of which he was aware.  As an attorney registered to practice before the Patent Office and as a person substantially involved in the prosecution of the '192 patent Mr. May owed a duty not to make misrepresentations to the Patent Office and to disclose to the Patent Office all material prior art of which he was aware.

51.    On information and belief, Mr. Henrion was aware, during the prosecution of the '192 patent, of prior art that was material to the patentability of one or more claims of the '192 patent.  On information and belief, Mr. Henrion intentionally failed to disclose the material prior art to the Patent Office intending to deceive the Patent Office.

52.    On information and belief, Mr. May was aware, during the prosecution of the

'192 patent, of prior art that was material to the patentability of one or more claims of the '192

patent. On information and belief, Mr. May intentionally failed to disclose the material prior art

to the Patent Office intending to deceive the Patent Office. In addition, on information and

belief, Mr. May prosecuted the '192 patent, thereby facilitating the material omissions of Mr.

Henrion.

53.    The material prior art that was withheld and the misrepresentations include:

- An article entitled "Switching Network Architecture for ATM Based
  Broadband Communications," co-authored by Mr. Henrion, which was
  presented at the International Switching Symposium 1990 in Stockholm,
  Sweden on or about May 31, 1990, and concurrently published in Vol. V of
  a compilation of the materials that were presented during that symposium.

- An article entitled "A shared buffer memory switch for an ATM exchange,"
  authored by Hiroshi Kuwahara *et al* , and published in IEEE Int'l Conf. on
  Comms., vol. 1, pp. 118-122, in or about June of 1989, which was cited in
  the above-referenced article by Mr. Henrion.

- An article entitled "High-performance multi-queue buffers for VLSI
  communications switches," published in the Proceedings of the 15th Annual
  International Symposium on Computer Architecture (ACM SIGARCH),
  Vol. 16, No. 2, May 1988, pp. 343–354, which was cited to the Patent
  Office during the prosecution of U.S. Patent No. 5,214,639 (issued May 25,
  1993, application filed August 9, 1990), of which Mr. Henrion is the sole

-13-

named inventor and Mr. May, on information and belief, was the patent
prosecutor with sole or primary responsibility.

- U.S. Patent No. 5,210,743 (issued May 11, 1993, application filed March
  12, 1991, assigned to Alcatel, N.V.), of which Mr. May, on information and
  belief, was the patent prosecutor with sole or primary responsibility and of
  which Karl Schrodi, who, on information and belief, was a key developer of
  and collaborator with Mr. Henrion in the development of the MPSR switch,
  is one of the named inventors.

- U.S. Patent No. 4,947,388 to Kuwahara *et al* (issued August 7, 1990,
  application filed April 5, 1989), which was cited as a material reference
  during the prosecution of U.S. Patent No. 5,210,743, referred to above.

- Intent not to fulfill obligations in Mr. Henrion's declaration to disclose all
  material prior art of which he was aware.

54.     On information and belief, these references were material prior art with respect to
the '192 patent because a reasonable examiner would have considered them to be important in
deciding whether to allow the '192 patent to issue, and they were not cumulative to information
already of record. They established, by themselves or in combination with other information, a
*prima facie* case of unpatentability of one or more claims of the '192 patent.

## L. MISJOINDER OF INVENTORS

55.     As its twelfth separate and affirmative defense, Foundry alleges, on information
and belief, that the '243, '830, and '090 patents are unenforceable for failure to identify the
correct inventive entity.

56.     On information and belief, the inventive entity for the '243, '830, and '090 patents should have included Mr. Sangroniz and Ms. Goodwin and should not have included Mr. Pikover.

57.     The inventive entity of the '243 patent does not include Mr. Sangroniz and does include Mr. Pikover.  Because the inventive entity of the '243 patent is incorrect, the '243 patent is unenforceable.

58.     The inventive entity of the '830 patent does not include Mr. Sangroniz and does include Mr. Pikover.  Because the inventive entity of the '830 patent is incorrect, the '830 patent is unenforceable.

