IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALCATEL USA RESOURCES, INC., a Delaware corporation, and ALCATEL INTERNETWORKING, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>FOUNDRY NETWORKS, INC., a Delaware corporation,<br><br>Defendant. | Civil Action No. 05-418-SLR<br><br>(JURY TRIAL DEMANDED)<br><br>**PUBLIC VERSION** |

**DEFENDANT FOUNDRY NETWORKS, INC.'S
OPENING SUBMISSION ADDRESSING
<u>SCOPE OF DISCOVERY RE: FOUNDRY PRODUCTS</u>**

OF COUNSEL:

William L. Anthony
Matthew H. Poppe
Michael F. Heafey
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, California 94025
(650) 614-7400

(As to Count I only)

Dated: August 22, 2006

Public Version: August 29, 2006

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899-0951
(302) 984-6000
Email: provner@potteranderson.com

*Attorneys for Defendant
Foundry Networks, Inc.*

I. **INTRODUCTION**

Defendant Foundry Networks, Inc. ("Foundry") seeks to exclude from discovery accused Foundry products as to which plaintiff Alcatel USA Resources, Inc. ("Alcatel") has not shown any good faith basis to allege infringement.

Alcatel has arbitrarily listed virtually every product ever sold by Foundry as an accused product in this case, based primarily on documents that bear no relation to Alcatel's stated infringement theories. Despite having no good faith basis for including most of these products on its "accused product" list, Alcatel seeks to force Foundry to comply with wide-ranging and intrusive discovery related to all of those products.

At the August 8, 2006 hearing in this action, the Court instructed the parties to select up to ten products each and discuss whether the related documents identified by Alcatel support a good faith belief in infringement and a basis to proceed with discovery as to those products. The parties reached an agreement to submit simultaneous opening briefs today and simultaneous responses on Friday, August 25.

In this submission, Foundry addresses Alcatel's lack of good faith with respect to five products accused of infringing the '192 patent and five others accused of infringing the '840 patent, as follows:

| '192 Patent | '840 Patent |
|---|---|
| BigIron RX | AccessIron |
| FastIron Edge Switch | NetIron XMR |
| FastIron Edge Switch X-Series | FastIron Edge Switch X-Series |
| FastIron Workgroup Switch X-Series | FastIron Workgroup Switch X-Series |
| EdgeIron | EdgeIron |

Foundry has selected these products as examples of Alcatel's failure to make an adequate infringement showing. However, Foundry also opposes discovery with respect to several other products, to which similar arguments apply.

With respect to most of the products discussed herein, Alcatel purports to base its infringement allegations on Foundry documents that make no reference to any of the features that Alcatel has said cause infringement. For example, Alcatel has asserted that its '192 infringement claim is targeted at products that have buffer memories and queues, but several of the cited documents do not mention buffer memories *or* queues, much less the other features that Foundry contends should also have to be shown before discovery proceeds. In other instances, the documents cited by Alcatel discuss software features of the accused Foundry products, whereas Alcatel has said to the Court that its infringement case is based on hardware features.

For these reasons, as discussed in greater detail below, Alcatel has not established a good faith belief in infringement with respect to the Foundry products discussed herein (as well as others to which similar arguments apply). Accordingly, Foundry respectfully requests that the Court deny discovery to Alcatel with respect to those products.

## II.    PROCEDURAL BACKGROUND

### A.    Alcatel's Interrogatory Responses

Foundry's Interrogatory No. 1 asked Alcatel to "[i]dentify all Foundry products that Alcatel contends infringe the patents in suit, including which specific claims are infringed by each Foundry product identified." Exhibit A, p. 2.[1] On June 23, 2006, Alcatel served a 14-page supplemental response listing numerous accused products. *Id.*,

---

[1] All exhibits referenced in this submission are attached to the Declaration of Matthew H. Poppe, which is being filed contemporaneously herewith ("Poppe Decl.").

