IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALCATEL USA RESOURCES, INC., a Delaware corporation, and ALCATEL INTERNETWORKING, INC., a California corporation, | ) ) ) ) ) **CONFIDENTIAL FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER** |
| Plaintiffs, | ) ) Civil Action No. 05-418-SLR |
| v. | ) ) (JURY TRIAL DEMANDED) |
| FOUNDRY NETWORKS, INC., a Delaware corporation, | ) ) ) **PUBLIC VERSION** |
| Defendant. | ) ) |

**DEFENDANT FOUNDRY NETWORKS, INC.'S
RESPONSIVE SUBMISSION ADDRESSING
SCOPE OF DISCOVERY RE: FOUNDRY PRODUCTS**

OF COUNSEL:

William L. Anthony
Matthew H. Poppe
Michael F. Heafey
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, California 94025
(650) 614-7400

(As to Count I only)

Dated: August 25, 2006

Public Version: September 1, 2006

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899-0951
(302) 984-6000
Email: provner@potteranderson.com

*Attorneys for Defendant/Counterclaimant
Foundry Networks, Inc.*

## I. INTRODUCTION

Alcatel's August 22 letter to the Court demonstrates that it has no basis to assert that any Foundry product other than the IronCore™, JetCore™, and Terathon™ products infringe the '192 and '840 patents.[1] Given the opportunity to demonstrate a good faith basis, Alcatel devoted only *one page* to the effort. The rest of Alcatel's 9-page letter focuses on two peripheral topics: (1) explaining the basis for Alcatel's allegation that the JetCore™ products infringe, and (2) incorrectly arguing that Foundry's counsel lied to the Court regarding Foundry's BigIron RX product.

Alcatel's meager showing with respect to non-JetCore™ products is particularly stark when compared to the detail and complexity of its JetCore™ infringement analysis, which fills five pages. Two points in particular stand out from this comparison. First, Alcatel yet again refers to the '192 and '840 patents as "hardware patents" (p. 1), yet two of the three documents Alcatel relies on to show infringement by non-JetCore™ products describe software features (pp. 7-8 & Exs. E, G). Second, Alcatel's infringement analysis for JetCore™ products addresses numerous hardware elements that Alcatel does not even try to argue are described in the documents it cites for non-JetCore™ products.

Alcatel's implicit argument is that it has a good faith basis to allege infringement and obtain discovery with respect to any product with buffers (a type of memory device) and queues. As Foundry showed in its opening papers, however, buffers and queues have been present in data networking devices since at least the 1970s. Under Alcatel's theory, it would be reasonable to suspect every such device of infringement, though they pre-date

---

[1] Foundry does not concede, of course, that Alcatel has a good faith basis to allege even that the IronCore™, JetCore™, and Terathon™ products infringe. However, Foundry has not sought to prevent Alcatel from obtaining discovery about those products.

Alcatel's patents by decades. Similarly, Alcatel implicitly argues that any product that implements VLANs and trunk groups infringes the '840 patent, even though it offers no reason for the Court to believe that a necessary correlation exists between those features and the hardware-based claim elements of the patent.

This case should not be broadened to include dozens of new models based solely on Alcatel's unsupported surmise.

REDACTED

Thus, just because some of the products at issue here share generic family names with some of the IronCore™ and JetCore™ products (e.g. "BigIron" and "NetIron"), there is no reason to think that all of those products have the same allegedly infringing hardware technology "under the hood," as Alcatel contends.

## II.  ARGUMENT

### A.  Alcatel's Analysis Confirms That The '192 And '840 Patents Are "Hardware Patents" With Numerous Hardware-Related Claim Elements

On the first page of its August 22 letter to the Court, Alcatel states yet again that the '192 and '840 patents-in-suit are "hardware patents." Alcatel's letter then presents a detailed, five-page analysis of why Foundry's JetCore™ products allegedly infringe those patents. That discussion highlights the many hardware features required by the patents' claim elements.

With respect to the '192 patent, Alcatel points out that the following hardware features are required for a finding of infringement:

2

| '192 Claim Element | Foundry Product Feature |
|---|---|
| 1. Buffer memory | Shared memory buffer pool |
| 2. Data block and outlet selection queue management logic | Buffer manager |
| 3. Plurality of queues | Output queues |
| 4. Data block identity | Buffer number |
| 5. Data block selection means | Buffer manager |
| 6. Destination | Physical port |
| 7. First means | Buffer manager (using CAM, PRAM, FID, etc.) |
| 8. Second means | Buffer manager |
| 9. Third means | Buffer manager |
| 10. Individual outlet | Hardware for chosen queue |

As discussed below, Alcatel unreasonably argues that any Foundry product with two of these ten claim elements—buffers and queues—may be accused of infringement.

