IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALCATEL USA RESOURCES, INC., a Delaware Corporation, and ALCATEL INTERNETWORKING, INC., a California Corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 05-418-SLR |
| FOUNDRY NETWORKS, INC., a Delaware Corporation, | ) ) ) | |
| Defendant. | ) ) | |

## ALCATEL'S ANSWERING BRIEF IN OPPOSITION TO FOUNDRY'S MOTION FOR LEAVE TO FILE AMENDED ANSWER AND COUNTERCLAIM

Josy W. Ingersoll  (No. 1088) [*jingersoll@ycst.com*]
John W. Shaw (No. 3362) [*jshaw@ycst.com*]
Karen L. Pascale (No. 2903) *[kpascale@ycst.com]*
Adam W. Poff (No. 3990) *[apoff@ycst.com]*
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600

Timothy J. Haller
Robert P. Greenspoon
Sally J. Wiggins
Robert A. Conley
NIRO, SCAVONE, HALLER & NIRO
181 West Madison Street, Suite 4600
Chicago, Illinois 60602
(312) 236-0733

September 11, 2006

# TABLE OF CONTENTS

I.     Nature and Stage of the Proceeding ........................................................................1

II.    Summary of Argument ...........................................................................................1

III.   Statement of Facts ................................................................................................3

      A.     Foundry's Proposed Amendments are Untimely and Prejudicial.................3

      B.     Foundry's Proposed Amendments are Brought in Bad Faith......................5

      C.     Foundry's Proposed Amendments are Futile .............................................7

      D.     Foundry Has Not Been Denied Discovery................................................10

IV.    Argument..............................................................................................................11

      A.     Applicable Standards of Law...................................................................11

      B.     Foundry's Proposed Amendments are Untimely and Prejudicial...............12

      C.     Foundry's Proposed Amendments are Brought in Bad Faith....................19

      D.     Foundry's Proposed Amendments are Futile ...........................................20

V.     Conclusion...........................................................................................................23

## TABLE OF AUTHORITIES

### CASES

*Adams v. Gould Inc.*,
739 F.2d 858 (3d Cir. 1984)....................................................................... 11-12

*Crossroads Sys. (Texas), Inc. v. Dot Hill Sys. Corp.*,
2006 U.S. Dist. LEXIS 36181 (W.D. Tex., May 31, 2006)...........................................6, 20

*Cureton v. NCAA*,
252 F.3d 267 (3d Cir. 2001).......................................................................11

*EBS Dealing Resources, Inc.v. Intercontinental Exchange, Inc.*,
379 F. Supp. 2d 521 (S.D.N.Y. 2005)................................................................9

*Ferguson Beauregard/Logic Controls, Division of Dover Resources, Inc.
v. Mega Sys., LLC*, 350 F.3d 1327 (Fed. Cir. 2003) .........................................................9

*Foman v. Davis*,
371 U.S. 178 (1962)..............................................................................11

*Harrison Beverage Co. v. Dribeck Importers, Inc.*,
133 F.R.D. 463 (D.N.J. 1990).....................................................................12

*Hill v. City of Scranton*,
411 F.3d 118 (3d Cir. 2005).......................................................................11

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997)......................................................................12

*In the Matter of Rambus, Inc.*,
No. 9302 (F.T.C Aug. 2, 2006).................................................................23, 24

*Inline Connection Corp. v. AOL Time Warner Inc.*,
2006 U.S. Dist. LEXIS 59616 (D. Del., Aug. 23, 2006) ......................................11, 12, 13

*Intuitive Surgical, Inc. v. Computer Motion, Inc.*,
2002 U.S. Dist. LEXIS 24808 (D. Del., Dec. 10, 2002)...............................................15

*Koken v. GPC Int'l, Inc.*,
2006 U.S. Dist. LEXIS 52488 (D. Del., July 31, 2006) ............................................11, 12

*Miller Prods. Co., Inc. v. Veltek Assocs., Inc.*,
218 F.R.D. 425 (D. Del. 2003) ....................................................................12

*Rambus Inc. v. Infineon Technologies AG*,
318 F.3d 1081 (Fed. Cir. 2003)......................................................................21

*Safe Bed Techs. Co. v. KCI USA, Inc.*,
2003 U.S. Dist. LEXIS 8514 (N.D. Ill. 2003) ................................................10

*Stambler v. RSA Security, Inc.*,
243 F.Supp.2d 74 (D. Del. 2003)....................................................................15

*Stowe Woodward, L.L.C. v. Sensor Products, Inc.*,
230 F.R.D. 463 (W.D. Va. 2005)......................................................................9

*Sun-Flex Co. v. Softview Computer Products Corp.*,
750 F. Supp. 962 (N.D. Ill. 1990) ....................................................................9

*Symbol Techs. v. Lemelson Med., Educ. & Research Found.*,
277 F.3d 1361 (Fed. Cir. 2002)........................................................................14

*Symbol Techs. v. Lemelson Med., Educ. & Research Found.*,
422 F.3d 1378 (Fed. Cir. 2005)................................................................. 14-15

*Vanderlande Indus. Nederland BV v. ITC*,
366 F.3d 1311 (Fed. Cir. 2004)........................................................................21

## RULES

A.B.A. Model Rule 3.7 ......................................................................................6

Delaware Lawyers' Rule of Professional Conduct  3.7......................................6

I.      **Nature and Stage of the Proceeding**

By order of the Court (D.I. 89), the initial scheduling order (D.I. 25) entered in this case was amended such that the final date by which the parties were entitled to file a motion to amend the pleadings was extended from July 12, 2006 to August 25, 2006.  On August 25, 2006, defendant Foundry Networks, Inc. ("Foundry") filed a motion seeking leave to file an amended answer and counterclaim (D.I. 134-136) to the amended complaint of plaintiffs Alcatel USA Resources, Inc. and Alcatel Internetworking, Inc. (collectively "Alcatel").  Alcatel's amended complaint (D.I. 5) was filed over one year ago, on July 27, 2006.  Fact discovery commenced in January of 2006 and is presently scheduled to close on October 16, 2006 (*see* D.I. 89), just over 30 days from Alcatel's filing of the instant opposition brief to Foundry's motion for leave to amend.  The parties presently have scheduled or are trying to schedule over thirty (30) depositions to take place between today's date and October 16, 2006.

