# YOUNG CONAWAY STARGATT & TAYLOR, LLP

JOSY W. INGERSOLL (NO. 1088)
DIRECT DIAL: 302-571-6672
DIRECT FAX:   302-576-3301
jingersoll@ycst.com

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(302) 571-1253 FAX
(800) 253-2234 (DE ONLY)
www.youngconaway.com

September 13, 2006

**By E-Filing**

The Honorable Sue L. Robinson
United States District Court
844 King Street
Wilmington, DE 19801

Re: *Alcatel USA Resources, Inc., et al. v. Foundry Networks, Inc.*,
Civil Action No. 05-418-SLR

Dear Chief Judge Robinson:

Alcatel USA Resources, Inc. and Alcatel Internetworking, Inc. (collectively, "Alcatel") respectfully submit this report to the Court as requested at the September 6, 2006 teleconference hearing.

To recap, the Court asked Foundry counsel to identify a total of four "specific requests, discovery requests [to Alcatel-affiliated non-parties] that are important to you [Foundry] and that you believe have not been in a good-faith effort addressed adequately by plaintiffs." (Transcript at 21). After Foundry counsel did so, the Court then told Alcatel counsel, "I'm going to give you the opportunity to go to whomever you need to get to make some progress, and within a week, I'm going to ask you to report back to me, in writing, via a letter." (Transcript at 28). The Court indicated if "we have not made *any* progress" (emphasis added), it might take one of a number of different actions, some of which might either be "unfair" to Alcatel or "unfair" to Foundry. (Id.). The Court added that it did not think any of the "unfair" consequences were appropriate.

Alcatel is pleased to report significant progress, as follows.

### A.    Discovery Requests Relating to Alcatel-as-Patentee-Plaintiff

#### 1.    Mr. Poppe's First Request

Mr. Poppe's first request (related to Count I issues) was for "documents relating to the development and implementation of the inventions of the patents in suit." (Id. at 26). He clarified that with respect to one patent, the inventor had produced about 70 pages of documents about conception, "but for two of the other patents that were completely developed overseas, I'm not aware of us having received any conception or development or implementation materials at all." (Id.).

Young Conaway Stargatt & Taylor, LLP
The Honorable Sue L. Robinson
September 13, 2006
Page 2

**Report to the Court**: The three "overseas" patents in suit are the '329 patent (Canada), the '192 patent (France or Belgium), and the '840 patent (France or Belgium).

### a.    '329 Patent

Mr. Poppe was misinformed when he told the Court he had not received conception/development/implementation materials for the '329 patent. Those documents are located in the range ALCATEL0013769-ALCATEL0022818, produced very early in discovery on February 23-24, 2006. Alcatel had collected those documents from the Canadian entity before the present dispute arose.

### b.    '192 Patent

Mr. Poppe was also misinformed when he told the Court he had not received conception/development/implementation materials for the '192 patent. Those documents are located in the range ALCATEL0153494-ALCATEL0153878, produced around August 8, 2006. They are the result of Alcatel's July 2006 requests to the French entity for patent prosecution files for the French parent application, invention disclosure documents they may have, and prior art that may be located within/among such files. We believe the French entity exhausted its search for documents of that nature. Some materials were withheld by Alcatel counsel for privilege reasons, and a withheld log is being prepared. It is possible additional materials might be produced on closer inspection of some of the under-review withheld documents, particularly ones written in the French language. Mr. Bart Pauwels also produced documents from his own files on this topic: BP00001-BP00076, produced August 8, 2006.

### c.    '840 Patent

The information above concerning the '192 patent applies equally to the '840 patent. In addition, the Belgian inventor who voluntarily flew to the United States to testify (Bart Pauwels) confirmed at his deposition that there was never any "implementation" of this patented invention (Pauwels Deposition at 33-36). Finally, as Foundry has acknowledged, Mr. Pauwels himself produced documents from his own files on this topic: BP00001-BP00076, produced August 8, 2006.

### 2.    Mr. Poppe's Second Request

Mr. Poppe's second request (relating to Count I issues) was for "documents relating to the licensing or attempted licensing of either the patents in suit or other patents related to networking products that would be equally relevant, potentially, to a determination of what a reasonable royalty would be."

