IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALCATEL USA RESOURCES, INC., a Delaware corporation, and ALCATEL INTERNETWORKING, INC., a California corporation, <br><br> Plaintiffs, <br><br> v. <br><br> FOUNDRY NETWORKS, INC., a Delaware corporation, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

CONFIDENTIAL
FILED UNDER SEAL
PURSUANT TO PROTECTIVE
ORDER

Civil Action No. 05-418-SLR

(JURY TRIAL DEMANDED)

**PUBLIC VERSION**

**REPLY DECLARATION OF MATTHEW H. POPPE IN SUPPORT OF
DEFENDANT AND COUNTERCLAIMANT FOUNDRY NETWORKS, INC.'S
MOTION FOR LEAVE TO FILE AMENDED ANSWER AND COUNTERCLAIM**

OF COUNSEL:

William L. Anthony
Matthew H. Poppe
Michael F. Heafey
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, California 94025
(650) 614-7400

(As to Count I only)

Dated: September 18, 2006

Public Version: September 25, 2006

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P. O. Box 951
Wilmington, Delaware 19899-0951
(302) 984-6000
Email: provner@potteranderson.com

*Attorneys for Defendant/Counterclaimant
Foundry Networks, Inc.*

I, Matthew H. Poppe, declare:

1.    I am a partner in the law firm of Orrick, Herrington & Sutcliffe LLP, counsel of record in this action for Defendant and Counterclaimant Foundry Networks, Inc. ("Foundry"). I am licensed to practice law in the State of California, and I am admitted to practice *pro hac vice* in the United States District Court for the District of Delaware in connection with this action. I have personal knowledge of the facts stated herein, except where otherwise stated, and I could and would testify competently to those facts if called as a witness.

2.    Alcatel did not announce until last week's discovery conference on September 14, 2006 that the sole inventor named on the '192 patent, Michel Henrion, had finally agreed, after months of discussions, to travel from France and be deposed.

3.    Although Foundry began asking Alcatel for deposition dates for the named inventors of the Alcatel Phase I patents-in-suit in May 2006, the first deposition of a named inventor for the '090 patent—Leon Sangroniz—did not take place until July 26, 2006. In fact, as I understand it, Mr. Sangroniz is not yet a named inventor but merely is the subject of a pending Alcatel request to add him as a named inventor on that patent.

4.    Only one other deposition had taken place by the time Foundry filed its motion to amend. That was the deposition of Charles Panza, a named '090 inventor, which took place on August 17, 2006. To date, Foundry is still waiting to depose two of the '090 inventors—Geoffrey Stone and Yuri Pikover—as well as the patent prosecutors. The Stone and Pikover depositions are currently scheduled to occur on September 22 and 26, respectively, and one of Alcatel's patent prosecutors is scheduled to be deposed on September 21.

5.     Until recently, Foundry did not know that there was any relationship between the Alcatel employees whom Alcatel had identified as participating in IEEE proceedings related to the 802.1x standard and the patents-in-suit. It was not until Alcatel made Leon Sangroniz available for deposition and we reviewed documents in preparation for that deposition in July 2006 that we realized Alcatel was seeking to add him as a named inventor with respect to the '090 patent and its parent, the '830 patent.

6.     Attached hereto as Exhibit A is a true and correct copy of excerpts from the deposition transcript of Leon Sangroniz, taken in this action on July 26, 2006, which Alcatel designated confidential.

7.     Attached hereto as Exhibit B is a true and correct copy of excerpts from the deposition transcript of Michele Goodwin, taken in this action on September 7, 2006, which Alcatel designated confidential.

8.     Last week, Alcatel took its first deposition, the witness being a Foundry Vice President, Bob Schiff. Alcatel's counsel, Tim Haller, spent a substantial amount of time questioning Mr. Schiff about IEEE practices and procedures. (Alcatel took four short depositions in January 2006 during Stage 1 of Phase 1 for the purpose of deciding which of its nine patents-in-suit to assert during Phase I. Alcatel has asked to re-depose all four witnesses.)

9.     Attached hereto as Exhibit C is a true and correct copy of Plaintiffs' Brief in Support of Their Motion to Disqualify Howrey, LLP, filed in this action on or about September 8, 2005.

10.     Attached hereto as Exhibit D is a true and correct copy of Defendant Foundry Network Inc.'s Opposition to Plaintiffs' Motion to Disqualify Howrey LLP or,

in the Alternative, Foundry's Motion to Sever, filed in this action on or about September 22, 2006.

    11.    Attached hereto as Exhibit E is a true and correct copy of the Order issued by the Court in this action on or about June 14, 2006.

    12.    Attached hereto as Exhibit F is a true and correct copy of excerpts from the transcript of the hearing in this action on June 13, 2006.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed in Menlo Park, California on September 18, 2006.

/s/
_____
Matthew H. Poppe

# EXHIBIT A

# THIS EXHIBIT HAS BEEN

# REDACTED IN ITS ENTIRETY

# EXHIBIT B

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ALCATEL USA RESOURCES, INC.,           )
a Delaware Corporation, and            )
ALCATEL INTERNETWORKING, INC.,         )
a California Corporation,              )
                                       )
                    Plaintiffs,        )
                                       )        Civil Action No. 05 418-SLR
            v.                         )
                                       )
FOUNDRY NETWORKS, INC.,                )
a Delaware Corporation,                )
                                       )        (JURY TRIAL DEMANDED)
                    Defendant.         )

## PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION TO DISQUALIFY HOWREY, LLP

Dated: September 8, 2005

Josy W. Ingersoll (#1088)
John W. Shaw (#3362)
Adam W. Poff (#3990)
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone 302 571-6600

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... ii

I.      NATURE AND STAGE OF THE PROCEEDING ................................................ 1

II.     SUMMARY OF ARGUMENT ............................................................................. 1

III.    STATEMENT OF FACTS .................................................................................... 2

IV.     ARGUMENT ....................................................................................................... 5

        A.      Disqualification is Necessary and Appropriate ....................................... 5

        B.      Alcatel is a Current Client of Howrey  for the Subject Matter
                of This Litigation ................................................................................... 8

        C.      Disqualifying One Attorney at Howrey Requires Disqualifying
                All Attorneys at Howrey ......................................................................... 9

        D.      Howrey's Attempt to Limit Its Appearance Does Not Avoid
                Conflict ................................................................................................. 9

V.      CONCLUSION .................................................................................................. 11

DB01:1844297 1

064207 1001

<u>**TABLE OF AUTHORITIES**</u>

**FEDERAL CASES**

<u>Page</u>

<u>End of Road Trust</u> v. <u>Terex Corp.</u>,
   2002 U.S. Dist. LEXIS 2586 (D.Del. 2002) ..................................................................5

<u>In re Freedom Solar Center, Inc.</u>,
   776 F.2d 14 (1st Cir. 1985).........................................................................................6

<u>I.B.M. Corp.</u> v. <u>Levin</u>,
   579 F.2d 271 (3rd Cir. 1978) .......................................................................................6

<u>Kabi Pharmacia AB</u> v. <u>Alcon Surgical, Inc.</u>,
   803 F. Supp. 957 (D.Del. 1992)................................................................................6, 7

<u>United States</u> v. <u>Miller</u>,
   624 F.2d 1198 (3rd Cir. 1980) ...............................................................................6, 11

ii

I.    **Nature and Stage of the Proceeding**

　　　　Plaintiffs filed an amended complaint on July 27, 2005 (D.I. 5) stating one count of patent infringement and one count seeking a declaratory judgment of non-infringement. Defendant filed an answer as to Count I on August 11, 2005 (D.I. 7) and an answer and counterclaim as to count II on the same date (D.I. 8). Fact discovery has not yet commenced. Howrey LLP entered its appearance for Foundry on Count II and the counterclaims. Because Howrey currently represents Alcatel on matters which directly overlap these claims, Alcatel has moved to disqualify Howrey. This is Alcatel's opening brief.

II.    **Summary of Argument**

　　　　1.　　Howrey's representation here is a violation of the Delaware Lawyer's Rules of Professional Conduct Rule 1.7 which prohibits a lawyer from representing a client if the representation creates a concurrent conflict of interest.

　　　　2.　　Similarly, a concurrent conflict of interest exists if the representation would be directly adverse to another client.

　　　　3　　Alternatively, a concurrent conflict of interest exists here because there is a significant risk that the representation of Foundry will be materially limited by Howrey's responsibilities to Alcatel.

　　　　4.　　Howrey's conduct breaches at least Rules 1.3, 1.7, 1.8 and 1.10 of the Delaware Lawyers Rules of Professional Conduct.

　　　　5.　　Foundry is already adequately represented by other lead counsel in this case including Orrick, Herrington & Sutcliffe LLP, one of the largest IP firms in the United States.

6. Howrey's continued presence in this case will complicate discovery by requiring a more extensive protective order and duplicative procedures for producing documents and deposing witnesses.

7. Alcatel is entitled to continuing advice and counsel from Howrey that is free from limitation or conflict on the matters for which it has been retained. Since there is direct overlap between the subject matter of this action and the subject matter of Howrey's preexisting representation of Alcatel, Howrey should be disqualified from representing Foundry in this action.

