## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ALCATEL USA RESOURCES, INC.,     )
    a Delaware corporation, and        )
ALCATEL INTERNETWORKING, INC.,   )
    a California corporation,          )
                                  )
        Plaintiffs,            )
                                  )
           v.                  )         Civil Action No. 05-418-SLR
                                  )
FOUNDRY NETWORKS, INC.,         )
    a Delaware corporation,          )
                                  )
        Defendant.           )

## ALCATEL USA RESOURCES, INC. AND ALCATEL INTERNETWORKING'S
## REPLY TO FOUNDRY NETWORKS, INC'S COUNTERCLAIMS

Pursuant to Fed.R.Civ.P.12, Plaintiff and Counter-Defendants Alcatel USA Resources and

Alcatel Internetworking, Inc. (collectively, "Alcatel") respond to the counterclaims of Foundry

Networks, Inc. ("Foundry") as follows:

### RESPONSE TO COUNTERCLAIMS

1.      Foundry first cause of action is for declaratory relief pursuant to the Declaratory Judgment Act. 28 U.S.C. §§2201 *et seq*. Foundry's first cause of action arises under the patent laws of the United States. 35 U.S.C. §§ 100 *et seq*. Foundry's second cause of action is for a declaratory judgment based upon breach of contract. This Court has subject matter jurisdiction over Foundry's counterclaim under 28 U.S.C. §§ 1331, 1338, and 1367.

**Response:**

Alcatel does not contest subject matter jurisdiction.  Otherwise, denied.

2.      Foundry is a Delaware corporation maintaining its principal place of business at 4980 Great America Parkway, Santa Clara, California.

**Response:**

Admitted.

                                                  

3.      Counterclaim Defendant Alcatel USA Resources, Inc. ("Alcatel USA Resources") is a Delaware corporation maintaining its principal place of business at 3400 W. Plano Parkway, Plano, Texas. This Court has personal jurisdiction over Alcatel USA Resources at least because Alcatel USA Resources submitted itself to this Court's personal jurisdiction by suing Foundry in this Court.

**Response:**

Admitted.


4.      Counterclaim Defendant Alcatel Internetworking, Inc. ("Alcatel Internetworking") is a California corporation maintaining its principal place of business at 26801 West Agoura Road, Calabasas, California. This Court has personal jurisdiction over Alcatel Internetworking at least because Alcatel Internetworking submitted itself to this Court's personal jurisdiction by suing Foundry in this Court.

**Response:**

Admitted.


## FIRST COUNTERCLAIM

5.      As its first counterclaim for declaratory relief, Foundry alleges that the '830 and '090 patents are unenforceable for inequitable conduct during their prosecution and during the prosecution of the U.S. Patent No. 6,070,243 (the "'243 patent"). In addition, Foundry alleges that the '192 patent is unenforceable for inequitable conduct during its prosecution.

**Response:**

Denied.


## INEQUITABLE CONDUCT AS TO U.S. PATENT NOS. 6,070,243, 6,339,830, AND 6,874,090

60. [sic]      On information and belief, at least Michael E. See, John W. Bailey, Charles Panza, Yuri Pikover, Geoffrey Stone, and Michele Wright Goodwin made material misstatements and intentionally failed to disclose prior art, which each recognized to be material, to the Patent Office. In addition, on information and belief, Scot A. Reader and Art Hasan, intending to deceive the Patent Office, failed to disclose prior art each knew to be material.

2

**Response:**

    Denied.

    61. [sic]    The '243 patent recites Michael E. See, John W. Bailey, Charles L. Panza, Yuri Pikover, and Geoffrey C. Stone as applicants. Later Michele Wright Goodwin was added as an applicant. The' 830 patent is a continuation of the' 243 patent and similarly recites Michael E. See, John W. Bailey, Charles L. Panza, Yuri Pikover, and Geoffrey C. Stone as applicants. During the prosecution of the' 830 patent, Michele Wright Goodwin was added as an applicant.. The '090 patent is a continuation of the '830 patent and recites Michael E. See, John W. Bailey, Charles L. Panza, Yuri Pikover, and Geoffrey C. Stone as applicants. During the prosecution of the '090 patent, Michele Wright Goodwin was added as an applicant. The assignee and the applicants have also sought to add Leon Robert Sangroniz as an applicant with respect to the '090 patent.

