

Potter
Anderson
& Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

**Philip A. Rovner**
Partner
provner@potteranderson.com
302 984-6140 Direct Phone
302 658-1192 Fax

October 23, 2006

October 30, 2006 –PUBLIC VERSION

**BY E-FILE**
The Honorable Sue L. Robinson
Chief Judge
United States District Court
 for the District of Delaware
U.S. Courthouse
844 N. King Street
Wilmington, DE 19801

      Re:   *Alcatel USA Resources, Inc. et al. v. Foundry Networks, Inc.*
             D. Del., C.A. No. 05-418-SLR

Dear Chief Judge Robinson:

      We write on behalf of Defendant/Counterclaim Plaintiff Foundry Networks, Inc. ("Foundry"). At the conclusion of the discovery conference on October 4, 2006, Your Honor requested that Foundry explain in a letter memorandum why it should be allowed to amend its Answer to Count II and Counterclaim to add additional Alcatel entities as counterclaim defendants. This letter is in response to the Court's request.

      Foundry addresses the factual merits of its request in full below. However, before doing so, Foundry points out that effective case management also supports the joinder of the additional Alcatel entities. First, while the deadline to amend the pleadings was extended to August 25, 2006, the original date to join parties, March 10, 2006, was never extended. It should have been because that date, coming only shortly after Alcatel was scheduled to select which four (of its nine) patents-in-suit it wished to proceed with during Phase One, was ill-conceived by the parties from the outset. Pursuant to the original Scheduling Order (D.I. 25), Foundry was not allowed to serve its Count II/Counterclaim discovery requests until January 23, 2006. It promptly did so on January 24. However, once Alcatel was given until late February to select its Phase One patents, and a new deadline for Count II document production was advanced to March 24, the deadline to join parties became even less workable, falling *before* document production for Phase One discovery became due. As explained below, Foundry simply did not have any information in March regarding possible third parties who should be joined in this litigation, primarily because Alcatel Internetworking failed to comply with its Rule

The Honorable Sue L. Robinson
October 30, 2006 – Public Version
Page 2

26(a)(1) disclosure requirements, and failed to respond adequately and completely to Foundry's discovery requests.

Second, while Foundry, through no fault of its own, will be severely prejudiced if it is not permitted to join the additional Alcatel entities identified below, there simply is no prejudice to Alcatel if Foundry's request is granted. As explained below, Plaintiff Alcatel Internetworking filed a declaratory judgment action against Foundry for noninfringement and invalidity of Foundry's '864 patent, but never revealed the fact it was not the real party-in-interest for its cause of action. Recent deposition testimony, document production, and representations of counsel demonstrate that Alcatel Internetworking cannot provide the evidence (by way of deposition testimony, documents, and source code) that Foundry rightly is entitled to and which is highly relevant to both Count II and Foundry's patent infringement counterclaim. As set forth below, Foundry only recently learned that the Alcatel entities it seeks to join as counterclaim defendants not only participate in the conduct of this litigation and sell and/or install the accused Alcatel products, but possess most, if not all, of the technical information necessary for Foundry to prove its '864 patent infringement allegations at trial.

As demonstrated below, counsel for Alcatel only recently disclosed the identities and roles played by the related Alcatel entities sought to be joined. Moreover, trial has been moved from April to October 2007, with a commensurate extension of all deadlines in the case, including the deadlines for fact and expert discovery. As a result, Foundry respectfully requests that it be given leave to add, as counterclaim defendants, the following Alcatel entities, all of which are related to the present Count II plaintiff/counterclaim defendant, Alcatel Internetworking: Alcatel USA, Inc., Alcatel Business Systems, Alcatel USA Marketing, Inc., and Alcatel Bell NV.[1]

I.  **Foundry's Asserted Patent Claims And Alcatel's Accused Products**

Foundry's '864 patent, the patent-in-suit with respect to Count II of Alcatel's complaint and Foundry's counterclaim, describes a system for providing private branch exchange ("PBX") services in connection with voice-over-IP ("VOIP"). PBX services include familiar services such as call forwarding, call conferencing, call transfer, and the like. "VOIP" refers to providing voice communications via a computer network, as

---

[1] REDACTED

The Honorable Sue L. Robinson
October 30, 2006 – Public Version
Page 3

opposed to using dedicated telephone circuits and central office switches. Foundry's '864 patent describes systems and methods that provide familiar PBX services over a modern computer network, such as the Internet.

