# EXHIBIT 19

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALCATEL USA RESOURCES, INC. and ALCATEL INTERNETWORKING, INC., | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 05-418-SLR |
| v. | ) ) ) | |
| FOUNDRY NETWORKS, INC., | ) ) | |
| Defendant. | ) | |

## FOUNDRY NETWORKS, INC.'S FIRST SET OF INTERROGATORIES TO ALCATEL INTERNETWORKING INC. REGARDING PLAINTIFF'S COUNT II AND DEFENDANT'S COUNTERCLAIM (NOS. 1-12)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Foundry

Networks, Inc. ("Foundry"), by its attorneys, hereby requests Alcatel Internetworking,

Inc. to answer the following interrogatories separately and fully under oath, in writing,

and signed by an officer making such answer within thirty (30) days after service

hereof. These interrogatories are continuing, and any additional information relating in

any way to these interrogatories (or to events occurring or documents existing prior to

the filing the Complaint) which Alcatel subsequently acquires or which later become

known to Alcatel shall be furnished to Foundry within a reasonable time after such

information is acquired or becomes known. Alcatel's responses to these interrogatories

are to be promptly supplemented to include subsequently acquired information in

accordance with the requirements of the Federal Rules of Civil Procedure and the

Court's October 18, 2005 Scheduling Order.

## DEFINITIONS

As used herein and in all further discovery requests, unless specified otherwise, the terms listed below shall be defined as follows:

1.     "Alcatel," "you," and "your" means plaintiff Alcatel Internetworking, Inc., its parents, subsidiaries, divisions, affiliates, predecessors, assigns, successors, and acquired assets or business units, including but not limited to, Alcatel USA Resources, Inc., and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, patent agents and/or all other persons acting, or purporting to act, on their behalf.

2.     "Foundry" means Defendant and Counterclaimant Foundry Networks, Inc.

3.     "Person" shall mean individual, individuals, business entity or entities, including but not limited to, associations, corporations, partnerships, or business trusts, any federal, state, or local government or governmental agency, and any foreign government or foreign government agency or other organization recognizable at law and the "acts" of a Person, are defined to include the acts of directors, officers, owners, members, employees, agents or attorneys acting on the Person's behalf.

4.     The terms "documents" or "document" means any original and every non-identical copy or reproduction of any document, writing or record within the broad context of Rule 34 of the Federal Rules of Civil Procedure, in the possession, custody or control of Alcatel, including, for example, but not limited: any written, printed, typed, or other graphic matter of any kind or nature; any physical object or thing, animate or inanimate; all mechanical, magnetic, digital, or electric sound or video

2

recordings or transcripts thereof, any retrievable data, communication (including but not limited to, electronic mail and web site information), information, or statistics contained on any memory device or other information storage and retrieval systems (whether stored, encoded, taped, or coded electrostatically, electromagnetically, optically, digitally, or otherwise); and also without limitation, agreements, books, catalogs, charts, compilations, conversations, correspondence, descriptions, diagrams, diaries, directives, drawings, electronic recordings, facsimile transmissions, files, films, graphs, inspection reports, interoffice memoranda, instructions, letters, maps, measurements, memoranda, minutes, motion pictures, notes, notebooks, notices, pamphlets, periodicals, photocopies, photographs, plans, plats, proposals, publications and published or unpublished speeches or articles, recordings, records, sampling results, laboratory reports, reports, reproductions, samples, schedules, sketches, specifications, statements, studies, summaries, surveys, telecopies, telegrams, telephone call slips, and transcripts of telephone conversations, test results, transcripts, videotapes, worksheets, and working papers that are in the possession, custody or control of the Plaintiff, wherever located. "Documents" and "document" shall also mean all copies of documents, by whatever means made (including but not limited to, carbon, handwritten, microfilmed, telecommunicated, photostatic or xerographic copies), and include all non-identical copies (whether different from the original because of any alterations, notes, comments or other material contained thereon or attached thereto, or otherwise). "Documents" and "document" shall also include any and all data compilations from which information can be obtained, including, for example, information from an Internet or Intranet web site.

3

5.    The terms "communication" or "communications" shall mean any communication regardless of the manner in which communications took place, including but not limited to, personal conversations, correspondence, electronic or computer mail, telephone calls, facsimile communications, or telegrams.

6.    The terms "and" and "or" shall be understood as either conjunctive or disjunctive whichever is more inclusive in content.

7.    The terms "any" and "all" shall be considered to include "each and every."

8.    The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of a noun or pronoun so used, and vice versa.

9.    The term "Complaint" means the Amended Complaint filed by Alcatel in this action, dated July 27, 2005.

10.    The term "'864 patent" means U.S. Patent No. 6,118,864.

11.    The term "independent claims of the '864 patent" means claims 1, 32, 53, 78 and 85 of the '864 patent.

12.    The term "prosecution" shall mean or refer to proceedings before any patent office, either the United States Patent and Trademark Office or a foreign patent office, in connection with the filing, issuance, reexamination, reissue or review of, or opposition to, a particular patent.

13.    The term "public use" shall mean or refer to any public or private use or demonstration, whether experimental or otherwise, of the alleged invention, or any use that disclosed the alleged invention to anyone other than an employee, agent or

attorney of Alcatel, including without limitation existing or potential investors, licensees, customers or distributors.

14.    The term "sale" shall mean or refer to public or private efforts of any sort in connection with the commercialization of an alleged invention, whether experimental or otherwise, including without limitation any offers for sale or license, actual sales or licenses, or any advertising of or price quotations for the alleged invention.

15.    The term "prior art" shall mean or refer to any U.S. or foreign patent or patent application, publication, reference, process, machine, manufacture, or composition of matter, item or information that predates the filing of the '864 patent and relates to the subject matter of one or more claims of the '864 patent, regardless of whether Alcatel contends that such prior art either anticipates or renders obvious, under 35 U.S.C. § 102 and/or 35 U.S.C. § 103, the inventions claimed in the '864 patent.

16.    The term "PTO" means the United States Patent and Trademark Office.

17.    The term "PBX" means private branch exchange.

18.    The term "VOIP" means voice-over-IP.

19.    The term "Alcatel Accused Product" shall mean any product under development, made, used, sold, offered for sale, licensed, distributed or marketed as "OmniPCX Enterprise," "OmniPCX Office," "OmniPCX 4400," "OmniSwitch 8800," "OmniSwitch 7800," "OmniSwitch 6600," "OmniSwitch 7700," "Alcatel 1540 Litespan," "Alcatel 5020 Softswitch," "Alcatel 7750 SR," "Alcatel 7450 ESS," "Alcatel 7505 Media Gateway," and all other products under development, made, sold, offered for sale, licensed, distributed or marketed by Alcatel for incorporation into any

telecommunications system that is intended to deliver private branch exchange ("PBX")
services, such as call hold, call forwarding, call transfer, call conferencing and the like,
VOIP services and/or Centrex services to end-users of such telecommunication system.

      20.    The term "identify" as applied to a document means that the
following information shall be provided: (1) the date of the document, (2) the number of
pages of the document, (3) the identity of all persons who prepared or signed a copy of
the document, (4) the identity of all persons designated as addressees of the document,
(5) the identity of all persons designated as copy recipients of any copy of the document,
(6) the type of document (e.g. memorandum, pamphlet, report, e-mail), and (7) the
general subject matter of the document. Alternatively, the production number(s) of the
document for this litigation may be provided.

      21.    The term "identify" as applied to factual or legal bases means to
state in detail each and every fact, and each and every legal proposition or interpretation,
upon which a belief or contention is based, provide a claim chart (when factual and/or
legal bases are requested on an element-by-element basis), and identify all documents,
persons and events that lend support to that belief or contention.

      22.    The term "identify" as applied to a person or entity means a
description sufficient to identify (a) in the case of a natural person, that person's: (i) full
name; (ii) present or last known home and business address and telephone number; (iii)
current employer, position and job description; (iv) responsibilities with respect to the
subject matter of the interrogatory and the periods of time that person had such
responsibilities; and (v) relevant knowledge or participation; or (b) in the case of
corporations, partnerships, proprietorships, and unincorporated associations: (i) the full

name, including any additional name under which it does business; (ii) form and place of organization or incorporation; and (iii) principal place of business.

23.    The term "identify" as applied to events means to provide a description of the event, the date of the event, the location of the event, and the individual and organizational entities participating in or observing the event.

24.    The term "identify" as applied to products means to state the name of the product, the product type, the product number (for those products with product numbers), model number (for those products with model numbers), the marketing name, sales name, internal development name, revision level (for those products with revision levels), manufacturer and any other designation known to Alcatel.

25.    The terms "relating to," "referring to," "relates," "refers," "concerns" and "concerning" any given subject means, without limitation, identifying, describing, discussing, referencing, concerning, assessing, stating, reflecting, constituting, containing, embodying, tending to support or refute, or referring to, directly or indirectly, in any way, the particular subject matter identified.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Describe in detail when and how Alcatel first became aware of the '864 patent, and identify all documents, communications and events relating to Alcatel's initial awareness of the '864 Patent and all persons having knowledge of Alcatel's initial awareness of the '864 patent.

### INTERROGATORY NO. 2:

Identify all products, documents and communications relating to any sales, marketing, leasing or licensing efforts relating to each Alcatel Accused Product, regardless of whether or not such efforts resulted in a purchase order, sale, lease or license agreement.

### INTERROGATORY NO. 3:

Identify all instances in which Alcatel, or any third party known to Alcatel, has installed, for any purpose, one or more Alcatel Accused Product and, for each such installation, identify the product(s) installed, the person(s) or entity(ies) for whom the installation was performed, the purpose of the installation, the location of the installation, the date the installation began, the date the installation was completed, all software installed in conjunction with or relating to that installation, all communications relating to such installation (including but not limited to all Alcatel internal communications and Alcatel's communications with third parties) and, on a product-by-product basis, identify and state the quantity of each product so installed and the person(s) having the most knowledge of the facts relating to the installation.

8

## INTERROGATORY NO. 4:

Identify all entities to which Alcatel has sold, leased or licensed one or more of Alcatel's Accused Products and, on a entity-by-entity basis, identify all products relating to that sale, lease, or license, the number of each such product sold, leased, or licensed, all software sold, leased or licensed in conjunction with or relating to the operation of each such product, all communications relating to each such sale, lease or license (including but not limited to all Alcatel internal communications and Alcatel's communications with third parties), and the person(s) having the most knowledge of the facts relating to each sale, lease or license.

## INTERROGATORY NO. 5:

Individually with respect to each Alcatel Accused Product, on a product-by-product basis identify (a) the individual person or persons, whether or not employed by Alcatel, most knowledgeable about the conception, design, development, modification, engineering, testing or evaluation of that product; (b) the person or persons most knowledgeable regarding the decision to and reasons for introducing (or not introducing) that product into the marketplace; (c) the role and activities engaged in by each person identified in response to subparagraphs (a) and (b) above; and (d) all documents and communications supporting each of the responses to subparagraphs (a) – (c) above.

## INTERROGATORY NO. 6:

Individually with respect to each Alcatel Accused Product, identify the person in charge of or responsible for each of the following departments, groups, divisions and/or activities of Alcatel since December 1, 1996: (a) research and development; (b) engineering; (c) sales; (d) marketing; (e) accounting; (f) advertising and sales promotion;

9

(g) finances; (h) information management; (i) document retention policy; and (j) operation of the company.

### INTERROGATORY NO. 7:

For each independent claim of the '864 patent, identify all documents and set forth with specificity all facts supporting any contention by Alcatel that none of Alcatel's Accused Products, and/or method(s) of installation for those products, infringes any of those independent claims of the '864 patent, including, without limitation, identifying with specificity, on a product-by-product basis, each individual claim limitation that Alcatel contends is both literally and equivalently absent from each Alcatel Accused Product, and identify the person(s) having the most knowledge of such facts.

### INTERROGATORY NO. 8:

State with particularity each and every legal and factual basis for Alcatel's allegation that "Alcatel Internetworking has not infringed any valid claim of the '864 patent in any way, i.e., directly, contributorily, or by inducement. Therefore, Alcatel Internetworking is entitled to a judicial declaration that it has not and does not infringe the '864 patent" (*see* Alcatel's Amended Complaint, paragraph 15). This statement should include, without limitation, an identification of all facts that Alcatel contends affect the scope of the independent claims of the '864 patent, and the identification of the person(s) most knowledgeable about this response.

### INTERROGATORY NO. 9:

State with particularity each and every legal and factual basis for Alcatel's allegation that "[t]he '864 patent is invalid for failure to comply with one or more of the requirements, conditions, and provisions set forth in at least 35 U.S.C. §§ 101, 102, 103,

and/or 112" (*see* Alcatel's Amended Complaint, paragraph 16), and identify all prior art, prior uses or sales, and prior knowledge that Alcatel contends affects the validity of the '864 patent, and identify the person(s) most knowledgeable about this response.