59.     The inventive entity of the '090 patent does not include Mr. Sangroniz and Ms. Goodwin and does include Mr. Pikover.  Because  the inventive entity of the '090 patent is incorrect, the '090 patent is unenforceable.

## **PRAYER FOR RELIEF**

WHEREFORE, Foundry prays that this Court enter judgment:

A.     That Alcatel USA Resources take nothing by way of Count I for patent infringement.

B.     That the Court declare this an exceptional case pursuant to 35 U.S.C. § 285 and award Foundry its reasonable attorney fees.

C.     That the Court award Foundry its costs and such other relief as the Court deems appropriate.

## FOUNDRY NETWORKS, INC.'S COUNTERCLAIM

### [Against Alcatel USA Resources, Inc. and Alcatel Internetworking, Inc.]

Counter-Claimant Foundry Networks, Inc. submits this counterclaim pursuant to Federal Rule of Civil Procedure 13. Foundry alleges:

1.     Foundry's first cause of action is for declaratory relief pursuant to the Declaratory Judgment Act. 28 U.S.C. §§ 2201 *et seq.* Foundry's first cause of action arises under the patent laws of the United States. 35 U.S.C. §§ 100 *et seq.* Foundry's second cause of action is for a declaratory judgment based upon breach of contract. This Court has subject matter jurisdiction over Foundry's counterclaim under 28 U.S.C. §§ 1331, 1338, and 1367.

2.     Foundry is a Delaware corporation maintaining its principal place of business at 4980 Great America Parkway, Santa Clara, California.

3.     Counterclaim Defendant Alcatel USA Resources, Inc. ("Alcatel USA Resources") is a Delaware corporation maintaining its principal place of business at 3400 W. Plano Parkway, Plano, Texas. This Court has personal jurisdiction over Alcatel USA Resources at least because Alcatel USA Resources submitted itself to this Court's personal jurisdiction by suing Foundry in this Court.

4.     Counterclaim Defendant Alcatel Internetworking, Inc. ("Alcatel Internetworking") is a California corporation maintaining its principal place of business at 26801 West Agoura Road, Calabasas, California. This Court has personal jurisdiction over Alcatel Internetworking at least because Alcatel Internetworking submitted itself to this Court's personal jurisdiction by suing Foundry in this Court.

## FIRST COUNTERCLAIM

5.    As its first counterclaim for declaratory relief, Foundry alleges that the '830 and

'090 patents are unenforceable for inequitable conduct during their prosecution and during the

prosecution of the U.S. Patent No. 6,070,243 (the "'243 patent"). In addition, Foundry alleges

that the '192 patent is unenforceable for inequitable conduct during its prosecution.

## INEQUITABLE CONDUCT AS TO U.S. PATENT NOS. 6,070,243, 6,339,830, AND 6,874,090

60.    On information and belief, at least Michael E. See, John W. Bailey, Charles

Panza, Yuri Pikover, Geoffrey Stone, and Michele Wright Goodwin made material

misstatements and intentionally failed to disclose prior art, which each recognized to be material,

to the Patent Office. In addition, on information and belief, Scot A. Reader and Art Hasan,

intending to deceive the Patent Office, failed to disclose prior art each knew to be material.

61.    The '243 patent recites Michael E. See, John W. Bailey, Charles L. Panza, Yuri

Pikover, and Geoffrey C. Stone as applicants. Later Michele Wright Goodwin was added as an

applicant. The '830 patent is a continuation of the '243 patent and similarly recites Michael E.

See, John W. Bailey, Charles L. Panza, Yuri Pikover, and Geoffrey C. Stone as applicants.

During the prosecution of the '830 patent, Michele Wright Goodwin was added as an applicant.