pp. 2-16. For each product, the response also lists the patents it is accused of infringing and a Foundry document that supposedly supports the infringement claim. *See id.* Many of the products have an IronCore™, JetCore™, or Terathon™ hardware architecture. However, Alcatel's supplemental response also lists the following Foundry products that have other, different hardware architectures:

- AccessIron (identified with the prefix "AR" in Alcatel's response)
- BigIron RX
- EdgeIron
- FastIron SuperX
- FastIron Edge Switch ("FES" in Alcatel's response)
- FastIron Edge Switch X-Series ("FES X")
- FastIron Workgroup Switch X-Series ("FWS X")
- NetIron XMR and NetIron MLX, and
- TurboIron SuperX.

Foundry's Interrogatory No. 2 asked Alcatel to "[s]tate in a chart how each Foundry product identified in Interrogatory No. 1 infringes each of the corresponding claims." Exhibit A, p. 16. In the charts, Alcatel was asked (among other things) to "identify specifically where each element of each asserted claim is found within each Foundry product" and, for each means-plus-function element of the asserted claims, to "identify . . . the structures, acts, or materials in each Foundry product that performs the claimed function." *Id.* For IronCore™ and JetCore™ products, Alcatel provided such charts, though Foundry contends the charts are deficient.[2] *See* Exhibits B, M. Alcatel did

---

[2] As Foundry mentioned in its August 7, 2006 letter to the Court, Alcatel's '192 and '840

3

not provide charts for the other accused Foundry products, however, answering only that "[t]he chart in the supplemental response to Interrogatory No. 1 contains information showing which model numbers contain the features subjecting them to the infringement contentions outlined in the previously-served claim charts." *See* Exhibit A, p. 17.

### B. Alcatel's Document Requests

Alcatel has asked Foundry to produce essentially all documents related to every product listed by Alcatel as an accused product. This includes all technical materials, including manuals, guides, schematics, source code, software architecture documents, and engineering change orders; all marketing documents; all documents related to the design and development of the products; all documents related to sales of the products; documents identifying customers of the products; testing documents; documents related to modifications to the products; cost, revenue, profit, and other financial information related to each product; and more. *See* Exhibits O, P.

### C. The August 8, 2006 Hearing

At the recent hearing on August 8, Alcatel's counsel repeatedly stated that the Foundry documents listed in Alcatel's supplemental response to Interrogatory No. 1 provided sufficient information to support a good faith belief in infringement. Such statements by Alcatel's counsel include the following:

> And starting on Page 2 [of Alcatel's interrogatory response], ....
> [w]e identify .... the first page of a Foundry document which we

---

infringement charts provided in its interrogatory response are deficient for several reasons. First, even for the IronCore™ and JetCore™ products, as to which Foundry has provided full discovery, the charst do not identify any product features corresponding to certain claim elements. Second, it appears that Alcatel has never examined any Foundry products but instead has relied solely on marketing materials. Third, the charts provide no analysis of how the quoted passages from Foundry's marketing materials supposedly map onto the claim language. And fourth, as noted in the text, the charts are absolutely silent on products other than IronCore™ and JetCore™ products.

4

> are relying on, at least at this stage, for a basis to conclude
> infringement, .... [Exhibit C, p. 5:10-17]
>
> Judge, Tab 1 is our one model, one document list that has already
> been provided. [It is the] lengthier interrogatory answer which
> identifies Foundry Networks document production numbers as our
> basis for understanding the specific model numbers are infringing.
> [Exhibit C, p. 34:5-10]
>
> THE COURT: .... Mr. Greenspoon, just before I close for the day,
> you believe that by identifying the document under Tab 1, for each
> of these exhibits, that that is a sufficient basis for believing that the
> product you've identified ... contains the feature sets that would
> demonstrate infringement or at least a good-faith basis for claiming
> infringement? MR. GREENSPOON: Yes. [Exhibit C, p. 42:1-8]

At the end of the hearing, the Court said it would review a representative sample of the documents cited by Alcatel to see if they supported a good faith belief in infringement. If not, then discovery would be denied. *See* Exhibit C, pp. 42:9-43:19.