With respect to the '840 patent, Alcatel points out that the following hardware features are required for a finding of infringement:

| '840 Claim Element | Foundry Product Feature |
|---|---|
| 1. Routing logic means | Switching logic for hardware flooding |
| 2. Internal routing label | Internal Foundry header |
| 3. Preselection means | Logic placing all-packet entry into CAM |
| 4. Selection means | Logic that sends over selected trunk group port |

As discussed below, Alcatel incorrectly argues that any Foundry product with VLANs and trunk groups infringes the '840 patent, regardless of whether that product has *any* of the hardware components identified in the above table as prerequisites to infringement.

### B. Alcatel Fails to Show a Good Faith Basis to Assert That the BigIron RX, NetIron MLX/XMR, or EdgeIron Products Infringe

As noted, Alcatel devotes only one page of its August 22 letter (*see* pp. 7-8) to a discussion of why the non-JetCore™ products that it seeks to include within the scope of discovery allegedly infringe the '192 and '840 patents. That page does not include any argument or analysis, only citations to a few pages from Foundry's document production that mention "buffers," "queues," "VLANs," and "trunk groups." Those brief references do not support a good faith belief that the related Foundry products infringe, and they do not satisfy Alcatel's burden of showing a basis to compel discovery from Foundry.

#### 1. The Documents Cited By Alcatel Are Inadequate.

Even if the documents cited by Alcatel showed what Alcatel argues they show, they would not be sufficient to support a good faith belief in infringement. With respect to the '192 patent, Alcatel attempts to show only that the Foundry products in question have two of the ten elements required by the patent claims: buffers and queues. With respect to the '840 patent, Alcatel seeks only to show that the Foundry products support VLANs and trunk groups, which do not correspond to *any* of the required claim elements as recited by Alcatel. *See supra*, p. 4. Even if the Court concludes that Alcatel need not provide detailed, element-by-element infringement charts for every accused product in order to obtain discovery, the meager showing it makes in its August 22 letter cannot be considered adequate. Alcatel should be held to the burden of showing some real nexus

between the hardware features of the Foundry products Alcatel wants to include in the case and the claim elements of the patents-in-suit.

Alcatel has repeatedly referred to the '192 and '840 patents as "hardware patents" (*see, e.g.*, Alcatel letter at p. 1), yet Alcatel's letter refers exclusively to descriptions of Foundry *software* to support its infringement claims with respect to two product groups. Specifically, for the BigIron RX product, Alcatel cites a single page from a PowerPoint presentation that describes certain aspects of a software release for that product. *See* Alcatel letter, Ex. E at p. FN A_382818; Declaration of Ken Cheng ("Cheng Decl.") ¶ 11. For the EdgeIron product group, Alcatel cites three pages from a set of *software* release notes. *See id.*, Ex. G at pp. FN A_355012, 355013, 355032. There is no basis to infer the existence of infringing hardware features from the fact that the products implement the referenced software. *See* Cheng Decl. ¶¶ 6, 8-11.

Finally, one of the Foundry documents cited by Alcatel does not even mention the product features for which it is cited. Specifically, Alcatel cites FN A_382818 in support of its claim that BigIron RX has a buffer, queues, VLANs, and trunk groups. *See* Alcatel letter, p. 7. The cited page is reproduced below:

**BigIron RX FCS Release is 2.2.00** 

- Based on MG8/NI40G release 2.2.00
- Same feature set with the following exceptions
    - Outbound ACLs
    - IPv6
    - VLAN Translation
    - VLAN Byte Accounting
    - IGMP Snooping
    - MAC authentication
    - Outbound Rate Limiting



22
CONFIDENTIAL TECHNICAL MATERIAL – ATTORNEYS' EYES ONLY
Subject to Protective Order in Foundry/Alcatel Litigation

FN A_00382818

As can be seen, this page says nothing about queues, buffers, VLANs, or trunk groups.[2] It says only that a BigIron RX *software* release has the "same feature set" (with specified exceptions) as a Terathon™ *software* release. *See* Cheng Decl. ¶ 11. It cannot be read as saying that BigIron RX has the same *hardware* as the Terathon™-based BigIron MG8 and NetIron 40G, which is the leap of logic Alcatel is trying to make.