II.     **Summary of Argument**

1.      While Federal Rule of Civil Procedure 15(a) provides that leave to amend shall be freely given when justice so requires, the Court may deny leave to amend for the reasons of undue delay, prejudice, bad faith, dilatory motive or futility.  The timing of Foundry's motion for leave to amend, as well as the nature of the proposed new defenses and counterclaims presented therein, supports that the Court should deny Foundry's motion.

2.      All of the proposed new defenses and counterclaims which Foundry seeks to introduce by amendment are untimely at this stage of the litigation.  Foundry's motion fails to point to a single fact upon which it relies in the proposed new pleadings which it

first learned between July 12 (the original deadline) and August 25. Foundry's highly
generalized complaints about the difficulty of scheduling depositions in modern litigation
do not satisfy its burden on this motion to prove that seeking amendment on the very last
day was not dilatory, and not the product of undue delay. In fact, as shown below,
Foundry undisputedly knew the outlines of the proposed "equitable estoppel" and related
defenses over a year ago.

      3.     All of the proposed new defenses and counterclaims are not only untimely
to Alcatel and the Court, but also prejudicial. In waiting until the 11th hour to file its
motion for leave to amend, Foundry has completely disregarded the instructions which
the Court provided during a teleconference on July 12, 2006. The timing of Foundry's
motion does not permit adequate time for Alcatel to obtain necessary discovery on
Foundry's proposed new defenses and counterclaims, and inevitably will require
additional accommodations to the governing schedule. The Court should deny Foundry's
motion in its entirety on this basis alone.

      4.     In addition to being untimely and prejudicial to Alcatel, Foundry's
proposed "equitable estoppel", "patent misuse" and "contract-based" defenses, as well as
Foundry's proposed "contract-based" counterclaim, are being introduced by Foundry at
this point in the litigation in bad faith. Since September of 2005, Foundry has been aware
of an opinion letter provided by the law firm of Howrey LLP in favor of Alcatel which
explains the aforementioned defenses and counterclaim (albeit concluding they are
baseless). Foundry engaged in a tactical delay by waiting to file its motion for leave to
amend until after the Court had ruled upon Alcatel's motion to disqualify the Howrey
firm (D.I. 12) from representing Foundry in this litigation. For this additional reason, the

                2                   

Court should deny Foundry's motion at least with respect to the aforementioned defenses and counterclaim.

5.    Foundry's proposed "equitable estoppel", "patent misuse" and "contract-based" defenses, as well as Foundry's proposed "contract-based" counterclaim, are also futile. The Federal Circuit has distinguished between patents which are "necessary" to practice a standard and patents which are not. Because Foundry admits (and Alcatel agrees) that the patents at issue clearly do not fall within the category of "necessary", the case law which Foundry relies upon is inapplicable, and there is no basis in law or fact for the aforementioned defenses and counterclaim which Foundry seeks to introduce. These defenses and counterclaim are therefore futile. The Court should deny Foundry's motion at least with respect to these defenses and counterclaim.

III.    **Statement of Facts**

In opposition to Foundry's motion to amend, Alcatel presents the following facts, all of which support the conclusion that the Court should deny Foundry's motion.

A.    **Foundry's Proposed Amendments are Untimely and Prejudicial**

The Court entered an initial scheduling order (D.I. 25) on October 12, 2005. In accordance with that order, the deadline by which the parties were entitled to file a motion to amend the pleadings was July 12, 2006. On July 14, 2006, the Court entered an amended scheduling order (D.I. 89) which extended the deadline by which the parties were entitled to file a motion to amend the pleadings to August 25, 2006. During the teleconference (D.I. 105) which occurred on July 12, 2006, and ultimately led to approval of the amended scheduling order, the Court instructed counsel for the parties as follows:

> Well, I will allow the amendment deadline to be postponed until August 25. *However, a caveat to that.* And that is that the amendments

happening toward the end of discovery and if they require a great deal of follow up that can't be accommodated in our schedule, then I will entertain a motion to disallow the amendment despite the fact that they're timely and we will not – so I just want to let you know that.

> ***If you know there are going to be amendments and if you know that those amendments are going to require substantial follow-up, then I suspect <u>you ought to be filing them early with the understanding that you can file a second amendment on or before August 25th. But don't leave things until the 25th and have me in another discussion about postponing the discovery deadline again.</u>***

All right?

(Ex. A, Transcript of July 12, 2006 Teleconference at p.7) (emphasis added). Counsel for Foundry acknowledged the Court's instructions and further admitted that Foundry was already preparing (or at least considering) some, if not all, of the amendments which it presently seeks to introduce to the pleadings:

> Thank you, Your Honor. I appreciate you saying that we can file two amendments if necessary. We don't like to do that, but we may have some ready sooner than August 25. So we would take you up on that opportunity. Thank you.

(*Id.* at pp.7-8). Foundry thereafter chose to ignore the Court's instructions. Foundry did not file a motion to amend the pleadings on any basis until August 25, 2006 – the very same date to which the Court specifically warned the parties not to leave things.