**Report to the Court**: Alcatel previously produced two networking portfolio license agreements within this category on August 25, 2006. In response to Mr. Poppe's September 6 request, Alcatel is preparing a second production of additional networking portfolio license

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Sue L. Robinson
September 13, 2006
Page 3

agreements. Alcatel will produce immediately those which do not require notice to the other licensing party. For those licenses that do require notice to the other licensing party (approximately nineteen (19)), Alcatel has initiated that process. If the Court issues an "Order" to Alcatel to produce these immediately, Alcatel will do so with the understanding that this will excuse and/or accelerate the process of satisfying applicable notice provisions in individual license agreements.

### B. Discovery Requests Relating to Alcatel-as-Infringement-Defendant

#### 1. Mr. Cherian's First Request

Mr. Cherian's first request (relating to Count II issues) was for "the software associated with the various products sold by Internetworking, that are used in connection with providing PCX services." (Transcript at 22). When the Court asked him to specify "what products exactly are we talking about," Mr. Cherian answered, "the OmniPCX line of products and the SoftSwitch 5020 products and the products used with these two source code [sic] products." (Id. at 22-23).

**Report to the Court**: At the outset, Mr. Cherian overlooks that Alcatel Internetworking does not sell and has never sold the "SoftSwitch 5020 products." Mr. Cherian may verify this fact easily, since Alcatel has produced the entire orders database for Alcatel Internetworking, which identifies every product ever sold by this company and its predecessors from roughly 1996 to the present: ALCATEL00156604-ALCATEL00170607, produced August 25, 2006. Nothing has been held back in terms of permitting Mr. Cherian to verify the complete universe of all products ever sold by the Alcatel Internetworking legal entity. Hence, the true scope of the request is source code for the "OmniPCX line of products . . . and the products used with [it]."

Next, our best understanding of what Mr. Cherian means by "the products used with" the OmniPCX is the OmniSwitch line of products. Alcatel Internetworking does possess that OmniSwitch source code. Once final technical issues are resolved (including Foundry counsel indicating to Alcatel counsel which printer drivers it prefers), the laptops containing that source code can be shipped to Foundry counsel as early as tomorrow (September 14, 2006).

The only remaining aspect of Mr. Cherian's first request is OmniPCX source code. In the past week, Alcatel continued to receive resistance from the legal entity that controls that source code -- Alcatel Business Systems of Colombes, France (ABS). ABS personnel are extremely sensitive to confidentiality issues. We (Alcatel counsel) are in the process of alleviating those concerns, and continue to advise ABS that the restrictions of the current protective order are sufficient. In addition, we have "gone over their heads" (so to speak) and believe we have convinced personnel at their parent company of the importance of producing these materials. We expect that within one additional week, we will be able to report that the ABS-controlled source code for the OmniPCX products is on the way to Foundry. We are hopeful that we may have confirmation by tomorrow as to this scenario.

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Sue L. Robinson
September 13, 2006
Page 4

### 2. Mr. Cherian's Second Request

Mr. Cherian's second request (relating to Count II issues) was for "documents relating to the design and development of the products sold by Alcatel Internetworking, the design, development, all the technical documents." (Transcript at 22).

**Report to the Court**: We believe that, short of the source code, Mr. Cherian already has the documents reasonably related to this request. This includes documents collected from the selling party -- Alcatel Internetworking -- and the manufacturing non-party -- ABS. Mr. Cherian acknowledged having the 9000-plus page production from ABS. (Id. at 25). That production included highly confidential and proprietary functional specification and architecture products for every conceivable variety of the OmniPCX.

## CONCLUSION

As noted above, in every category Alcatel has made or is making significant progress to complete the production of Alcatel non-party documents to Foundry. We are making it our highest priority to make these materials available to Foundry at the earliest possible moment. Alcatel's counsel, Tim Haller, will be able to address any specific questions during the September 14, 2006 in-person conference.

Respectfully submitted,

Josy W. Ingersoll (No. 1088)

cc:    Clerk of the Court (by e-file and hand delivery)
       Phillip A. Rovner, Esquire (by e-file and hand delivery)