## III.    Statement of Facts

On August 11, 2005, Foundry filed its "Answer to Count II of Plaintiffs' Amended Complaint and Counterclaim" (D.I. 8). There, Foundry disclosed that it has retained the Howrey firm to represent its interests in this action. Howrey has an ongoing client relationship with Alcatel for, among other things, advice and counsel on licensing negotiations between Alcatel and Microsoft Corporation ("Microsoft") that involve U.S. Patent No. 6,339,830 (the "'830 patent"), one of the patents asserted by Alcatel in this action. Howrey has asked Alcatel to consent to concurrent representation, but Alcatel declined to consent explaining that the conflict was too serious to be waived (Ex. 1, Berres Declaration at ¶ 10).

In June, 2002, Alcatel hired the Howrey firm to evaluate the conditions under which the '830 patent was examined and issued by the US Patent and Trademark Office ("PTO") and other matters relating to the enforceability of the '830 patent. Howrey

2

attorneys Joseph Lavelle and Vivian Kuo were assigned to work on the task. Howrey was informed that the purpose of the representation was to assist Alcatel in efforts to license the '830 patent to Microsoft (Ex. 1, Berres Declaration at ¶¶ 4-5).

At the outset of the work, Alcatel provided a 34 page primer on the history of the inventions of the '830 patent to Howrey attorneys. The primer was created by other counsel for Alcatel for the purpose of providing a complete and candid background on the relative merits of the '830 patent for the Howrey attorneys. The primer (designated as confidential and privileged on every page) is full of detailed information identifying internal documents and personnel, all of which is highly relevant to the subject matter of the '830 patent (Ex. 1, Berres Declaration at ¶ 6). The Howrey attorneys also had access to the Alactel executive and legal staff for any additional information needed to prepare a complete evaluation of the '830 patent (Ex. 1, Berres Declaration at ¶ 7).

In the course of its representation of Alcatel, Howrey prepared and sent a 39 page report to Microsoft on behalf of Alcatel (Ex. 2). The report provides an extensive analysis of the prosecution of the '830 patent in view of multiple legal theories that Microsoft could have alleged as defenses to any action for infringement including equitable estoppel (Ex. 2, p. 3), patent misuse (Ex. 2, p. 4), antitrust claims under the Sherman Act (Ex. 2, p. 6), unfair competition claims under the FTC Act (Ex. 2, p. 8), common law fraud (Ex. 2, p. 9) and other state causes of action (Ex. 2, p. 10). In other words, Howrey's assignment was to consider likely defenses that an accused infringer of the '830 patent may raise at trial and consider the facts and evidence available to Alcatel to respond to those defenses.

3

Alcatel is still negotiating with Microsoft on the terms of a license agreement on a family of patents including the '830 patent and very well may have further need for the assistance of Howrey in the process (Ex. 3, Lucas Declaration ¶¶ 6-7). Howrey has known since December, 2002 that the Microsoft negotiation is an ongoing matter where further services from Howrey may be required. The licensing negotiations on which Howrey assisted Alcatel have now matured into cross licensing negotiations. These cross licensing negotiations include discussions between the parties on a range of Alcatel products including the VoIP OmniPCX System – the very product identified as the infringing device in Foundry's counterclaim (Ex. 3, Lucas Declaration ¶ 5).

Alcatel has not received notice from Howrey, written or otherwise, indicating that the representation no longer exists (Ex. 1, Berres Declaration at ¶ 9); (Ex. 3, Lucas Declaration ¶ 8). Neither Mr. Lavelle nor Ms. Kuo has left the Howrey firm. As of the time of filing of this motion, both are identified as practicing in Howrey's Intellectual Property group (Ex. 4).

Moreover, Foundry has already retained Orrick, Herrington & Sutcliffe LLP to represent it with respect to Alcatel's infringement claims. The Orrick firm is a large and well known intellectual property litigation firm with hundreds of attorneys throughout the world (Ex. 5).

The Orrick firm can represent Foundry on Count II and on its counterclaim without creating any conflicts in violation of the rules of professional conduct.

4

064207 1001

## IV.    Argument

The Howrey firm is certainly aware of the problem that representing Foundry in this case creates. This is clear because, after Alcatel's complaint was filed, Howrey contacted Alcatel and asked for its consent to the concurrent representation of Foundry (Ex. 1, Berres Declaration at ¶ 10). Of course, if Howrey believed there was no conflict problem, there would have been no need to seek Alcatel's consent. But Howrey asked and Alcatel declined to consent. Howrey does not argue these facts. Howrey's decision to appear in this case on behalf of Foundry was made without regard to Alcatel's express refusal to give consent.

Howrey is now in the untenable position of representing conflicting interests. Howrey's representation of Foundry in this case is a serious breach of multiple sections of the Delaware Lawyer's Rules of Professional Conduct including Rules 1.3, 1.7, 1.8 and 1.10. For the reasons set forth in more detail below, Alcatel seeks an order from this court disqualifying Howrey from representing Foundry in this action and barring Foundry from seeking any indirect assistance from Howrey in this matter without prior written consent from Alcatel.

### A.    Disqualification is Necessary and Appropriate

Local Rule 83.6(d) gives the Court broad discretion for dealing with counsel who violate the applicable professional rules, up to and including disbarment from this Court. The Local Rules of this Court refer to the ABA Model Rules of Professional Conduct which have been adopted as the Delaware Rules. End of Road Trust v. Terex Corp., 2002 U.S. Dist. LEXIS 2586 at *4-5 (D.Del. 2002) (Ex. 6).

Rule 1.7(a) of the Delaware Lawyers' Rules of Professional Conduct ("DLRPC") prohibits representation where there is a concurrent conflict of interest. Specifically, the rule states that a concurrent conflict of interest exists if either:

    (1)    the representation of one client will be directly adverse to another client; or

    (2)    there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client.

It is well established that this court has the power to disqualify "those whose conduct breaches the norms as established by the bar." Kabi Pharmacia AB v. Alcon Surgical, Inc., 803 F. Supp. 957, 960 (D.Del. 1992). This power extends to the authority to disqualify both an attorney and the attorney's law firm from representation. United States v. Miller, 624 F.2d 1198, 1201 (3rd Cir. 1980). Even if there is doubt about the existence of a conflict, such doubts should be resolved in favor of disqualification. In re Freedom Solar Center, Inc. 776 F.2d 14, 17 (1st Cir. 1985)(citing I.B.M. Corp. v. Levin, 579 F.2d 271, 283 (3rd Cir. 1978)).

If Howrey is permitted to represent Foundry in this case there will be a glaring, concurrent conflict of interest under **both** prongs of DLRPC 1.7(a). Howrey currently represents Alcatel in matters relating to US Patent No. 6,339,830 (the "'830 patent"). Simultaneously, Alcatel has sued Foundry under the '830 patent. Thus Alcatel and Foundry are adverse parties in a matter for which Howrey has given, and is expected to continue to give, legal advice to Alcatel. It is difficult to imagine a more severe case of direct adversity between two clients.

DLRPC 1.7(b) excuses certain conflicts arising under rule 1.7(a) if "each affected client gives informed consent, confirmed in writing." Here, Howrey has received in writing

6

an express refusal to consent. Therefore it has and had no basis for accepting representation of Foundry in this case.

The Pharmacia case is particularly analogous to the facts here. Pharmacia was a patent infringement case where the plaintiff moved to disqualify counsel for the defendant due to concurrent representation that created a conflict under Rule 1.7. Kabi Pharmacia AB, at 958. The court found that an attorney client relationship did exist over the defendant's argument that the firm in question was not actively providing services at the time of its appearance in the instant litigation. Id. at 962. The court disqualified the defendant's counsel, despite (unlike this case) some evidence of the plaintiff's acquiescence and despite the fact that the litigation was approaching the close of fact discovery (also unlike this case). Id. at 964-965.

Alcatel's grounds for disqualifying Howrey are stronger than the grounds relied on by the Pharmacia court. Here, there is no doubt that Alcatel has consistently declined Howrey's requests to consent to concurrent representation. When Alcatel asked Howrey to withdraw from representing Foundry in this case, Howrey replied that it "has not and will not claim that Alcatel consented to Howrey's representation of Foundry Networks." (Ex. 7). Further, in Pharmacia, the representation involved patents relating to different subject matter (Id. at 958), whereas here the subject matter of the concurrent representation relates to the identical patent and the same Alcatel product.

**B.    Alcatel is a Current Client of Howrey**
**for the Subject Matter of This Litigation**

As discussed, in June, 2002, Alcatel hired the Howrey firm to evaluate the conditions

under which the '830 patent was examined and issued by the PTO and other matters relating

to the enforceability of the '830 patent. Howrey attorneys Joseph Lavelle and Vivian Kuo

were assigned to work on the task. Howrey was informed that the purpose of the

representation was to assist Alcatel in ongoing efforts to license the '830 patent to Microsoft.