**Response:**

    Admitted.

    62. [sic]    The '243 patent was assigned to Xylan Corporation ("Xylan"), where each of the applicants was originally employed. Through the assignment that conveyed the '243 patent to Xylan, the applicants also assigned the '830 and '090 patents. On information and belief, Alcatel acquired Xylan in 1999, at which time Xylan was renamed as Alcatel Internetworking, Inc.

**Response:**

    The first and third sentence are admitted. The second sentence is vague and cannot be understood, and is therefore denied.

    63. [sic]    On information and belief, Alcatel Internetworking, Inc. assigned its interest in the '243, '830, and '090 patents to Alcatel in June 2002. On May 10,2005, Alcatel assigned its interest in the '830 and '090 patents to plaintiff Alcatel USA Resources, Inc.

**Response:**

    Admitted.

    64. [sic]    On information and belief, Mr. Reader is an attorney who is registered to practice before the Patent Office. Mr. Reader was in-house counsel to Xylan and was responsible for patent prosecution. During the prosecution of each of the '243 and '830 patents, the Patent Office sent

    

correspondence to Mr. Reader at Xylan's address. Mr. Reader was substantially involved in the prosecution of the '243, '830, and '090 patents.

**Response:**

Admitted as to the '243 patent; denied as to the '830 and '090 patents.

65. [sic]    On information and belief, Mr. Hasan is an attorney who is registered to practice before the Patent Office. During the prosecution of the '243, '830, and '090 patents, Mr. Hasan was an attorney in the law firm Christie, Parker & Hale. Mr. Hasan acted as counsel to the applicants and assignees of the '243, '830, and '090 patents. Mr. Hasan was substantially involved in the prosecution of the '243, '830, and '090 patents.

**Response:**

Admitted.

66. [sic]    As applicants of the '243, '830, and '090 patents, Messrs. See, Bailey, Panza, Pikover, and Stone owed a duty not to make misrepresentations to the Patent Office and to disclose to the Patent Office all material prior art of which each was aware. As persons who were substantially involved in the prosecution of the '243, '830, and '090 patents, Mr. Sangroniz and Ms. Goodwin each owed a duty not to make misrepresentations to the Patent Office and to disclose to the Patent Office all material prior art of which each was aware. As attorneys registered to practice before the Patent Office and as persons substantially involved in the prosecution of the '243, '830, and '090 patents, Mr. Reader and Mr. Hasan each owed a duty not to make misrepresentations to the Patent Office and to disclose to the Patent Office all material prior art of which he was aware. Finally, all employees of any assignee of the '243, '830, and '090 who were significantly involved in the prosecution of these patents owed a duty not to make misrepresentations to the Patent Office and to disclose to the Patent Office all material prior art of which he was aware.

**Response:**

Denied.

67. [sic]    On information and belief, each of the applicants Messrs. See, Bailey, and Pikover, Panza, and See made material misrepresentations to the Patent Office and/or intentionally withheld material prior art from the Patent Office during the prosecution of the '243, '830, and '090 patents. On information and belief, each of Mr. Sangroniz and Ms. Goodwin intentionally withheld material prior art from the Patent Office during the prosecution of the '243, '830, and '090 patents. On information and belief, each of Mr. Reader and Mr. Hasan intentionally withheld material prior art from the Patent Office during the prosecution of the '243, '830, and '090 patents. In addition, on information and belief, Messrs. Reader and Hasan prosecuted the '243, '830, and '090 patents,

thereby facilitating the material omissions of the others. The material misrepresentations and failures to disclose prior art include:

- misrepresentations in the oath concerning inventorship and intent to comply with duty to provide material prior art;

- misrepresentations in declarations that misjoinder of inventors concerned without deceptive intent;

- failure to disclose prior art references and to disclose analysis of prior art references as identified in documents produced pursuant to subpoena in this action by Christie, Parker & Hale LLP, but which since have been returned at the request of Alcatel's counsel and withheld on grounds of purported privilege;

- failure to disclose documents produced by Alcatel in this action concerning products with user authentication capabilities developed and offered for sale by CheckPoint Software Technologies, Ltd., including but not limited to the CheckPoint FireWall-1 product; and

- failure to disclose four IETF RFCs authored by C. Rigney that were disclosed to the Patent Office in connection with the '830 patent but were withheld during the prosecution of the '243 patent.