The asserted claims of the '864 patent include both system and method claims. The claimed systems and methods each involve interconnecting devices ("communication platforms") and executing software on those devices which is designed to detect PBX service requests.

Alcatel's technology at issue involves two accused product lines: the "OmniPCX" product line and its "5020 Softswitch" product line. Aside from using, making, selling, offering for sale, and importing into the United States the OmniPCX and 5020 Softswitch products, Foundry's infringement contentions also relate to activities relating to the deployment and installation of those products in telecommunication systems within the United States.

Entities that perform and/or test the installations within the United States of the accused OmniPCX and/or 5020 Softswitch products, as part of a telecommunications system for providing PBX services in conjunction with VOIP, are alleged direct infringers of asserted claims of the '864 patent. Entities that train or otherwise instruct others on how to install and/or test the accused products in such telecommunication systems have potential liability for inducing infringement of asserted claims. The additional Alcatel entities that Foundry seeks to join as counterclaim co-defendants are purportedly engaged in such installation and testing activities, or are otherwise using, selling and/or importing into the United States the accused products, which are apparently designed, developed and manufactured overseas.

Well before the filing of Foundry's infringement counterclaim, Alcatel was aware that both the OmniPCX and 5020 Softswitch product lines were accused of infringing the '864 patent.

REDACTED

In its Amended Complaint, Alcatel Internetworking implied that it was responsible for both developing and selling at least the OmniPCX product line:

> Alcatel Internetworking is <u>engaged in the business of developing and providing leading edge telecommunications products</u> for the global market. <u>One such product line</u> sold by Alcatel Internetworking is the OmniPCX.

See Ex. 3 (Amended Complaint), ¶ 12 (emphasis added.).

REDACTED

Foundry did not limit its infringement allegations to the OmniPCX product line alone. Foundry's Answer and Counterclaim recited, in pertinent part:

The Honorable Sue L. Robinson
October 30, 2006 – Public Version
Page 4

>Alcatel Internetworking has infringed one or more claims contained in the '864 patent in violation of 35 U.S.C. § 271 through, among other activities, the manufacture, use, importation, sale and/or offer for sale in, or importation into, the United States of <u>products including, but not limited to</u>, the Alcatel OmniPCX integrated communication system.

See Ex. 4 (Answer and Counterclaim), p. 4, ¶ 6 (emphasis added.).

## II. The Additional Alcatel Entities Foundry Seeks To Join As Counterclaim Co-Defendants Have Only Recently Been Disclosed

Based on information only recently uncovered, the following Alcatel entities, in additional to Alcatel Internetworking, are proper counterclaim co-defendants: Alcatel USA, Inc., Alcatel Business Systems, Alcatel USA Marketing, Inc., and Alcatel Bell NV. Each of these entities is either a real party-in-interest, or otherwise possesses information necessary to prove Foundry's patent infringement counterclaim and to defeat Alcatel Internetworking's declaratory judgment cause of action for noninfringement.

***Alcatel USA, Inc.*** is the parent company of plaintiff Alcatel Internetworking, Inc.

REDACTED

That information was revealed to Foundry for the first time approximately six months after the deadline to join parties had lapsed, despite earlier obligations to do so under Fed. R. Civ. P. 7.1 and 26(a)(1), and in response to discovery requests served in January and February 2006.

***Alcatel Business Systems***

REDACTED

Despite repeated subsequent requests that Alcatel Internetworking produce that document, Foundry did not receive it until late last week.

REDACTED

**REDACTED**

III.  **Alcatel Internetworking Inc.'s Discovery Conduct Effectively Concealed The Identities Of Non-Party Alcatel Entities Engaged In Accused Infringing Activities**

Months after the deadline to join parties had lapsed, Alcatel Internetworking continued to conceal the identities of real party-in-interest Alcatel Business Systems, Alcatel USA, Inc., Alcatel USA Marketing, Inc., and Alcatel Bell NV, each of which having only recently been identified as possessing information relevant to the issue of '864 patent infringement.