**INTERROGATORY NO. 10:**

State with particularity each and every legal and factual basis for Alcatel's allegation that "this case is exceptional and an award to Alcatel Internetworking of all remedies available under 35 U.S.C. §285, including attorney's fees" is warranted (*see* Alcatel's Amended Complaint, Section D. Prayer For Relief), and identify the person(s) most knowledgeable about this response.

**INTERROGATORY NO. 11:**

State with particularity each and every legal and factual basis for Alcatel's qualified denial of Foundry's allegation that Alcatel Internetworking has had actual and constructive notice of its infringement of the '864 patent through, *inter alia*, notice from Foundry, pre-litigation meetings and correspondence, and Foundry's counterclaim for infringement, and that despite such notice, Alcatel Internetworking has willfully and deliberately infringed the '864 patent. (*See* Alcatel's Response to Foundry's Counterclaim paragraph C.9.) This statement should include without limitation an identification of all persons having knowledge relevant to that qualified denial and an identification of all documents and/or communications upon which Alcatel intends to rely in support of its qualified denial.

**INTERROGATORY NO. 12:**

For each Alcatel Accused Product, state when that product was first made, used, sold, offered for sale or imported into the United States, identifying each product name

ever used to designate that product (including all names internal to Alcatel, as well as all names under which such product has been marketed or sold), and enumerating, for each individual product, all individual versions and releases of that product.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Henry C. Bunsow
K. T. Cherian
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, CA 94105
(415) 848-4900

Attorneys for Count II
Defendant and Counterclaimant
Foundry Networks, Inc.

Dated: February 22, 2006
718009

By: _____
    Philip A. Rovner (#3215)
    Hercules Plaza
    P.O. Box 951
    Wilmington, Delaware 19899
    (302) 984-6000
    E-mail: provner@potteranderson.com

Attorneys for Defendant and
Counterclaimant
Foundry Networks, Inc.

12

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

<u>CERTIFICATE OF SERVICE</u>

I, Philip A. Rovner, hereby certify that on February 22, 2006, true and correct

copies of the within document were served on the following counsel of record at the

addresses and in the manner indicated:

<u>BY HAND DELIVERY</u>

Josy W. Ingersoll, Esq.
Adam W. Poff, Esq.
Karen L. Pascale, Esq.
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19899-0391

<u>BY FEDERAL EXPRESS</u>

Timothy J. Haller, Esq.
Niro, Scavone, Haller & Niro
181 W.  Madison Street, Suite 4600
Chicago, IL  60602

Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

# EXHIBIT 20

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RECEIVED

MAR 27 2006

| | | |
|---|---|---|
| ALCATEL USA RESOURCES, INC., a Delaware Corporation, and ALCATEL INTERNETWORKING, INC., a California Corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:05 CV 418 |
| v. | ) ) | |
| FOUNDRY NETWORKS, INC., a Delaware Corporation, | ) ) ) | |
| Defendant. | ) | |

### ALCATEL'S RESPONSE TO FOUNDRY'S FIRST SET OF INTERROGATORIES REGARDING PLAINTIFF'S COUNT II & DEFENDANT'S COUNTERCLAIM (NOS. 1-12)

Counterclaim Defendant Alcatel Internetworking, Inc. (herein "Alcatel Internetworking"), hereby submits its objections and responses to the First Set of Interrogatories Regarding Plaintiff's Count II and Defendant's Counterclaim (Nos. 1-12) propounded by Foundry Networks, Inc. ("Foundry"), as follows:

### GENERAL OBJECTIONS

1. To the extent any of Foundry's discovery requests call for documents or information subject to the attorney-client privilege and/or work-product immunity, they are objected to on that basis. Any documents withheld from production on either basis will be identified in a withheld document list that will be exchanged with Foundry's list of withheld documents. Alcatel Internetworking objects to identifying documents withheld on the basis of the attorney-client privilege and/or work product immunity that were created or prepared after the filing of this lawsuit.

2.    Alcatel objects to Foundry's discovery requests to the extent they are not sufficiently limited or reasonably calculated to lead to discovery of admissible evidence, and are overly broad and unduly burdensome. Alcatel Internetworking is willing, however, to confer with Foundry in an effort to resolve any disagreements between the parties relating to the scope, breadth and relevancy of Foundry's discovery requests.

3.    Alcatel objects to Foundry's discovery requests to the extent that they are repetitive, overlapping or duplicative. Where applicable, Alcatel Internetworking has attempted to identify relevant documents in response to Foundry's discovery requests. By so designating, Alcatel does not represent that the identified documents are the only relevant documents, or that the identified documents are necessarily the most relevant documents. However, Alcatel Internetworking has made a good faith effort to identify relevant documents and/or categories of documents as provided in Rules 33 and 34, Fed.R.Civ.P.

4.    In those instances where the response to Foundry's discovery requests can best be derived from the records of Alcatel Internetworking or from an examination, audit or inspection of such records, and the burden of deriving or ascertaining the answer is substantially the same for Alcatel Internetworking and Foundry, Alcatel Internetworking will specify the records from which a complete answer may be ascertained and afford Foundry's counsel a reasonable opportunity to audit, inspect and copy such records or provide categorized copies of such records in accordance with Federal Rule of Civil Procedure 33(d).

5.    Alcatel Internetworking objects to Foundry's discovery requests to the extent they request documents and/or information already in Foundry's possession or which are equally available to Alcatel Internetworking and Foundry from other sources.

6.    Where a discovery request includes words and concepts indicative of a legal

conclusion (such as "conception" and "prior art"), by stating that it will produce documents in its possession or identify documents, Alcatel Internetworking does not represent that such legal conclusions apply.

7.    Discovery requests calling for or pertaining to ultimate conclusions are necessarily limited by the present lack of discovery. Discovery responses will be supplemented as appropriate and as provided in Rule 26(e), Fed.R.Civ.P.

8.    Alcatel Internetworking objects to Foundry's definitions and instructions to the extent they are inconsistent with the appropriate Federal Rule of Civil Procedure, such as Rules 26, 33 and 34, and the Local Rules of the Court. Alcatel Internetworking will rely upon the Federal Rules of Civil Procedure, the Local Rules and governing case law with respect to the subject definitions, instructions and responses.

9.    Alcatel Internetworking objects to each and every Foundry request to the extent it seeks information that exceeds the scope of discovery.

10.    Alcatel Internetworking objects to Foundry's requests to the extent such requests seek documents which fall within the scope of Federal Rule of Evidence 408.

11.    The following responses are based on information reasonably available to Alcatel Internetworking as of the date of this response. Alcatel's investigation is continuing and ongoing and Alcatel Internetworking expressly reserves the right to revise or supplement the response based upon information learned after the date of this response and to use such information in the current litigation.

12.    Alcatel Internetworking objects to each request to the extent it seeks to elicit information that comprises third party confidential information of which Alcatel Internetworking is obligated not to disclose.

13.    Alcatel Internetworking objects to each and every request to the extent that Foundry seeks documents or information not in the possession, custody or control of Alcatel Internetworking.

14.    These General Objections shall be deemed to be incorporated in full into each of the individual responses set forth below.

15.    Foundry has not supplied any claim charts or other detailed infringement contentions as to any product sold by Alcatel Internetworking other than the OmniPCX Enterprise, despite the fact that such contentions were due in late February 2006. Hence, the OmniPCX Enterprise is the only "accused product" until Alcatel Internetworking receives understandable contentions to help it respond more broadly to these discovery requests.

16.    To the extent that specific General Objections are cited in a specific response, those citations are provided because they are believed to be particularly applicable to the specific requests, and are not to be construed as a waiver of any other General Objection applicable to information falling within the scope of the request.

## INTERROGATORIES

### Interrogatory No. 1

Describe in detail when and how Alcatel first became aware of the '864 patent, and identify all documents, communications and events relating to Alcatel's initial awareness of the '864 Patent and all persons having knowledge of Alcatel's initial awareness of the '864 patent.

### Response:

Investigation continues, but Alcatel currently believes Alcatel (Paris) became aware of the '864 patent in 2002. Alcatel Internetworking became aware of the '864 patent in early 2004 after Foundry first identified a product sold by Alcatel Internetworking as potentially infringing. Michael See is the person at Alcatel Internetworking most knowledgeable as to this answer.

<u>Interrogatory No. 2</u>

Identify all products, documents and communications relating to any sales, marketing, leasing or licensing efforts relating to each Alcatel Accused Product, regardless of whether or not such efforts resulted in a purchase order, sale, lease or license agreement.

<u>Response:</u>

This interrogatory is unduly burdensome, vague and indefinite, and cannot be understood at any level of detail to permit an answer. Alcatel Internetworking seeks clarification of what it means to "identify" all documents relating to the specified activities relating to each accused product. As best Alcatel understands, documents responsive to this interrogatory have been or will be produced under FRCP 33(d) with respect to those "accused products" sold by Alcatel Internetworking and for which Foundry has given Alcatel Internetworking a claim chart.

<u>Interrogatory No. 3</u>

Identify all instances in which Alcatel, or any third party known to Alcatel, has installed, for any purpose, one or more Alcatel Accused Product and, for each such installation, identify the product(s) installed, the person(s) or entity(ies) for whom the installation was performed, the purpose of the installation, the location of the installation, the date the installation began, the date the installation was completed, all software installed in conjunction with or relating to that installation, all communications relating to such installation (including but not limited to all Alcatel internal communications and Alcatel's communications with third parties) and, on a product-by-product basis, identify and state the quantity of each product so installed and the person(s) having the most knowledge of the facts relating to the installation.

<u>Response:</u>

This interrogatory is unduly burdensome, vague and indefinite. Alcatel Internetworking seeks clarification of what it means to "identify" all documents relating to the specified activities relating to each accused product. As best Alcatel understands, documents responsive to this interrogatory have been or will be produced under FRCP 33(d) with respect to those "accused

products" sold by Alcatel Internetworking and for which Foundry has given Alcatel Internetworking

a claim chart. Produced documents include "case study" type reports on specific installations.

## Interrogatory No. 4

Identify all entities to which Alcatel has sold, leased or licensed one or more of
Alcatel's Accused Products and, on a entity-by-entity basis, identify all products relating to that
sale, lease, or license, the number of each such product sold, leased, or licensed, all software
sold, leased or licensed in conjunction with or relating to the operation of each such product, all
communications relating to each such sale, lease or license (including but not limited to all
Alcatel internal communications and Alcatel's communications with third parties), and the
person(s) having he most knowledge of the facts relating to each sale, lease or license.

## Response:

This interrogatory is unduly burdensome, vague and indefinite. Alcatel Internetworking

seeks clarification of what it means to "identify" all communications relating to the specified

activities relating to each accused product. Subject to the General Objections, Alcatel

Internetworking will consider producing documents from which nonobjectionable aspects of this

interrogatory may be determined under FRCP 33(d), with respect to those "accused products" sold by

Alcatel Internetworking and for which Foundry has given Alcatel Internetworking a claim chart.

## Interrogatory No. 5

Individually with respect to each Alcatel Accused Product, on a product-by-product basis
identify (a) the individual person or persons, whether or not employed by Alcatel, most
knowledgeable about the conception, design, development, modifications, engineering, testing or
evaluation of that product; (b) the person or persons most knowledgeable regarding the decision
to and reason for introducing (or not introducing) that product into the marketplace; (c) the role
and activities engaged in by each person identified in response to subparagraphs (a) and (b)
above; and (d) all documents and communications supporting each of the responses to
subparagraphs (a) – (c) above.

## Response:

Foundry has not supplied any claim charts or other detailed infringement contentions as to any product sold by Alcatel Internetworking other than the OmniPCX Enterprise, despite the fact that such contentions were due in late February 2006. Hence, the OmniPCX Enterprise is the only "accused product" until Alcatel Internetworking receives understandable contentions to help it respond more broadly to these discovery requests. Alcatel Internetworking has no knowledge of who is most knowledgeable on the topics identified in subparts (a)-(c), and therefore cannot supply documents supporting responses under subpart (d). Without waiver of these objections, Alcatel Internetworking believes that Michel LeCreff, a resident of France, may have some knowledge relevant to the topics identified in subparts (a) – (c).

## Interrogatory No. 6

Individually with respect to each Alcatel Accused Product, identify the person in charge of or responsible for each of the following departments, groups, divisions and/or activities of Alcatel since December 1, 1996: (a) research and development; (b) engineering; (c) sales; (d) marketing; (e) accounting; (f) advertising and sales promotion; (g) finances; (h) information management; (i) document retention policy; and (j) operation of the company.

## Response:

Foundry has not supplied any claim charts or other detailed infringement contentions as to any product sold by Alcatel Internetworking other than the OmniPCX Enterprise, despite the fact that such contentions were due in late February 2006. Hence, the OmniPCX Enterprise is the only "accused product" until Alcatel Internetworking receives understandable contentions to help it respond more broadly to these discovery requests. Alcatel Internetworking has no knowledge of who is most knowledgeable on the topics identified in subparts (a)-(c), and therefore cannot supply documents supporting responses under subpart (d).