The '090 patent is a continuation of the '830 patent and recites Michael E. See, John W. Bailey,

Charles L. Panza, Yuri Pikover, and Geoffrey C. Stone as applicants. During the prosecution of

the '090 patent, Michele Wright Goodwin was added as an applicant. The assignee and the

applicants have also sought to add Leon Robert Sangroniz as an applicant with respect to the

'090 patent.

62.    The '243 patent was assigned to Xylan Corporation ("Xylan"), where each of the

applicants was originally employed. Through the assignment that conveyed the '243 patent to

Xylan, the applicants also assigned the '830 and '090 patents. On information and belief, Alcatel acquired Xylan in 1999, at which time Xylan was renamed as Alcatel Internetworking, Inc.

63.    On information and belief, Alcatel Internetworking, Inc. assigned its interest in the '243, '830, and '090 patents to Alcatel in June 2002. On May 10, 2005, Alcatel assigned its interest in the '830 and '090 patents to plaintiff Alcatel USA Resources, Inc.

64.    On information and belief, Mr. Reader is an attorney who is registered to practice before the Patent Office. Mr. Reader was in-house counsel to Xylan and was responsible for patent prosecution. During the prosecution of each of the '243 and '830 patents, the Patent Office sent correspondence to Mr. Reader at Xylan's address. Mr. Reader was substantially involved in the prosecution of the '243, '830, and '090 patents.

65.    On information and belief, Mr. Hasan is an attorney who is registered to practice before the Patent Office. During the prosecution of the '243, '830, and '090 patents, Mr. Hasan was an attorney in the law firm Christie, Parker & Hale. Mr. Hasan acted as counsel to the applicants and assignees of the '243, '830, and '090 patents. Mr. Hasan was substantially involved in the prosecution of the '243, '830, and '090 patents.

66.    As applicants of the '243, '830, and '090 patents, Messrs. See, Bailey, Panza, Pikover, and Stone owed a duty not to make misrepresentations to the Patent Office and to disclose to the Patent Office all material prior art of which each was aware. As persons who were substantially involved in the prosecution of the '243, '830, and '090 patents, Mr. Sangroniz and Ms. Goodwin each owed a duty not to make misrepresentations to the Patent Office and to disclose to the Patent Office all material prior art of which each was aware. As attorneys registered to practice before the Patent Office and as persons substantially involved in the prosecution of the '243, '830, and '090 patents, Mr. Reader and Mr. Hasan each owed a duty not

to make misrepresentations to the Patent Office and to disclose to the Patent Office all material

prior art of which he was aware. Finally, all employees of any assignee of the '243, '830, and

'090 who were significantly involved in the prosecution of these patents owed a duty not to make

misrepresentations to the Patent Office and to disclose to the Patent Office all material prior art

of which he was aware.

      67.    On information and belief, each of the applicants Messrs. See, Bailey, and

Pikover, Panza, and See made material misrepresentations to the Patent Office and/or

intentionally withheld material prior art from the Patent Office during the prosecution of the

'243, '830, and '090 patents. On information and belief, each of Mr. Sangroniz and Ms.

Goodwin intentionally withheld material prior art from the Patent Office during the prosecution

of the '243, '830, and '090 patents. On information and belief, each of Mr. Reader and Mr.

Hasan intentionally withheld material prior art from the Patent Office during the prosecution of

the '243, '830, and '090 patents. In addition, on information and belief, Messrs. Reader and

Hasan prosecuted the '243, '830, and '090 patents, thereby facilitating the material omissions of

the others. The material misrepresentations and failures to disclose prior art include:

- misrepresentations in the oath concerning inventorship and intent to comply
  with duty to provide material prior art;

- misrepresentations in declarations that misjoinder of inventors concerned
  without deceptive intent;

- failure to disclose prior art references and to disclose analysis of prior art
  references as identified in documents produced pursuant to subpoena in this
  action by Christie, Parker & Hale LLP, but which since have been returned

at the request of Alcatel's counsel and withheld on grounds of purported privilege;

- failure to disclose documents produced by Alcatel in this action concerning products with user authentication capabilities developed and offered for sale by CheckPoint Software Technologies, Ltd., including but not limited to the CheckPoint FireWall-I product; and

- failure to disclose four IETF RFCs authored by C. Rigney that were disclosed to the Patent Office in connection with the '830 patent but were withheld during the prosecution of the '243 patent.