### D. THE DOCUMENTS CITED BY ALCATEL DO NOT SUPPORT A GOOD FAITH BELIEF IN INFRINGEMENT

As discussed at the August 8 hearing, the present discovery dispute relates to U.S. Patent Nos. 5,301,192 (the "'192 patent") and 5,506,840 (the "'840 patent"). Foundry will demonstrate below that the documents cited by Alcatel do not support a good faith belief that the non-IronCore™/JetCore™/Terathon™ products infringe either patent.

### E. The '192 Patent

The '192 patent teaches a complex set of integrated circuits used to forward data received by a computer networking product. *See* Exhibit D. The claim elements include a buffer memory, a plurality of queues, a "data block and outlet selection queue management logic," a "data block selection means," and three other means-plus-function elements. *See id.*, Cols. 24:65-25:21. Alcatel has focused — too narrowly in Foundry's view — on the buffer memory and queue elements of the patent claims. Foundry still

5

contends that Alcatel should have to make a more rigorous showing.[3] However, even under Alcatel's broad approach, the cited documents do not support a good faith belief that the listed products infringe the '192 patent.

### 1. BigIron RX: The Document Cited by Alcatel Makes No Mention of Queues or Buffer Memories

Alcatel claims that Foundry's BigIron RX-4, RX-8, and RX-16 products infringe the '192 patent based on a document numbered FN A_00382797. *See* Exhibit A, p. 5. This document is a PowerPoint addressed to Foundry's sales force. *See* Exhibit E. The document includes 12 pages related to the BigIron RX products. *See id.*, pp. FN A_00382815 to 382826. Those pages say nothing about queues, buffer memories, or any of the other elements of the '192 patent claims. *See id.* Thus, even if the Court agreed with Alcatel on the showing it should be required to make to obtain discovery with respect to Foundry products, this document falls well short.

### 2. FES-X and FWS-X: The Document Cited by Alcatel Makes No Mention of Queues or Buffer Memories

Alcatel argues that several of Foundry's FastIron Edge Switch X-Series (FES-X) and FastIron Workgroup Switch X-Series (FWS-X) products[4] infringe the '192 patent, based on the same PowerPoint presentation discussed above. *See* Exhibit A, pp. 12-13 (citing FN A_00382797). The document includes 10 pages related to the FES-X and

---

[3] As discussed at the August 8 hearing and in Foundry's August 7 letter to the Court, case law requires that Alcatel show, as a condition to obtaining discovery with respect to a hardware feature in a given Foundry product, that the feature matches up on an element-by-element basis with at least one claim of the corresponding patent-in-suit. Thus, for the '192 patent, Alcatel should be denied discovery with respect to products as to which it cannot show that (1) they contain a buffer memory and queues, (2) the queues contain buffer numbers indicating the memory locations where the corresponding packets are stored, and (3) they also have a "buffer manager," a "shared memory switch fabric," a CAM, and a PRAM. *See* Exhibit B (Alcatel's infringement chart for claim 1 of the '192 patent, which identifies these Foundry product features as the basis for infringement).
[4] The specific products are the FES X424, FES X424HF, FES X424-POE, FES X448, and FWS X424.

FWS-X products. *See* Exhibit E, pp. FN A_00382802 to 382811.

REDACTED

*See id.* Thus, this document provides no support for a good faith belief that the FES-X and FWS-X products infringe the '192 patent.

### 3. EdgeIron: The Documents Cited by Alcatel Either Make No Mention of Queues or Buffer Memories at All, or Do Not Discuss Them in Sufficient Detail to Support Discovery

Alcatel cites three documents in support of its contention that Foundry's EdgeIron products infringe the '192 patent. Two of the documents make no mention of queues, buffer memories, or other relevant structural features at all, while the third makes only passing references to "queues" without any mention of the additional features that Alcatel claims are necessary to its infringement claim.