### 2. REDACTED

Alcatel argues that because the BigIron RX and NetIron XMR/MLX products share the same family names as certain JetCore™ products, and because they all use software called IronWare™, it is reasonable to infer that these products have the same hardware. *See* Alcatel letter, p. 8. This inference is unreasonable for two reasons.

REDACTED

[3]

REDACTED

---

[2] Another page from the same document that Alcatel attaches to its letter but does not cite or discuss, *see* Ex. G at p. FN A_00382828, makes reference to "queue depth adjustment" and "improved trunking." However, this additional page does not explain those terms or mention VLANs or buffers.

[3] REDACTED

6

REDACTED

Alcatel also contends that all Foundry products run the same software, called IronWare, regardless of the hardware architecture. Alcatel letter, p. 8. This contention is untrue and misleading. The software that resides on the Foundry switches and routers is product-specific. Cheng Decl. ¶ 10. Although some products with different hardware architectures share some software features, and consequently some of the same "high level" code, the products require separate "hardware abstraction layer" software that essentially translates the high level code into a form where it can be used with the chipset associated with a particular hardware architecture. *Id.* Thus, even though all products use software called IronWare, the IronWare software has to be customized for particular hardware platforms.

### 3. Buffers and Queues Are Inherent Features of Data Networking Products

Foundry explained in its opening submission, and seeks to emphasize again here, that buffers and queues are *inherent features of every data networking product.* Data cannot be processed instantaneously, so it has to be temporarily stored in a buffer while the device determines where to send it and frees up resources to send it. Queues are needed to provide for the common scenario that multiple data packets need to be sent to the same location and the device needs a way to determine the order in which to process them. Foundry submitted with its opening papers a sample reference from the 1970s that discusses these principles. *See* Foundry's Opening Submission, page 9, fn. 4 & Ex. H. To demonstrate that that was not an isolated or unusual reference, Foundry submits three more references from the 1970s and 1980s that discuss buffers and queues in networking

devices. *See* Responsive Poppe Decl., Exs. A, B, C. Foundry also submits a fourth reference that, though of relatively recent vintage (2000), confirms Foundry's point that buffers and queues are inherent features of data networking devices. *See id.*, Ex. D.

### 4. Even For JetCore™ Products, Alcatel's Infringement Analysis Ignores Several Claim Elements

Alcatel's JetCore™ infringement analysis is undoubtedly more detailed than its infringement analysis of any other product. *Compare* Alcatel letter, pp. 2-7, *with id.*, pp. 7-8. Yet there are still glaring deficiencies in its analysis that shed further light on the unreasonableness of broadening discovery to include dozens of new products.

The '192 patent requires a "data block and outlet selection queue management logic." Alcatel contends that the JetCore™ products have a "buffer manager" that constitutes such a logic. *See* Alcatel letter, p. 2. The '192 patent further provides that the queue management logic "comprises" a "data block selection means." In other words, the data block selection means is described in the claim as *part* of the queue management logic. In its infringement analysis, however, Alcatel identifies the *entire* buffer manager —which already is alleged to constitute the queue management logic—as the data block selection means. *See id.*, pp. 2-3. This problem intensifies as one reads further through Alcatel's analysis. The '192 patent provides that the data block selection means "further comprises" a "first means," a "second means," and a "third means" for performing stated tasks. In each case, Alcatel once again identifies the *entire* buffer manager (in one case, operating in conjunction with other components) as the corresponding JetCore™ feature. *See id.*, pp. 3-4.

Foundry has made a full JetCore production, including detailed specifications of the computer chips, Verilog code (which describes the chip design in even greater detail),

and source code. Yet Alcatel's infringement case for JetCore™ relies on a single, high-level marketing document that does not identify structures even arguably corresponding to each specific element in the patent claims. If Alcatel cannot even trouble itself to provide a thorough infringement chart for a single Foundry product, it cannot reasonably ask for full discovery as to dozens of other products as to which it has not even made this half-hearted showing.

### C.   Alcatel Wrongly Accuses Foundry's Counsel of Lying to the Court About Whether BigIron RX Shares the Terathon™ Architecture

Based on flimsy, unsupportive evidence, Alcatel makes the serious charge that Foundry's counsel lied to the Court in asserting that the BigIron RX product does not share the Terathon™ hardware architecture. Alcatel is flat wrong.