Fact discovery is scheduled to close on October 16, 2006. By the time that the parties have completed briefing Foundry's motion for leave to amend, there will be approximately one month remaining in the discovery period. Foundry's motion for leave to amend seeks to introduce no fewer than six new defenses and two new counterclaims, expanding the length of Foundry's pleadings sixfold (*see* D.I. 134, Ex. B). Should the Court grant Foundry's motion, Alcatel will need to obtain additional discovery with respect to each and every one of Foundry's new defenses and counterclaims. Under the

present scheduling order, Alcatel would be required to do so in less than 30 days – a timeline which in and of itself may preclude Alcatel from serving necessary written discovery. The same can be said of Alcatel's ability to take additional depositions that would be necessary as a result of Foundry's new defenses and counterclaims. The parties presently have scheduled or are trying to schedule over thirty (30) depositions to take place between today's date and the close of fact discovery on October 16, 2006. It would be all but impossible to further complicate this deposition schedule for the months of September and October.

### B.    Foundry's Proposed Amendments are Brought in Bad Faith

Foundry's proposed "equitable estoppel", "patent misuse" and "contract-based" defenses, as well as Foundry's proposed "contract-based" counterclaim, are all based upon Foundry's allegation that Alcatel was obligated to inform the Institute of Electrical and Electronics Engineers (the "IEEE") about Alcatel's '090 and '830 patents prior to the IEEE's adoption of an industry standard known as 802.1x (indeed, even before they were filed as patent applications) (D.I. 135 at pp.4-5). Foundry is aware that the law firm of Howrey LLP prepared an opinion letter in favor of Alcatel relating to the subject matter of these specific defenses and counterclaim (Ex. B, October 25, 2002 Opinion Letter from Howrey). Foundry has been aware of the Howrey opinion letter (and necessarily of the factual basis under which Foundry now seeks to introduce the aforementioned new defenses and new counterclaim) since at least as early as September of 2005 when Alcatel filed a motion to disqualify the Howrey firm from acting as Foundry's counsel in the present litigation (*see* D.I. 13).

Foundry engaged in a tactical delay by waiting to file its motion for leave to amend until after the Court had ruled upon Alcatel's motion to disqualify. The Court denied Alcatel's motion to disqualify on June 4, 2006 (D.I. 73). Foundry admits that it "has known of some of the facts on which these defenses are based for some time" (D.I. 135 at p.13). Foundry chose not to move to amend prior to the Court's disqualification ruling, presumably knowing that the introduction of such pleadings during the pendency of Alcatel's motion to disqualify the Howrey firm would have undermined Foundry's position on that issue.

Namely, the Howrey attorney who authored the opinion, Joseph Lavelle, becomes a critical pro-Alcatel witness should those defenses come in – at a minimum to show Alcatel's "good faith" on an equitable issue. As such, the entire Howrey firm is subject to disqualification under Delaware Lawyers' Rule of Professional Conduct 3.7 and A.B.A. Model Rule 3.7, the Delaware and ABA ethical rules which prohibit advocate-witnesses. *See Crossroads Sys. (Texas), Inc. v. Dot Hill Sys. Corp.*, 2006 U.S. Dist. LEXIS 36181 at *30-35 (W.D. Tex., May 31, 2006) (disqualifying entire firm from representing accused infringer in patent case when one of its members authored opinion letter which made him a likely witness). By tactically delaying its motion to introduce that defense, Foundry permitted the Court to rule on the issue without giving it a chance to decide the advocate-witness issue. Alcatel brought the original motion solely on the basis of Howrey's simultaneous representation of opponents (a ground the Court did not accept) because that was the only ground that Foundry led Alcatel to believe existed at the time. Foundry's actions indicate tactical delay and bad faith.

Foundry's bad faith will only further complicate the present proceedings. Should the Court grant Foundry's motion to amend with respect to any one of the proposed "equitable estoppel", "patent misuse" or "contract-based" defenses, or the proposed "contract-based" counterclaim, Alcatel might file a new motion to disqualify the Howrey firm. Absent such disqualification, the Howrey firm will be in the awkward position of having to provide testimony regarding the opinion letter which it prepared in favor of Alcatel, while at the same time representing Foundry in the present litigation. And, Alcatel will be in the awkward position of having to trumpet Mr. Lavelle's qualifications while opposing Howrey's advocacy for Foundry. The harm to Alcatel is already manifesting – Mr. Lavelle has not returned Alcatel's numerous inquiries into whether he will still support his opinion (Ex. C, correspondence from Timothy J. Haller on behalf of Alcatel to Joseph P. Lavelle). Whether or not such a new motion will succeed, the important fact is that Foundry tactically delayed its present motion in order to delay introducing those issues into this case, depriving the Court of the full disqualification picture when deciding the original disqualification motion.

**C.     Foundry's Proposed Amendments are Futile**

Foundry's proposed "equitable estoppel", "patent misuse" and "contract-based" defenses, as well as Foundry's proposed "contract-based" counterclaim, are all futile. As discussed above, each of these defenses and counterclaim are based upon Foundry's allegation that Alcatel was obligated to inform the IEEE about Alcatel's '090 and '830 patents prior to the IEEE's adoption of the 802.1x standard (D.I. 135 at pp.4-5). Foundry acknowledges that the IEEE only requires the disclosure of patents and patent applications that are "essential" to the practice of proposed standards (D.I. 135 at p.13).