Importantly, Alcatel is still negotiating with Microsoft on the terms of a license

agreement on a family of patents including the '830 patent and may have further need for the

assistance of Howrey in the process (Ex. 3, Lucas Declaration, ¶ 7). Howrey has known since

December, 2002 that the Microsoft negotiation is an ongoing matter where further services

from Howrey may be required.

Mr. Lavelle of Howrey inquired about terminating Howrey's representation of Alcatel

in November, 2002. That request was expressly declined because Alcatel believed that it

would have an ongoing need for Howrey's services in this matter. (A privileged

communication between Alcatel and Howrey unequivocally supports Alcatel's claim. That

communication is available for an *in camera* review if the court would find it helpful.) Since

that time Howrey has given Alcatel no reason to believe that it has terminated its

representation.

> "If a lawyer's employment is limited to a specific matter, the
> relationship terminates when the matter has been resolved. ... Doubt about
> whether a client-lawyer relationship exists should be clarified by the lawyer,
> preferably in writing, so that the client will not mistakenly suppose the lawyer
> is looking after the client's affairs when the lawyer has ceased to do so."

8

DLRPC Rule 1.3. comment 4. This matter (Microsoft) has not been resolved and Alcatel has not received any clarification, written or otherwise, indicating that the representation no longer exists (Ex. 1, Berres Declaration, ¶ 9); (Ex. 3, Lucas Declaration ¶ 8).

### C. Disqualifying One Attorney at Howrey Requires Disqualifying All Attorneys at Howrey

Foundry's answer and counterclaim do not include Mr. Lavelle or Ms. Kuo as "of counsel." However, whether or not Lavelle and/or Kuo are assisting Foundry here does not avoid disqualification. "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9." DLRPC 1.10(a). *accord* DLRPC 1.8(k). Neither Mr. Lavelle nor Ms. Kuo has left the Howrey firm. As of the time of filing of this motion, both are identified as practicing in Howrey's Intellectual Property group. (Ex. 4).

### D. Howrey's Attempt to Limit Its Appearance Does Not Avoid Conflict

Howrey has taken pains to give an illusory appearance that there is no conflict. Howrey attorneys are not listed "of counsel" on Foundry's answer to Count I (which includes the '830 patent) of the complaint, but only on its answer and counterclaim to Count II. This is to make it appear as if the Howrey firm will only represent Foundry with respect to the Foundry claim of infringement against the Alcatel VoIP OmniPCX System. Such cosmetic adjustments do not avoid the application of Rule 1.7(a).

There is just one action before this court. It is inevitable that Howrey will have to work cooperatively with Foundry's other defense counsel whether it is overtly adverse to Alcatel in part of the case, or all of the case. There is no practical way to implement a "partial

9

appearance" in this case. The same witnesses are likely to be deposed. The same documents will be produced. The same issues will be litigated.

If Howrey is not disqualified, its presence will create the need for duplicative and burdensome discovery procedures. Documents will have to be produced twice, potentially with different designations in order to isolate the Howrey attorneys. Witnesses may have to be deposed twice, and objections during those depositions will inevitably be multiplied.

Each document request from Foundry will have to be identified as pertaining to either Count I or Count II of the complaint. Each interrogatory will have to be similarly parsed. Each 30(b)(6) deposition topic noticed by Foundry will require similar designation. If Howrey's appearance is limited to only part of the action, it is inevitable that disputes will arise regarding the limits of Howrey's authority to seek discovery on behalf of Foundry. Where there are disputes, there will be motion practice in the form of motions to compel and motions seeking a protective order. The resources of the parties and the court will be repeatedly expended on collateral issues that do not materially advance the objective of a "just, speedy and inexpensive determination of every action." Fed.R.Civ.P. 1.

The fact that Howrey does not expressly appear "of counsel" as to Count I merely underscores how little its participation is truly needed by Foundry. Foundry has already retained Orrick, Herrington & Sutcliffe LLP to represent it with respect to Alcatel's infringement claims. The Orrick firm is a large and well known intellectual property litigation firm with hundreds of attorneys throughout the world. Its website indicates that the Orrick firm is "the Number 2 Intellectual Property (IP) defense firm in the nation" and it "ranks ninth in the nation for the number of plaintiffs cases filed in 2002" (Ex. 5). Foundry

10

would not be harmed if Howrey was unable to represent its interests in this case, whether in defense of Alcatel's claims or in asserting Foundry's counterclaim. The Orrick firm can represent Foundry on Count II and on its counterclaim without creating any conflicts in violation of the rules of professional conduct.

Howrey's cosmetic adjustments are unavailing for an additional reason. It should come as no surprise to any party who has patent dealings with Microsoft that the licensing negotiations on which Howrey assisted Alcatel have matured into cross licensing negotiations (Ex. 3, Lucas Declaration ¶¶ 5-6). These cross licensing negotiations include discussions between the parties on a range of Alcatel products including the Alcatel VoIP OmniPCX System – the very product identified as the infringing device in Foundry's counterclaim (Ex. 3, Lucas Declaration ¶ 5). Without disqualification, Alcatel will be unable to obtain effective assistance from Howrey on any further negotiations with Microsoft. Alcatel will have to find another law firm and incur additional expense just to put that firm in the same position that Howrey already occupies.

V.    **Conclusion**

While not automatic as a *per se* rule, the ordinary result of a finding that an ethical rule has been violated is disqualification. United States v. Miller, 624 F.2d at 1201. There are no special circumstances here that justify a lesser result. Howrey is attempting the impossible -- to represent adverse parties on the same subject matter. Thus, Howrey has a divided loyalty to Alcatel and Foundry that cannot be resolved short of disqualification. For the reasons set

forth more fully above, Alcatel respectfully requests an order disqualifying the Howrey firm and barring Foundry from any further contact with Howrey relating to this case.

Respectfully Submitted,

Alcatel USA Resources, Inc., and
Alcatel Internetworking, Inc.


Jo§y W. Ingersoll (#1088)
John W. Shaw (#3362)
Adam W. Poff (#3990)
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
phone 302 571-6600
jingersoll@ycst.com

Timothy J. Haller
NIRO, SCAVONE, HALLER & NIRO
181 West Madison Street, Suite 4600
Chicago, Illinois 60602
phone (312) 236-0733
haller@nshn.com

Attorneys for Plaintiffs

DB01:1844297 1                                    064207 1001

## CERTIFICATE OF SERVICE

I, Josy W. Ingersoll, Esquire, hereby certify that on September 8, 2005 I caused to be electronically filed a true and correct copy of the **PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION TO DISQUALIFY HOWREY, LLP** with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Philip A. Rovner, Esquire
> POTTER ANDERSON & CORROON LLP
> Hercules Plaza
> 1313 N. Market Street
> P.O. Box 951
> Wilmington, Delaware 19899

I hereby certify that on September 8, 2005 I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and by E-Mail on the below listed counsel:

> William L. Anthony, Esquire
> Orrick, Herrington & Sutcliffe LLP
> 1000 Marsh Road
> Menlo Park, CA 94025

> YOUNG CONAWAY STARGATT & TAYLOR, LLP

> Josy W. Ingersoll (#1088)
> John W. Shaw (#3362)
> Adam W. Poff (#3990)
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19801
> (302) 571-6600
> jingersoll@ycst.com

> *Attorneys for Plaintiffs*

064207 1001

# EXHIBIT D

9/22
(4)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ALCATEL USA RESOURCES, INC.,<br>a Delaware Corporation, and<br>ALCATEL INTERNETWORKING, INC.,<br>a California Corporation, | )<br>)<br>)<br>)<br>) **Civil Action No. 05 418-SLR**<br>) |
| Plaintiffs, | )<br>) (JURY TRIAL DEMANDED) |
| v. | )<br>) |
| FOUNDRY NETWORKS, INC.,<br>a Delaware Corporation, | )<br>) |
| Defendant. | )<br>) |

## DEFENDANT FOUNDRY NETWORK INC.'S OPPOSITION TO
## PLAINTIFF'S MOTION TO DISQUALIFY HOWREY LLP
## OR, IN THE ALTERNATIVE, FOUNDRY'S MOTION TO SEVER

OF COUNSEL:

Henry C. Bunsow
K. T. Cherian
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, CA 94105
(415) 848-4900

Attorneys for Count II
Defendant and Counterclaimant
Foundry Networks, Inc.