**Response:**

   Denied.


   68. [sic]       On information and belief, the withheld references were material prior art with respect to the '243, '830, and '090 patents because a reasonable examiner would have considered them to be important in deciding whether to allow one or more claims pending during the prosecution of the '243, '830, and '090 patents to issue, and they were not cumulative to information already of record. They established, by themselves or in combination with other information, a *prima facie* case of unpatentability of one or more claims of the '243, '830, and '090 patents.

**Response:**

   Denied.


## INEQUITABLE CONDUCT AS TO U.S. PATENT NO. 5,301,192

   69. [sic]       On information and belief, at least Michel Henrion made material misstatements and intentionally failed to disclose prior art, which he recognized to be material, to the

Patent Office. In addition, on information and belief, at least John M. May, intending to deceive the Patent Office, failed to disclose prior art he knew to be material.

**Response:**

Denied.

70. [sic]    The' 192 patent recites Mr. Henrion as the applicant.

**Response:**

Admitted.

71. [sic]    On information and belief, the' 192 patent was assigned to Alcatel NV, where Mr. Henrion was employed. Alcatel NV assigned the' 192 patent to Alcatel USA Resources, Inc. on or about May 10, 2005.

**Response:**

Admitted.

72. [sic]    The subject matter of the' 192 patent was used in an Alcatel product known as the MPSR switch (standing for MultiPath Self-Routing).

**Response:**

Alcatel is informed that at least one version of the MPSR switch incorporated the '192 patented technology, but cannot without further information confirm this fact sufficient to admit it in a pleading, therefore, denied.

73. [sic]    Mr. Henrion was a key developer of the MPSR switch, and was responsible for defining the architecture of the MPSR switch beginning in approximately the fourth quarter of 1988.

**Response:**

Admitted Mr. Henrion was involved with MPSR development; otherwise, denied.

6

064207.1001

74. [sic]      On information and belief, Mr. May is an attorney who is registered to practice before the Patent Office. During the prosecution of the' 192 patent, Mr. May was an attorney at the law firm of Christie, Parker & Hale and was substantially involved in the prosecution of the '192 patent.

**Response:**

Admitted.

75. [sic]      As the applicant of the' 192 patent, Mr. Henrion owed a duty not to make misrepresentations to the Patent Office and to disclose to the Patent Office all material prior art of which he was aware. As an attorney registered to practice before the Patent Office and as a person substantially involved in the prosecution of the' 192 patent Mr. May owed a duty not to make misrepresentations to the Patent Office and to disclose to the Patent Office all material prior art of which he was aware.

**Response:**

Admitted that Mr. Henrion and Mr. May were subject to the duty of disclosure under the version of 37 CFR 1.56 in force at the relevant time.  Otherwise, denied.

76. [sic]      On information and belief, Mr. Henrion was aware, during the prosecution of the '192 patent, of prior art that was material to the patentability of one or more claims of the' 192 patent . On information and belief, Mr. Henrion intentionally failed to disclose the material prior art to the Patent Office intending to deceive the Patent Office.

**Response:**

Denied.

77. [sic]      On information and belief, Mr. May was aware, during the prosecution of the '192 patent, of prior art that was material to the patentability of one or more claims of the '192 patent. On information and belief; Mr. May intentionally failed to disclose the material prior art to the Patent Office intending to deceive the Patent Office.  In addition, on information and belief, Mr. May prosecuted the' 192 patent, thereby facilitating the material omissions of Mr. Henrion.

**Response:**

Denied.