The Honorable Sue L. Robinson
October 30, 2006 – Public Version
Page 6

*It was not until the August/mid-September time frame* that Plaintiff Alcatel Internetworking first informed Foundry that:

REDACTED

Plaintiff Alcatel Internetworking, Inc. was under an obligation under Fed. R. Civ. P. 26(a)(1) and this Court's Discovery Order to disclose *one year ago*, on October 18, 2005, knowledgeable individuals at Alcatel USA, Inc., Alcatel Business Systems, Alcatel USA Marketing, Inc., and Alcatel Bell NV who would be expected to have information

The Honorable Sue L. Robinson
October 30, 2006 – Public Version
Page 7

relevant to Plaintiff Alcatel Internetworking, Inc.'s claims and defenses. It did not. [*See* Ex. 15.] Nor did it make those identifications in its supplemental Rule 26(a)(1) initial disclosures, served on February 15, 2006 [*see* Ex. 16, p. 8, ¶ 26], or in responses to interrogatories that Foundry also served in February [*see* Exs. 19, 20, 21]. Instead, after concealing such pertinent information for more than six months, notwithstanding Foundry's repeated requests for discovery supplementation, it was not until August (and continuing through the end of last week) that Plaintiff Alcatel Internetworking, Inc. first informed Foundry of the activities of these other Alcatel entities. [*See* Exs. 8, 9, 10, 11, 12.] The disclosure is still not complete.

Alcatel Internetworking, Inc.'s failure to identify persons with relevant knowledge is exemplified by the following:

- October 2005: Alcatel Internetworking, Inc.'s Rule 26 Initial disclosures fail to identify a single individual with knowledge relating to Alcatel's Count II allegations. [*See* Ex. 15.]

- February 2006: Supplemental Rule 26 disclosures name only two individuals purportedly having relevant technical knowledge about the development and operation of accused Alcatel products, Mr. Michel LeCreff and Mr. Francis Pinault, both "of France," with no other identifying information provided.

  > "Any contact with or request for information from either individual should be <u>first arranged through Alcatel's trial counsel</u>."

  [*See* Ex. 16, p. 8, ¶ 26] (emphasis added).

- March 2006: Mr. LeCreff is again named as the person most knowledgeable about the design and development of the OmniPCX products, but Alcatel Internetworking again fails to identify his employer. [*See* Ex. 20, Response to Int. No. 5.]

REDACTED

REDACTED[2]

- October 2006: Alcatel Internetworking informs Foundry that no witnesses from France will be produced for depositions on Count II discovery relating to technical documents produced on the OmniPCX product line. [October 4, 2006 Discovery Conference]

Foundry was unaware that entities other than Plaintiff Alcatel Internetworking, Inc. were responsible for the development, sales, and/or installations of the accused products, because Plaintiff's litigation conduct effectively concealed that information until August/September 2006:

1. Alcatel Internetworking, Inc. has never filed a corporate disclosure statement pursuant to Fed. R. Civ. P. 7.1. in this action.

2. Plaintiffs' Amended Complaint, Rule 26(a)(1) initial disclosures, and subsequent responses to interrogatories never revealed that non-party Alcatel Business Systems is at least one entity involved in the design and development of the OmniPCX product line, that Alcatel Bell NV (Antwerp) and Alcatel USA Marketing, Inc are responsible for design, development and sales of the accused 5020 Softswitch product line, or that Alcatel USA, Inc. is both the parent corporation of Plaintiff Alcatel Internetworking and actively involved in sales of the accused products.

3. Discovery relating to Count II and counterclaim commenced on January 23, 2006.[3] Foundry's first sets of document requests and interrogatories relating to Count II and counterclaim specifically sought information on the OmniPCX and 5020 Softswitch product lines (as well as ancillary products sold or used in conjunction with those product lines), including information concerning which entities are or have been involved in United States installations of the accused systems [See Ex. 17 (Count II RFPs, served January 24, 2006), Ex. 19 (Count II Interrogatories served February 22, 2006).]

4. In responding to those discovery requests,[4] Plaintiff Alcatel Internetworking led Foundry to believe that it had or would provide complete answers to

---

[2] REDACTED

[3] Prior to January 23, 2006, discovery was restricted to Count I infringement issues and focused on Alcatel's requirement under "Stage One" to narrow its infringement allegations to four of its nine originally-asserted patents.