With respect to non-OmniPCX Enterprise products sold by Alcatel Internetworking (and

possibly in some cases overlapping with OmniPCX Enterprise sales activities with respect to non-technical matters), Alcatel Internetworking responds as follows without waiver of any of the foregoing objections.

a) Research and Development
John Bailey - 1996 - 9/2003
Wally Scott- 9/03 - 7/05
Eric Penisson - 7/05 - present

b) Engineering
same as a

c) Sales
Rene Arvin - 1996 - 01/2000
Tom Wilburn - 01/2000 - 6/2004
Eric Grubel - 6/2004 - present

d) Marketing
Douglas Hill - 1996 - 5/2000
Joelle Gauthier - 5/2000 - 9/2003
Eric Penisson - 9/2003 - present

e) Accounting
same as g

f) advertising and sales promotion
same as d

g) finances
Steve Cordial - 1996
Dale Bartos - 01/1997 - 5/1999
Tom Burns - 5/1999 - 9/2003
Edwin Afshalimi - 9/2003 - present

h) information management
Saeed Hosesinyar - 1996 - present

i) Document retention policy
Sharon Goolsby, Esq., Alcatel USA, Inc. Legal Department

j) operation of the company
Steve Kim - 1996 - 12/1999
Patrick Liot - 12/1999 - 9/03

Tom Burns - 9/03 – present.

In listing any of the foregoing names, Alcatel Internetworking does not concede that such

individuals have discoverable information in this case.

## Interrogatory No. 7

For each independent claim of the '864 patent, identify all documents and set forth with
specificity all facts supporting any contention by Alcatel that none of Alcatel's Accused
Products, and/or method(s) of installation for those products, infringes any of those independent
claims of the '864 patent, including, without limitation, identifying with specificity, on a product-
by-product basis, each individual claim limitation that Alcatel contends is both literally and
equivalently absent from each Alcatel Accused Product, and identify the person(s) having the
most knowledge of such facts.

## Response:

Foundry has not supplied any claim charts or other detailed infringement contentions as to

any product sold by Alcatel Internetworking other than the OmniPCX Enterprise, despite the fact that

such contentions were due in late February 2006. Hence, the OmniPCX Enterprise is the only

"accused product" at least until Alcatel Internetworking receives understandable contentions to help

it respond more broadly. In addition, Foundry has only asserted infringement of claims 1, 3 and 32.

Should Foundry add additional infringement contentions, Alcatel Internetworking reserves the right

to supplement accordingly.

Each of the asserted claims requires a communications platform, construed to be a general

purpose computer under program control. The accused products are not general purpose computers;

they are special purpose computers. See the communications with Foundry on this subject, within

the FOU-ALC document production series. Foundry's infringement contentions have identified no

basis to conclude that the OmniPCX Enterprise is other than a special purpose computer system.

The asserted claims require a product which includes both (1) facilities to detect PBX service

requests and (2) a voice communication module that enables the provision of VoIP calls. Foundry's contentions have not identified that any accused product contains a "voice communication module." For example, Foundry's contentions have not identified any board that formats digitized and packetized voice data and sends it to another equivalent board on another Alcatel device. VoIP phones connected to the OmniPCX Enterprise have already encapsulated packetized speech into IP headers, which are then sent to the OmniPCX Enterprise for switching and routing.

The asserted claims require a communications platform that has software that executes a plurality of PBX service requests detected on another communications platform. Foundry's contentions have not identified that any accused product contains such software. While Foundry's charts list 3- and 29-party conference, call park, conditional forwarding, unconditional forwarding, hold, transfer, etc., Foundry's charts do not indicate whether or how these services are executed locally via a request detected remotely at another "communications platform." Further, as discussed below, Foundry's charts lack any corresponding structure analysis for this "software" means claim. To the extent this claim element is not fatally indefinite (see below), Foundry has not supported its contentions with any structural-equivalency theories or argument.

The asserted claims require at least two networks, and PBX services requests received "from" a network. Alcatel's accused products do not receive PBX service requests from any network. The commands for features identified on Foundry's claim chart are received from devices connected to networks, not from the networks themselves.

In general, for the reasons discussed in the Nortel summary judgment briefing on invalidity and non-infringement, any construction of the '864 patent capable of reading the claims on the

OmniPCX Enterprise would simultaneously read the claims on the prior art. Hence, there cannot be any infringement of a valid claim, either literally or by equivalents.

Alcatel Internetworking reserves the right to supplement this interrogatory, for example upon receiving more complete infringement contentions from Foundry.

## Interrogatory No. 8

State with particularity each and every legal and factual basis for Alcatel's allegation that "Alcatel Internetworking has not infringed any valid claim of the '864 patent in any way, i.e., directly, contributorily, or by inducement. Therefore, Alcatel Internetworking is entitled to a judicial declaration that it has not and does not infringe the '864 patent" (*see* Alcatel's Amended Complaint, paragraph 15). This statement should include, without limitation, an identification of all facts that Alcatel contends affect the scope of the independent claims of the '864 patent, and the identification of the person(s) most knowledgeable about this response.

## Response:

In addition to the responses to interrogatory no. 7, Alcatel Internetworking further states that if there is any "infringing use" of the OmniPCX Enterprise, then there are also "substantial non-infringing uses" as well. Since all claims require at least two platforms interacting over a network, the mere sale of any of the accused products does not constitute direct infringement. For example, any given accused product may be used successfully on a completely local basis without any communication to another identical "platform" over any kind of network. Hence, each accused product is at a minimum capable of substantial non-infringing use. This forecloses not only direct infringement liability, but contributory infringement liability as well. Moreover, Foundry's contentions, either in its claim chart or its response to Interrogatory 4, do not identify any acts which constitute "active inducement" of infringement by Alcatel Internetworking.

Discovery is continuing, and Alcatel Internetworking reserves the right to supplement this response.

5848143
5805587
5751792
5751706


Discovery is continuing, and Alcatel reserves the right to supplement.


## Interrogatory No. 10

State with particularity each and every legal and factual basis for Alcatel's allegations that "this case is exceptional and an award to Alcatel Internetworking of all remedies available under 35 U.S.C. § 285, including attorney's fees" is warranted (see Alcatel's Amended Complaint, Section D. Prayer For Relief), and identify the person(s) most knowledgeable about this response.

## Response:

This interrogatory is premature, since the bases supporting a section 285 award in Alcatel Internetworking's favor are accumulating. At present, at least the following support the claim.

Foundry has been put on notice in other litigation of irrefutable grounds for patent invalidity. For example, see Nortel's motion for summary judgment and related papers. The Nortel case settled on the eve of the summary judgment hearing, precluding the Court from taking action on Nortel's motion. Despite being on notice of clear patent invalidity, Foundry filed and is pursuing the present counterclaim, in the process denying patent invalidity. Foundry is therefore pursing its counterclaim in bad faith.

Foundry admits that "communications platforms" of the '864 patent claims are limited to general purpose computer systems under program control. Foundry was on clear notice before filing and pursuing the present counterclaim that none of the accused products constitute such a system, since they are instead special purpose computer systems. Foundry is therefore pursing its counterclaim in bad faith.

Alcatel Internetworking reserves the right to supplement this interrogatory answer.

## Interrogatory No. 11

State with particularity each and every legal and factual basis for Alcatel's qualified denial of Foundry's allegation that Alcatel Internetworking has had actual and constructive notice of its infringement of the '864 patent through, *inter alia*, notice from Foundry, pre-litigation meetings and correspondence, and Foundry's counterclaim for infringement, and that despite such notice, Alcatel Internetworking has willfully and deliberately infringed the '864 patent. (*See* Alcatel's Response to Foundry's Counterclaim paragraph C.9.) This statement should include without limitation an identification of all persons having knowledge relevant to that qualified denial and an identification of all documents and/or communications upon which Alcatel intends to rely in support of its qualified denial.

## Response:

Alcatel Internetworking objects to this interrogatory to the extent it calls for revealing privileged attorney-client communications. Alcatel Internetworking provides this answer without waiving any applicable privileges.

During pre-litigation meetings, the only product Foundry contended to infringe that Alcatel Internetworking sells is the OmniPCX Enterprise. Foundry first made such a contention at the beginning of 2004, and not to Alcatel Internetworking but rather to an Alcatel parent company representative. Shortly thereafter, that representative provided Foundry clear and indisputable bases for non-infringement by the OmniPCX Enterprise and invalidity of the '864 patent. The person most knowledgeable is David Hawkes, who is not an Alcatel Internetworking employee. Relevant documents are contained within the FOU-ALC series produced by Foundry. Foundry has not supplied any claim charts or other detailed infringement contentions as to any other Alcatel Internetworking product.

Alcatel Internetworking reserves the right to supplement this interrogatory as discovery progresses.

## Interrogatory No. 12

For each Alcatel Accused Product, state when that product as first made, used, sold, offered for sale or imported into the United States, identifying each product name ever used to designate that product (including all names internal to Alcatel, as well as all names under which such product has been marketed or sold), and enumerating, for each individual product, all individual versions and releases of that product.

**Response:**

Foundry has not supplied any claim charts or other detailed infringement contentions as to any product sold by Alcatel Internetworking other than the OmniPCX Enterprise, despite the fact that such contentions were due in late February 2006. Hence, the OmniPCX Enterprise is the only "accused product" until Alcatel Internetworking receives understandable contentions to help it respond more broadly to these discovery requests. The OmniPCX Enterprise was first released in October 2000 as the OmniPCX 4400. Its branding changed in October 2003 to OmniPCX Enterprise. Alcatel Internetworking does not manufacture this product.

Respectfully Submitted as to Objections,

Alcatel USA Resources, Inc., and
Alcatel Internetworking, Inc.

Josy W. Ingersoll (#1088)
John W. Shaw (#3362)
Adam W. Poff (#3990)
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West St.
Wilmington, DE 19801
phone 302 571-6600
jingersoll@ycst.com

Timothy J. Haller
NIRO, SCAVONE, HALLER & NIRO
181 West Madison Street, Suite 4600

Chicago, Illinois 60602
phone (312) 236-0733
haller@nshn.com

Attorneys for Counterclaim Defendant

As to responses:

I declare that the foregoing responses are true and correct to the best of my present knowledge and belief. Executed this 27th day of March, 2006.

John Berres on behalf of Alcatel Internetworking

## CERTIFICATE OF SERVICE

I, Adam W. Poff, Esquire, hereby certify that on March 27, 2006, I caused copies of the foregoing document to be served upon the following counsel of record as indicated below:

### BY HAND DELIVERY

Philip A. Rovner, Esquire
Potter Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE 19801

### BY FEDERAL EXPRESS

William L. Anthony, Esquire
Matthew H. Poppe, Esquire
Michael F. Heafey, Esquire
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Adam W. Poff*

Josy W. Ingersoll (No. 1088)
*jingersoll@ycst.com*
John W. Shaw (No. 3362)
*jshaw@ycst.com*
Adam W. Poff (No. 3990)
*apoff@ycst.com*
Karen L. Pascale (No. 2903)
*kpascale@ycst.com*
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

Attorneys for Plaintiffs

# EXHIBIT 21

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ALCATEL USA RESOURCES, INC.,           )
   a Delaware corporation, and         )
ALCATEL INTERNETWORKING, INC.,         )
   a California corporation,           )
                               )
          Plaintiffs,              )
                               )
            v.                     )        Civil Action No. 05-418-SLR
                               )
FOUNDRY NETWORKS, INC.,                )
   a Delaware corporation,             )
                               )
          Defendant.               )

**ALCATEL'S FIRST SUPPLEMENTAL
RESPONSES TO FOUNDRY'S FIRST SET OF
INTERROGATORIES REGARDING PLAINTIFF'S
COUNT II & DEFENDANT'S COUNTERCLAIM (NOS. 2-4, 6-9 and 12)**

      Counterclaim Defendant Alcatel Internetworking, Inc. (herein "Alcatel Internetworking"),

hereby submits its objections and responses to the First Set of Interrogatories Regarding Plaintiff's

Count II and Defendant's Counterclaim (Nos. 2-4, 6-9 and 12) propounded by Foundry Networks,

Inc. ("Foundry"), as follows. Unless specifically noted otherwise, the term "Alcatel" refers to Alcatel

Internetworking, Inc.

**GENERAL OBJECTIONS**

      Alcatel repeats and realleges the General Objections from the original responses to these

interrogatories. In particular, Alcatel confirms that "Alcatel Accused Product" means only the

OmniPCX Enterprise and (now because of the recent addition of a claim chart) the OmniPCX

Office.   These are the only two products on the Foundry list of alleged accused products around

which Foundry has presented infringement contentions and which Alcatel sells.