68.    On information and belief, the withheld references were material prior art with respect to the '243, '830, and '090 patents because a reasonable examiner would have considered them to be important in deciding whether to allow one or more claims pending during the prosecution of the '243, '830, and '090 patents to issue, and they were not cumulative to information already of record. They established, by themselves or in combination with other information, a *prima facie* case of unpatentability of one or more claims of the '243, '830, and '090 patents.

## INEQUITABLE CONDUCT AS TO U.S. PATENT NO. 5,301,192

69.    On information and belief, at least Michel Henrion made material misstatements and intentionally failed to disclose prior art, which he recognized to be material, to the Patent Office. In addition, on information and belief, at least John M. May, intending to deceive the Patent Office, failed to disclose prior art he knew to be material.

70.    The '192 patent recites Mr. Henrion as the applicant.

71.    On information and belief, the '192 patent was assigned to Alcatel NV, where Mr. Henrion was employed. Alcatel NV assigned the '192 patent to Alcatel USA Resources, Inc. on or about May 10, 2005.

72.    The subject matter of the '192 patent was used in an Alcatel product known as the MPSR switch (standing for MultiPath Self-Routing).

73.    Mr. Henrion was a key developer of the MPSR switch, and was responsible for defining the architecture of the MPSR switch beginning in approximately the fourth quarter of 1988.

74.    On information and belief, Mr. May is an attorney who is registered to practice before the Patent Office. During the prosecution of the '192 patent, Mr. May was an attorney at the law firm of Christie, Parker & Hale and was substantially involved in the prosecution of the '192 patent.

75.    As the applicant of the '192 patent, Mr. Henrion owed a duty not to make misrepresentations to the Patent Office and to disclose to the Patent Office all material prior art of which he was aware. As an attorney registered to practice before the Patent Office and as a person substantially involved in the prosecution of the '192 patent Mr. May owed a duty not to make misrepresentations to the Patent Office and to disclose to the Patent Office all material prior art of which he was aware.

76.    On information and belief, Mr. Henrion was aware, during the prosecution of the '192 patent, of prior art that was material to the patentability of one or more claims of the '192 patent. On information and belief, Mr. Henrion intentionally failed to disclose the material prior art to the Patent Office intending to deceive the Patent Office.

77.    On information and belief, Mr. May was aware, during the prosecution of the '192 patent, of prior art that was material to the patentability of one or more claims of the '192 patent. On information and belief, Mr. May intentionally failed to disclose the material prior art to the Patent Office intending to deceive the Patent Office. In addition, on information and belief, Mr. May prosecuted the '192 patent, thereby facilitating the material omissions of Mr. Henrion.

78.    The material prior art that was withheld and the misrepresentations include:

- An article entitled "Switching Network Architecture for ATM Based Broadband Communications," co-authored by Mr. Henrion, which was presented at the International Switching Symposium 1990 in Stockholm, Sweden on or about May 31, 1990, and concurrently published in Vol. V of a compilation of the materials that were presented during that symposium.

- An article entitled "A shared buffer memory switch for an ATM exchange," authored by Hiroshi Kuwahara *et al*, and published in IEEE Int'l Conf. on Comms., vol. 1, pp. 118-122, in or about June of 1989, which was cited in the above-referenced article by Mr. Henrion.

- An article entitled "High-performance multi-queue buffers for VLSI communications switches," published in the Proceedings of the 15th Annual International Symposium on Computer Architecture (ACM SIGARCH), Vol. 16, No. 2, May 1988, pp. 343–354, which was cited to the Patent Office during the prosecution of U.S. Patent No. 5,214,639 (issued May 25, 1993, application filed August 9, 1990), of which Mr. Henrion is the sole

named inventor and Mr. May, on information and belief, was the patent

prosecutor with sole or primary responsibility.