Alcatel first cites the PowerPoint presentation discussed above with respect to the EdgeIron 24GS, 48GS, and 8X10G products. *See* Exhibit A, pp. 6-7 (citing FN A_00382797). This document has only three pages that contain information about EdgeIron products. *See* Exhibit E, pp. FN A_00382800, FN A_00382810, FN A_00382811.

REDACTED

*See id.*

Alcatel cites a document numbered FN A_00377503 for three other EdgeIron products: the 24G, 2402CF, and 4802CF. *See* Exhibit A, pp. 5-6. This document is another PowerPoint presentation. *See* Exhibit F. Once again, only a few pages of this document relate to EdgeIron products. *See id.*, pp. FN A_00377506, FN A_00377525, FN A_00377526, FN A_00377547.              REDACTED

*See id.*

7

The third document, numbered FN A_00355006, is cited in connection with the EdgeIron 24G-A, 24GS, 48G, 48GS, and 8X10G products. *See* Exhibit A, pp. 5-7.

REDACTED

*See* Exhibit G.     REDACTED

*See id.*, pp. FN A_00355013, FN A_00355014.

But even Alcatel does not contend that the mere mention of "queues" makes a product fair game for discovery.[5] Rather, Alcatel's stated position has been that discovery should extend only to products that offer "storage of packet contents within a buffer pool at a location corresponding to a buffer number, where the buffer number is assigned to the appropriate queue(s) of the destination port(s)." *See* Exhibit O, p. 4; Exhibit C, pp. 8:4-13, 38:6-19. The cited software release notes for Foundry's EdgeIron products make no mention of storing packet contents within a buffer pool, much less doing so at a location corresponding to a buffer number where the buffer number is assigned to the appropriate queue of the destination port. Thus, Alcatel has failed to show that it has a good faith basis to believe that the EdgeIron products infringe the '192 patent.

### 4. FastIron Edge Switch: The Documents Cited by Alcatel Do Not Discuss Queues in Sufficient Detail to Support Discovery

Alcatel cites three documents as support for its contention that Foundry's FastIron Edge Switch ("FES") products infringe the '192 patent. *See* Exhibit A, pp. 10-12 (citing

---

[5] As Foundry's counsel mentioned at the August 8 hearing, queues are essentially an inherent feature of data networking devices. This is because a switch or router may receive data more quickly than it can process it. To handle the data, it must have a way to temporarily store it and then decide the order in which to process the stored data. That is the function of buffer memories and queues. The '192 patent expressly describes queues and buffer memories as features that existed in the prior art. *See* Exhibit D, Cols. 1:52-2:62 & Fig. 1. Prior art references discussing the storage and queuing of data in data networking devices date back decades before the filing of the '192 patent. *See, e.g.*, Exhibit H, pp. 3-56, 22-57 (reference from 1975 describing data communication devices that "[b]uffer storage of messages" and "[a]llocate storage and message queues.").

FN A_00064809, FN A_00377503, and FN A_00056579).

REDACTED

One document cited by Alcatel is numbered FN A_00377503. As noted above, this document is a PowerPoint presentation. *See supra*, p. 8 & Exhibit F.

REDACTED         *See id.*, pp. FN A_00377506, FN A_00377525, and FN A_00377527 to FN A_00377547.         REDACTED

*See id.*

The other two cited documents are "Release Notes" for two software releases provided by Foundry with certain FES products. *See* Exhibits I, J.

REDACTED         *See* Exhibit I, pp. FN A_00064841 to FN A_00064844; Exhibit J, pp. FN A_00056606 to FN A_00056610 and FN A_00056621 to FN A_00056623.

REDACTED

*See* Exhibit O, p. 4; Exhibit C, pp. 8:4-13, 38:6-19. Thus, Alcatel has failed to show that it has a good faith basis to believe that the FES products infringe the '192 patent.