In a sworn declaration submitted herewith, Ken Cheng, a Foundry vice president for the last eight years with product development responsibilities for much of that time, states as follows concerning this issue:

> A switch or router uses a combination of hardware and software to perform its functions. . . . The overall set of physical components is sometimes referred to as the hardware "architecture," of which the chipset is the most significant component.
>
> . . . .
>
> Foundry designed the computer chips that comprise the IronCore™, JetCore™, and Terathon™ chipsets in their entirety.
>
> . . . .
>
> Foundry's BigIron RX product is not an IronCore™, JetCore™, or Terathon™ product. The BigIron RX was developed more recently than the products with those architectures.

REDACTED

REDACTED

Alcatel relies on its misinterpretation of a page from Foundry's web site and a Foundry PowerPoint document as "proofs" that BigIron RX is a Terathon™ product. *See* Alcatel letter, pp. 8-9. In the case of the web site, Alcatel misinterprets a statement about the Terathon™-based BigIron MG8 as applying to the BigIron RX. Cheng Decl. ¶ 7. In the case of the PowerPoint, Alcatel misinterprets a statement about common software features between BigIron RX and the Terathon™ products as applying to their hardware architectures. *Id.* Detailed explanations of these points are set forth in the Declaration of Ken Cheng, submitted herewith.

It is all too clear that Alcatel put forth this extreme, unfounded accusation in order to distract attention away from the fact that it has no basis on the merits to charge the BigIron RX product, or the other Foundry products at issue here, with infringement of the '192 and '840 patents.

### D. Alcatel's Cited Case Law Is Inapposite

Alcatel has repeatedly cited the case of *Rohm & Haas Co. v. Brotech Corp.*, 1990 U.S. Dist. LEXIS 20117 (D. Del. Sept. 14, 1990), in support of its claim for discovery on additional Foundry products. That case is inapposite for several reasons, including that (1) it considered only whether defendant had to answer interrogatories, not engage in wide-ranging and burdensome document production; (2) defendant had waived its objections to the interrogatories; (3) defendant, unlike Foundry, did not "inform the Court

10

of [its objections to the scope of discovery] in its discovery responses," and (4) the parties did not cite and the court did not consider the case law that Foundry has cited in opposing discovery. *See id.* at *20-*21.

Also inapposite is *The Chamberlain Group, Inc. v. Interlogix, Inc.*, 2002 U.S. Dist. LEXIS 3046 (N.D. Ill. Feb. 21, 2002). There, the court held that where one product was alleged to infringe because it contained "Learn Mode" technology, defendant could be compelled to provide a list of other products that contained the same "Learn Mode" technology. *See id.* at *4-*6. Foundry has acted in accordance with this case by, for example, providing a list of all products that comply with the IEEE 802.1x standard, which Alcatel alleges infringes its '090 patent. However, the *Chamberlain* case did not adopt Alcatel's position here that if a technology is alleged to infringe a patent based on having ten elements, plaintiff can obtain discovery on any product that has two of those elements. The case focused on products that contained *the entire allegedly infringing technology*.

## III.   CONCLUSION

Alcatel is asking for unreasonably broad discovery without making a proper showing. For the reasons stated herein and in Foundry's opening submission, Foundry respectfully requests that the Court deny Alcatel's request for discovery on products as to which it has not shown a good faith basis to allege infringement.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

| | |
|---|---|
| William L. Anthony<br>Matthew H. Poppe<br>Michael F. Heafey<br>Orrick, Herrington & Sutcliffe LLP<br>1000 Marsh Road<br>Menlo Park, California  94025<br>(650) 614-7400 | By: /s/ Philip A. Rovner<br>      Philip A. Rovner (#3215)<br>      Hercules Plaza<br>      P.O. Box 951<br>      Wilmington, Delaware  19899-0951<br>      (302) 984-6000<br>      provner@potteranderson.com |
| (As to Count I only) | *Attorneys for Defendant/Counterclaimant*<br>*Foundry Networks, Inc.* |

Dated:  August 25, 2006
Public Version: September 1, 2006
748575

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on September 1, 2006, the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

### BY HAND DELIVERY AND E-MAIL

Josy W. Ingersoll, Esq.
Karen L. Pascale, Esq.
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391

I hereby certify that on September 1, 2006 I have sent by E-mail foregoing document to the following non-registered participants:

Timothy J. Haller, Esq.
Robert Greenspoon, Esq.
Sally Wiggins, Esq.
Niro, Scavone, Haller & Niro
181 W. Madison Street, Suite 4600
Chicago, IL 60602

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com