The IEEE defines "essential" patents as those "whose infringement is unavoidable in a compliant implementation of a standard and where there is no other reasonable technical implementation available." (Ex. B, October 25, 2002 Opinion Letter from Howrey at p.12). Foundry has admitted that it ***does not contend*** that these Alcatel patents are "essential" to the practice of the 802.1x standard (D.I. 136 at Ex. P, p.10) ("Foundry does not contend that any of the Four Alcatel Patents-In-Suit, or any claim thereof, if properly construed, is "essential" to any IEEE standard as the term "essential" is used in Clause 6 of the IEEE Standards Association's Standards Board Bylaws.")

Indeed, neither the '090 patent nor the '830 patent (the two patents which are the subject of Foundry's proposed new defenses and counterclaim) are "essential" to the practice of the 802.1x standard. The claims of the '090 and '830 patents are directed toward the implementation of a user authentication method for a communication network having a plurality of nodes (Ex. D, U.S. Patent Nos. 6,874,090 and 6,339,830). The claims require the step of entering "user identification information" on a first node (Id). In contrast, while the IEEE 802.1x standard permits user identification information to serve as a means of authentication, the standard does not require the use of such information. Rather, the 802.1x standard allows for several forms of authentication credentials (*see* Ex. E, computer screenshots of authentication properties associated with 802.1x implementation). It follows that neither the '090 patent nor the '830 patent are "essential" to the practice of the 802.1x standard, thereby rendering Foundry's proposed new defenses and counterclaim futile. This is precisely what Mr. Lavelle concluded in the Howrey opinion. Foundry itself admits the '090 patent is not "essential" (D.I. 136 at Ex. P, p.10).

Foundry's proposed inequitable conduct defenses are also futile.    Foundry acknowledges that such defenses must be pled with particularity (D.I. 135 at p.14). *See Ferguson Beauregard/Logic Controls, Division of Dover Resources, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1342-43 (Fed. Cir. 2003).    This means that Rule 9(b) requires Foundry to plead exactly who made what misrepresentation or misleading omission to the Patent Office – "defendants must specify the time, place, and content of any alleged misrepresentations that plaintiffs made to the PTO." *Sun-Flex Co. v. Softview Computer Products Corp.*, 750 F. Supp. 962, 963 (N.D. Ill. 1990).    Moreover, Foundry cannot comply with the particularity standard by simply alleging that unspecified prior art, or even categories of prior art, were withheld from the Patent Office – Rule 9(b) requires the identification of specific documents or specific pieces of material information. *See EBS Dealing Resources, Inc. v. Intercontinental Exchange, Inc.*, 379 F. Supp. 2d 521, 532-33 (S.D.N.Y. 2005) (holding "the Reuters system" not particular enough since "there are potentially hundreds of Reuters systems which EBS failed to disclose to the USPTO because they were immaterial."); *Stowe Woodward, L.L.C. v. Sensor Products, Inc.*, 230 F.R.D. 463, 467-68 (W.D. Va. 2005) (holding "industry publications or products, including at least those of Interlink" not particular enough, since it fails to provide adequate notice of the allegations or sufficient information to form a defense).

Paragraph 67 of Foundry's proposed amended pleading contains the proposed inequitable conduct defense against the '090 and related patents (D.I. 134).    This paragraph does not plead exactly who made what misrepresentation or misleading omission.  Instead, it lists all seven inventors and two patent attorneys – a total of nine people – and makes a blanket averment attributed to no one in particular that "material

misrepresentations and failures to disclose prior art include" five different categories. At least one of those categories is hopelessly vague – "failure to disclose prior art references and to disclose analysis of prior art" (D.I. 134 at ¶ 67); *See Safe Bed Techs. Co. v. KCI USA, Inc.*, 2003 U.S. Dist. LEXIS 8514, at *3-4 (N.D. Ill. 2003) (holding that concealing "other material prior art" is not particular enough for Rule 9(b)). Paragraph 78 contains the proposed inequitable conduct defense against the '192 patent (D.I. 134). Like paragraph 67, this paragraph also fails to plead exactly who made what misrepresentation or misleading omission. These allegations are also futile.

### D.    Foundry Has Not Been Denied Discovery

Expecting that Alcatel will challenge Foundry for tactically delaying its motion, Foundry spends pages 9 through 11 of its brief seeking to blame Alcatel. Foundry mentions its efforts to seek discovery from Scot Reader, John May, Christie Parker Hale, Michel Henrion and Bart Pauwels (D.I. 135 at pp.9-11). This is textbook misdirection. None of these complaints has anything to do with Foundry's dilatory conduct in raising the "equitable estoppel" and related defenses. As mentioned, Foundry was on notice of such potential legal theories in September 2005. Instead, these complaints about the progress of discovery at most relate to Foundry's late efforts to plead inequitable conduct.

As to proposed inequitable conduct defenses, Foundry attacks Alcatel for Foundry's own mistakes (*e.g.*, issuing an invalid subpoena to Scot Reader), for "untimely" receipt of materials it admits it had for over a month before this motion (*e.g.*, the July 19 production of CPH and May documents), or for the decision of an elderly retiree residing in France to prefer to make himself available for a deposition under Treaty rules rather than voluntarily (*e.g.*, Mr. Henrion). More significant than Foundry's

apparent frustration with the ordinary give and take of third party discovery is Foundry's admission it has been planning to add inequitable conduct defenses for many months: "Foundry began seeking discovery related to a potential inequitable conduct defense in earnest in May 2006." (D.I. 135 at p.9). Hence, by Foundry's own admission, it intended to add such defenses to this case well before the original July 12 deadline, and well before any of the alleged obstacles that it blames Alcatel for creating.