Dated:  September 22, 2005

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

## TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ........................................ 1

II.    FACTUAL BACKGROUND ........................................................................... 3

III.   ARGUMENT ........................................................................................... 5

       A.     Plaintiffs Bear A Heavy Burden Of Proof On A Motion To
              Disqualify .................................................................................. 5

       B.     One Limited Engagement Nearly Three Years Ago With An
              Affiliate Corporation (Alcatel) Does Not Establish That
              Either Plaintiff Is A Current Client Of Howrey .............................. 6

       C.     There Is No "Substantial Relationship" Between Howrey's
              Prior Opinion Letter Concerning The '830 Patent And Its
              Representation Of Foundry With Respect To Its '864 Patent ........... 10

IV.    CONCLUSION ....................................................................................... 15

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Abbott Labs. v. Centuar Chemical Co.,*
    497 F. Supp. 269 (N.D. Ill. 1980) ......................................................................... 9

*Alexander v. Primerica Holdings, Inc.,*
    822 F. Supp. 1099 (D.N.J. 1993) ........................................................................... 6

*Artromick Int'l, Inc. v. Drustar, Inc.,*
    134 F.R.D. 226 (S.D. Ohio 1991) .......................................................................... 6

*Carlyle Towers Condo. Ass'n v. Crossland Sav.,*
    944 F. Supp. 341 (D.N.J. 1996) ....................................................................... 5, 13

*Century Glove, Inc. v. Iselin,*
    62 B.R. 693 (Bankr. D. Del. 1986) ...................................................................... 10

*Cohen v. Oasin,*
    844 F. Supp. 1065 (E.D. Pa. 1994) ........................................................................ 6

*Duncan v. Merrill Lynch, Pierce, Fenner and Smith,*
    646 F.2d 1020 (5th Cir. 1981) .............................................................................. 10

*Elonex I.P. Holdings, Inc., v. Apple Computer, Inc.,*
    142 F. Supp. 2d 579 (D. Del. 2001) ................................................................. 5, 14

*International Bus. Mach. v. Levin,*
    579 F.2d 271 (3rd Cir. 1978) .................................................................................. 8

*Kabi Pharmacia v. Alcon Surgical, Inc.,*
    803 F. Supp. 957 (D. Del. 1992) ......................................................................... 8, 9

*Leber Assocs., LLC v. The Entertainment Group Fund, Inc.,*
    2001 U.S. Dist. LEXIS 20352 (S.D.N.Y. 2001) ................................................... 9

*Manchester v. Narragansett Capital, Inc.,*
    1989 Del. Ch. LEXIS 141 (Del. Ch., Oct. 18, 1989) ............................................ 5

*Proxim v. 3Com,*
    C.A. No. 01-155-SLR, Mem. Order (D. Del. Nov. 28, 2001) ............................. 13

*Tackett v. State Farm Fire & Cas.,*
    653 A.2d 254 (Del. 1995) ..................................................................................... 14

*Unanue v. Unanue,*
    2004 Del. Ch. LEXIS 37 (Del. Ch. Mar. 25, 2004) ........................................... 5, 6

*United States v. Miller*,
    624 F.2d 1198 (3rd Cir. 1980) ............................................................................... 6

**RULES**

Fed. R. Civ. P. 21 .......................................................................................... 3, 12

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs Alcatel USA Resources, Inc. ("Alcatel USA Resources") and Alcatel

Internetworking, Inc. ("Alcatel Internetworking") seek to disqualify Howrey LLP from

representing Foundry Networks, Inc. ("Foundry") in this litigation, based upon a limited prior

engagement with plaintiffs' global affiliate conglomerate Alcatel, a French corporation

headquartered in Paris, France. The work Howrey performed for Alcatel in connection with that

engagement is unrelated to the work that Howrey will do for Foundry in this action against

Alcatel's affiliate, Alcatel Internetworking  Howrey represented Alcatel some three years ago

with respect to a single opinion letter concerning a standard-setting issue relating to United

States Patent Number 6,339,830 ("'830 patent"). Alcatel has not asked Howrey to do any

additional work for nearly three years. Now, however, plaintiffs claim that Alcatel "very well

may have further need for the assistance of Howrey" with respect to licensing negotiations for

the '830 patent which they assert have been ongoing during that entire time. Motion at 4.

Plaintiffs' motion should be denied. Plaintiffs' claim that Alcatel is a current client of

Howrey is belied by Alcatel's own conduct. Alcatel has not sought Howrey's services for years,

and has not raised any claim of conflict in other litigation in which Howrey has represented a

client with adverse interests. Plaintiffs' contention that Alcatel has some previously undisclosed

intention of asking for further legal services from Howrey at some point in the future does not

create a current client relationship between Howrey and Alcatel, Alcatel USA Resources or

Alcatel Internetworking for purposes of a motion to disqualify. The contention is motivated by

litigation tactics, and should be rejected.

Because neither Alcatel USA Resources, nor Alcatel Internetworking, nor their affiliated

global conglomerate Alcatel are current Howrey clients, there is no ground for disqualification in

1

the absence of at least a substantial relationship between the prior work that Howrey did for

Alcatel and its current representation of Foundry in this lawsuit. There is no such relationship.

Howrey is not representing Foundry in this action with respect to the '830 patent (Count I of

plaintiffs' amended complaint). Howrey is representing Foundry *only* with respect to Alcatel

Internetworking's declaratory judgment action against Foundry (Count II of plaintiffs' amended

complaint) and Foundry's related counterclaims on Foundry's United States Patent Number

6,118,864 ("'864 patent"). That representation is unrelated to the analysis that Howrey

performed for Alcatel on the '830 patent.

The two patents involve different Alcatel affiliates, and concern different fields of

invention and different accused technologies. Specifically, while the '830 patent claims (and

indeed, the claims of all patents asserted against Foundry in this action) are allegedly directed to

*data network routing and switching technologies*, Foundry's '864 patent claims are generally

directed to *telephony systems* and *communication platforms* for providing global private branch

exchange services (such a telephone call forwarding, call conferencing, call transfer and the like)

or other telecommunication services (such as voice-over-IP). *Compare* U.S. Patent No.

6,339,830 (attached hereto as Exhibit 1) *with* U.S. Patent No. 6,118,864 (attached hereto as

Exhibit 2). Foundry's accused data network routers and switches are distinctly different from

Alcatel Internetworking's accused OmniPCX communication platforms. *Compare* technical

descriptions of Foundry's accused routers and switches (attached hereto as Exhibit 3) *with*

technical description of Alcatel Internetworking's accused OmniPCX communication platform

(attached hereto as Exhibit 4) Furthermore, the two counts of the amended complaint are

wholly disjoint: Alcatel USA Resources is the sole plaintiff that allegedly "owns all right title

and interest in and has standing to sue for infringement" for the '830 patent and all other patents

2

asserted against Foundry in Count I of the amended complaint, while Alcatel Internetworking is the sole plaintiff seeking a declaratory judgment against Foundry in Count II of the amended complaint relating to the '864 patent.

Alcatel USA Resources' infringement claim on its '830 patent and Alcatel Internetworking's unrelated declaratory judgment action on Foundry's '864 patent could easily have been filed as separate lawsuits, and can properly be severed under Fed. R. Civ. P. 21. That those two separate entities chose to join their two unrelated counts, involving two unrelated patents, in one lawsuit by including Alcatel Internetworking's request for a declaratory judgment of non-infringement on the '864 patent does not affect the conclusion that there is no substantial relationship between the issues surrounding the two patents. Thus, the limited scope of Howrey's representation in this lawsuit is not substantially related to its prior work for Alcatel, and there is no basis for disqualification. However, should the Court conclude that severance would be necessary to address the alleged conflict that plaintiffs have raised, Foundry hereby respectfully moves the Court to sever Alcatel USA Resources' Count I and Alcatel Internetworking's Count II into separate actions.

## II.     FACTUAL BACKGROUND

In July 2002, Alcatel retained Howrey to prepare an opinion letter concerning a standards issue relating to the '830 patent. Joseph Lavelle, a partner in Howrey's Washington D.C office, prepared such a letter with the assistance of one associate. That letter, which is attached as Exhibit 2 to plaintiffs' motion, addressed the single issue of whether Alcatel's contact with the standard-setting process for an IEEE specification was likely to make the '830 patent unenforceable. Declaration of Joseph P. Lavelle ("Lavelle Decl."), ¶2. The opinion letter was

3

prepared on behalf of Alcatel[1] as a written communication of a legal opinion to third party Microsoft Corporation. It did not concern in any way the IP telephony product(s) at issue in Alcatel Internetworking's declaratory judgment action and Foundry's counterclaim in this case.

Work on that opinion letter occurred from July through October 2002, when Mr. Lavelle provided the completed letter to Alcatel. *Id*, ¶4. Other than one and a half hours of additional work on the matter in November 2002, Howrey did nothing further for Alcatel, and Alcatel did not ask for any additional work from Howrey. *Id.*, ¶¶4, 6. Thus, when Foundry approached Howrey to represent it in this lawsuit in June 2005, over two and a half years later, Mr. Lavelle did not consider Alcatel to be a current client of the firm. *Id*, ¶6.

However, because the prior work that Mr. Lavelle had done for Alcatel related to the '830 patent, one of the nine patents asserted against Foundry in Count I of plaintiffs' amended complaint, Mr. Lavelle called John Berres of Alcatel in June 2005 to discuss the possibility of a waiver that would permit Howrey to represent Foundry on *all of the claims* in this litigation— *i e.*, Alcatel USA Resources' Count I allegations of infringement concerning several of its patents (including the '830 patent), each of which relate to data network routing and switching technologies allegedly embodied in Foundry's accused network routers, as well as Alcatel Internetworking's wholly disjoint Count II declaratory judgment action concerning Foundry's '864 patent, which relates to IP telephony systems and services that Foundry alleges are provided by Alcatel Internetworking's accused OmniPCX products. *Id.*, ¶6. Mr. Berres indicated that Alcatel was not willing to provide such a waiver. However, Mr. Berres also did not state that he intended to call upon Howrey for any additional work, or that he considered Alcatel to be a current client of Howrey. *Id* At the time of Mr. Lavelle's call, he was not aware of, and did not

---

[1] All invoices for Howrey's legal services were billed to Alcatel, located at 54 Rue La Boetie, 75008 Paris, France, and which is not a plaintiff in this action. Those invoices are available for *in-camera* review if the Court should wish.