DB01:2203313.1                                                                    064207.1001

78. [sic]    The material prior art that was withheld and the misrepresentations include:

- An article entitled "Switching Network Architecture for ATM Based Broadband Communications," co-authored by Mr. Henrion, which was presented at the International Switching Symposium 1990 in Stockholm, Sweden on or about May 31, 1990, and concurrently published in Vol. V of a compilation of the materials that were presented during that symposium.

- An article entitled "A shared buffer memory switch for an ATM exchange," authored by Hiroshi Kuwahara et al., and published in IEEE Int'l Conf. on Comms., vol. 1, pp. 118-122, in or about June of 1989, which was cited in the above-referenced article by Mr. Henrion.

- An article entitled "High-performance multi-queue buffers for VLSI communications switches," published in the Proceedings of the 15th Annual International Symposium on Computer Architecture (ACM SIGARCH), Vol. 16, No.2, May 1988, pp. 343-354, which was cited to the Patent Office during the prosecution of U.S. Patent No. 5,214,639 (issued May 25, 1993, application filed August 9,1990), of which Mr. Henrion is the sole named inventor and Mr. May, on information and belief, was the patent prosecutor with sole or primary responsibility.

- U.S. Patent No. 5,210,743 (issued May 11, 1993, application filed March 12, 1991, assigned to Alcatel, N.V.), of which Mr. May, on information and belief, was the patent prosecutor with sole or primary responsibility and of which Karl Schrodi, who, on information and belief, was a key developer of and collaborator with Mr. Hendon in the development of the MPSR switch, is one of the named inventors.

- U.S. Patent No. 4,947,388 to Kuwahara et al. (issued August 7, 1990, application filed April 5, 1989), which was cited as a material reference during the prosecution of U.S. Patent No. 5,210,743, referred to above.

- Intent not to fulfill obligations in Mr. Henrion's declaration to disclose all material prior art of which he was aware.

**Response:**

Denied.

79. [sic]    On information and belief, these references were material prior art with respect to the '192 patent because a reasonable examiner would have considered them to be important in deciding whether to allow the '192 patent to issue, and they were not cumulative to information already of record. They established, by themselves or in combination with other information, a *prima facie* case of unpatentability of one or more claims of the' 192 patent.

**Response:**

> Denied.

## SECOND COUNTERCLAIM

6.    Alcatel USA Resources is obligated by contract to offer Foundry a license to practice the '830 and '090 patents, and Alcatel Internetworking is obligated by contract to offer Foundry a license to practice a currently pending patent application (should it mature into a patent), on reasonable and non-discriminatory terms, and they have breached those obligations by failing to offer such licenses to Foundry.

**Response:**

> Denied.

7.    On information and belief, all rights, title, and interest in and to the '830 and '090 patents and the applications from which they issued were owned by Alcatel USA Resources, Alcatel Internetworking, and/or their French parent corporation (collectively, "Alcatel") continuously from 2000 to the present.  In addition, on information and belief, Alcatel Internetworking is the owner of all rights, title and interest in and to Application No. 10/958,620 filed on October 5, 2004 ("the '620 application"), which is currently pending.  The '620 application is a continuation of the '090 application, and its claims are substantially duplicative of the claims of the '830 and '090 patents.

**Response:**

> Denied.

8.    On information and belief, Alcatel was, at all relevant times, a member of and/or a participant in the IEEE, the IEEE Standards Association, and/or the IEEE 802.1 Working Group, such that an express or implied contract between the IEEE and Alcatel came into being under which Alcatel was bound to comply with the patent policies of the IEEE, the IEEE Standards Association, and the IEEE 802.1 Working Group.  Foundry was and is an intended third party beneficiary of said contract.

**Response:**

> Denied.

9.     Said patent policies imposed upon Alcatel a duty to disclose to the IEEE, prior to the IEEE's adoption of the 802.1X standard, all of Alcatel's patents and patent applications that Alcatel believed might be essential to the implementation of the 802.1X standard.

**Response:**

Denied.