[4] The Court extended the deadline for the parties to complete its document production, originally set for February 24, 2006, by 30 days.

interrogatories (under Fed. R. Civ. P. 33(d)), and produce documents and source code responsive to those requests. [*See e.g.* Exs. 18, 20.] It did not. Alcatel Internetworking's initial production of Count II documentation consisted merely of public prior art and publicly available website materials. Foundry's repeated requests for supplementation were largely ignored. [*See* Ex. 26 (Alcatel Production log and accompanying letters requesting supplementations).] Timely disclosure of the information requested in January and February would have revealed six months ago the identities of the additional Alcatel entities that Foundry that now seeks to join as counterclaim co-defendants, which are engaged in activities that are highly relevant to Foundry's infringement allegations.          REDACTED

5. Foundry served its first deposition notice under Fed. R. Civ. R. 30(b)(6) three months ago (July 21, 2006), comprising topics that were "exploratory" in nature, seeking primarily the identifications of documents and persons knowledgeable. [*See* Ex. 22, Topic Nos. 1-30.] Despite many promises to the contrary over several months, Alcatel Internetworking has still not provided any witnesses for 28 of those 30 topics. Indeed, during a telephonic meet and confer between counsel on Friday, October 20, 2006, counsel for Alcatel Internetworking informed Foundry's counsel that it would not provide any fact witnesses at all (under Rule 30(b)(6) or otherwise) concerning specific technical aspects of the accused OmniPCX product line documented in the production that was purportedly produced by Alcatel Business Systems.

### IV. Alcatel Internetworking, Inc. Previously Did Not Reject Foundry's Request For Stipulation To Join Additional Alcatel Entities As Parties To This Litigation

In July and early August, 2006, counsel from the Niro firm, Potter Anderson, and Howrey met and conferred to discuss Alcatel Internetworking's "recently learned" information regarding additional (as yet unidentified) Alcatel entities having information expected to be highly relevant to Foundry's infringement contentions.

At those July/August meet and confers, Foundry's counsel expressed the potential need to join any such late-identified entity as a party to this litigation. Alcatel's counsel never rejected that proposal. At that time, Alcatel's counsel appeared to still be in the process of investigating which Alcatel entities would have relevant information relating to Foundry's counterclaim. [See e.g. Ex. 11, p. 3, ¶3.]

Foundry again raised the issue of joining additional parties as counterclaim co-defendants at the September 6 and September 14 hearings on its emergency motion. [*See* Ex. 23 (Hearing Tr. (9/6/06)) at 24:1-25:4; Ex. 24 (Hearing Tr. (9/14/06)) at 19:22-20:6] Plaintiffs voiced no opposition. On October 4, at the last discovery hearing, Plaintiffs' counsel agreed that it would not oppose Foundry's request to join additional counterclaim co-defendants based upon discovery to date, but conditioned that agreement on Foundry's

The Honorable Sue L. Robinson
October 30, 2006 – Public Version
Page 10

reciprocal agreement to sever the Count II and counterclaim trial from the trial on Count I, allowing the Count I trial to proceed in April 2007. [See Ex. 25 (Hearing Tr. (10/4/06)) at 43:4-11]. Foundry declined that *quid pro quo*. It was only then, on October 4, that Plaintiffs for the first time expressed unequivocally its opposition to joining additional parties.

**V.     Conclusion**

Alcatel can have no argument with Foundry's assertion that proving its infringement contentions requires discovery provided from at least Alcatel USA, Inc., Alcatel Business Systems, Alcatel USA Marketing, Inc., and Alcatel Bell NV. Foundry did not previously move for leave to amend its pleading to join additional Alcatel entities as counterclaim defendants because Alcatel Internetworking, by its discovery conduct, effectively concealed the identities of other Alcatel entities engaged in accused infringing activities until months after the deadline had passed. Foundry could not possibly have discovered the names of those other entities through independent investigations.

REDACTED

Should Your Honor have any questions, counsel is available at the Court's convenience.

Respectfully,

/s/ Philip A. Rovner

Philip A. Rovner
provner@potteranderson.com

PAR/mes/758641
Enc.
cc: Karen L. Pascale, Esq. – by e-mail and hand delivery
    Timothy J. Haller, Esq. – by e-mail and Federal Express