## INTERROGATORIES

### Interrogatory No. 2

Identify all products, documents and communications relating to any sales, marketing, leasing or licensing efforts relating to each Alcatel Accused Product, regardless of whether or not such efforts resulted in a purchase order, sale, lease or license agreement.

### Response:

This interrogatory is unduly burdensome, vague and indefinite, and cannot be understood at any level of detail to permit an answer.  Alcatel Internetworking seeks clarification of what it means to "identify" all documents relating to the specified activities relating to each accused product.  As best Alcatel understands, documents responsive to this interrogatory have been or will be produced under FRCP 33(d) with respect to those "accused products" sold by Alcatel Internetworking and for which Foundry has given Alcatel Internetworking a claim chart.

### Supplemental Response:

This interrogatory remains difficult if not impossible to understand.  As best this can be understood, Alcatel refers Foundry to documents derived from its business partner intranet under Rule 33(d) as follows: Perform a keyword search among Alcatel-produced documents using the keyword OmniPCX.  The search results will identify approximately fifty documents between the ranges ALCATEL0025709 and ALCATEL0152650.  Alcatel also refers Foundry to documents located on the public internet as follows: Perform a keyword search among Alcatel-produced documents using the keyword OmniPCX.  The search result will identify approximately 203

documents between the ranges ALCATEL0011086 and ALCATEL0013194, as well as the document

located at ALCATEL002250.

## Interrogatory No. 3

Identify all instances in which Alcatel, or any third party known to Alcatel, has installed, for any purpose, one or more Alcatel Accused Product and, for each such installation, identify the product(s) installed, the person(s) or entity(ies) for whom the installation was performed, the purpose of the installation, the location of the installation, the date the installation began, the date the installation was completed, all software installed in conjunction with or relating to that installation, all communications relating to such installation (including but not limited to all Alcatel internal communications and Alcatel's communications with third parties) and, on a product-by-product basis, identify and state the quantity of each product so installed and the person(s) having the most knowledge of the facts relating to the installation.

## Response:

This interrogatory is unduly burdensome, vague and indefinite. Alcatel Internetworking

seeks clarification of what it means to "identify" all documents relating to the specified activities

relating to each accused product. As best Alcatel understands, documents responsive to this

interrogatory have been or will be produced under FRCP 33(d) with respect to those "accused

products" sold by Alcatel Internetworking and for which Foundry has given Alcatel Internetworking

a claim chart. Produced documents include "case study" type reports on specific installations.

## Supplemental Response:

Alcatel does not keep records of installations of its OmniPCX products in the manner

requested in this interrogatory, nor of who performs such installations. Related information is

available to Alcatel only from inspection of the entries in the Alcatel orders database,

ALCATEL00156604-ALCATEL00170607. Therefore, Alcatel refers Foundry to this database

under Fed. R. Civ. P. 33(d). The related information can best be derived by searching for the

keyword "OmniPCX" and inspecting the row entries wherein that term appears.

Interrogatory No. 4

Identify all entities to which Alcatel has sold, leased or licensed one or more of Alcatel's Accused Products and, on a entity-by-entity basis, identify all products relating to that sale, lease, or license, the number of each such product sold, leased, or licensed, all software sold, leased or licensed in conjunction with or relating to the operation of each such product, all communications relating to each such sale, lease or license (including but not limited to all Alcatel internal communications and Alcatel's communications with third parties), and the person(s) having he most knowledge of the facts relating to each sale, lease or license.

Response:

This interrogatory is unduly burdensome, vague and indefinite. Alcatel Internetworking seeks clarification of what it means to "identify" all communications relating to the specified activities relating to each accused product. Subject to the General Objections, Alcatel Internetworking will consider producing documents from which nonobjectionable aspects of this interrogatory may be determined under FRCP 33(d), with respect to those "accused products" sold by Alcatel Internetworking and for which Foundry has given Alcatel Internetworking a claim chart.

Supplemental Response:

Alcatel does not keep records of sales, etc., of its OmniPCX products in the manner requested in this interrogatory. Related information is available to Alcatel only from inspection of the entries in the Alcatel orders database, ALCATEL00156604-ALCATEL00170607. Therefore, Alcatel refers Foundry to this database under Fed. R. Civ. P. 33(d). The related information can best be derived by searching for the keyword "OmniPCX" and inspecting the row entries wherein that term appears.

Interrogatory No. 6

Individually with respect to each Alcatel Accused Product, identify the person in charge of or responsible for each of the following departments, groups, divisions and/or activities of Alcatel since December 1, 1996: (a) research and development; (b) engineering; (c) sales; (d)

4

marketing; (e) accounting; (f) advertising and sales promotion; (g) finances; (h) information management; (i) document retention policy; and (j) operation of the company.

<u>Response:</u>

Foundry has not supplied any claim charts or other detailed infringement contentions as to any product sold by Alcatel Internetworking other than the OmniPCX Enterprise, despite the fact that such contentions were due in late February 2006. Hence, the OmniPCX Enterprise is the only "accused product" until Alcatel Internetworking receives understandable contentions to help it respond more broadly to these discovery requests. Alcatel Internetworking has no knowledge of who is most knowledgeable on the topics identified in subparts (a)-(c), and therefore cannot supply documents supporting responses under subpart (d).

With respect to non-OmniPCX Enterprise products sold by Alcatel Internetworking (and possibly in some cases overlapping with OmniPCX Enterprise sales activities with respect to non-technical matters), Alcatel Internetworking responds as follows without waiver of any of the foregoing objections.

a)  <u>Research and Development</u>
    John Bailey - 1996 - 9/2003
    Wally Scott- 9/03 - 7/05
    Eric Penisson - 7/05 – present

b)  <u>Engineering</u>
    Same as (a)

c)  <u>Sales</u>
    Rene Arvin - 1996 - 01/2000
    Tom Wilburn - 01/2000 - 6/2004
    Eric Grubel - 6/2004 – present

d)  <u>Marketing</u>
    Douglas Hill - 1996 - 5/2000
    Joelle Gauthier - 5/2000 - 9/2003
    Eric Penisson - 9/2003 – present

5

e)    <u>Accounting</u>
Same as (g)

f)    <u>Advertising and sales promotion</u>
Same as (d)

g)    <u>Finances</u>
Steve Cordial – 1996
Dale Bartos - 01/1997 - 5/1999
Tom Burns - 5/1999 - 9/2003
Edwin Afshalimi - 9/2003 – present

h)    <u>Information management</u>
Saeed Hosesinyar - 1996 – present

i)    <u>Document retention policy</u>
Sharon Goolsby, Esq., Alcatel USA, Inc. Legal Department

j)    <u>Operation of the company</u>
Steve Kim - 1996 - 12/1999
Patrick Liot - 12/1999 - 9/03
Tom Burns - 9/03 – present.

In listing any of the foregoing names, Alcatel Internetworking does not concede that such

individuals have discoverable information in this case.

**Supplemental Response:**

With regard to OmniPCX Office, Jeanne Bayerl is in charge of business development.

With regard to OmniPCX Enterprise, Fernando Egea is in charge of business development.

**Interrogatory No. 7**

For each independent claim of the '864 patent, identify all documents and set forth with specificity all facts supporting any contention by Alcatel that none of Alcatel's Accused Products, and/or method(s) of installation for those products, infringes any of those independent claims of the '864 patent, including, without limitation, identifying with specificity, on a product-by-product basis, each individual claim limitation that Alcatel contends is both literally and equivalently absent from each Alcatel Accused Product, and identify the person(s) having the most knowledge of such facts.

Alcatel continues to reserve the right to supplement these reasons upon receiving further discovery, articulation of meaningful contentions by Foundry, and/or in response to claim interpretation contentions and/or court decisions.

## Interrogatory No. 8

State with particularity each and every legal and factual basis for Alcatel's allegation that "Alcatel Internetworking has not infringed any valid claim of the '864 patent in any way, i.e., directly, contributorily, or by inducement. Therefore, Alcatel Internetworking is entitled to a judicial declaration that it has not and does not infringe the '864 patent" (*see* Alcatel's Amended Complaint, paragraph 15). This statement should include, without limitation, an identification of all facts that Alcatel contends affect the scope of the independent claims of the '864 patent, and the identification of the person(s) most knowledgeable about this response.

## Response:

In addition to the responses to interrogatory no. 7, Alcatel Internetworking further states that if there is any "infringing use" of the OmniPCX Enterprise, then there are also "substantial non-infringing uses" as well. Since all claims require at least two platforms interacting over a network, the mere sale of any of the accused products does not constitute direct infringement. For example, any given accused product may be used successfully on a completely local basis without any communication to another identical "platform" over any kind of network. Hence, each accused product is at a minimum capable of substantial non-infringing use. This forecloses not only direct infringement liability, but contributory infringement liability as well. Moreover, Foundry's contentions, either in its claim chart or its response to Interrogatory 4, do not identify any acts which constitute "active inducement" of infringement by Alcatel Internetworking.

Discovery is continuing, and Alcatel Internetworking reserves the right to supplement this response.

communication platform to execute this request.  Instead, the caller's communication platform "abandon[s] the current voice-over-IP link and initiate[s] a new voice-over-IP link" with the third communication platform.  (Col. 16, ll. 60-65)

Alcatel continues to reserve the right to supplement these reasons upon receiving further discovery, articulation of meaningful contentions by Foundry, and/or in response to claim interpretation contentions and/or court decisions.

## Interrogatory No. 12

For each Alcatel Accused Product, state when that product as first made, used, sold, offered for sale or imported into the United States; identifying each product name ever used to designate that product (including all names internal to Alcatel, as well as all names under which such product has been marketed or sold), and enumerating, for each individual product, all individual versions and releases of that product.

## Response:

Foundry has not supplied any claim charts or other detailed infringement contentions as to any product sold by Alcatel Internetworking other than the OmniPCX Enterprise, despite the fact that such contentions were due in late February 2006.  Hence, the OmniPCX Enterprise is the only "accused product" until Alcatel Internetworking receives understandable contentions to help it respond more broadly to these discovery requests.  The OmniPCX Enterprise was first released in October 2000 as the OmniPCX 4400.  Its branding changed in October 2003 to OmniPCX Enterprise.  Alcatel Internetworking does not manufacture this product.

### Supplemental Response:

Information regarding OmniPCX Office may be found at ALCATEL0170608-09.

AS TO OBJECTIONS ONLY:

33

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Dated: August 30, 2006

_Karen L. Pascale_

Josy W. Ingersoll  (No. 1088) [jingersoll@ycst.com]
John W. Shaw (No. 3362) [jshaw@ycst.com]
Karen L. Pascale (No. 2903) [kpascale@ycst.com]
Adam W. Poff (No. 3990) [apoff@ycst.com]
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600

Timothy J. Haller
Robert P. Greenspoon
Sally J. Wiggins
NIRO, SCAVONE, HALLER & NIRO
181 West Madison Street, Suite 4600
Chicago, Illinois 60602
(312) 236-0733
    _Attorneys for Plaintiff Alcatel Internetworking, Inc._

34

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on August 30, 2006, I served a true and correct copy of the foregoing document on the following counsel of record by the method indicated:

### By Hand Delivery and E-Mail

Philip A. Rovner, Esquire *[provner@potteranderson.com]*
POTTER ANDERSON & CORROON LLP
Hercules Plaza
1313 N. Market Street
Wilmington, DE 19801

### By E-Mail and U.S. Mail

William L. Anthony, Esquire *[wanthony@orrick.com]*
Matthew H. Poppe, Esquire *[mpoppe@orrick.com]*
Michael F. Heafey, Esquire *[mheafey@orrick.com]*
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025

Henry C. Bunsow, Esquire *[BunsowH@howrey.com]*
K.T. Cherian, Esquire *[CherianK@howrey.com]*
HOWREY LLP
525 Market Street
Suite 3600
San Francisco, CA 94150

Karen L. Pascale (No. 2903)
*[kpascale@ycst.com]*

# EXHIBIT 22

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALCATEL USA RESOURCES, INC.,<br>a Delaware corporation, and<br>ALCATEL INTERNETWORKING, INC.,<br>a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>FOUNDRY NETWORKS, INC.,<br>a Delaware corporation,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  C. A. No. 05-418-SLR<br>)<br>)  (JURY TRIAL DEMANDED)<br>)<br>)<br>)<br>)<br>) |

## NOTICE OF RULE 30(b)(6) DEPOSITION

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 30(b)(6),

counsel for defendant FOUNDRY NETWORKS, INC. will take the deposition upon oral

examination of plaintiff ALCATEL INTERNETWORKING, INC. beginning at 9:00 a.m. on

July 31, 2006 at the offices of Orrick, Herrington & Sutcliffe LLP, 777 South Figueroa Street,

Suite 3200, Los Angeles, CA 90017-5855, or at such other time and place as may be agreed upon

by counsel. The deposition will take place before a Notary Public or other person authorized to

administer oaths, and will be recorded by stenographic means and/or video. Attorneys may also

use equipment providing for simultaneous stenography during the deposition.