- U.S. Patent No. 5,210,743 (issued May 11, 1993, application filed March

  12, 1991, assigned to Alcatel, N.V.), of which Mr. May, on information and

  belief, was the patent prosecutor with sole or primary responsibility and of

  which Karl Schrodi, who, on information and belief, was a key developer of

  and collaborator with Mr. Henrion in the development of the MPSR switch,

  is one of the named inventors.

- U.S. Patent No. 4,947,388 to Kuwahara *et al.* (issued August 7, 1990,

  application filed April 5, 1989), which was cited as a material reference

  during the prosecution of U.S. Patent No. 5,210,743, referred to above.

- Intent not to fulfill obligations in Mr. Henrion's declaration to disclose all

  material prior art of which he was aware.

79.     On information and belief, these references were material prior art with respect to

the '192 patent because a reasonable examiner would have considered them to be important in

deciding whether to allow the '192 patent to issue, and they were not cumulative to information

already of record. They established, by themselves or in combination with other information, a

*prima facie* case of unpatentability of one or more claims of the '192 patent.

## SECOND COUNTERCLAIM

6.     Alcatel USA Resources is obligated by contract to offer Foundry a license to

practice the '830 and '090 patents, and Alcatel Internetworking is obligated by contract to offer

Foundry a license to practice a currently pending patent application (should it mature into a

-23-

patent), on reasonable and non-discriminatory terms, and they have breached those obligations by failing to offer such licenses to Foundry.

       7.     On information and belief, all rights, title, and interest in and to the '830 and '090 patents and the applications from which they issued were owned by Alcatel USA Resources, Alcatel Internetworking, and/or their French parent corporation (collectively, "Alcatel") continuously from 2000 to the present. In addition, on information and belief, Alcatel Internetworking is the owner of all rights, title, and interest in and to Application No. 10/958,620, filed on October 5, 2004 ("the '620 application"), which is currently pending. The '620 application is a continuation of the '090 application, and its claims are substantially duplicative of the claims of the '830 and '090 patents.

       8.     On information and belief, Alcatel was, at all relevant times, a member of and/or a participant in the IEEE, the IEEE Standards Association, and/or the IEEE 802.1 Working Group, such that an express or implied contract between the IEEE and Alcatel came into being under which Alcatel was bound to comply with the patent policies of the IEEE, the IEEE Standards Association, and the IEEE 802.1 Working Group. Foundry was and is an intended third party beneficiary of said contract.

       9.     Said patent policies imposed upon Alcatel a duty to disclose to the IEEE, prior to the IEEE's adoption of the 802.1X standard, all of Alcatel's patents and patent applications that Alcatel believed might be essential to the implementation of the 802.1X standard.

      10.     Said patent policies imposed upon Alcatel a further duty to submit to the IEEE, prior to the IEEE's adoption of the 802.1X standard, an irrevocable assurance letter in which Alcatel agreed either to forego enforcement of Alcatel patents essential to practice the 802.1X standard or to license such rights on reasonable and non-discriminatory terms.

11.    As construed by Alcatel, the '830 and '090 patents and the applications from which they issued, as well as the '620 application, are essential to practice the IEEE 802.1X standard.

12.    On information and belief, Alcatel was the owner of the '830 patent and the '090 application as of January 13, 2003. On that date, David A. Cordeiro, Esq., Alcatel's Lead IP Counsel, acting on behalf of Alcatel and with actual and apparent authority to so act, sent a letter (the "Alcatel RAND Letter") to Secretary, IEEE-SA Standards Board Patent Committee, in which he stated that Alcatel was "willing to grant a license under the '830 patent on reasonable terms and conditions and on a non-discriminatory basis." A true and correct copy of this letter is attached hereto as Exhibit A.