9

### F. The '840 Patent

The '840 patent teaches a "routing logic means" that selects an outgoing route for a data packet using a two-step process. First, a "preselection means" uses an "internal routing label" to select a "preselected set" of outgoing routes. Then, a "selection means" selects one route from among the preselected set of routes. *See* Exhibit K, Col. 25:25-39. Alcatel has stated to the Court that this patent is allegedly "implemented in hardware" in the accused Foundry products. *See* Exhibit L, pp. 10, 14. In discovery, Alcatel seeks information related to any Foundry product that supports "VLAN broadcasts (a.k.a. VLAN floods) where one or more of the destination ports of the VLAN is part of a trunk group." *See* Exhibit G, p. 4. Elsewhere, Alcatel has made it clear that its infringement claims target products that perform "hardware flooding" for a VLAN using specified hardware elements such as a CAM (content addressable memory) and PRAM (another memory device). *See* Exhibit M. Within this framework, the documents cited by Alcatel in its interrogatory response do not support a good faith belief that the listed products infringe the '840 patent.

#### 1. AccessIron: The Document Cited by Alcatel Makes No Mention of VLAN Flooding or Trunk Groups, and Alcatel Has Withdrawn This as an Accused Product

Until recently, Alcatel claimed that a long list of AccessIron products infringed the '840 patent based on a document numbered FN A_00350963. *See* Exhibit A, pp. 2-3. The cited document is another set of software "Release Notes" that makes no mention of VLAN flooding or trunk groups. Last week, Alcatel's counsel sent a letter agreeing to remove AccessIron as an accused product on the ground that the product line has been discontinued. *See* Exhibit N. Based on this letter, and Foundry's confirmation letter, *see id.*, we understand that Alcatel no longer seeks discovery related to AccessIron products.

This turn of events has spared Alcatel from having to justify its allegation of infringement regarding the AccessIron, which it would not have been able to substantiate.

### 2. FES-X and FWS-X: The Document Cited by Alcatel Makes No Mention of VLAN Flooding or Trunk Groups

Alcatel claims that several of Foundry's FastIron Edge Switch X-Series (FES-X) and FastIron Workgroup Switch X-Series (FWS-X) products[6] infringe the '840 patent based on a document numbered FN A_00382797. *See* Exhibit A, pp. 12-13. The document includes 10 pages related to the FES-X and FWS-X products. *See* Exhibit E, pp. FN A_00382802 to 382811.               REDACTED

*See id.* Because those features represent the bare minimum that Alcatel must show to obtain discovery related to the '840 patent under its own argument on the proper scope of discovery, *see* Exhibit O, p. 4; Exhibit C, pp. 8:4-13, 38:6-19, the cited document does not support a good faith belief that the FES-X and FWS-X products infringe the '840 patent.

### 3. NetIron XMR: The Document Cited by Alcatel Makes No Mention of VLAN Flooding or Trunk Groups

Alcatel claims that Foundry's NetIron XMR 4000, 8000, and 16000 products infringe the '840 patent based on a document numbered FN A_00382797. *See* Exhibit A, pp. 12-13. This PowerPoint presentation has been discussed above in connection with other accused products. It includes 16 pages related to the NetIron XMR products. *See* Exhibit E, pp. FN A_00382842 to 382857. Those pages say nothing about hardware flooding of packets to VLANs or trunk groups. *See id.* Thus, the cited document does not support a good faith belief that the NetIron IMR products infringe the '840 patent.

---

[6] The specific products are the FES X424, FES X424HF, FES X424-POE, FES X448, and FWS X424.

### 4.　EdgeIron: The Documents Cited by Alcatel Do Not Mention Hardware Flooding or Any Other Relevant Hardware Feature

Alcatel cites three documents in support of its contention that Foundry's EdgeIron products infringe the '840 patent. Two of those documents make no mention of hardware flooding, VLANs, or trunk groups. The third document discusses *software* features associated with VLANs and trunk groups, but it does not mention *hardware* flooding to a VLAN or any other hardware feature that Alcatel has identified as the basis for its '840 infringement contentions.