## IV.    Argument

Foundry seeks leave to amend pursuant to Rule 15 of the Federal Rules of Civil Procedure. Foundry's motion should be denied because the proposed amendments are untimely, prejudicial, brought in bad faith and futile.

### A.    Applicable Standards of Law

"While Rule 15(a) provides that leave to amend should be 'freely given,' a district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Koken v. GPC Int'l, Inc.*, 2006 U.S. Dist. LEXIS 52488 at *6 (D. Del., July 31, 2006) (*citing Hill v. City of Scranton*, 411 F.3d 118, 134 (3d Cir. 2005); *Foman v. Davis*, 371 U.S. 178 (1962)).

While delay alone is an insufficient ground to deny leave to amend, at some point, the delay will become "undue," placing an unwarranted burden on the court, or will become "prejudicial," placing an unfair burden on the opposing party. *Inline Connection Corp. v. AOL Time Warner Inc.*, 2006 U.S. Dist. LEXIS 59616 at *22 (D. Del., August 23, 2006) (*citing Cureton v. NCAA*, 252 F.3d 267 (3d Cir. 2001)); *see also Adams v.*

*Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984). "Prejudice to the nonmoving party is a touchstone for the denial of an amendment." *Miller Prods. Co., Inc. v. Veltek Assocs., Inc.*, 218 F.R.D. 425, 427 (D. Del. 2003).

"Futility of amendment occurs when the complaint, as amended, does not state a claim upon which relief can be granted." *Koken*, 2006 U.S. Dist. LEXIS 52488 at \*7 (*citing In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). "If the proposed amendment 'is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend.'" *Id.* (*citing Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990)).

### B.    Foundry's Proposed Amendments are Untimely and Prejudicial

As discussed in detail above (*see* Section III.A), the relevant facts demonstrate that Foundry's 11th hour motion to amend is well past the point of being considered timely, not only in the context of Rule 15, but by the specific instructions of the Court as well. Foundry's motion places an unwarranted burden on the Court in that the motion will, if granted, inevitably require the Court to entertain another discussion about postponing the discovery deadline – a position in which the Court specifically cautioned the parties that it did not wish to be placed as a result of untimely motions to amend the pleadings (*see* Ex. A, Transcript of July 12, 2006 Teleconference at p.7).

Foundry's motion does not simply present an instance where Foundry is seeking to amend existing defenses and counterclaims by way of supplementation. Rather, Foundry's motion seeks to introduce no less than six entirely new defenses and two entirely new counterclaims (*see* D.I. 134, Ex. B). In denying in part a motion for leave to amend, this court has just recently recognized this very distinction. *See Inline*

*Connection Corp. v. AOL Time Warner Inc.*, 2006 U.S. Dist. LEXIS 59616 at *9, *33 (D. Del., August 23, 2006) (granting motion for leave to amend by way of supplementation of a previously pled prosecution laches defense, but denying motion for leave to amend with respect to entirely new inequitable conduct theories). The Court clearly instructed Foundry to file its amendments early, with the understanding that supplementation by way of a second amendment would be permitted through August 25, 2006 (Ex. A, Transcript of July 12, 2006 Teleconference at p.7). Foundry did not do so.

While both Foundry and its declarant, Matthew Poppe, assert that Foundry's new defenses and counterclaims are based upon "*additional information*" allegedly obtained by Foundry in July and August of 2006, neither Foundry nor Mr. Poppe bother to specifically identify the *new facts* that provide a basis for the new defenses and counterclaims presented in Foundry's untimely motion for leave to amend (*see, e.g.*, D.I. 136, Poppe declaration at ¶ 39). This is critical – even though Foundry bears the burden of showing what facts first developed between July 12 and August 25 that support its new defenses, neither its motion nor memorandum nor supporting declaration indicate a single fact developing for the first time between those dates. Rather, even Foundry's self-serving arguments admit instead that it had at least *some information* which would have allowed Foundry to plead its new defenses and counterclaims well in advance of August 25, 2006. As was the case in *Inline Connection*, Foundry's belated attempt to introduce entirely new defenses and counterclaims into the litigation at this stage should be rejected by the Court.

Foundry also attempts to undermine the untimely nature of certain of its newly proposed defenses and counterclaims by suggesting that the proposed amendments are

"insubstantial," "minor," and "will not affect the conduct of the proceedings in any meaningful way" (D.I. 135 at pp. 4, 5 and 15). If Foundry's new defenses are as "insubstantial" as Foundry claims, it begs questioning why Foundry found it necessary to wait until the last minute to introduce such pleadings. For instance, consider Foundry's newly proposed "prosecution laches" defense. Foundry misleads the Court to believe that adding this defense at the 11th hour is somehow timely because, at least according to Foundry, "the Federal Circuit case recognizing this defense for the first time only became final in February 2006, when the time to file a cert. petition to the U.S. Supreme Court from the Federal Circuit's en banc decision ran out without a petition being filed" (D.I. 135 at pp.5-6). Foundry does not bother to explain why it did not seek to amend the pleadings to introduce its "prosecution laches" defense prior to August 25, 2006, some six months after the case which Foundry relies upon allegedly became "final."