4

raise or discuss with Mr. Berres, the possibility of Howrey's limited representation of Foundry in this litigation with respect to the '864 patent only. *Id*

Howrey has appeared in this action on Foundry's behalf only on Count II of plaintiffs' First Amended Complaint ("FAC") and on Foundry's counterclaim. *See* Answer to Count II of Plaintiffs' Amended Complaint and Counterclaim. Both Count II of the FAC (which asserts a claim for declaratory judgment of non-infringement and invalidity) and Foundry's counterclaim concern the '864 patent only. Howrey does not represent Foundry with respect to Count I of the FAC, which include Alcatel USA Resources' claims under the '830 patent. Alcatel Internetworking is *not* alleged in Count I of the FAC to own any right, title or interest in any of the patents asserted against Foundry, including the '830 patent, nor is it alleged to have any standing to sue for infringement of that patent or any other patent asserted in Count I of the FAC.[2]

## III.    ARGUMENT

### A.    Plaintiffs Bear A Heavy Burden Of Proof On A Motion To Disqualify

This Court has the inherent power to supervise the professional conduct of attorneys appearing before it, including the power to disqualify an attorney. *Elonex I P Holdings, Inc , v. Apple Computer, Inc*, 142 F. Supp 579, 581 (D. Del. 2001). However, motions to disqualify are "generally disfavored." *Id* This is because a litigant " 'should, as much as possible, be able to use the counsel of his choice.' " *Unanue v Unanue*, 2004 Del. Ch. LEXIS 37 (Del. Ch., Mar. 25, 2004). Thus, a moving party in a motion to disqualify counsel bears a heavy burden to prove the necessary facts *Manchester v Narragansett Capital, Inc*, 1989 Del. Ch. LEXIS 141 at *9 (Del. Ch., Oct. 18, 1989); *Carlyle Towers Condo Ass'n v Crossland Sav*, 944 F.Supp. 341, 345 (D N J. 1996) ("the party seeking disqualification must carry a 'heavy burden' and must meet a

---

[2] The "Patent Assignment Abstract of Title" that appears on the United States Patent and Trademark Office website appears to confirm that Alcatel USA Resources, Inc. is the sole owner of the '830 patent. *See* Exhibit 5

'high standard of proof' before a lawyer is disqualified") (quoting *Alexander v Primerica Holdings, Inc* , 822 F.Supp. 1099, 1114 (D.N.J. 1993)).

To meet this burden, plaintiffs must "clearly show[] that continued representation would be impermissible." *Elonex, supra*, 142 F.Supp. at 581. " '[V]ague and unsupported allegations are not sufficient to meet this standard '" *Id* (quoting *Cohen v Oasin*, 844 F.Supp. 1065, 1067 (E.D. Pa. 1994)).

Moreover, even when a moving party shows that a conflict exists under the Delaware Rules of Professional Conduct, disqualification is not automatic. *Elonex*, 142 F.Supp. at 583. Disqualification is a "severe sanction" and a district court therefore has " ' wide discretion in framing its sanctions to be just and fair to all parties involved.'" *Id* (quoting *United States v Miller*, 624 F.2d 1198, 1201 (3rd Cir. 1980)).

### B.    One Limited Engagement Nearly Three Years Ago With An Affiliate Corporation (Alcatel) Does Not Establish That Either Plaintiff Is A Current Client Of Howrey

The question whether a party is a current client of a law firm for disqualification purposes is inherently factual and depends upon the evidence of the particular case. *See, e g , Unanue, supra*, 2004 Del. Ch. LEXIS 37 (finding that a law firm had terminated its attorney-client relationship with a company and certain board members despite a prior long-term relationship); *Artromick Int'l, Inc v Drustar, Inc* , 134 F.R.D. 226, 230 (S.D. Ohio 1991) (question whether party was a current client "can be decided only upon close examination of its specific facts and their relationship to the actual or reasonable expectations of the parties involved.").

No reasonable interpretation of the evidence supports plaintiffs' contention that Alcatel is currently a client of Howrey. Howrey represented Alcatel for the purpose of an opinion letter that was completed nearly three years ago, in October 2002. Howrey has not performed any work on that matter since November 2002, when Mr. Lavelle devoted one and a half hours to the file. Alcatel has not called upon Howrey for any additional work concerning this or any other

matter since that time. Lavelle Decl., ¶¶4, 6. Plaintiffs have not presented any evidence to the contrary.

The lack of ongoing contact is consistent with the specific nature of Howrey's engagement. As reflected in the opinion letter attached to plaintiffs' motion, Alcatel asked Mr. Lavelle only to provide an analysis of "whether Alcatel's membership with the IEEE's Standards Association ("IEEE-SA") and its limited contact with the standard-setting process for the IEEE Specification, 802.1X . . . constrain in any way Alcatel's right to enforce" the '830 patent. *See* Exhibit 2 to Motion. Alcatel did not call upon Howrey for any other services.

The limited nature of Howrey's prior engagement is also confirmed by the written retainer agreement between Alcatel and Howrey. That agreement refers to the subject matter of the engagement as "Retention of Howrey Simon for Standards Issue Opinion." In the "time to completion" estimate that Howrey provided on the budget forms that Alcatel provided, Howrey estimated "1 month."[3]  Lavelle Decl., ¶ 5.

Alcatel's failure to request any additional services from Howrey over the last three years belies plaintiffs' assertion that "further services from Howrey may be required" in ongoing license negotiations with Microsoft. In his declaration submitted in support of plaintiffs' motion, Eric Lucas states that, when he began working for Alcatel a year ago, he was "informed" that there were "ongoing patent licensing negotiations with Microsoft involving certain Alcatel patents." Declaration of Eric S. Lucas [in support of plaintiffs' motion], ¶4. Yet neither Mr. Lucas nor anyone else at Alcatel has asked Howrey to do anything at all with respect to those negotiations since November 2002. Alcatel did not disclose its purported intention to call upon Howrey for additional services until its affiliates, Alcatel USA Resources and Alcatel Internetworking, filed their motion to disqualify. Plaintiffs' claim that its global affiliate conglomerate Alcatel remains a client of Howrey (and the *implied* assumption that such alleged

---

[3]   The retainer agreement and budget forms are available for *in-camera* review if the Court should wish.

relationship is imputed to at least one of the affiliated plaintiffs) is simply an opportunistic litigation ploy.

This conclusion is supported by Alcatel's response to other litigation. Since early this year Howrey has represented a client in a patent matters in Europe adverse to Alcatel without any complaint by Alcatel that it is a current client of Howrey. *See* Declaration of Bart van der Broek. Plaintiffs' assertion of an alleged current client conflict in this litigation is strategic, not principled, and should not be given any credence.

The cases plaintiffs have cited in their supporting brief do not establish that Alcatel is a current Howrey client, or that either affiliate plaintiff was or is a current Howrey client. Indeed, the facts here are quite different from those cases that have found a current attorney-client relationship.

For example, in *International Bus. Mach. V. Levin*, 579 F.2d 271, 277 (3rd Cir. 1978), there was no dispute that the law firm in question accepted multiple labor law engagements from IBM during the time that it represented the plaintiff in an antitrust action against IBM. Here, in sharp contrast, Howrey's prior engagement with plaintiffs' global affiliate conglomerate Alcatel was (a) limited in scope (a single opinion letter) of relatively short duration (no more than five months), and (b) has been completely dormant and thus perceived by Howrey to be terminated for almost three years. Furthermore, while plaintiffs' motion implies (however misguided) that Howrey would have provided legal services to plaintiff Alcatel USA Resources *indirectly* through its earlier work for Alcatel on the '830 patent (since that patent is now allegedly owned by Alcatel USA Resources), Howrey has not provided any legal services to Alcatel Internetworking, the sole plaintiff concerned in Count II of the FAC, for which Howrey has been retained in this action.

The facts in *Kabi Pharmacia v. Alcon Surgical, Inc.*, 803 F.Supp. 957 (D.Del. 1992), are also dissimilar. There, the law firm in question had a continuing prior relationship with the plaintiff, Pharmacia, including representation in an ongoing litigation matter, and the firm billed Pharmacia for services during the same time period it represented the defendant, Alcon. *Id.* at

8

959-960. Here again, unlike the facts in *Kabi Pharmacia*, when Foundry approached Howrey to represent it in the present lawsuit, over two and a half years after a final invoice for legal services had been provided to Alcatel, Alcatel was not considered by Howrey to be a current client of the firm. Lavelle Decl , ¶6.