10.     Said patent policies imposed upon Alcatel a further duty to submit to the IEEE, prior to the IEEE's adoption of the 802.1X standard, an irrevocable assurance letter in which Alcatel agreed either to forego enforcement of Alcatel patents essential to practice the 802.1X standard or to license such rights on reasonable and non-discriminatory terms.

**Response:**

Denied.

11.     As construed by Alcatel, the '830 and '090 patents and the applications from which they issued, as well as the '620 application, are essential to practice the IEEE 802.1X standard.

**Response:**

Denied.

12.     On information and belief, Alcatel was the owner of the '830 patent and the '090 application as of January 13, 2003. On that date, David A. Cordeiro, Esq., Alcatel's Lead IP counsel, acting on behalf of Alcatel and with actual and apparent authority to so act, sent a letter (the "Alcatel RAND Letter") to Secretary, IEEE-SA Standards Board Patent Committee, in which he stated that Alcatel was "willing to grant a license under the '830 patent on reasonable terms and conditions and on a non-discriminatory basis." A true and correct copy of this letter is attached hereto as Exhibit A.

**Response:**

Admitted that the letter is authentic; otherwise, denied, particularly as to characterizations of

the letter.

13.     The Alcatel RAND Letter constitutes a contractual commitment, of which Foundry is an intended third party beneficiary, binding Alcatel to license the '830 patent on reasonable and non-discriminatory terms.

DB01:2203313.1                                                                    064207.1001

**Response:**

    Denied.

    14.    Due to the overlapping subject matter and claims between the '830 and '090 patents, and between the '830 patent and the '620 application, and in view of Alcatel's general obligations under the IEEE's patent policies and the context in which the Alcatel RAND Letter was sent, the Alcatel RAND Letter also gives rise to an implied contractual commitment, of which Foundry is an intended third party beneficiary, binding Alcatel to also license the '090 patent and the '620 application (should it issue as a patent) on reasonable and non-discriminatory terms.

**Response:**

    Denied.

    15.    On May 6, 2006, Foundry wrote to Alcatel and asked whether and on what terms Alcatel would license Foundry to use the technology covered by the '830 and '090 patents.

**Response:**

    Denied.  The May 6 communication was an insincere litigation tactic.

    16.    On May 22, 2006, Alcatel responded that it would not discuss licensing terms to Foundry except in the context either of a litigation settlement or a discovery request.

**Response:**

    Denied.

    17.    Alcatel USA Resources has breached its contractual obligations described above by refusing to offer Foundry a license to practice the '830 and '090 patents on reasonable and non-discriminatory terms, and Alcatel Internetworking has breached its contractual obligations described above by failing to commit to offer Foundry a license to practice the '620 applications on reasonable and non-discriminatory terms should that application issue as a patent. These contractual obligations and breaches thereof preclude Alcatel USA Resources from obtaining an injunction against Foundry that would prohibit Foundry from practicing the '830 patent or the '090 patent, and preclude Alcatel Internetworking from obtaining an injunction against Foundry that would prohibit Foundry from practicing the '620 application (should it later issue as a patent), and further preclude Alcatel USA Resources and Alcatel Internetworking from obtaining any remedy against Foundry other than a reasonable and non-discriminatory royalty. (It is Foundry's position, of course, that Alcatel USA

        

Resources and Alcatel Internetworking are not entitled to any remedy against Foundry because Foundry does not infringe the '830 and '090 patents or the '620 application, because those patents are invalid and unenforceable, and because the '620 application has not yet issued as a patent.)

**Response:**

    Denied.

    18.    There is an actual and justiciable controversy within the meaning of 28 U.S.C. §§ 2201 and 2202 between Foundry, on the one hand, and Alcatel USA Resources and Alcatel Internetworking, on the other, with respect to the existence, nature, extent, and consequences of the contractual commitments described above.

**Response:**

    Denied.

**DEFENSES**

    1.    Count I does not state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), and does not state a claim with sufficient specificity pursuant to Fed. R. Civ. P. 9(b).

    2.    The Second Counterclaim does not state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), and does not state a claim with sufficient specificity pursuant to Fed. R. Civ. P. 9(b).