Pursuant to Rule 30(b)(6), ALCATEL INTERNETWORKING, INC. shall designate one

or more officers, directors, or managing agents, or other persons who consent to testify on its

behalf concerning each of the matters set forth in Schedule A attached hereto.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

William L. Anthony                        /s/ Philip A. Rovner
Matthew H. Poppe               By: _____
Michael F. Heafey                     Philip A. Rovner (#3215)
Orrick, Herrington & Sutcliffe LLP     Hercules Plaza
1000 Marsh Road                        P. O. Box 951
Menlo Park, California  94025          Wilmington, DE  19899
(650) 614-7400                         (302) 984-6000
                                       E-mail: provner@potteranderson.com
(As to Count I of the Amended Complaint)

                                       *Attorneys for Defendant*
Henry C. Bunsow                        *Foundry Networks, Inc.*
K.T. Cherian
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, CA  94105
(415) 848-4900

(As to Count II only)

Dated:  July 21, 2006
742337

- 2 -

## SCHEDULE A

### DEFINITIONS

A.     "Foundry" means defendant Foundry Networks, Inc.

B.     "Xylan" refers to and includes Xylan Corporation of Calabasas, California, and any of its affiliates, predecessors, or successors.

C.     The terms "Alcatel," "Plaintiff," "you," and "your" refer to and include Alcatel Internetworking, Inc., and any past or present divisions, affiliates, predecessors, successors, assigns, officers, directors, parents, subsidiaries, agents, servants, employees, investigators, attorneys and all other persons acting or purporting to act for any of them or on their behalf, including without limitation Xylan.

D.     "Check Point" refers to Check Point Software Technologies Ltd. and any of its past or present divisions, affiliates, predecessors, successors, assigns, officers, directors, parents, subsidiaries, agents, servants, employees, investigators, attorneys, and all other persons acting or purporting to act for or on behalf of any of them.

E.     The term "Accused Foundry Products" refers to any and all products accused of infringement by Alcatel in this action. If this term is used in connection with a specific patent or patents, then this term refers to any and all products accused by Alcatel of infringing the specified patent or patents in this action.

F.     "'090 Patent" refers to U.S. Patent No. 6,874,090, as well as all patents and patent applications (including, but not limited to, continuations, continuations in part, divisional, and reissues), whether published or unpublished, U.S. or foreign, that cite that patent, incorporate it by reference or otherwise, claim priority from it, or are used by it as a basis for the priority date.

G.    "Alcatel Accused Product" means any product under development, made, used, sold, offered for sale, licensed, distributed or marketed as "OmniPCX Enterprise," "OmniPCX Office," "OmniPCX 4400," "OmniSwitch 8800," "OmniSwitch 7800," "OmniSwitch 6600," "OmniSwitch 7700," "Alcatel 1540 Litespan," "Alcatel 5020 Softswitch," "Alcatel 7750 SR," "Alcatel 7450 ESS," "Alcatel 7505 Media Gateway," "Alcatel SCP 8690 Application Server," "Sylantro Application feature server," "Alcatel 7670 Routing Switch Platform," "Alcatel 7450 Ethernet Service Switch," "Alcatel 7510 Media Gateway," "Alcatel 7515 Media Gateway," "Alcatel 5620 Management Portfolio," "Alcatel 1350 Management Suite," "Alcatel Open Path to Enhanced Networking (OPEN) Softswitch," "Omni Switch/Router," "OmniAccess 512," "Alcatel VOIP H323 Gateway," including but not limited to all predecessors and successors of these products, and all other products under development, made, sold, offered for sale, licensed, distributed or marketed by Alcatel for incorporation into any telecommunications system that is intended to deliver private branch exchange ("PBX") services, such as call hold, call forwarding, call transfer, call conferencing and the like, VOIP services and/or Centrex services to end-users of such telecommunication system.

H.    "OmniSwitch Product" means all versions and releases of the OmniSwitch developed, made, sold, offered for sale, licensed, distributed or marketed by either Xylan or Alcatel, from June 1995 to the present.

I.    "PizzaSwitch Product" means all versions and releases of the PizzaSwitch developed, made, sold, offered for sale, licensed, distributed or marketed by either Xylan or Alcatel, from June 1995 to the present.

J.    "Standards Body" means all persons worldwide, and all committees, divisions, and subdivisions thereof, engaged in the adoption or promulgation of industry standards in the

area of computer networks or telephony, and more specifically related to user authentication,

virtual local area networks (VLANs), link aggregation or trunking, or path creation or selection,

including without limitation the Institute of Electrical and Electronics Engineers (IEEE), the

Internet Engineering Task Force (IETF), the IEEE 802.1 Working Group, the ATM Forum, and

any organizations, committees, divisions, working groups, or other bodies having responsibility

with respect to the IEEE 802.1q, 802.1x, and/or 802.3ad standards and/or any standard or RFC

associated with any MPLS technology, including without limitation MPLS-TE, Fast Re-Route,

MPLS Virtual Leased Line, VPLS, and BGP/MPLS VPNs (RFC 2547bis).

   K.  The term "User Authentication" means authenticating a user (including a device

or application acting on behalf of a user) that requests access to network resources based on user

identification information, a password or other user-specific credential, or a MAC address or any

other address or identifier associated with the user's device.

## DEPOSITION TOPICS

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Alcatel's designee(s) shall be prepared to testify regarding the following subjects:

1.    Steps taken by You to identify and produce documents in response to Foundry's Requests for Production relating to Count II.

2.    The corporate and/or management structure of the global Alcatel family of companies.

3.    The identity of all products under development, made, sold, offered for sale, licensed, distributed or marketed by Alcatel for incorporation into any telecommunications system that is intended to deliver private branch exchange ("PBX") services, such as call hold, call forwarding, call transfer, call conferencing and the like, VOIP services and/or Centrex services to end-users of such telecommunication system, including internal product names and marketing names.

4.    For each Alcatel Accused Product, the identity of any other name under which the Alcatel Accused Product was designed, developed, manufactured, or marketed.

5.    For each Alcatel Accused Product, the identities and location of all entities who manufactured, sold, offered for sale, leased, or otherwise commercially exploited the Alcatel Accused Product in the United States, or imported it into the United States, by or for Alcatel since July 1, 1999, including the identity and location of the facility or facilities where such activities were carried out.

6.    The identities of persons knowledgeable of the installation and/or implementation of each Alcatel Accused Product, including such persons' responsibilities with respect to installation and/or implementation of each Alcatel Accused Product, the period(s) of time said

persons had those responsibilities, and the identity and location of the facility (or facilities) at which those persons carried out tasks relating to those responsibilities.

7. The identity and location of all entities that installed and/or implemented each Alcatel Accused Product.

8. The identities of all types of documents describing the design and/or development of each Alcatel Accused Product.

9. The identities of persons knowledgeable of the design and/or development of each Alcatel Accused Product (including without limitation, all project names and the technologies developed under those project names whether hardware or software), including such persons' responsibilities with respect to design and/or development of each Alcatel Accused Product, the period(s) of time said persons had those responsibilities, and the identity and location of the facility (or facilities) at which those persons carried out tasks relating to those responsibilities.

10. The identities of all types of documents describing the structure, function and/or operation of each Alcatel Accused Product.

11. The identities of persons knowledgeable about the structure, function and/or operation of each Alcatel Accused Product, including such persons' responsibilities with respect to the structure, function and/or operation of each Alcatel Accused Product, the period(s) of time said persons had those responsibilities, and the identity and location of the facility (or facilities) at which those persons carried out tasks relating to those responsibilities.

12. The identities of all types of documents describing any and all product requirements for each Alcatel Accused Product.

13. The identities of persons knowledgeable about any and all product requirements for each Alcatel Accused Product, including such persons' responsibilities with respect to all

- 5 -

product requirements for each Alcatel Accused Product, the period(s) of time said persons had those responsibilities, and the identity and location of the facility (or facilities) at which those persons carried out tasks relating to those responsibilities.

14.    The identities of all types of documents describing functional specifications for each Alcatel Accused Product.

15.    The identities of persons knowledgeable of any and all functional specifications for each Alcatel Accused Product, including such persons' responsibilities with respect to all functional specifications for each Alcatel Accused Product, the period(s) of time said persons had those responsibilities, and the identity and location of the facility (or facilities) at which those persons carried out tasks relating to those responsibilities.

16.    The identities of all types of documents describing or otherwise relating to any testing of each Alcatel Accused Product, including but not limited to any field testing.

17.    The identities of persons knowledgeable about any testing of each Alcatel Accused Product, including but not limited to any field testing, and including such persons' responsibilities with respect to any testing of each Alcatel Accused Product, the period(s) of time said persons had those responsibilities, the identity and location of the facility (or facilities) at which those persons carried out tasks relating to those responsibilities.

18.    The identities of Alcatel's customers and prospective customers of any Alcatel Accused Product made, used, offered for sale, sold or distributed in the United States, or imported into the United States, since July 1, 1999.

19.    The identities of all types of documents provided to Alcatel's customers and prospective customers concerning any Alcatel Accused Product made, used, offered for sale, sold or distributed in the United States, or imported into the United States, since July 1, 1999.

20.    The identities of persons knowledgeable of documents provided to Alcatel's customers and prospective customers concerning any Alcatel Accused Product made, used, offered for sale, sold or distributed in the United States, or imported into the United States, since July 1, 1999, including, without limitation, the identities of those persons knowledgeable about the preparation and content of instructions, user guides, manuals, product updates, technical notes, release notes, specifications, white papers, read-only files, and product descriptions concerning each Alcatel Accused Product, including such persons' responsibilities with respect to such documents, the period(s) of time said persons had those responsibilities, and the identity and location of the facility (or facilities) at which those persons carried out tasks relating to those responsibilities.

21.    The identities of persons knowledgeable about the preparation and content of documents relating to product specifications and requirements of each Alcatel Accused Product, including such persons' responsibilities with respect to those documents, the period(s) of time said persons had those responsibilities, and the identity and location of each facility (or facilities) at which those persons carried out tasks relating to those responsibilities.

22.    The identities of persons knowledgeable about training, instructions for use, and/or technical support for each Alcatel Accused Product, including such persons' responsibilities with respect to such training, instructions for use, and/or technical support, the period(s) of time said persons had those responsibilities, and the identity and location of each facility (or facilities) at which those persons carried out tasks relating to those responsibilities.

23.    The identities of services (including implementation, training, technical support, and/or maintenance) provided by Alcatel to each of Alcatel's customers and prospective

customers concerning any Alcatel Accused Product made, used, offered for sale, sold or distributed in the United States, or imported into the United States, since July 1, 1999.

24.     The identities of all managers, directors and officers of Alcatel's engineering, marketing, research and development, and sales operations, or any other Alcatel department or group, at all times, who were in any manner involved in the development, engineering, manufacturing, marketing, licensing, testing, support, or sale of, or training in connection with, all or part of any Alcatel Accused Product made, used, sold, leased, offered for sale, or otherwise commercially exploited in the United States, or imported into the United States, by or for Alcatel since July 1, 1999.

25.     The identities of all persons who participated in the design or development of any Alcatel Accused Product made, used, sold, leased, offered for sale or otherwise commercially exploited in the United States, or imported into the United States, by or for Alcatel since July 1, 1999.

26.     The identities of all types of software architecture documents describing the structure, function, and operation of any software used in the operation of any Alcatel Accused Product, including but not limited to documents describing block diagrams, flow diagrams, data structures, software interfaces, and application programming interfaces (APIs).

27.     The identities of all persons knowledgeable of the design and development of any software used in the operation of any Alcatel Accused Product, including such persons' responsibilities with respect to such design and development, the software release number with respect to such design and development, the period(s) of time said persons had those responsibilities, and the identity and location of each facility (or facilities) at which those persons carried out tasks relating to those responsibilities.

28.    The identities of all types of documents describing any configuration of any Alcatel Accused Product, including but not limited to documents describing configuration options, documents describing the use of any configuration management software to perform such configuration, and records of configuration options used for specific customers including the identities of such customers.

29.    The location, identity, and dates of all releases and versions of any software used in the operation of any Alcatel Accused Product.

30.    The location, identity, and dates of any engineering change orders for any Alcatel Accused Product, including but not limited to release notes, bug reports, and bug fixes for any hardware or software used in the operation of such product.

31.    The identities of all documents describing the design and/or development of user authentication for each OmniSwitch Product and PizzaSwitch Product from 1995 to 1998.

32.    The identities of persons knowledgeable of the design and/or development of each OmniSwitch Product and PizzaSwitch Product (including without limitation, all project names and the technologies developed under those project names whether hardware or software), including said persons' responsibilities with respect to the design and/or development of each OmniSwitch Product and PizzaSwitch Product, the period(s) of time said persons had those responsibilities, and the identity and location of each facility (or facilities) at which those persons carried out tasks relating to those responsibilities.