13.    The Alcatel RAND Letter constitutes a contractual commitment, of which Foundry is an intended third party beneficiary, binding Alcatel to license the '830 patent on reasonable and non-discriminatory terms.

14.    Due to the overlapping subject matter and claims between the '830 and '090 patents, and between the '830 patent and the '620 application, and in view of Alcatel's general obligations under the IEEE's patent policies and the context in which the Alcatel RAND Letter was sent, the Alcatel RAND Letter also gives rise to an implied contractual commitment, of which Foundry is an intended third party beneficiary, binding Alcatel to also license the '090 patent and the '620 application (should it issue as a patent) on reasonable and non-discriminatory terms.

15.    On May 6, 2006, Foundry wrote to Alcatel and asked whether and on what terms Alcatel would license Foundry to use the technology covered by the '830 and the '090 patents.

16.    On May 22, 2006, Alcatel responded that it would not discuss licensing terms to Foundry except in the context either of a litigation settlement or a discovery request.

17.    Alcatel USA Resources has breached its contractual obligations described above by refusing to offer Foundry a license to practice the '830 and '090 patents on reasonable and non-discriminatory terms, and Alcatel Internetworking has breached its contractual obligations described above by failing to commit to offer Foundry a license to practice the '620 application on reasonable and non-discriminatory terms should that application issue as a patent.  These contractual obligations and breaches thereof preclude Alcatel USA Resources from obtaining an injunction against Foundry that would prohibit Foundry from practicing the '830 patent or the '090 patent, and preclude Alcatel Internetworking from obtaining an injunction against Foundry that would prohibit Foundry from practicing the '620 application (should it later issue as a patent), and further preclude Alcatel USA Resources and Alcatel Internetworking from obtaining any remedy against Foundry other than a reasonable and non-discriminatory royalty.  (It is Foundry's position, of course, that Alcatel USA Resources and Alcatel Internetworking are not entitled to any remedy against Foundry because Foundry does not infringe the '830 and '090 patents or the '620 application, because those patents are invalid and unenforceable, and because the '620 application has not yet issued as a patent.)

18.    There is an actual and justiciable controversy within the meaning of 28 U.S.C. §§ 2201 and 2202 between Foundry, on the one hand, and Alcatel USA Resources and Alcatel Internetworking, on the other, with respect to the existence, nature, extent, and consequences of the contractual commitments described above.

## PRAYER FOR RELIEF

WHEREFORE, Foundry prays that this Court enter judgment:

A.    That the '243, '830, '090, and '192 patents be found void and unenforceable;

B.    That Alcatel USA Resources and Alcatel Internetworking be ordered to pay the costs and reasonable attorneys' fees incurred by Foundry pursuant to 35 U.S.C. § 285;

C.    That Alcatel USA Resources and Alcatel Internetworking be enjoined specifically to perform their respective contractual obligations to offer Foundry a license to practice the '830 and '090 patents (and the '620 application should it issue as a patent) on reasonable and non-discriminatory terms, should Foundry's products be found to infringe those patents and those patents be found valid and enforceable;

D.    For compensatory damages in a total amount to be established at trial;

E.    For pre-judgment interest as allowed by law;

F.    For reasonable attorneys' fees and costs of suit incurred as allowed by law; and

G.    For such other and further relief as this Court deems just and warranted under the circumstances.

## JURY DEMAND

Foundry demands a trial by jury as to all issues so triable.

Of Counsel:
William L. Anthony
Matthew H. Poppe
Michael F. Heafey
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, California 94025
Tel: 650-614-7400
(As to Count I only)

Dated: August 25, 2006

Respectfully submitted,

POTTER ANDERSON & CORROON LLP


_____/s/_____
Philip A. Rovner (#3215)
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899-0951
(302) 984-6000

*Attorneys for Defendant Foundry Networks, Inc.*

-27-