Alcatel first cites, in connection with several EdgeIron products, the PowerPoint presentation discussed in the previous section. *See* Exhibit A, pp. 6-7 (citing FN A_00382797).　　　　REDACTED

　*See* Exhibit E, pp. FN A_00382800, FN A_00382810, FN A_00382811.

　　　REDACTED　　　　　*See id.*　　REDACTED


　　　　　　　　　REDACTED

　　　　　　　　　　7

Alcatel cites a document numbered FN A_00377503 for three other EdgeIron products: the 24G, 2402CF, and 4802CF. *See* Exhibit A, pp. 5-6. REDACTED

　　　　　　*See* Exhibit F.　　REDACTED

REDACTED　　　　*See id.*, pp. FN A_00377506, FN A_00377525,

FN A_00377526, FN A_00377547.　　　　REDACTED

　　　*See id.*

---

[7] Specifically, the VLAN reference relates to the EdgeIron CF and G products, not the EdgeIron 24GS, 48GS, or 8X10G products. *See* Exhibit E, p. FN A_00382800.

12

The third document, numbered FN A_00355006, is cited in connection with the EdgeIron 24G-A, 24GS, 48G, 48GS, and 8X10G products. *See* Exhibit A, pp. 5-7.

REDACTED

*See* Exhibit G.          REDACTED

*See id.*, pp. FN A_00355011 to 355014, FN A_00355018, FN A_00355022 to 355023, FN A_00355025 to 355026, and FN A_ 00355030 to 355032. However, as noted above, Alcatel has told the Court that the '840 patent is implemented in *hardware* features of the accused Foundry products. *See* Exhibit L, pp. 10, 14. The third document cited by Alcatel in connection with the EdgeIron products, like the other two documents, makes no mention of hardware flooding or other hardware features that Alcatel has identified as allegedly contributing to infringement.[8] Accordingly, that document should not be deemed sufficient to support a good faith belief that the EdgeIron products infringe the '840 patent.

If the Court disagrees, then at a minimum discovery should be limited to the software features that Alcatel has identified and not extend to hardware features of the accused products.

### G.   Other Products

The omission of any products from the above discussion should not be construed as a concession by Foundry that they are fairly within the scope of discovery. At the Court's request, Foundry limited this submission to ten products. One or more of the

---

[8] For example, Alcatel has focused heavily on the "Foundry header" used in IronCore™, JetCore™, and Terathon™ products as a basis for alleging infringement of the '840 patent. *See* Exhibit L, pp. 15-16; *see also* Exhibit M. The documents cited by Alcatel in connection with the EdgeIron products (as well as with respect to all of the other Foundry products discussed in this brief) say nothing about the use of a Foundry header.

13

above arguments apply equally to the other non-IronCore™/JetCore™/Terathon™ products that Alcatel included in its list of accused products.

### H. Alcatel's "Chicken-and-Egg" Argument Is a Red Herring

At the August 8, 2006 hearing, Alcatel's counsel argued that Foundry's position on discovery creates a "chicken-and-egg" problem. As Foundry understands it, Alcatel is arguing that it is unfair to insist that Alcatel make an evidentiary infringement showing with respect to products as to which Foundry has not provided full discovery, because it supposedly needs the discovery in order to make that evidentiary showing. *See* Exhibit C, pp. 42:22-43:8.

Alcatel's argument flies in the face of abundant case law discussing the nature of the investigation a patent plaintiff must take *before* filing an infringement suit. Before a patent infringement claim is brought, it is generally expected that the patent owner will obtain and review the accused product so that its actual design and functioning can be compared with the claims of the patents-in-suit. *See View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000); *Judin v. United States*, 110 F.3d 780, 784-85 (Fed. Cir. 1997) (citing *Refac Int'l, Ltd. v. Hitachi, Ltd.*, 141 F.R.D. 281 (C.D. Cal. 1991), and describing that case as "imposing Rule 11 sanctions on patent infringement plaintiff that failed to reverse engineer or examine accused products prior to filing complaint"). Some courts have held that reverse engineering or its "equivalent" is required. *New York Univ. v. E.piphany, Inc.*, 2006 WL 559573, at *2 (S.D.N.Y. Mar. 6, 2006); Network Caching Tech., LLC v. Novell, Inc., 2002 WL 32126128, at *5 (N.D. Cal. Aug. 13, 2002) (same).