Perhaps more importantly, the Federal Circuit has recognized the defense of prosecution laches since 2002 – not 2006 as Foundry suggests. *See Symbol Techs. v. Lemelson Med., Educ. & Research Found.*, 277 F.3d 1361, 1368 (Fed. Cir. 2002) (holding that the equitable doctrine of laches may be applied to bar enforcement of patent claims that issued after an unreasonable and unexplained delay in prosecution). The Federal Circuit's subsequent decision in the same case several years later did not in any way expand Foundry's ability to plead a defense of prosecution laches. *See Symbol Techs. v. Lemelson Med., Educ. & Research Found.*, 422 F.3d 1378, 1384-85 (Fed. Cir. 2005) ("This court has earlier held in this case that prosecution laches may render a patent unenforceable when it has issued only after an unreasonable and unexplained delay in prosecution. We did not set forth any firm guidelines for determining when such

laches exists, but left this determination to the district court on remand, as the defense exists as an equitable doctrine."). Furthermore, dozens of courts throughout the country, including this district, have issued opinions (stemming back to 2002, mind you) discussing the viability of prosecution laches as a defense. *See, e.g.*, *Stambler v. RSA Security, Inc.*, 243 F.Supp.2d 74, 75 (D. Del. 2003); *Intuitive Surgical, Inc. v. Computer Motion, Inc.*, 2002 U.S. Dist. LEXIS 24808 at *9 (D. Del., Dec. 10, 2002). The fact that the law continues to develop, as it necessarily does with respect to nearly every legal subject matter conceivable, does not provide an excuse for Foundry's undue delay. Foundry had no reason to wait until August 25, 2006 to request leave to introduce its "prosecution laches" defense into the pleadings.

Foundry's "prosecution laches" defense is but one of the newly proposed defenses and counterclaims which are untimely. The same argument (if not a more compelling one) applies to Foundry's proposed "equitable estoppel", "patent misuse" and "contract-based" defenses, as well as Foundry's proposed "contract-based" counterclaim. With respect to these defenses and counterclaim, Foundry *admits* that it "has known of some of the facts on which these defenses are based for some time" (D.I. 135 at p.13). Again, the Court specifically instructed Foundry that in such instances, Foundry was to file a motion to amend *early*, with the understanding that Foundry could file a *second amendment* on or before August 25 (Ex. A, Transcript of July 12, 2006 Teleconference at p.7). While Foundry's counsel acknowledged that it would "take [the Court] up on that opportunity" (*id.* at p.8), Foundry thereafter elected to ignore the Court's instruction. Instead, Foundry waited until August 25, 2006 to file its motion for leave to amend – the precise date to which the Court instructed Foundry not to wait. The entirely new defenses and

counterclaims which Foundry now seeks to introduce by way of its motion to amend are without question untimely.

Incredibly, Foundry now attempts to shift the blame for its undue delay upon Alcatel by alleging that Foundry presented a proposed amended pleading to Alcatel in July of 2006 to which Alcatel did not object until the end of August of 2006 (D.I. 135 at p.2). Foundry's own supporting exhibits to its motion for leave to amend demonstrate that this is a blatant misrepresentation. Foundry's amended pleading was sent to Alcatel on July 24, 2006 (D.I. 136 at Ex. A). Alcatel responded *three days later* on July 27, 2006, providing Foundry with a detailed listing of the numerous reasons why Foundry's proposed amendments were futile (D.I. 136 at Ex. B). Foundry was well aware of Alcatel's position on Foundry's proposed amended pleading for nearly one month before Foundry found it convenient to file its motion for leave to amend. This undue delay is a result of Foundry's failure to act – not Alcatel's.

Foundry's undue delay also raises the issue of prejudice. Prejudice to Alcatel is the touchstone for denial of Foundry's motion to amend. In this instance, the prejudice to Alcatel, should the Court grant Foundry's motion, will be severe. By the time that the parties have completed briefing Foundry's motion for leave to amend, there will be less than one month remaining in the discovery period. Foundry's motion for leave to amend seeks to introduce no less than six new defenses and two new counterclaims (*see* D.I. 134, Ex. B), all of which Alcatel will need to obtain additional discovery on. Under the present scheduling order, Alcatel would be required to do so in less than 30 days – a timeline which in and of itself precludes Alcatel from obtaining necessary written

discovery.   Alcatel would have to add and/or locate new witnesses to support its rebuttals:

- Joe Lavelle of the Howrey firm, to show Alcatel's good faith concerning its conduct with the IEEE;

- other participants of the 802.1 working group, to show Alcatel's conduct was proper;

- various third parties like Texas Instruments and/or Qualcomm, to show Alcatel's offer to license on reasonable and nondiscriminatory terms was consistent with industry practice in such situations;

- IEEE policy makers, to flesh out how Alcatel's conduct was consistent with its rules and bylaws;

- Standards body expert witnesses, to provide opinions concerning the appropriateness and good faith of Alcatel;

- Patent Office practice and procedure experts, to show that Alcatel acted in good faith in securing patent protection, contrary to the inequitable conduct theories, and did not unreasonably delay its patent prosecution.

In short, amendment would vastly expand fact and expert discovery concerning defenses which are, to say the least, weak if not outright frivolous.  Opening expert reports are due October 31.

Foundry's assertion that Alcatel still has time to obtain any necessary discovery is sheer fantasy.  The parties presently have scheduled or are seeking to schedule over thirty (30) depositions to take place between today's date and the close of fact discovery on October 16, 2006.  Reality conveys that the timing of Foundry's motion, should the Court

elect to grant it, will likely require additional accommodations to the present schedule.

Foundry's motion to amend places the Court in the exact position which the Court warned

counsel for the parties that it did not wish to be in – "another discussion about postponing

the discovery deadline again." The Court should deny Foundry's motion.