On the other hand, other cases with facts similar to this case have found no current attorney-client relationship sufficient to cause disqualification. For example, in *Abbott Labs v Centuar Chemical Co* , 497 F.Supp. 269 (N.D. Ill. 1980), the court held that an attorney's prior representation of Abbott in a patent interference action did not establish an ongoing attorney-client relationship, despite Abbott's claim that the attorney "may again be called upon" to represent Abbott in appeals or a civil action relating to the interference action. The court cited *IBM v Levin, supra*, for the standard applicable to current client conflicts, but concluded that the standard did not apply because Abbott was not a current client:

> In light of the fact that Abbott grounds its motion on little more than a possibility that Mr. Cheslow may continue to represent Abbott in the Corbin matter, and in light of the fact that nearly eleven months have passed since Mr. Cheslow last was asked to act on behalf of Abbott, this Court does not believe that the Dressler firm must await the passing of every possible deadline for appeal or other action before assuming that their representation of Abbott has terminated.

497 F. Supp. at 271.

Here, as in *Abbott Laboratories*, plaintiffs ground their motion on "little more than a possibility" that Alcatel may decide to call upon Howrey for additional work. Moreover, in contrast to the eleven months without a request for additional services in *Abbott Laboratories*, here nearly three years have passed since Alcatel asked Howrey to do anything, providing even stronger support for Howrey's reasonable conclusion that its representation of Alcatel had terminated. *See also Leber Assocs , LLC v The Entertainment Group Fund, Inc* , 2001 U.S. Dist. LEXIS 20352 (S.D.N.Y. 2001) (finding no current client relationship based upon a firm's prior work in preparing a will and setting up a trust in the absence of credible evidence that the client returned to the firm for additional work for four years).

9

The limited nature of Howrey's engagement, the passage of nearly three years' time, and the lack of any request by Alcatel for additional services all support the conclusion that Alcatel is not a current client of Howrey. Furthermore, the legal services rendered to plaintiffs' global affiliate conglomerate Alcatel regarding a discrete issue relating to the enforceability of the '830 patent provides no evidence that Howrey ever provided services to Alcatel Internetworking, the sole plaintiff concerned in Count II of the FAC, for which Howrey has been retained in this action. Plaintiffs have failed to meet their heavy burden of proving that disqualification is warranted based upon any current client relationship.

### C.   There Is No "Substantial Relationship" Between Howrey's Prior Opinion Letter Concerning The '830 Patent And Its Representation Of Foundry With Respect To Its '864 Patent

As discussed above, Alcatel is not a current client of Howrey, nor is either plaintiff a current client of Howrey. Although Alcatel is a former Howrey client, there is no basis for plaintiffs to seek Howrey's disqualification in a matter adverse to Alcatel absent a substantial relationship between that matter and Howrey's prior work for Alcatel.

To prove such a substantial relationship, plaintiffs must delineate with specificity the subject matter, issues and causes of action presented in the prior and current representation. *Century Glove, Inc v Iselin*, 62 B.R. 693, 695 (Bankr. D. Del. 1986). Merely pointing to a superficial resemblance between the past and present representation is insufficient. *Id.* (citing *Duncan v Merrill Lynch, Pierce, Fenner and Smith*, 646 F.2d 1020 (5th Cir. 1981)).

There is no substantial relationship between Howrey's work in preparing the opinion letter on the '830 patent and its limited representation of Foundry with respect to Count II of the FAC and Foundry's counterclaim in this litigation. Howrey has limited the scope of its representation of Foundry in this action to allegations concerning Alcatel Internetworking's declaratory judgment action and related counter-allegations of infringement by Foundry of the '864 patent, precisely to avoid the conflict claim that plaintiffs now assert. *See* Restatement of the Law Governing Lawyers, Section 132, comment "e" ("the lawyer may limit the scope of

10

representation of a later client so as to avoid representation substantially related to that undertaken for a previous client."). Howrey is representing Foundry *only* with respect to Foundry's claims concerning its '864 patent, *not* with respect to its defense against Alcatel USA Resources' infringement allegations concerning the unrelated '830 patent.

The two patents are separate and distinct, and are joined in this litigation only because Alcatel Internetworking decided to assert a claim for declaratory judgment of non-infringement and invalidity on the '864 patent along with affiliate Alcatel USA Resources' affirmative claims on its '830 patent (and other patents allegedly owned by that affiliate). Thus, the relevant question on plaintiffs' motion is not whether there is a substantial relationship between Howrey's prior work relating to the '830 patent and Alcatel USA Resources' claims under the '830 patent here, but whether there is a substantial relationship between Howrey's prior work for Alcatel and *Foundry's* claims under the '*864* patent in this case. There is no such relationship.

Howrey's work for Alcatel was limited to a standards issue concerning the '830 patent. Howrey's opinion letter analyzed whether a reasonable judge or jury would likely find that the '830 patent is unenforceable as a result of Alcatel's contact with the standard-setting process for an IEEE specification, 802.1X. Howrey's analysis of the enforceability of the '830 patent has nothing to do with issues of claim interpretation, validity or infringement of Foundry's '864 patent, which has different claims that are directed to a different field of invention, and is not related to the 802.1X standard. Howrey's prior analysis of the '830 patent did not concern in any way the IP telephony product(s) at issue in Alcatel Internetworking's declaratory judgment action in this case.

The lack of any relationship between the two patents is also reflected in the fact that they concern two distinct corporate entities. According to the FAC, Alcatel USA Resources, Inc., a Delaware corporation with its headquarters in Plano, Texas, owns the '830 patent. In contrast, Foundry's counterclaim alleges that *Alcatel Internetworking*, a separate California corporation, has infringed the '864 patent through its products, including the OmniPCX integrated communication system. Howrey's work for Alcatel involved only analysis of standards issues

11

surrounding the '830 patent, now allegedly owned by Alcatel USA Resources, not any products marketed or manufactured by Alcatel Internetworking. Thus, Howrey did not provide any services on behalf of Alcatel Internetworking, the cross-defendant on Foundry's counterclaim.

Plaintiffs do not offer any evidence of a substantial relationship between Howrey's standards analysis for the '830 patent and its representation of Foundry on its '864 patent. They do not even argue that such a substantial relationship exists. Rather, plaintiffs focus solely on the fact that the '830 patent is at issue in Count I of their FAC, and suggest that Howrey's limited representation of Foundry in this litigation is "illusory" and impractical.

That limitation is not illusory. Foundry has separate counsel for all issues concerning Alcatel USA Resources' affirmative claims under Count I. Howrey need not, and will not, act for Foundry with respect to those claims. That a bright line can be drawn between the two counts is apparent from the nature of the claims at issue. This litigation could have been filed as two separate actions. The two separate patents are at issue in the same case only because two separate entities chose to combine them into a single complaint. The two patents concern different technology spaces and different products: the '830 patent (characterized by plaintiffs as a "LAN Authentication Patent") relates to data networking routing and switching technologies allegedly embodied in Foundry's accused Internet routers and switches, while Foundry's '864 patent relates to IP telephony products, systems and services, which are provided by Alcatel Internetworking's accused OmniPCX products. *See* Foundry Accused Product Descriptions, attached hereto as Exhibit 3, in comparison to Alcatel Internetworking's OmniPCX Product Description, attached hereto as Exhibit 4. Foundry's accused products do not embody the inventions claimed in the '864 patent, and do not compete with the Alcatel Internetworking's accused OmniPCX products.

Thus, the counts can easily be severed under Fed.R.Civ.P. 21. Should the Court conclude that severance would be necessary to address the alleged conflict that plaintiffs have raised, Foundry hereby respectfully moves the Court to do so. Here, severance would answer any concern that Howrey could be in a position to assist in challenging an Alcatel patent for which it

12

offered an opinion on enforceability. This Court has previously severed claims on unrelated patents that otherwise would have created an alleged conflict. In *Proxim v. 3Com*, No. 01-155-SLR, the Court granted a motion to sever claims on patents that a predecessor firm to Howrey had prosecuted, and simultaneously denied a motion to disqualify. *See e.g.* Memorandum Order in *Proxim, Inc v. 3Com Inc., et al.* (D. Del., Civil Action No. 01-155-SLR), dated November 28, 2001, attached hereto as Exhibit 6.

However, severance should not be necessary. The purported practical problems that plaintiffs raise concerning Howrey's limited role will not prejudice either Alcatel USA Resources or Acatel Internetworking. The substantial relationship rule exists primarily to protect against the possibility that an attorney will misuse a former client's confidential information. *See Carlyle Towers, supra*, 944 F. Supp. at 350. There is no such danger here. Howrey's participation in depositions and other discovery in this case will not result in the misuse of confidential information that Howrey may have obtained in connection with its prior engagement. The relevant question here is not what information Howrey might *learn* through discovery, but whether the firm would be placed in the position of *disclosing* or *using* confidential information (if any) obtained through the prior engagement. Because Howrey will not act on Foundry's behalf in this case with respect to any issues related to its prior work, that is not a danger

Plaintiffs attempt to manufacture some prejudice by asserting that Alcatel is engaged in cross-licensing negotiations with Microsoft involving the Alcatel OmniPCX system, the product identified as an infringing device in Foundry's counterclaim concerning the '864 patent. Plaintiffs claim that they will each be prejudiced because Alcatel will be "unable to obtain effective assistance from Howrey on any further negotiations with Microsoft." Motion at 11. But plaintiffs do not argue that Howrey's prior work on the standards issue concerning the '830 patent has any relationship to cross-licensing issues concerning the OmniPCX. Plaintiffs do not explain why Alcatel would need Howrey's assistance with respect to any such cross-licensing talks, which presumably involve some different patent for which Microsoft is seeking a license.