    3.    Foundry does not have standing to pursue the Second Counterclaim against Alcatel.

    4.    Foundry is barred from raising the Second Counterclaim under the doctrines of laches and/or estoppel.

    5.    Foundry is barred from raising the Second Counterclaim under the doctrines of waiver and/or acquiescence.

12

6.    Foundry's Second Counterclaim is pre-empted by the federal patent laws and other federal and state statutes.

7.    The contract and implied contract as alleged to exist in the Second Counterclaim is not enforceable for lack of a meeting of the minds.

8.    The contract and implied contract as alleged to exist in the Second Counterclaim requires payment to be valid and enforceable that Foundry has not paid.

9.    The contract and implied contract as alleged to exist in the Second Counterclaim is not enforceable by Foundry against Alcatel for lack of a necessary condition precedent.

10.    The contract and implied contract as alleged to exist in the Second Counterclaim is not enforceable for failure of consideration.

11.    The contract and implied contract as alleged to exist in the Second Counterclaim would at most provide Foundry a right to a proceeding to determine what it owes as a reasonable, nondiscriminatory royalty, and as such seeks no relief beyond what the patent infringement case would provide Foundry.

12.    The contract and implied contract as alleged to exist in the Second Counterclaim lack sufficient terms to be complete, and lack sufficient definiteness to be enforceable.

13.    Enforcement of the contract and implied contract as alleged to exist in the Second Counterclaim would violate Alcatel's rights to due process under the Fifth Amendment of the United States Constitution.

14.    Alcatel's performance under the contract and implied contract as alleged to exist in the Second Counterclaim is excused by Foundry's breaches.

15.    Foundry could not have relied on the implied contract as alleged to exist in the Second Counterclaim because Alcatel and Foundry negotiated toward licensing terms before suit

064207.1001

without mention of the 2003 letter, and the Alcatel patent owner thereafter sued Foundry for infringement.

16.    The contract and implied contract as alleged to exist in the Second Counterclaim is not enforceable against the current patent owner to the extent any contractual obligations attach only to a previous owner.

17.    The contract and implied contract as alleged to exist in the Second Counterclaim cannot be enforced against Alcatel because of Foundry's unclean hands, for example arising from its willful infringement of the subject patents.


Alcatel reserves the right to supplement its Defenses.


## JURY DEMAND

Alcatel demands a trial by jury of all claims and issues so triable.


Of Counsel:

Timothy J. Haller
Robert P. Greenspoon
Sally J. Wiggins
NIRO, SCAVONE, HALLER & NIRO
181 West Madison St., Suite 4600
Chicago, Illinois 60602
(312) 236-0733

Dated: October 19, 2006

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_Karen L. Pascale_

Josy W. Ingersoll (#1088) [jingersoll@ycst.com]
John W. Shaw (#3362) [jshaw@ycst.com]
Karen L. Pascale (#2903) [kpascale@ycst.com]
Adam W. Poff (#3990) [apoff@ycst.com]
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
*Attorneys for Plaintiffs, Alcatel USA Resources,*
*Inc. and Alcatel Internetworking, Inc.*

14

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on October 19, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Philip A. Rovner, Esquire *[provner@potteranderson.com]*
> POTTER ANDERSON & CORROON LLP
> Hercules Plaza
> 1313 N. Market Street
> Wilmington, DE 19801

I further certify that on October 19, 2006, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

> ***By E-Mail***
>
> William L. Anthony, Esquire *[wanthony@orrick.com]*
> Matthew H. Poppe, Esquire *[mpoppe@orrick.com]*
> Michael F. Heafey, Esquire *[mheafey@orrick.com]*
> ORRICK, HERRINGTON & SUTCLIFFE LLP
> 1000 Marsh Road
> Menlo Park, CA 94025
>
> Henry C. Bunsow, Esquire *[BunsowH@howrey.com]*
> K.T. Cherian, Esquire *[CherianK@howrey.com]*
> HOWREY LLP
> 525 Market Street
> Suite 3600
> San Francisco, CA 94150

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Karen L. Pascale (No. 2903) *[kpascale@ycst.com]*
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
*Attorneys for Plaintiffs*