33.    The identities of all types of documents describing the structure, function and/or operation of any feature associated with User Authentication, for each OmniSwitch Product and PizzaSwitch Product from 1995 to 1998.

34.     The identities of persons knowledgeable about the structure, function and/or operation of each OmniSwitch Product and PizzaSwitch Product, including said persons' responsibilities with respect to the structure, function and/or operation of each OmniSwitch and PizzaSwitch product, the period(s) of time said persons had those responsibilities, and the identity and location of each facility (or facilities) at which those persons carried out tasks relating to those responsibilities.

35.     The identities of all types of documents describing functional specifications for any feature associated with User Authentication, for each OmniSwitch Product and PizzaSwitch Product from 1995 to 1998.

36.     The identities of persons knowledgeable of functional specifications for each OmniSwitch Product and PizzaSwitch Product, including said persons' responsibilities with respect to all functional specifications for each OmniSwitch Product and PizzaSwitch Product, the period(s) of time said persons had those responsibilities, and the identity and location of each facility (or facilities) at which those persons carried out tasks relating to those responsibilities.

37.     The identities of all types of documents describing or otherwise relating to any testing of any feature associated with User Authentication, for each OmniSwitch Product and PizzaSwitch Product from 1995 to 1998, including but not limited to any field testing.

38.     The identities of persons knowledgeable about any testing of each OmniSwitch Product and PizzaSwitch Product, including but not limited to any field testing, and including said persons' responsibilities with respect to any testing of each OmniSwitch Product and PizzaSwitch Product, the period(s) of time said persons had those responsibilities, and the location and identity of each facility (or facilities) at which those persons carried out tasks relating to those responsibilities.

39.     The identities of all types of documents provided to Alcatel's customers and prospective customers concerning User Authentication or any feature associated therewith, for each OmniSwitch Product or PizzaSwitch Product from 1995 to 1998.

40.     The identities of persons knowledgeable of documents provided to Alcatel's customers and prospective customers concerning any OmniSwitch Product or PizzaSwitch Product, for the time period starting from the conception of these products to the present, including, without limitation, the identities of those persons knowledgeable about the preparation and content of instructions, user guides, manuals, product updates, technical notes, release notes, specifications, white papers, read-only files, and product descriptions concerning each OmniSwitch Product and PizzaSwitch Product, including said persons' responsibilities with respect to such documents, the period(s) of time said persons had those responsibilities, and the location and identity of each facility (or facilities) at which those persons carried out tasks relating to those responsibilities.

41.     The identities of all managers, directors and officers of Xylan's or Alcatel's engineering, marketing, research and development, and sales operations, or any other Xylan or Alcatel department or group, at all times, who were in any manner involved in the development, engineering, manufacturing, marketing, licensing, testing, support, or sale of, or training in connection with, all or part of each OmniSwitch Product or PizzaSwitch Product, for the time period starting from the conception of these products to the present.

42.     The identities of all persons who participated in the design or development of each OmniSwitch Product or PizzaSwitch Product, for the time period starting from the conception of these products to the present.

43.    The identities of all types of software architecture documents describing the structure, function, and operation of any software used in the operation of any feature associated with User Authentication, for each OmniSwitch Product or PizzaSwitch Product from 1995 to 1998, including but not limited to documents describing block diagrams, flow diagrams, data structures, software interfaces, and application programming interfaces (APIs).

44.    The identities of persons knowledgeable of the design and development of any software used in the operation of any feature associated with User Authentication, for each OmniSwitch Product or PizzaSwitch Product from 1995 to 1998, including said persons' responsibilities with respect to such design and development, the software release number with respect to such design and development, the period(s) of time said persons had those responsibilities, and the identity and location of each facility (or facilities) at which those persons carried out tasks relating to those responsibilities.

45.    The identities of all types of documents describing any configuration related to any feature associated with User Authentication, for each OmniSwitch Product or PizzaSwitch Product from 1995 to 1998, including but not limited to documents describing configuration options, documents describing the use of any configuration management software to perform such configuration, and records of configuration options used for specific customers including the identities of such customers from 1995 to 1998.

46.    The location, identity, and dates of all releases and versions of any software used in the operation of any feature associated with User Authentication, for each OmniSwitch Product or PizzaSwitch Product from 1995 to 1998.

47.     The search for, location of, and identity of all documents relating to participation by any officer, director, agent, or employee of Xylan or Alcatel in any Standards Body at any time.

48.     The search for, location of, and identity of documents relating to the preparation, filing, or prosecution of the '090 patent.

49.     Alcatel Internetworking, Inc.'s and Xylan's email and document retention policies and document distribution policies from 1993 to the present.

50.     The search for, location of, and identity of all documents exchanged between Xylan and Check Point, including but not limited to all technical documents, software architecture documents, technology exchange documents, documents describing the interface between software developed by Xylan and Check Point, and documents describing the testing of Xylan software in conjunction with Check Point software, and including but not limited to all documents exchanged as part of any agreement entered into between Xylan and Check Point or in the course of negotiating any agreement entered into between Xylan and Check Point.

51.     Alcatel Internetworking, Inc.'s and Xylan's electronic records management policies and procedures from 1993 to the present.

52.     Alcatel Internetworking, Inc.'s and Xylan's disk and tape labeling conventions from 1993 to the present.

53.     Alcatel Internetworking, Inc.'s and Xylan's backup and archival disk or tape inventories, schedules, and logs from 1993 to the present.

54.     Alcatel Internetworking, Inc.'s and Xylan's data backup rotation schedules and archiving procedures, including any automatic data recycling programs in use from 1993 to the present.

55.    Identities of current and former personnel who have or had responsibility for Alcatel Internetworking, Inc.'s or Xylan's network administration, backup, archiving, or other system operations from 1993 to the present.

56.    The disposition of Xylan documents upon and after Xylan's acquisition by Alcatel's parent company.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on July 21, 2006, the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

### BY HAND DELIVERY AND E-MAIL

Karen L. Pascale, Esq.
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391

I hereby certify that on July 21, 2006 I have sent by E-mail the foregoing document to the following non-registered participant:

Timothy J. Haller, Esq.
Robert Greenspoon, Esq.
Sally Wiggins, Esq.
Niro, Scavone, Haller & Niro
181 W. Madison Street, Suite 4600
Chicago, IL 60602

_/s/ Philip A. Rovner_
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com

## Discovery Documents
1:05-cv-00418-SLR Alcatel USA Resources Inc. et al v. Foundry Networks Inc.

### U.S. District Court

### District of Delaware

Notice of Electronic Filing

The following transaction was received from Rovner, Philip entered on 7/21/2006 at 4:42 PM EDT and filed on 7/21/2006

**Case Name:**      Alcatel USA Resources Inc. et al v. Foundry Networks Inc.
**Case Number:**    1:05-cv-418
**Filer:**          Foundry Networks Inc.
**Document Number:** 95

**Docket Text:**
NOTICE to Take Deposition of ALCATEL INTERNETWORKING, INC. on 7/31/06 by Foundry Networks Inc., Foundry Networks Inc..(Rovner, Philip)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=7/21/2006] [FileNumber=247913-0]
[e02e00de0f82b6e77e0464ddaea09bfadd96adc93a94bdaf9a351313ba1450309a5f
941c20366b3f00a86649ef1e9d6a45a6947c65516e0a238bae4b04d85511]]

**1:05-cv-418 Notice will be electronically mailed to:**

Josy W. Ingersoll    jingersoll@ycst.com, corporate@ycst.com; cglover@ycst.com; corpcal@ycst.com

Philip A. Rovner    provner@potteranderson.com, mstackel@potteranderson.com; nmcmenamin@potteranderson.com; iplitigation@potteranderson.com

**1:05-cv-418 Notice will be delivered by other means to:**

# EXHIBIT 23

Alcatel v. Foundry                    CondenseIt™                    CA No. 05-418 (SLR)

Page 1

```
1              IN THE UNITED STATES DISTRICT COURT
2             IN AND FOR THE DISTRICT OF DELAWARE
3                    - - -
4   ALCATEL USA RESOURCES, INC.,     :   CIVIL ACTION
    a Delaware corporation, and      :
5   ALCATEL INTERNETWORKING, INC ,   :
    a California corporation,        :
6                                    :
             Plaintiffs              :
7                                    :
         vs                          :
8                                    :
    FOUNDRY NETWORKS, INC.,          :
9   a Delaware corporation,          :
                                     :
10           Defendant               :   NO  05-418 (SLR)
11                   - - -
12                        Wilmington, Delaware
13                        Wednesday, September 6, 2006
                          3:05 o'clock, p.m.
14                        *** Telephone Conference
15                   - - -
16
    BEFORE: HONORABLE SUE L  ROBINSON, Chief Judge
17
                     - - -
18
    APPEARANCES:
19
         YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
20       BY:  JOSY W  INGERSOLL, ESQ
21                -and-
22       NIRO, SCAVONE, HALLER & NIRO
         BY:  ROBERT P  GREENSPOON, ESQ
23            (Chicago, Illinois)
24            Counsel for Plaintiffs
25
                     Valerie J. Gunning
                     Official Court Reporter
```

Page 2

```
1   APPEARANCES (Continued):
2       POTTER, ANDERSON & CORROON
        BY:  PHILIP A  ROVNER, ESQ.
3
                 -and-
4
        ORRICK, HERRINGTON & SUTCLIFFE LLP
5       BY:  MATTHEW H. POPPE, ESQ.
             (Menlo Park, California)
6
                 -and-
7
        HOWREY LLP
8       BY:  K.T. CHERIAN, ESQ. and
             CONSTANCE RAMOS, ESQ.
9            (San Francisco, California)
10           Counsel for Defendant
11                   - - -
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
1              PROCEEDINGS
2
3        (REPORTER'S NOTE: The following telephone
4   conference was held in chambers, beginning at 3:05 p m.)
5
6        THE COURT: Good afternoon, counsel  This is
7   Judge Robinson  Valerie is here as our Court Reporter.
8        It would be helpful if you identified yourselves
9   when you spoke so that our record can be clear.
10       I take it by the fact that you're on the phone,
11   that you have not resolved the various discovery disputes
12   that were outlined in, I think it was Foundry's e-mail, so I
13   guess I will let counsel for Foundry start us out to see
14   where the dispute still lie.
15       MR ROVNER: Thank you, your Honor  This is Phil
16   Rovner, for Foundry.
17       Just a couple of preliminary notes  While we've
18   had, I this, two other emergency requests for relief in this
19   case, this is Foundry's first  The other two were brought by
20   Alcatel.
21       And with respect to whether we resolved some
22   things, as we'll explain later, one of the issues with
23   respect to the amended answer and counterclaim may be moot
24   because we went ahead and submitted our motion to amend
25   because we decided that we had enough information.
```

Page 4

```
1        We all know what was withheld we thought was
2   important enough to justify the request for relief  And
3   if we get the additional information, we may have to
4   supplement, once again, but we did want to bring that part
5   of the motion to your Honor's attention before the deadline
6   passed.
7        With respect to the bulk of this call, it relates
8   to Alcatel's -- Count 2 of Alcatel's complaint  It's a
9   declaratory judgment for noninfringement of Foundry's '864
10   patent, so I will turn this over to Sonny Cherian from the
11   Howrey firm, who is Howrey's lead counsel with respect to
12   Count 2 and Foundry's counterclaim.
13       THE COURT: All right  Thank you
14       MR. CHERIAN: Good afternoon, your Honor.
15       THE COURT: Good afternoon.
16       MR. CHERIAN: Your Honor, as you know, the '864
17   patent, your Honor, just, very broadly speaking, has both
18   apparatus claims and system level claims that are both system
19   level and method claims, a total of about, if I remember
20   correctly, about 80-odd claims
21       Your Honor, the problem we had is that
22   Alcatel has steadfastly denied us discovery with respect
23   to just about every product we have accused of infringement
24   Furthermore, we have provided them with claim charts
25   and other documentation that identifies approximately
```

Alcatel v. Foundry                CondenseIt™                CA No. 05-418 (SLR)

Page 21

1  clear up another thing
2       I believe Mr -- Mr Greenspoon told you, advised
3  you that on August 2nd, he wrote a letter basically telling
4  us, you know, if you can just find where the software is
5  mentioned, maybe I can get the software.
6       I'm not disputing that, but I have on August 18th
7  letter from Mr. Greenspoon, and here's what -- two
8  sentences:  In any case, documents are in the pipeline for
9  production, including, among other things, Omni switch source
10 code.
11      So you see, your Honor, 18, 16 days later, after
12 which he told us, he told you he had advised us of certain
13 issues, on the 18th of August, in writing, he tells us we're
14 going to get the source code
15      THE COURT: All right. Well, this is what I'm
16 going to do because you all -- well, Mr Cherian and/or Mr.
17 Poppe, I want each of you to give me two specific requests,
18 discovery requests, you each get two, that are important to
19 you and that you believe have not been in a good-faith effort
20 addressed adequately by plaintiffs I need to narrow this
21 down because, quite frankly, I think you are all over the
22 place, and it is hard for me to get a handle on this
23      So, Mr. Cherian, if you only get two further
24 discovery requests satisfied through this conference, what
25 would they be?