Before a plaintiff accuses multiple products of infringing a patent, it must have a reasonable evidentiary basis to conclude that *each* such product actually infringes. *See*

14

*Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1075-76 (Fed. Cir. 2002) ("the evidence uncovered by the patent holder's investigation must be sufficient to permit a reasonable inference that all the accused products infringe"); *S. Bravo Sys., Inc. v. Containment Techs. Corp.*, 96 F.3d 1372, 1375 (Fed. Cir. 1996) (infringement analysis under Rule 11 "requires that the patent claims be interpreted and that the claims be found to read on the accused devices").

The plaintiff may be denied discovery related to products as to which inadequate infringement contentions have been provided. *See New York Univ.*, 2006 WL 559573, at *2-*4 ("*NYU*"). In *NYU*, the scheduling order provided that the plaintiff had to provide Preliminary Infringement Contentions. The court in *NYU* limited document production to products as to which the patent owner had provided sufficient Preliminary Infringement Contentions. *See id.* The *NYU* approach should be followed here because Foundry asked Alcatel to provided similar information in the form of interrogatory responses. *See id.* at *2 (observing that Preliminary Infringement Contentions "take the place of a series of interrogatories the defendants would likely have propounded."); *Network Caching Tech.*, 2002 WL 32126128 at *4 (same). At a minimum, Preliminary Infringement Contentions (or their equivalent) must provide the same level of detail as a plaintiff would provide in establishing that it had conducted an adequate pre-filing inquiry under Fed. R. Civ. P. 11. See *NYU*, 2006 WL 559573, at *2; *Network Caching Tech.*, 2002 WL 32126128, at *4.

Thus, case law supports Alcatel's duty to demonstrate an evidentiary basis for its infringement claims with respect to each accused product *before* discovery is allowed to proceed with respect to those products.

### III. **CONCLUSION**

Alcatel seeks to dramatically expand the scope of this case, with major potential implications for document production, written discovery, expert discovery, summary judgment proceedings, trial, and more. Alcatel should not be permitted to expand the scope of the case in this way, with the concomitant burdens on Foundry and the Court, without making a much more substantial showing of its good faith belief in infringement. Accordingly, Foundry respectfully requests that the Court deny Alcatel's request to compel Foundry to provide discovery with respect to products other than the IronCore™, JetCore™, and Terathon™ products insofar as such discovery relates to the '192 and/or '840 patents.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

| | |
|---|---|
| William L. Anthony<br>Matthew H. Poppe<br>Michael F. Heafey<br>Orrick, Herrington & Sutcliffe LLP<br>1000 Marsh Road<br>Menlo Park, California 94025<br>(650) 614-7400 | By: /s/ Philip A. Rovner<br>Philip A. Rovner (#3215)<br>Hercules Plaza<br>P.O. Box 951<br>Wilmington, Delaware 19899-0951<br>(302) 984-6000<br>provner@potteranderson.com |

(As to Count I only)

Dated: August 22, 2006

*Attorneys for Defendant*
*Foundry Networks, Inc.*

Public Version: August 29, 2006

747974

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, Philip A. Rovner, hereby certify that on August 29, 2006, the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

**BY HAND DELIVERY AND E-MAIL**

Josy W. Ingersoll, Esq.
Karen L. Pascale, Esq.
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391

I hereby certify that on August 29, 2006 I have sent by E-mail the foregoing document to the following non-registered participant:

Timothy J. Haller, Esq.
Robert Greenspoon, Esq.
Sally Wiggins, Esq.
Niro, Scavone, Haller & Niro
181 W. Madison Street, Suite 4600
Chicago, IL 60602

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com