### C.    Foundry's Proposed Amendments are Brought in Bad Faith

On October 25, 2002, the law firm of Howrey LLP provided a legal opinion in

favor of Alcatel. The subject matter of the Howrey opinion letter is explained as follows:

> We have been asked by our client, ALCATEL, to inform you of
> our analysis of whether Alcatel's membership with the IEEE's Standards
> Association ("IEEE-SA") and its limited contact with the standard-setting
> process for the IEEE Specification, 802.1X, the Port Based Network
> Access Control ("the IEEE 802.1X standard"), constrain in any way
> Alcatel's right to enforce U.S. Patent No. 6,339,830 ("the '830 patent"). In
> conducting this analysis, we have reviewed (a) the '830 patent, (b) the
> prosecution history of the '830 patent and its parent application, including
> the references cited during prosecution, (c) the IEEE-SA standard setting
> process, including the applicable IEEE-SA patent policies, and (d) IEEE
> 802.1X standard and industry application of the standard.
>
> For the reasons set forth below, it [is] our conclusion that a
> reasonable and well-informed judge or jury would find that Alcatel is not
> precluded from enforcing the '830 patent against a party adopting the
> IEEE 802.1X standard because the '830 patent is not essential to the IEEE
> 802.1X standard.

(Ex. B, October 25, 2002 Opinion Letter from Howrey at p.1).  In September of 2005,

upon learning of Howrey's representation of Foundry in the present litigation, Alcatel

filed a motion to disqualify the Howrey firm (D.I. 13). On June 4, 2006, the Court denied

Alcatel's motion to disqualify (D.I. 73).

Foundry engaged in a tactical delay by waiting to file its motion for leave to

amend until after the Court had ruled upon Alcatel's motion to disqualify.  Foundry

admits that it "has known of some of the facts on which these defenses are based for

some time" (D.I. 135 at p.13). Had Foundry moved to introduce its proposed "equitable estoppel", "patent misuse" and "contract-based" defenses, as well as its proposed "contract-based" counterclaim during the pendency of Alcatel's motion to disqualify, such an amendment would likely have been fatal to the Howrey firm's representation of Foundry. This is so because, as Foundry now explains, these specific defenses and counterclaim are all based upon Foundry's allegation that Alcatel was obligated to inform the IEEE about Alcatel's '090 and '830 patents prior to the IEEE's adoption of the 802.1x standard (D.I. 135 at pp.4-5) – the very same subject matter that the Howrey firm previously opined on *in favor of Alcatel.* It is only now that the disqualification issue has been resolved that Foundry seeks to introduce its new pleadings.

Foundry's tactical delay is a quintessential example of bad faith, and will only further complicate the present proceedings. Had Foundry filed its motion to amend with respect to any one of the proposed "equitable estoppel", "patent misuse" or "contract-based" defenses, or the proposed "contract-based" counterclaim before the Court's disqualification ruling, Alcatel would have asked the Court to consider advocate-witness disqualification as part of Alcatel's motion to disqualify the Howrey firm. One court has recently explained the appropriateness of such disqualification under similar circumstances involving the dilemma where a party's trial counsel would also be called as a witness:

> Since both the credibility and legal acumen of Morgan & Finnegan attorneys will be in issue at the trial, if other Morgan & Finnegan attorneys were permitted to serve as trial counsel, they would be placed in the awkward and unseemly position of having to advocate for the credibility and reliability of the testimony of their law partners. *Even worse, if the testifying Morgan & Finnegan attorneys were to give testimony that was adverse to Dot Hill's interests, the attorneys serving*

*as trial counsel would be squarely confronted with a conflict of interest in grappling with competing duties to the client and to the firm.*

\* \* \*

In sum, there are simply too many potential rabbit trails and invitations to jury confusion if Morgan & Finnegan attorneys were permitted to serve as trial counsel when their partners will be taking the stand as witnesses.

*Crossroads Sys. (Texas), Inc. v. Dot Hill Sys. Corp.*, 2006 U.S. Dist. LEXIS 36181 at

*32-34 (W.D. Tex., May 31, 2006) (emphasis added). Absent disqualification, the

Howrey firm will be in the very same "awkward position" discussed in *Crossroads*.

Howrey will be required to provide testimony regarding the opinion letter which it

prepared in favor of Alcatel, while at the same time representing Foundry in the present

litigation. This quandary, should it be permitted to surface, will be a direct result of

Foundry's bad faith in waiting to introduce its proposed amendments. To preclude this

situation from developing, the Court should deny Foundry's motion at least with respect

to Foundry's proposed "equitable estoppel", "patent misuse" and "contract-based"

defenses, as well as its proposed "contract-based" counterclaim.

**D.    Foundry's Proposed Amendments are Futile**

As discussed in detail above (*see* Section III.C), it is clearly apparent that both the

'090 patent and the '830 patent are, in fact, **_not_** "essential" to the practice of the IEEE's

802.1x standard. Again, Foundry admits that it does not believe either of these patents to

be "essential" to the 802.1x standard. As the IEEE only requires disclosure of "essential"

patents and patent applications during the standard setting process, Alcatel had no duty to

disclose these patents to the IEEE during development of the 802.1x standard. Absent a

duty for Alcatel to disclose the patents, Alcatel's silence is factually irrelevant – thereby

rendering any claim based upon such silence futile. *Vanderlande Indus. Nederland BV v. ITC*, 366 F.3d 1311, 1324 (Fed. Cir. 2004) ("A party raising equitable estoppel as a defense must prove, by a preponderance of the evidence, three elements: (1) The [patentee], who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence, (2) . . ."). Foundry's proposed "equitable estoppel", "patent misuse" and "contract-based" defenses, as well as Foundry's proposed "contract-based" counterclaim, are futile as a matter of fact.