13

Nor do plaintiffs claim that Alcatel has made any request of Howrey for further assistance in its negotiations with Microsoft over the past three years. This argument does not identify any real problem, but is merely another litigation ploy. *See Elonex, supra,* 142 F. Supp. at 584 (motions to disqualify are viewed with caution because of the potential for their misuse as litigation tactics.)

The nature of Howrey's prior engagement minimizes any risk that confidential information (if any) might actually be disclosed or misused in this litigation. Howrey's prior work for Alcatel was limited to two attorneys in its Washington, D.C. office, who are not, and will not be, involved in the representation of Foundry in this case, which is being handled by attorneys in Howrey's San Francisco and Los Angeles offices, Moreover, the prior work for Alcatel was directed solely to the preparation of an opinion letter that was sent to a third party and which plaintiffs have filed in support of their motion. A party that chooses to disclose legal advice necessarily has a lessened expectation of confidentiality for other attorney-client communications on the same subject matter. *Cf. Tackett v. State Farm,* 653 A.2d 254, 259 (Del. 1995) (disclosure of otherwise privileged information can result in loss of the privilege for other facts on the same subject matter where fairness dictates).

Finally, the prejudice to Foundry of losing its counsel of choice in this litigation weighs heavily against disqualification. Although this lawsuit is still young, Howrey has represented Foundry for nearly two years in other litigation concerning the '864 patent, and has therefore developed an extensive knowledge of the relevant technology and the legal issues that will be difficult, and expensive, for Foundry to replace. Howrey has devoted well over five thousand (5000) attorney hours to other cases on Foundry's behalf involving the same patent.[4] Foundry will therefore be severely prejudiced if it is required to obtain new counsel in this matter

---

[4] *Foundry Networks, Inc v. Lucent Technologies, Inc.,* Civil Action No. 2:04-CV-40 (TJW) (E.D Tex.), and *Foundry Networks, Inc V. Nortel Networks, Inc.,* Civil Action No. C02 04909 (CRB) (N.D. Cal). Howrey will provide invoices for *in-camera* review if the Court should wish.

14

regarding claims concerning the '864 patent. *See Elonex, supra* (finding that, even if there were a violation of the current client rule, disqualification would not be warranted based in part on the prejudice resulting from the need for new counsel in a matter where the attorneys had already devoted thousands of hours).

Neither plaintiff will be prejudiced by Howrey's limited representation of Foundry in this action. In contrast, Foundry will be unfairly prejudiced by the need to seek new counsel that is not familiar with the claims that it asserts against Alcatel Internetworking. Plaintiffs have not presented any evidence justifying this result, and their motion should be denied.

## IV.    CONCLUSION

For all the foregoing reasons, plaintiffs' motion to disqualify Howrey should be denied. In the alternative, Foundry hereby respectfully moves the Court to sever plaintiffs Counts I and II into separate actions.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Henry C. Bunsow
K.T. Cherian
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, California 94105
(415) 848-4900

Dated:    September 22, 2005
700631

By: _____
          Philip A. Rovner (#3215)
          Hercules Plaza
          P.O. Box 951
          Wilmington, Delaware 19899
          (302) 984-6000
          E-mail: provner@potteranderson.com

Attorneys for Count II Defendant and
Counterclaimant
Foundry Networks, Inc.

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ALCATEL USA RESOURCES, INC.  )
and ALCATEL INTERNETWORKING, )
INC.,                        )
                             )
          Plaintiffs,        )
                             )
     v.                      )  Civ. No. 05-418-SLR
                             )
FOUNDRY NETWORKS, INC.,      )
                             )
          Defendant.         )


O R D E R


     At Wilmington this 14th day of June, 2006, having reviewed
the papers and heard argument on plaintiffs' motion to
disqualify;

     IT IS ORDERED that said motion (D.I. 12) is denied, for the
reasons that follow:

     1.  The court has the "inherent authority to supervise the
professional conduct of attorneys appearing before it," including
the power to disqualify an attorney.  United States v. Miller,
624 F.2d 1198, 1201 (3d Cir. 1980); Elonex I.P. Holdings, Inc. v.
Apple Computer, Inc., 142 F. Supp.2d 579, 581 (D. Del. 2001).
Disqualification is but one of an arsenal of sanctions a court
can employ upon its determination that an attorney's continued
representation of a party runs afoul of a rule of professional

conduct.

2.   In this case, plaintiffs contend that the representation
of defendant by the law firm Howrey LLP ("Howrey") as to count II
and the counterclaims asserted at bar constitutes a violation of
Rules 1.3, 1.7, 1.8 and 1.10 of the Delaware Lawyer's Rules of
Professional Conduct.   The facts underlying this contention
include the following:

a.   In June 2002, Alcatel, a French corporation
headquartered in Paris, retained Howrey to prepare an opinion
letter addressing a single issue, that is, whether Alcatel's
contact with the standard-setting process for an IEEE
specification was likely to make U.S. Patent No. 6,339,830 ("the
'830 patent") unenforceable.   The opinion letter was prepared as
a written communication of a legal opinion to third party
Microsoft Corporation.   It did not concern the IP telephony
products at issue in plaintiffs' declaratory judgment action
against defendant (contained in count II) and defendant's
counterclaims thereto.   Work on the letter was completed in
November 2002.   No further communication as to the above matter
has occurred between Alcatel and defendant.

b.   Plaintiffs instituted the instant litigation in
June 2005.   (D.I. 1)   When defendant approached Howrey to
represent it in this litigation, Howrey did not consider Alcatel
to be a current client of the firm.   However, because the prior

2

work that Howrey had done for Alcatel related to the '830 patent,
one of the nine patents asserted against defendant in count I of
plaintiffs' amended complaint, Howrey requested from Alcatel a
waiver that would permit Howrey to represent defendant on all of
the claims in this litigation.  Although Alcatel was not willing
to provide such a waiver, neither did it indicate in June 2005
that Howrey was needed for additional work on the 2002 opinion
letter nor that Alcatel considered itself to be a current client
of Howrey.  Ultimately, Howrey was retained for the limited
representation of defendant as to count II and the counterclaims
related thereto.

    3.  Plaintiffs contend that such representation runs afoul
of several disciplinary rules.[1]  Rule 1.7 of the Model Rules
provides that an attorney may not represent two clients when
representation of one would be "directly adverse" to or would
"materially limit" representation of the other.  I am convinced,
however, that Alcatel is not a current client of Howrey and,
therefore, Rule 1.7 is not violated.  In this regard, I note that
Howrey's representation in 2002 was for a limited purpose, that

---

[1]Plaintiffs reference the ABA's Model Rules of Professional
Conduct ("Model Rules") as those adopted by this court pursuant
to D. Del. LR 83.6(d)(2), then proceed to analyze the facts under
"the Delaware Lawyers' Rules of Professional Conduct."  It is
unclear whether plaintiffs have renamed the Model Rules or are
actually referring to the code of conduct adopted by the Delaware
Supreme Court.  Although the rules at issue are virtually
identical as between the two codes, the court will refer to the
ABA's Model Rules.

3

Alcatel and Howrey have had no communications relating to the
substance of the 2002 representation (or on any other substantive
matter) since November 2002, and that Howrey did not consider
Alcatel a current client in June 2005, a belief that was not
dispelled in June 2005 through its conversations with Alcatel.
Even more compelling is the fact that Alcatel is not a party to
this litigation and, through the course of discovery, has
maintained that plaintiffs, corporate affiliates of Alcatel, are
independent, that the court has no personal jurisdiction over
Alcatel, and that Alcatel has no responsibility to respond to
defendant's discovery requests, despite the fact that the patents
at issue in count I were transferred to plaintiffs from Alcatel
for the very purpose of pursuing this litigation.  Finally, there
is no overlap between the subject matter of the 2002
representation and the issues raised in count II and the related
counterclaims.

     4.   Model Rules 1.3, 1.8 and 1.10 likewise all relate to the
conduct of a lawyer within the client-lawyer relationship.  Given
my conclusion that there is no current client-lawyer relationship
between Alcatel and Howrey, these rules are not violated for the
reasons stated above.

     IT IS FURTHER ORDERED that the pretrial scheduling order
shall be amended as follows:

     1.   Phase One fact discovery shall be extended for 45 days,

4

to be completed on or before October 16, 2006.

    2.    Phase One expert discovery shall be extended for 45 days, to be completed on or before December 18, 2006.

    3.    All summary judgment motions shall be filed on or before January 15, 2007, with briefing to follow D. Del. LR 7.1.2.

    4.    The parties shall agree upon and file the Joint Claim Construction Statement on or before January 15, 2007.

    5.    If the parties cannot agree on those further revisions to the scheduling order as are keyed off from the changes made above, the court will conduct a telephone conference to discuss these matters.