Page 22

1       MR CHERIAN: I would ask, your Honor,
2  from the software associated with the various products
3  sold by Internetworking, that are used in connection with
4  providing PCX services  That would be my first request,
5  your Honor
6       My second request would be documents relating to
7  the design and development of the products sold by Alcatel
8  Internetworking, the design, development, all the technical
9  documents.
10      THE COURT: All right  Now, it seems to me that
11 that you all have been complaining, Foundry has complained
12 about Alcatel, that they are asking for documents about
13 products that have not been specifically identified through
14 the claim construction chart process
15      Now, what products exactly are we talking about?
16      MR. CHERIAN: Your Honor, on June the 18th or
17 June the 28th, we sent them a claim chart specifically
18 reciting and pointing out the various Alcatel products that
19 we allege to infringe.
20      In a simplistic sense, and very simplistic sense,
21 there are two products which, by themselves, are clearly
22 going to infringe various claims, and then there are other
23 claims that cover the use of these two products with other
24 products in system level configurations.
25      We have provided them with those claim charts, I

Page 23

1  think it's at least two months old, and we have supplemented
2  interrogatories, giving them more information.  We have
3  provided them with rather detailed claim charts
4       THE COURT: Well, I actually didn't ask for
5  that  I asked you to tell me what products you're talking
6  about.
7       MR. CHERIAN: Oh, your Honor.  The two
8  products -- I'm sorry, your Honor  I misunderstood you  It
9  would be the Omni PCX line of products and the Soft Switch
10 5020 products and the products used with these two source
11 code products.
12      THE COURT: And when you say source code, you
13 mean all source code for this?  I mean --
14      MR. CHERIAN: Your Honor, there's no other way --
15 my understanding, your Honor, is that the source code -- your
16 Honor, I'm familiar with how these products work and other
17 pieces of litigation
18      Typically, your Honor, and I don't make a
19 representation here, large modules of source code across the
20 board are used to invoke or to provide certain PCX services,
21 so it's not possible, your Honor, for me to somehow, you
22 know, cut it down to a specific module. I have no
23 information, your Honor  I don't believe anybody could
24 possibly do that given the limited amount of information we
25 have

Page 24

1       THE COURT: All right  And given the fact that
2  the source code apparently -- because these products are
3  manufactured abroad and because the source code apparently is
4  only in the hands of nonparties who are foreign and who don't
5  understand the kind of discovery that we do here, let's just
6  say for a minute that I don't have the jurisdiction to -- I
7  mean, are you basically asking me to order Alcatel to get the
8  source code from its parent, who manufactures, and assuming
9  they can't, what are you saying?
10      MR. CHERIAN: Your Honor, my request to you,
11 your Honor, would be, have they honestly responded to the
12 interrogatories that were served to them in March and ask us
13 who the real parties were, we would have been within our
14 rights to amend and add those parties.  We were never given
15 that opportunity because we were completely stonewalled and
16 we were operating under the impression that these kinds of
17 documents were all being made available to us
18      Now, that time has come and gone, your Honor,
19 according to your schedule, so if you ask me what would we
20 want, we would want the opportunity to amend and add those
21 people
22      Perhaps, your Honor, I would -- I would
23 first like them to honestly answer those interrogatories,
24 your Honor, to tell me of the products they sell, where are
25 they made and to answer those things as they know the

Alcatel v. Foundry                 CondenseIt™                CA No. 05-418 (SLR)

**Page 25**

1   answers  I don't  Which party, which Alcatel entity makes
2   them?  They are sold in the United States, so that's what
3   their website says  There are white papers that show how
4   they are used
5          THE COURT: All right  And with respect to the
6   second category of documents, the design and development
7   documents, are you saying you have not gotten any documents?
8   Are there specific gaps --
9          MR CHERIAN: No, your Honor  I have some
10  documents, with respect to Mr  Greenspoon was able, as I
11  understand, to persuade Alcatel Business Systems, a French
12  entity, I believe, to turn over some documents relating to
13  the Omni PCX, and I have about 9,000 pages, approximately,
14  your Honor, give or take, of documents that pertain to that,
15  that are part of the Alcatel business system production that
16  was made, oh, 15, 20 days ago, your Honor.
17         THE COURT: All right  Thank you
18         Mr. Poppe, how about you?
19         MR POPPE: Your Honor, if I had to pick the
20  two most important categories where I think we have not
21  received either any production or satisfy production, it
22  would be, first of all, documents relating to the
23  development and implementation of the inventions of
24  the patents in suit
25         There was one inventor with respect to one

**Page 26**

1   patent who did come to the United States for a deposition and
2   brought, I think, about 70 pages of documents with him about
3   conception material for one patent, but for two of the other
4   patents that were completely developed overseas, I'm not
5   aware of us having received any conception or development or
6   implementation materials at all
7          So that is the first category
8          And the second category would be documents
9   relating to the licensing or attempted licensing of either
10  the patents in suit or other patents related to networking
11  products that would be equally relevant, potentially, to a
12  determination of what a reasonable royalty would be.
13         THE COURT: All right  Now, Mr. Greenspoon, I
14  take it that Alcatel is affiliated with the foreign
15  counterparts.
16         MR. GREENSPOON: I wish I knew what that word
17  meant  Now I'm confused  But, yes, to be --
18         THE COURT: Well, in other words, if you tell me
19  that your clients, that none of the profits that they make
20  and that their business is not at all funneled overseas and
21  has absolutely no impact on what's going on overseas, I think
22  I would treat these requests a little differently than if
23  you're telling me that foreign companies create domestic
24  subsidiaries here and that are going to theoretically profit
25  by litigation, but that these foreign counterparts are not

**Page 27**

1   going to be cooperating in the litigation  That does strike
2   me as a story I'd want to be telling a judge.
3          MR GREENSPOON: Well, those are good questions,
4   Judge, and I don't know the factual answers to them
5          I will be candid with you  We have a line
6   of communication open to Alcatel Paris headquarters  That
7   was how we were able to achieve what we were able to
8   achieve
9          So I can still work with these people and I can
10  still take these requests back and try harder  I mean,
11  that's the commitment that I can make to the Court, is to try
12  harder
13         If I may, Judge, there's one factual error  I
14  just don't want it to be on the record any longer than it has
15  to be  Mr. Cherian indicated I wrote him a letter on the
16  18th saying we would produce the source code for three
17  accused products  He's actually confused  It was sort of a
18  peripheral product, peripheral to the importance of this case
19  anyway, a peripheral item called the Omni Switch, which is
20  not the same thing as Omni PCX, that we do have the source
21  code for and our IP people are right now putting it in the
22  right form for production to Foundry
23         MR POPPE: Your Honor, this is Matt Poppe
24         If I can make one final point, we had a mediation
25  last week which I attended and which Mr. Rovner attended and

**Page 28**

1   Mr Greenspoon attended
2          There were three business representatives from
3   the Alcatel side  The one in charge was a man who had flown
4   in from France, and my understanding is affiliated with the
5   parent company in France, and he was the one running the show
6   on the settlement side.
7          So these are not companies operating
8   independently with the French company having no stake in
9   what's going on.
10         THE COURT: All right  Well, this is what I'm
11  going to do  I am going to, with these four kind of
12  categories of discovery, Mr. Greenspoon, I'm going to give
13  you the opportunity to go to whomever you need to get to make
14  some progress, and within a week, I'm going to ask you to
15  report back to me, in writing, via a letter.
16         If, in fact, we have not made any progress, it
17  seems to me I've got two options  One is, I think, an unfair
18  one, and that is to either tell defendant, well, you just
19  can't get this information even though it's plaintiffs who
20  has brought this dispute to this Court, or to tell
21  plaintiffs, these facts are going to be held against you  In
22  other words, I'm going to find certain facts based on the
23  fact that we cannot get discovery  I don't think either of
24  those two are appropriate
25         But I might stay this case, allow the defendants

EXHIBIT 24

Alcatel v. Foundry    CondenseIt™    CA No. 05-418 (SLR)

Page 1

```
1         IN THE UNITED STATES DISTRICT COURT
2         IN AND FOR THE DISTRICT OF DELAWARE
3              - - -
4   ALCATEL USA RESOURCES, INC.,    :   CIVIL ACTION
    a Delaware corporation, and    :
5   ALCATEL INTERNETWORKING, INC ,  :
    A California corporation,       :
6                                   :
         Plaintiffs                 :
7                                   :
              vs                    :
8                                   :
    FOUNDRY NETWORKS, INC.,         :
9   A Delaware corporation          :
                                    :
10       Defendants      :   NO  05-418 (SLR)
11             - - -
12                    Wilmington, Delaware
                      Thursday, September 14, 2006
13                    3:30 o'clock, p m
14             - - -
15   BEFORE:  HONORABLE SUE L  ROBINSON, Chief Judge
16             - - -
17   APPEARANCES:
18      YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
        BY:  KAREN PASCALE, ESQ
19
20            -and-
21
22
23
24                    Valerie J. Gunning
25                    Official Court Reporter
```

Page 2

```
1   APPEARANCES (continued):
2
3       NIRO, SCAVONE, HALLER & NIRO
        BY:  TIMOTHY J  HALLER, ESQ.
4            (Chicago, Illinois)
5            Counsel for Plaintiffs
6
7       POTTER, ANDERSON & CORROON
        BY:  PHILIP A  ROVNER, ESQ
8
9            -and-
10
11      ORRICK, HERRINGTON & SUTCLIFFE LLP
        BY:  MATTHEW H. POPPE, ESQ.
12           (Silicon Valley, California)
13           -and-
14      HOWREY LLP
        BY:  N T  CHERIAN, ESQ
15
16           Counsel for Defendant
17           - - -
18
19
20
21
22
23
24
25
```

Page 3

PROCEEDINGS

4       (Proceedings commenced in the courtroom,
5   beginning at 3:30 p.m.)
6
7       THE COURT:  Good afternoon.
8       (Counsel respond, "Good afternoon, your Honor.")
9       THE COURT:  I have received letters from both
10  parties and have reviewed them, and I take it there are still
11  some issues that we should talk about, so I will let
12  plaintiffs start us out, and then go on to defendants.
13      MS PASCALE:  Good afternoon, your Honor
14  Karen Pascale, from Young Conaway, for Alcatel.  And
15  your Honor knows my co-counsel, Tim Haller, from the Niro
16  Scavone firm.
17      THE COURT:  Yes.  Thank you
18  Mr. Haller?
19      MR. HALLER:  Good afternoon, Judge.
20      THE COURT:  Good afternoon.
21      MR. HALLER:  Maybe we'd start out with the letter
22  you requested of us a week ago or a week ago yesterday, I
23  think I can embellish on it and maybe put some closure to
24  things here.
25      I think the -- and I'm not doing this in order --

Page 4

1   but I think the, certainly, one major issue from the
2   defendant's point of view, their concern, was this source
3   code, and just to clarify here, there are two different
4   source codes.  The one, as we say in our letter, really isn't
5   an issue.  We just simply need the driver information from
6   them, that they want it and consistent with the protective
7   order, and it will be loaded onto the PC's and delivered to
8   them.
9       The source code for the PCX, that has been
10  troublesome, no question about it  All I can say is, there
11  is a happy ending to all of this as of about 8:00 o'clock
12  this morning, but -- and we have convinced actually the
13  people above the people that we were dealing with, day people
14  working with the source code, did refuse, but speaking with
15  their upper corporate people, they were convinced that, okay,
16  we'll do it.  And so they are going to be sending over the
17  source code, and I expect that some time, at the latest, the
18  middle of next week, physically being in a position to
19  deliver that to the defendants.
20      THE COURT:  All right
21      MR. HALLER:  To the defendant.
22      No sense belaboring it  It just -- if your Honor
23  were interested, we could give you the string of e-mails that
24  went back and forth to Europe over this whole thing.
25      THE COURT:  I am confident I am not interested in

Alcatel v. Foundry                CondenseIt™                CA No. 05-418 (SLR)