As a matter of law, these defenses and counterclaims fare no better. In *Rambus Inc. v. Infineon Technologies AG*, the Federal Circuit distinguished between patents which are "necessary" to practice a standard, and patents which are not. 318 F.3d 1081, 1100-01 (Fed. Cir. 2003). The *Rambus* court held that under the applicable standards of the Joint Electron Devices Engineering Counsel (JEDEC), "Rambus's duty to disclose extended only to claims in patents or applications that *reasonably might be necessary* to practice the standard." *Id.* at 1100 (emphasis added). The Federal Circuit further explained that "the disclosure duty does not arise for a claim that recites individual limitations directed to a feature of the JEDEC standard *as long as that claim also includes limitations not needed to practice the standard.*" *Id.* (emphasis added).

This is precisely the case presently before the Court. Notably, the IEEE's policy which requires disclosure of "essential" patents (*i.e.*, "those whose infringement is *unavoidable* in a compliant implementation of a standard and where there is no other reasonable technical implementation available"), is even more exacting than the JEDEC policy which the *Rambus* court found to require disclosure of "reasonably necessary" patents. As previously discussed (*see* Section III.C), the claims of the '090 and '830

patents require the step of entering "user identification information" on a first node. This step is not a requirement of the 802.1x standard adopted by the IEEE, and the '090 and '830 patents are accordingly not "essential" to the practice of that standard. Importantly, *Foundry agrees*. (D.I. 136 at Ex. P, p.10) ("Foundry does not contend that any of the Four Alcatel Patents-In-Suit, or any claim thereof, if properly construed, is "essential" to any IEEE standard as the term "essential" is used in Clause 6 of the IEEE Standards Association's Standards Board Bylaws.")

Nonetheless, Foundry contends that its defenses and counterclaim are proper as a result of Foundry's subjective belief that Alcatel is construing the claims of the '090 and '830 patents in a manner which would render said patents "essential" to the practice of the IEEE's 802.1x standard (D.I. 135 at p.13). This argument misses the point. In the present case, Foundry admits that *it* does not believe the claims of the '090 and '830 patents are "essential" to the practice of the 802.1x standard. Foundry's mistaken interpretation of Alcatel's infringement contentions certainly does not provide a basis – either in fact or law – for pleading a defense or counterclaim *which requires Foundry to assert* that the claims of the '090 and '830 patents are "essential" to the practice of the IEEE's 802.1x standard. There is no basis in law or fact for the aforementioned defenses and counterclaim which Foundry seeks to introduce.

Foundry's apparent reliance on the Federal Trade Commission's related decision against Rambus Inc. also misses the mark. While Foundry does nothing more than reference the case in its motion for leave to amend (*see* D.I. 135 at p.13), the FTC's recent decision is distinguishable. Indeed, the FTC noted that the previously discussed *Rambus* case before the Federal Circuit "was very different from the case here," and also

encouraged that the FTC's holding "should not be read to mandate, that all SSOs should require disclosure of relevant intellectual property". *In the Matter of Rambus, Inc.*, No. 9302, at pp 34, 51, n.277 (F.T.C Aug. 2, 2006) (publicly available at www.ftc.gov/os/ adjpro/d9302/060802commissionopinion.pdf). The FTC's antitrust decision against Rambus is largely inapplicable to the pending patent infringement lawsuit between Alcatel and Foundry. The fact remains that there is no basis in law or fact for Foundry's proposed "equitable estoppel", "patent misuse" and "contract-based" defenses, as well as Foundry's proposed "contract-based" counterclaim. The Court should deny Foundry's motion for leave to amend.

## V.    Conclusion

In waiting until August 25, 2006 to file its motion for leave to amend, Foundry chose to ignore the specific instructions provided by the Court on July 12, 2006. Foundry's motion for leave to amend is untimely and prejudicial to Alcatel with respect to each of the new defenses and counterclaims which Foundry proposes. Foundry's motion should be denied in its entirety on that basis alone. Additionally, Foundry's proposed "equitable estoppel", "patent misuse" and "contract-based" defenses, as well as Foundry's proposed "contract-based" counterclaim, have all been brought in bad faith, and are all futile. At a minimum, the Court should deny Foundry's motion for leave to amend with respect to these specific defenses and counterclaim.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Dated: September 11, 2006

_Karen L. Pascale_

Josy W. Ingersoll  (No. 1088) [*jingersoll@ycst.com*]
John W. Shaw (No. 3362) [*jshaw@ycst.com*]
Karen L. Pascale (No. 2903) *[kpascale@ycst.com]*
Adam W. Poff (No. 3990) *[apoff@ycst.com]*
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600

Timothy J. Haller
Robert P. Greenspoon
Sally J. Wiggins
Robert A. Conley
NIRO, SCAVONE, HALLER & NIRO
181 West Madison Street, Suite 4600
Chicago, Illinois 60602
(312) 236-0733

> *Attorneys for Plaintiffs, Alcatel USA Resources, Inc
> and Alcatel Internetworking, Inc*

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on September 11, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Philip A. Rovner, Esquire *[provner@potteranderson.com]*
POTTER ANDERSON & CORROON LLP
Hercules Plaza
1313 N. Market Street
Wilmington, DE 19801

I further certify that on September 11, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### *By E-Mail and FedEx*

William L. Anthony, Esquire *[wanthony@orrick.com]*
Matthew H. Poppe, Esquire *[mpoppe@orrick.com]*
Michael F. Heafey, Esquire *[mheafey@orrick.com]*
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025

Henry C. Bunsow, Esquire *[BunsowH@howrey.com]*
K.T. Cherian, Esquire *[CherianK@howrey.com]*
HOWREY LLP
525 Market Street
Suite 3600
San Francisco, CA 94150

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Karen L. Pascale (No. 2903) *[kpascale@ycst.com]*
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
*Attorneys for Plaintiffs*