                    _____
                    United States District Judge

5

# EXHIBIT F

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              IN AND FOR THE DISTRICT OF DELAWARE

 3                        - - -

 4   ALCATEL USA RESOURCES, INC.,   :   CIVIL ACTION
     a Delaware corporation, and    :
 5   ALCATEL INTERNETWORKING, INC., :
     A California corporation,       :
 6                                   :
              Plaintiffs            :
 7                                   :
          vs.                        :
 8                                   :
     FOUNDRY NETWORKS, INC.,         :
 9   A Delaware corporation          :
                                     :
10          Defendant               :   NO. 05-418 (SLR)

11                        - - -

12                      Wilmington, Delaware
                        Tuesday, June 13, 2006
13                      4:30 o'clock, p.m.

14                        - - -

15   BEFORE:  HONORABLE SUE L. ROBINSON, Chief Judge

16                        - - -

17   APPEARANCES:

18          YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
            BY:  KAREN L. PASCALE, ESQ.
19

20                      -and-

21

22

23

24                      Valerie J. Gunning
                        Official Court Reporter
25
```

Page 2

```
 1   APPEARANCES (Continued):

 2

 3          NIRO, SCAVONE, HALLER & NIRO
            BY:  ROBERT P. GREENSPOON, ESQ. and
 4               SALLY WIGGINS, ESQ.
                 (Chicago, Illinois)
 5

 6                  Counsel for Plaintiff

 7

 8          POTTER, ANDERSON & CORROON.
            BY:  PHILIP A. ROVNER, ESQ.
 9

10                      -and-

11
            ORRICK HERRINGTON
12          BY:  MATT POPPE, ESQ.
                 (Silicon Valley, California)
13

14                  Counsel for Defendant

15                      - - -

16

17

18

19

20

21

22

23

24

25
```

Page 3

## PROCEEDINGS

(Proceedings commenced in the courtroom, beginning at 4:30 p.m.)

THE COURT: Good afternoon, counsel.

I apologize for not getting my decision out on the motion to disqualify. Luckily, we have these kinds of meetings and it is being worked on and I will get something out by tomorrow.

So before we talk about anything else, let's talk about the schedule and then we can talk about the other substantive issues.

I think it was defendant who mentioned the problem with the schedule and that's regardless of the decision, I think, was the impression I got.

MR. ROVNER: That's correct, your Honor.

THE COURT: All right. Why don't you present your suggestions and what we should do and then I will go to plaintiffs' counsel.

MR. ROVNER: Good afternoon, your Honor. Phil Rovner, from Potter Anderson, for defendant, Foundry Networks.

Our proposal, which we discussed with plaintiffs' attorneys on Friday, is that we feel that we need additional

Page 4

time in the schedule because -- for the reasons stated in my letter to your Honor of yesterday, we proposed something along the lines of four months because that's consistent with the time that discovery of Stage 2 here -- we broke it up into stages. We have two phases of the litigation and two stages in the first phase of the litigation.

Phase 1 takes us to trial. Stage 1 of Phase 1 dealt with patent selection. That's when Alcatel picked the four patents that they wanted to proceed with to trial in Phase 1.

THE COURT: And the patents have been selected?

MR. ROVNER: Yes. They've selected four patents.

THE COURT: All right.

MR. ROVNER: And along with the four patents that Alcatel selected, the parties agree, and your Honor signed the scheduling order, that the '864 patent, the Chang patent, that Foundry asserted, not only in its counterclaim, but was asserted in Count 2 of Alcatel's complaint, would proceed to Phase 1.

Stage 1 of Phase 1 concluded. They picked the four patents and we were set to go on January 31st is when discovery in -- of Stage 2 really proceeded, and that's really discovery that any patent case would have leading to trial.

Page 5

1    We believe that January 31st, that the
2   date -- we're now in June and we thought that four months
3   would be consistent in terms of the time, that Foundry's
4   firm of choice, Howrey, was unable to participate in the
5   litigation.
6        The real prejudice to Foundry is that Howrey was
7   unable and has been unable to review any of the documents
8   that Alcatel has produced in Stage 2 of Phase 1.
9        THE COURT: But that only has to do with Count
10  2.
11       MR. ROVNER: Yes.
12       THE COURT: And the counterclaims.
13       MR. ROVNER: Yes.
14       THE COURT: Now --
15       MR. ROVNER: But by agreement, the four Alcatel
16  patents and the Chang patent were supposed to go to trial in
17  April of 2007.
18       THE COURT: Right. I suspect that Count 2
19  and the counterclaims would not be tried to the same
20  jury. I just don't do that anymore. I don't try opposing
21  patents before the same jury anymore. So I guess I'm
22  wondering whether, in fact, it makes sense, under the
23  circumstances, because you are talking about postponing
24  trial, are you not?
25       MR. ROVNER: Well, we believe that -- first of

Page 6

1   all, our preference is to try, and our agreement with
2   Alcatel, was to try all five patents together in this 20-day
3   trial that your Honor set aside for April 2007. I think at
4   the time it was not your practice necessarily to separate the
5   patents, and we had --
6        THE COURT: I think it was. To try them in the
7   same time does not mean you try them before the same jury, to
8   tell you the truth.
9        MR. ROVNER: Or trying them in front of the same
10  jury, but not trying them at the same time. There are
11  various ways --
12       THE COURT: No. I never do that. I never ask
13  juries to come back and forth.
14       Well --
15       MR. ROVNER: In any event, we thought that
16  we would -- with a delay in the -- with Howrey not being
17  able to be involved, we thought that four months would
18  be something that would be consistent with the time they
19  were not involved. However, in discussing it with
20  my co-counsel, we believe that we could extend fact
21  discovery about two months. The fact discovery cutoff
22  is September 1. We believe that we could extend fact
23  discovery to November 1, extend expert discovery not
24  two months, but about one month, and we could keep all
25  the deadlines within a few weeks or so and still give

Page 7

1   your Honor time to resume on claim construction issues
2   and summary judgment before the April trial, and then
3   we would not have to move the trial.
4        THE COURT: All right. Let me hear from
5   plaintiff's counsel on that.
6        MS. PASCALE: Good afternoon, your Honor. Karen
7   Pascale, for Alcatel.
8        I'd like to introduce to your Honor my
9   co-counsel, Rob Greenspoon, and also with us is Sally Wiggins
10  from the firm of Niro, Scavone, Haller & Niro.
11       THE COURT: All right. I love how you all just
12  roll off these names.
13       MR. GREENSPOON: Well, it's an interesting story,
14  but the first Niro and the last Niro, and you are hearing me
15  say it right, they're brothers, but they disagree on how they
16  pronounce their last names. So you think it's hard for you.
17  Just imagine trying to satisfy all political whims in the
18  firm.
19       THE COURT: That's an interesting story.
20       MR. GREENSPOON: Your Honor, I'm listening to
21  what you are saying about Foundry's proposal. By the way,
22  just for the record, I represent the Count 1 plaintiff and
23  the Count 2 plaintiff. Alcatel Internetworking is the Count
24  2 plaintiff. Alcatel USA resources is the Count 1
25  plaintiff.

Page 8

1        In our initial letter to the Court responding to
2   yesterday's letter from Foundry, we were generally opposing
3   any kind of extension of time, but my -- the gears are
4   turning as I'm listening to you. I think that another option
5   would be to take the Count 2 matter, which is the Chang '864
6   patent, and go ahead and put that with the five Phase 2
7   patents. So, in other words, take the Foundry claim against
8   Alcatel Internetworking and put it into the second phase of
9   the case. That means that whatever your Honor's decision
10  will be tomorrow, there's enough time for Foundry to ramp
11  up.
12       But --
13       THE COURT: Well, just in case we decide not to
14  kind of bifurcate that, do you have an opposition to
15  extending within the confines of the scheduled fact
16  discovery?
17       MR. GREENSPOON: Well, we do, and we set that
18  forth in an outline form in our letter, which your Honor
19  should have gotten this morning.
20       The main points are, first of all, Mr. Rovner is
21  absolutely correct, it wasn't until Friday, which is two
22  business days ago, that we first heard this desire from
23  Foundry Networks that they would want more time under the
24  case management order, so that's news to us, really. But
25  our immediate reaction: Is where is the fire? We have

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I, Philip A. Rovner, hereby certify that on September 25, 2006, the within

document was filed with the Clerk of the Court using CM/ECF which will send

notification of such filing(s) to the following; that the document was served on the

following counsel as indicated; and that the document is available for viewing and

downloading from CM/ECF.

**BY HAND DELIVERY AND E-MAIL**

Josy W. Ingersoll, Esq.
Karen L. Pascale, Esq.
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391

I hereby certify that on September 25, 2006 I have sent by E-mail

foregoing document to the following non-registered participants:

Timothy J. Haller, Esq.
Robert Greenspoon, Esq.
Sally Wiggins, Esq.
Niro, Scavone, Haller & Niro
181 W. Madison Street, Suite 4600
Chicago, IL 60602


    /s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com