**Page 17**

1  That's all it takes, your Honor. That's what our
2  understanding is, as it is after Friday's deposition.
3       What do we have to date? We do not have
4  technical documentation for the vast majority of these 24
5  products that we have judged. Source code. We do not have
6  any source code to date, not a single line of source code has
7  been produced, yet, as I was getting on an aircraft, I was
8  told that, depending on the driver information I could
9  provide, some source for some switches might be provided to
10 me and it's in the pipeline.
11      Answers to interrogatories. Your Honor, here
12 is where the rubber meets the road. Here's the problem.
13 Early on, in February, we served a series of interrogatories,
14 and in these -- one of the interrogatories was Interrogatory
15 No. 5.
16      I'm not going to bother the Court, but it's
17 one of those interrogatories, your Honor, any legitimate
18 plaintiff would want to propound to understand who -- what
19 the products are, where they are made, who's involved, so you
20 can amend the pleadings to include those people.
21      Here's the question: Individually with respect
22 to each Alcatel accused product, on a product-by-product
23 basis, identify date, the individual person or persons,
24 whether or not employed by Alcatel, most knowledgeable about
25 the conception, design, development, modification,

**Page 18**

1  engineering, testing or evaluation of that product.
2       B, the person or persons most knowledgeable
3  regarding the decision to and reasons for introducing that
4  product into the marketplace.
5       C, the role and activities engaged by each
6  person, and then D was all documents supporting each of those
7  responses.
8       Here's the answer, your Honor: Foundry has not
9  supplied any claim charts or other detailed infringement
10 contentions as to any product sold by Alcatel Internetworking
11 other than the Omni PCX. Hence, the PCX Enterprise is the
12 only accused product. Until Alcatel Internetworking receives
13 responsible contentions to help it respond broadly to these
14 discovery requests, Alcatel Internetworking has no knowledge
15 of who's most knowledgeable of the products identified in A
16 through C and therefore cannot supply documents responding to
17 subpart D.
18      Finally, without waiver of these objections,
19 Alcatel Internetworking believes that Michael Kreff, a
20 resident of France, may have some knowledge relevant to the
21 topics
22      So, your Honor, we asked them to supplement this
23 interrogatory. We've asked them over and over again so we
24 can understand where these products originate, originate
25 from, who's involved, so we can be intelligent about it. To

**Page 19**

1  this day they have refused to supplement this interrogatory.
2  They've supplemented other interrogatories, but this one
3  never gets supplemented.
4       Finally, your Honor, with respect to deposition
5  dates, we've asked for depositions. We've noticed
6  depositions.
7       Initially, we tried to work with them, wrote
8  them nice letters and say we want to do depositions of these
9  guys. You know, can we get dates? Nothing happened
10 Ultimately, we were forced to just send out deposition
11 notices, saying we intend to take it on such and such a date
12 or upon a mutually agreeable date, because we wanted it to be
13 in the record.
14      Are the big problem I have, your Honor, is, where
15 I seek the Court's guidance is, cutoff is currently set for
16 October 16th. That means this Friday, without a single line
17 of source code, I have to get out my final request
18 submissions, my interrogatories, whatever is left, document
19 requests, do my final discovery, your Honor. I'm in no
20 position to do that. I don't have documentation of the vast
21 majority of the products that have been charged.
22      With respect to the extension of deadline to join
23 third parties, you'll recall, your Honor, we brought that up
24 to you last Wednesday. Had these folks responded to these
25 interrogatories and not stonewalled the interrogatories, we

**Page 20**

1  would have been in a position to identify particular
2  plaintiffs, I mean defendants, who we thought would be
3  appropriate and would have joined them We would have that
4  option.
5       That date has come and gone. We are sitting
6  here, bare-knuckled, with nothing more
7       Now, your Honor, let's go back, and --
8       THE COURT: I don't really think we
9  should go back. I have looked at the rest, and if we want
10 to move forward, we cannot move back because we only have
11 half-an-hour to go
12      MR CHERIAN: I will do whatever the Court
13 wants.
14      THE COURT: So --
15      MR CHERIAN: Here I am, your Honor. My
16 situation is a situation where I'm completely stonewalled
17 We don't have anything And what do we need? We've
18 identified 24 products. We've given them claim charts. We
19 need for each of them source code, technical documentation
20 that can be printed out from those servers. We need
21 installation documentation.
22      This is critical for us, your Honor:
23 Installation documentation. We have testimony from
24 this person that the entities involved installing these
25 devices We need that information because for method

# EXHIBIT 25

Alcatel v. Foundry                    CondenseIt™                    CA No. 05-418 SLR)

Page 1

```
1            IN THE UNITED STATES DISTRICT COURT
2            IN AND FOR THE DISTRICT OF DELAWARE
3                      - - -
4    ALCATEL USA RESOURCES, INC.,    :  CIVIL ACTION
     a Delaware corporation, and     :
5    ALCATEL INTERNETWORKING, INC ,  :
     a California corporation,       :
6                                    :
                                     :
7                  Plaintiffs        :
                                     :
8            vs.                     :
                                     :
9    FOUNDRY NETWORKS, INC.,         :
     a Delaware corporation          :
10                 Defendant         :  NO  05-418 (SLR)
11
12                      Wilmington, Delaware
                        Wednesday, October 4, 2006
13                      9:33 o'clock, a m
14                      - - -
15   BEFORE:  HONORABLE SUE L  ROBINSON, Chief Judge
16                      - - -
17   APPEARANCES:
18        YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
          BY:  KAREN L  PASCALE, ESQ
19
20                 -and-
21
22
23
24                      Valerie J. Gunning
                        Official Court Reporter
25
```

Page 2

```
1    APPEARANCES (Continued):
2
3    HIRO, SCAVONE, HALLER & NIRO
     BY:  TIMOTHY J. HALLER, ESQ  and
4        ROBERT GREENSPOON, ESQ
         (Chicago, Illinois)
5
6              Counsel for Plaintiffs
7
8    POTTER, ANDERSON & CORROON
     BY:  PHILIP A  ROVNER, ESQ
9
10                 -and-
11
     HOWREY
12   BY:  M.T. CHERIAN, ESQ. and
          CONSTANCE F. RAMOS, ESQ
13        (San Francisco, California)
14              and
15
     ORRICK
16   BY:  MATTHEW H  POPPE, ESQ.
         (Menlo Park, California)
17
18             Counsel for Defendant
19                 - - -
20
21   ALSO PRESENT:  DR  STEVEN HASLIEH
22
23                 - - -
24
25
```

Page 3

```
1
2                P R O C E E D I N G S
3
4         (Proceedings commenced in the courtroom,
5    beginning at 9:33 a.m.)
6
7         THE COURT:  Good morning, counsel
8         (Counsel respond, "Good morning, your Honor.")
9         THE COURT:  I think today is the day that I have
10   set aside to help you bring discovery to a close and to
11   discuss scheduling, et cetera.
12        So why don't we start with counsel for the
13   plaintiff, and if you could give me just a brief overview
14   of the issues that you think we should be addressing
15   today, then I will go to defendant's counsel for the brief
16   overview of the issues you think we should be addressing
17   today, and then we are going to prioritize those issues and
18   see which of those I need to hear about and which of those
19   you simply need to talk about before I hear about it to make
20   sure that you have had a bona fide productive discussion
21   among yourselves.
22        So let's do it that way, one step at a time, and
23   then we will go forward
24        Yes, sir?
25        MR. HALLER:  Good morning, Judge.  Tim Haller,
```

Page 4

```
1    for Alcatel
2         Before coming here today, Judge, we -- I think I
3    speak for both parties.  We did try to have a private
4    session, to try and see what we could resolve, just get it
5    off the table before coming here, and I think it's fair to
6    say the weather, plane delays, the fact that these people had
7    to come from the West Coast, it just made it impossible, so I
8    think at some point, you know, we both intended, we're going
9    to privately try and get some of these things out of the
10   way.  I am hopeful we can do that.  We just have not had a
11   chance to talk
12        THE COURT:  My home is your home.
13        MR. HALLER:  Okay.  We anticipated that
14        In terms of an overview, again, I don't want to
15   be presumptuous and speak for both sides, but --
16        THE COURT:  Just speak for yourself  What do you
17   want to accomplish today?
18        MR. HALLER:  Okay  And I can give you that very
19   quickly and our view on why we are here today
20        The source code handling of both sides seems to
21   be a burning issue and seems to be number one on the plate,
22   and I won't bore you with the details at this point.  There
23   is a very clear discovery protective order as to how that has
24   been handled  I think it's fair to say each party has a very
25   significant investment in the development of their source
```

Alcatel v. Foundry                    CondenseIt™                    CA No. 05-418 SLR)

## Page 41

1  disputes, I would just kick them out of here and hope they go
2  away because I am an eternal optimist, for whatever reason,
3  because a lot of times parties can resolve damages once
4  liability has been resolved by the Federal Circuit.
5       So that is really my focus, is how much of the
6  remaining discovery disputes are related to damages.
7       MR. ROVNER: Very little is related to damages
8       THE COURT: All right
9       MR. ROVNER: That's the bottom line
10      THE COURT: All right
11      MR. HALLER: To eliminate any uncertainty, I
12  don't agree with Mr. Rovner on too many things, but I agree
13  with him now.
14      MR. ROVNER: Thank you
15      MR. HALLER: Hopefully, that was taken as an
16  attempt at some levity.
17      MR. ROVNER: So taken.
18      (Pause.)
19      THE COURT: Well, my problem is that from August
20  through the remaining of the year 2007, I am double-booked
21  with trials  I mean mean, I might have one week here
22  and there where I don't have two trials scheduled, but
23  I don't have even three weeks scheduled together where I
24  have only one trial scheduled and could accommodate a second
25  trial.

## Page 42

1       So the question is:  How we can use our time?
2  If there's any way to salvage a trial date in April, even if
3  we have to push some part of it, whatever part of it is out,
4  I mean, I can accommodate a second half of a trial, whether
5  it is a week for Count 2 or whether it is a week for damages
6  or whatever.  I can do that, but I can't accommodate a
7  three-week trial in 2007, except where I have you now.
8       MR. ROVNER: Your Honor, I may have miscounted a
9  bit.  I don't know what your schedule is  Earlier than --
10  four or five months is beginning or end of August. I know
11  the summer is not great months for anyone, but we could move
12  it up a little bit if you had a couple weeks, nothing between
13  even late June, July.
14      THE COURT: No.  I always take the first couple
15  of weeks of July off. I have the last week in July that I
16  actually am scheduled for trial, but then I go right into
17  double-booking through December, except for a week or two
18  here and there.
19      So that is my problem  I want to accommodate
20  you, particularly if we are talking about allowing Foundry
21  to amend, to add issues which will add some discovery, I
22  don't know how much, but I think it makes sense in this case
23  to make sure that everyone is satisfied they have had a fair
24  opportunity to close the record, to make a record  I just
25  don't know how to accommodate you in 2007 by trying

## Page 43

1  everything together.  We've got to break this up some way or
2  another.
3       Yes?
4       MR. HALLER: Your Honor, I didn't make it clear.
5  I forget whether I mentioned or not, but I do want to make it
6  clear, in our proposal, one of the carrots to sort of
7  splitting our claim and the Foundry claim was that in the
8  guise of this action as opposed to a new suit or something,
9  that we would not object to them amending in or adding in new
10  parties, they could do whatever discovery they wanted of a
11  new party.
12      In terms of, if we had a revised Phase 1, just of
13  just the Alcatel claim, we think we could put our
14  case-in-chief in in three-and-a-half days or so, damages
15  included, if that helps with the thinking on the schedule
16  Four days, max.
17      THE COURT: I thought I was optimistic.
18      MR. ROVNER: Your Honor, that leads me to believe
19  we would need less than three weeks, and so it could be done,
20  if you had anything, even less than three weeks, later in the
21  year, that would be acceptable  Again, Mr. Haller's proposal
22  continues to be trying the four Alcatel patents first, and
23  that's what we view as not what the deal was
24      THE COURT: Well, I guess I'm not really sure
25  what -- I mean, I know most of the concerns that lawyers have

## Page 44

1  have to do with business and not with law, and they are not
2  concerns that I necessarily understand because they are not
3  shared with me in full detail and I am not confident I should
4  be concerned about them  I mean, certainly, the fact that
5  Alcatel would try its case and get a verdict one way or
6  another before Foundry, whether it's a day before or a week
7  before or a month before, I guess I am not sure exactly what
8  Foundry's concern is and where irritation with having it
9  tried second becomes a real concern of whatever sort if we're
10  talking about separating, because it will be before two
11  juries, because I am not going to keep -- that's just what I
12  do.
13      So, Mr Rovner, I guess you can let me know.  If
14  we're talking about it's a concern even if it's a day, or if
15  it's a concern if it's a week later or a month later, then
16  that would help me try to find time for you.
17      MR. ROVNER: Well -- excuse me
18      MR. HALLER: Go ahead.
19      MR. ROVNER: What we contemplated in the
20  beginning --
21      THE COURT: Yes?
22      MR. ROVNER: -- was the four patents  They
23  started with ten, one of which was the Chang patent, and the
24  second Count 2, the D.J. action.  We spent a lot of time
25  trying to figure out a way to make this case manageable not

# EXHIBIT 26

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY