# YOUNG CONAWAY STARGATT & TAYLOR, LLP

BEN T. CASTLE
SHELDON N. SANDLER
RICHARD A. LEVINE
RICHARD A. ZAPPA
FREDERICK W. IOBST
RICHARD H. MORSE
DAVID C. MCBRIDE
JOSEPH M. NICHOLSON
CRAIG A. KARSNITZ
BARRY M. WILLOUGHBY
JOSY W. INGERSOLL
ANTHONY G. FLYNN
JEROME K. GROSSMAN
EUGENE A. DIPRINZIO
JAMES L. PATTON, JR.
ROBERT L. THOMAS
WILLIAM D. JOHNSTON
TIMOTHY J. SNYDER
BRUCE L. SILVERSTEIN
WILLIAM W. BOWSER
LARRY J. TARABICOS
RICHARD A. DILIBERTO, JR.
MELANIE K. SHARP
CASSANDRA F. ROBERTS
RICHARD J.A. POPPER
TERESA A. CHEEK

NEILLI MULLEN WALSH
JANET Z. CHARLTON
ROBERT S. BRADY
JOEL A. WAITE
BRENT C. SHAFFER
DANIEL P. JOHNSON
CRAIG D. GREAR
TIMOTHY JAY HOUSEAL
MARTIN S. LESSNER
PAULINE K. MORGAN
C. BARR FLINN
NATALIE WOLF
LISA B. GOODMAN
JOHN W. SHAW
JAMES P. HUGHES, JR.
EDWIN J. HARRON
MICHAEL R. NESTOR
MAUREEN D. LUKE
ROLIN P. BISSELL
SCOTT A. HOLT
JOHN T. DORSEY
M. BLAKE CLEARY
CHRISTIAN DOUGLAS WRIGHT
DANIELLE GIBBS
JOHN J. PASCHETTO
NORMAN M. POWELL

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(800) 253-2234 (DE ONLY)
FAX: (302) 571-1253

110 WEST PINE STREET
P.O. BOX 594
GEORGETOWN, DELAWARE 19947
(302) 856-3571
(800) 255-2234 (DE ONLY)
FAX: (302) 856-9338

WWW.YOUNGCONAWAY.COM

DIRECT DIAL:  302-571-6554
DIRECT FAX:  302-576-3467
kkeller@ycst.com

LISA A. ARMSTRONG
GREGORY J. BABCOCK
JOSEPH M. BARRY
SEAN M. BEACH
DONALD J. BOWMAN, JR.
TIMOTHY P. CAIRNS
KARA HAMMOND COYLE
MARGARET M. DIBIANCA
MARY F. DUGAN
ERIN EDWARDS
KENNETH J. ENOS
IAN S. FREDERICKS
JAMES J. GALLAGHER
SEAN T. GREECHER
STEPHANIE L. HANSEN
DAWN M. JONES
RICHARD S. JULIE
KAREN E. KELLER
JENNIFER M. KINKUS
EDWARD J. KOSMOWSKI
JOHN C. KUFFEL
KAREN LANTZ

TIMOTHY E. LENGKEEK
ANDREW A. LUNDGREN
MATTHEW B. LUNN
JOSEPH A. MALFITANO
ADRIA B. MARTINELLI
MICHAEL W. MCDERMOTT
MARIBETH L. MINELLA
EDMON L. MORTON
D. FON MUTTAMARA-WALKER
JENNIFER R. NOEL
ADAM W. POFF
SETH J. REIDENBERG
SARA BETH A. REYBURN
KRISTEN R. SALVATORE (PA ONLY)
MICHELE SHERRETTA
MONTE T. SQUIRE
MICHAEL P. STAFFORD
CHAD S.C. STOVER (SC ONLY)
JOHN E. TRACEY
MARGARET B. WHITEMAN
SHARON M. ZIEG

SPECIAL COUNSEL
JOHN D. MCLAUGHLIN, JR.
ELENA C. NORMAN
KAREN L. PASCALE
PATRICIA A. WIDDOSS

SENIOR COUNSEL
CURTIS J. CROWTHER

OF COUNSEL
BRUCE M. STARGATT
STUART B. YOUNG
EDWARD B. MAXWELL, 2ND

November 6, 2006



**BY CM/ECF & HAND DELIVERY**
Chief Judge Sue L. Robinson
J. Caleb Boggs Federal Building
844 N. King Street
Room 6124
Lockbox 31
Wilmington, DE 19801

Re:   *Alcatel v. Foundry*
       C.A. No. 05-418-SLR

Dear Chief Judge Robinson:

Foundry did not answer the Court's October 4 questions in its October 23 submission. Instead, its submission presents a misleading and inaccurate view of the factual record to suggest there is "good cause" to amend its counterclaims to add *four new parties* as counterclaim defendants in this action nearly 1 1/2 years after its commencement. Nothing justifies the added complexity and burden. Foundry is far too late with its requests to amend the pleadings, and even if it were not, the current set of Alcatel parties affords Foundry all the opportunity for relief it deserves.

Foundry ducks its own responsibility for failing to meet Court-imposed deadlines, and instead blames Alcatel wrongly for creating its problems. For example, Foundry's October 23 letter blames Alcatel for allegedly serving insufficient Rule 26(a)(1) disclosures. Foundry says Alcatel's initial disclosures should have revealed the identities and roles played by various non-parties who Foundry now thinks should be added as new counterclaim defendants. This argument is so popular that Foundry repeats it on pages 1, 2, 6, 7 and 8. Foundry overlooks that Rule 26(a)(1)(A) was amended in 2000. It no longer requires the disclosure of persons (in Foundry's words at pp. 6-7) "who would be expected to have information relevant to Plaintiff Alcatel Internetworking, Inc.'s claims and defenses." For the last six years, the "initial

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Chief Judge Sue L. Robinson
November 6, 2006
Page 2

disclosure" obligations of Rule 26(a)(1)(A) have been narrower, and only call for disclosure of individuals likely to have discoverable information that the disclosing party may use to support its claims or defenses. The 2000 Advisory Committee Notes confirm the rule is now narrower, and that a party "is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use."

Foundry also argues that Alcatel concealed relevant information by omitting non-party identities and roles from its Count II interrogatory answers. However, those interrogatories do not ask the questions Foundry now says they ask. For instance, they never ask, "Please state the name of the legal entity who sells the 5020 softswitch in the United States," or "Please state the name of the French legal entity who designs and manufactures the OmniPCX." Instead, they ask questions like " Individually with respect to each Alcatel Accused Product, identify the person in charge of or responsible for . . . research and development." (See Foundry's Ex. 19, Interrogatory No. 6). This question does not ask for a name of a legal entity. In addition, since this question was directed to Alcatel Internetworking (AII), AII's response is by necessity limited to the information reasonably available to it. In this light, it is not surprising that the U.S. distributor of a product manufactured in France would not know exactly who is in charge of that product's R&D; nor is it discovery obstruction for AII to say so.

In any case, the "concealment" allegations are belied by the record of AII's cooperation. While Foundry is reluctant to acknowledge it, Foundry received most of the information about what roles Alcatel non-parties play directly from AII's counsel. (See, e.g., Foundry's Exhibits 9-11). AII gave such cooperation, notwithstanding the absence of any explicit discovery obligation.

This response is organized as follows:

1.      Section 1 will restate the Court's October 4 questions, and directly answer them. The answers show that Foundry sat on its hands while the extended August 25 amendment date came and went.

2.      Section 2 will explain why there is no "good cause" in any event to add two new Alcatel parties to litigate the "5020 softswitch" product in this case, when Foundry dropped those allegations during pre-suit licensing discussions.

3.      Finally, Section 3 will explain why there is no "good cause" to add two other new Alcatel parties to litigate the "OmniPCX" products in this case, when the real party in interest is already present.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Chief Judge Sue L. Robinson
November 6, 2006
Page 3

The following table sets forth a summary of Alcatel's brief answers to the issues raised in Foundry's October 23 letter:

| | |
|---|---|
| 1. Did Foundry "just let the ball slip" and miss the August 25 deadline for amending the pleadings to add new parties? | Alcatel's Answer: Yes. Foundry was aware of the potential for specific new counterclaim defendants long ahead of time. |
| 2. Is the "5020 softswitch" (and the Alcatel legal entities who sell it) properly part of this case, as an "accused product" under the Foundry Chang patent? | Alcatel's Answer: No. Before suit Foundry gave up its 5020 softswitch allegations, and in reliance on that, only the OmniPCX purveyor (Alcatel Internetworking) filed a declaratory judgment action. Foundry had ample time to acknowledge its mistake, if it now admits it made one. |
| 3. Should more parties be added to address the OmniPCX infringement issues? | Alcatel's Answer: No. The current party -- Alcatel Internetworking, Inc. -- is the exclusive North America distributor and records all United States sales. Hence, all U.S. sales are already in this litigation, notwithstanding the rare circumstance that a different Alcatel affiliate might purchase for resale. |

**Section 1: Foundry Failed to Seek Timely Counterclaim Amendments**

The factual background to deny Foundry its requested relief is numbingly simple. Foundry's deadline came and went with Foundry's eyes wide open.

The first scheduling order (entered October 13, 2005) stated on page 4:

2. **Joinder of other Parties and Amendment of Pleadings**. All motions to join other parties shall be filed on or before March 10, 2006, and motions to amend the pleadings in connection with Phase One patents shall be filed on or before July 12, 2006.

(Ex. A). After a July 12 telephonic conference, the Court extended both of these deadlines in its First Amended Scheduling Order (entered July 14, 2006), which stated on page 2:

4. **Amendment of Pleadings**. All motions to amend the pleadings in connection with Phase One patents shall be filed on or before August 25, 2006.

(Ex. B). Foundry did, in fact, file a motion to amend the pleadings on August 25, 2006, but that motion did not seek any addition of any parties.

Young Conaway Stargatt & Taylor, LLP

Chief Judge Sue L. Robinson
November 6, 2006
Page 4

Foundry now argues it should be able to add parties to its counterclaim late. Foundry argues that the August 25 date did not apply, and the extension for "all motions to amend" did not renew its deadline to join parties. Foundry claims it was trying to negotiate with Alcatel for permission and thereby avoid motion practice. This argument lacks merit. The First Amended Scheduling Order says that *all* motions to amend the pleadings enjoyed the extended deadline. A motion to join parties as counterclaim defendants is one type of motion to amend the pleadings, and thus was a type of motion that Foundry could have filed by August 25. Saes Getters S.P.A. v. Aeronex, Inc., 219 F. Supp. 2d 1081, 1085 (D. Cal. 2002) (motion to add counterdefendants in patent case is an "amendment of a pleading" and governed by Rule 15(a), among others).

Foundry's October 23 submission tries to address why it only learned certain information after March 10 (the original deadline), but that completely misses the point. The Court asked these specific questions to Foundry counsel on October 4:

> THE COURT: . . . With respect to adding this party, though, what I am going to do, and I hate to do it and I hope to get it turned around, is for each of you to -- I mean, the question is: Why wasn't this aspect added in the formal motion by August 25?

(Ex. C, Transcript at 68).

> MR. ROVNER: . . . I think this is the time -- at least I would ask for the opportunity to show you why we should be able to add these parties.
>
> THE COURT: Well, I mean, that's what I am asking you to do.
>
> MR. ROVNER: Okay.
>
> THE COURT: And the question is: What was the state of the record on August 25? Were the defendants moving forward promptly and reasonably and was there a true misunderstanding or did defendants just let the ball slip? So that's really the question.

(Ex. C, Transcript at 69). The October 23 submission effectively avoids answering the Court's questions. Therefore, Alcatel will.

The true state of the record on August 25 shows Foundry had ample knowledge for an amendment, if it was going to file one, as follows:

**With respect to the 5020 softswitch products:**

- As the Court is aware, Alcatel told Foundry numerous times that much of the discovery it sought belonged to non-party Alcatel companies.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Chief Judge Sue L. Robinson
November 6, 2006
Page 5

- In "General Objection No. 15," served with Alcatel Internetworking's March 23, 2006 interrogatory responses, AII objected to the long list of "accused products" contained in the interrogatory definitions. Foundry's definitions had **properly** included the OmniPCX products, but **improperly** included the 5020 softswitch as well. The text of Objection No. 15 told Foundry, at least by implication, that AII was not the proper company for "5020 softswitch" allegations:

  > 15. Foundry has not supplied any claim charts or other detailed infringement contentions as to any product sold by Alcatel Internetworking other than the OmniPCX Enterprise, despite the fact that such contentions were due in late February 2006. Hence, the OmniPCX Enterprise is the only "accused product" until Alcatel Internetworking receives understandable contentions to help it respond more broadly to these discovery requests.

  (Foundry's Exhibit 19).

- In the same March 23 response, in the answer to Interrogatory 9, AII confirmed *explicitly* that it was not the right party with respect to the 5020 softswitch:

  > Foundry has only asserted claims 1, 3 and 32, and has only identified the OmniPBX Enterprise as an alleged infringing product sold through Alcatel Internetworking. (The 5020 SoftSwitch – the only other product for which Foundry provided a claim chart – is not made, used, sold, offered for sale or imported by Alcatel Internetworking).

  (Foundry's Exhibit 19).

- The clincher is that in an August 2 letter (attached to Foundry's submissions as Exhibit 10), Alcatel counsel told Foundry counsel who is responsible. Alcatel named to Foundry two other companies responsible for the 5020 products: Alcatel FSD (Antwerp) (aka Alcatel Bell), and Alcatel USA Marketing, Inc. (Foundry's Ex. 10).

- Despite the knowledge throughout the case that AII was the wrong party, and the knowledge at least by August 2 of who was the right party, Foundry's August 25 motion papers were silent about amending to add "5020 softswitch" counterclaim defendants.

**With respect to additional companies responsible for the OmniPCX:**

- Alcatel told Foundry numerous times that AII did not *manufacture* the OmniPCX (it is a marketer/seller as the exclusive North America distributor).

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Chief Judge Sue L. Robinson
November 6, 2006
Page 6

- In the March 23 interrogatory answers, in response to interrogatory 12, AII *explicitly* told Foundry, "Alcatel Internetworking does not manufacture this product [the OmniPCX]." In the same responses, in response to interrogatory 6, AII *explicitly* told Foundry that "Alcatel Internetworking has no knowledge of who is most knowledgeable on [research, development and engineering for the OmniPCX]. (Foundry's Exhibit 19).

- The clincher is that Alcatel counsel told Foundry counsel who does research, develop, manufacture and engineer the OmniPCX: Alcatel Business Systems (ABS). Alcatel told this fact to Foundry in late July and early August 2006, as reflected in Foundry's own Exhibits 9, 10 and 11 (the latest possible date being August 2). Likewise, page 2 of Foundry's own Exhibit 26 admits that Foundry counsel received the ABS documents proving their role as manufacturer/designer on August 2 and August 7, 2006.

- Despite the knowledge throughout the case that AII only markets and sells (does not make) the OmniPCX devices, and the knowledge at least by August 2 of who does make the OmniPCX devices, Foundry's August 25 motion papers were silent about amending to add new "OmniPCX" counterclaim defendants.

One might ask, why did Foundry miss the clearly demarcated deadline? Foundry will argue confusion over whether the deadline really was a deadline, but Alcatel has a more plausible explanation. Alcatel believes that Foundry had a litigation tactic of trying to use the current Alcatel *parties* as improper conduits for non-party discovery -- the "discovery conduit" strategy. In the August 25 timeframe, Foundry was actively seeking to have the Court "order" the Alcatel parties to produce discovery outside their control but in the possession of corporate affiliates or parents. If Foundry had sought timely amendment, that would have weakened Foundry's argument that the current parties ought to be conduits for such discovery. Having made the tactical decision not to seek amendment by the deadline, Foundry should not be rewarded with a second chance after its original "discovery conduit" strategy failed.

### Section 2: Foundry Should Not Be Allowed to Amend to Add the 5020 Softswitch

Section 1 explains why Foundry's request to amend is untimely. Even if it were timely, there are two reasons why Foundry should not be allowed to amend its counterclaims to allege 5020 softswitch infringement. This section relates to Foundry's untimely request to add Alcatel Bell and Alcatel USA Marketing, Inc.

First, Foundry expressly disclaimed pursuing 5020 softswitch alleged infringement during pre-suit licensing negotiations. Second, neither of the applicable joinder rules (Rule 19 or Rule 20) apply -- hence, there is no legal authority for "joining" a new patent infringement defendant who will simply be severed from the case anyway.

Foundry disclaimed alleging the infringement it now seeks to allege through amendment. The record reveals that Foundry waived accusations of 5020 softswitch infringement before the lawsuit began. The following facts are beyond dispute:

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Chief Judge Sue L. Robinson
November 6, 2006
Page 7

REDACTED

        Not only would it be unfair to the pertinent Alcatel companies to drag them into this suit after Foundry told them "don't worry" about being accused of infringement. It would also violate the Federal Rules of Civil Procedure. Just because the same patent might be involved against multiple parties does not of itself mean that Rule 19 or Rule 20 joinder is appropriate. "[T]he fact that two parties may manufacture or sell similar products, and that these sales or production may have infringed the identical patent owned by the plaintiffs is not sufficient to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a)." Pergo, Inc. v. Alloc, Inc., 262 F. Supp. 2d 122, 128 (S.D.N.Y. 2003) (citing cases). Here, Foundry has not established the "same transaction or occurrence" standard that would justify permissive joinder of a new party and a new accused product.

        For these reasons, the Court should not find good cause to relax the amendment deadline again, and should not find good cause to permit addition of "5020 softswitch" parties.

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Chief Judge Sue L. Robinson
November 6, 2006
Page 8

<u>Section 3: Foundry Should Not Be Allowed to Amend Regarding OmniPCX</u>

Finally, Foundry should not, and need not, add additional parties who exist in the exact same distribution chain for the OmniPCX. Why should three separate companies answer to infringement charges directed against a single instance of a single product? This section relates to Foundry's untimely request to add Alcatel Business Systems, Inc. and Alcatel USA, Inc. to the case.

Alcatel Internetworking is a proper party who can grant full relief to Foundry, if Foundry deserves relief. There is no need, and no cause, to bring into the case additional parties above and below AII in the distribution chain.

Foundry does not deny that Alcatel Internetworking is a proper party, since it markets and sells the OmniPCX line of products. Moreover, Foundry acknowledges that AII is the exclusive North American distributor for such products. This means that *every single OmniPCX product sold in North America is sold through AII*.

Foundry wants to add one party above AII in the distribution chain -- Alcatel Business Systems (ABS) of Colombes, France -- and one party below AII for a fraction of the distribution chain -- Alcatel USA, Inc. This will simply add complexity for no good reason. As mentioned, all United States revenues *are already part of this case*.

Moreover, making discovery easier for Foundry is not "good cause" for adding an unnecessary party. For example, with respect to ABS, counsel for AII has already succeeded in collecting and producing to Foundry the most pertinent technical documentation and software related to how the OmniPCX is designed and how it works. Foundry is now perfectly free (and now has ample time) to seek third party discovery of any ABS individual it feels has discoverable information. Foundry already has more than enough information in-hand about how the OmniPCX products work to put on its infringement case at trial.



Sales to AUSA are "revenue sales" and are fully recorded and reflected on AII's books. There is no need to add AUSA for Foundry to obtain full relief.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Chief Judge Sue L. Robinson
November 6, 2006
Page 9

The other "justification" cited by Foundry is just an *ad hominem* attack on Mr. Burns. On page 6 of its October 23 submission, Foundry says that Mr. Burns, the AII president, was unaware of the Chang patent, unaware of this lawsuit, and uninvolved in meeting discovery obligations, for more than six months after the case was filed and discovery had been served. This attack is not only irrelevant to the "real party in interest" issue in view of *all* sales channeling through AII, it is also factually wrong. Mr. Burns (as the company president) had final say in approving the declaratory judgment lawsuit before it was filed, and personally dispersed resources to respond to discovery requests beginning in late 2005. (Ex. H, Burns Dep. at 135-37, 143, 178).

For these reasons, the Court should not find good cause to relax the amendment deadline again, and should not find good cause to permit addition of even more "OmniPCX" parties.

## Conclusion

Foundry's "Conclusion" section on page 10 of its October 23 submission confirms that Foundry desires new counterclaim defendants for discovery purposes, not merits purposes. All of the real parties in interest in *this* case are already part of *this* case. If Foundry prevails on its OmniPCX infringement theories, it will obtain complete relief from AII. No matter how desperately Foundry wants to confuse and conflate the Alcatel legal entities, the truth remains that the proper OmniPCX party is now in this case. Any request to add more parties is untimely, and in the case of a "5020 softswitch" accusation, frivolous in view of Foundry's previous waivers.

Respectfully submitted,

*Karen E. Keller*

Karen E. Keller (No. 4489)

KEK:hkh

cc:    Philip A. Rovner, Esquire *(by e-mail and hand delivery)*
provner@potteranderson.com
William L. Anthony, Esquire *(by e-mail and federal express)*
wanthony@orrick.com
Matthew H. Poppe, Esquire *(by e-mail and federal express)*
mpoppe@orrick.com
Michael F. Heafey, Esquire *(by e-mail and federal express)*
mheafey@orrick.com
Henry C. Bunsow, Esquire *(by e-mail and federal express)*
BunsowH@howrey.com
K.T. Cherian, Esquire *(by e-mail and federal express)*
cheriank@howrey.com

# EXHIBIT A

**Satterfield, Sandy L**

| | |
|---|---|
| **From:** | Fanning, Shannon [sfanning@ycst.com] |
| **Sent:** | Thursday, October 13, 2005 8:20 AM |
| **To:** | Haller, Timothy J; Ingersoll, Josy; Norman, Elena; Poff, Adam; Shaw, John |
| **Subject:** | Activity in Case 1:05-cv-00418-SLR Alcatel USA Resources Inc. et al v. Foundry Networks Inc. "Scheduling Order" |

Please see the attached document: SCHEDULING ORDER: Case referred to the Magistrate Judge for the purpose of exploring ADR. Joinder of Parties due by 3/10/2006. Amended Pleadings due by 7/12/2006. Discovery due by 11/17/2006. Discovery Conference set for 11/21/2005 04:30 PM in Courtroom 6B before Honorable Sue L. Robinson. 2nd Discovery Conference set for 2/7/2006 04:30 PM in Courtroom 6B before Honorable Sue L. Robinson. Daubert motions due 2/15/07. Dispositive Motions due by 12/11/2006. Answering Brief due 1/15/2007. Reply Brief due 1/31/2007. Motion Hearing set for 2/23/2007 09:30 AM in Courtroom 6A before Honorable Sue L. Robinson. Claims Construction Opening Brief due by 1/8/2007, responsive briefs due 1/31/07. Pretrial Conference set for 4/9/2007 04:30 PM in Courtroom 6B before Honorable Sue L. Robinson. Jury Trial set for 4/23/2007 09:30 AM in Courtroom 6B before Honorable Sue L. Robinson. Signed by Judge Sue L. Robinson on 10/12/05. Thank you.

---

***NOTE TO PUBLIC ACCESS USERS*** You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.

U.S. District Court

District of Delaware

Notice of Electronic Filing

The following transaction was received from rld, entered on 10/13/2005 at 9:03 AM EDT and filed on 10/13/2005

| | |
|---|---|
| **Case Name:** | Alcatel USA Resources Inc. et al v. Foundry Networks Inc. |
| **Case Number:** | 1:05-cv-418 |
| **Filer:** | |
| **Document Number:** | 25 |

**Docket Text:**
SCHEDULING ORDER: Case referred to the Magistrate Judge for the purpose of exploring ADR. Joinder of Parties due by 3/10/2006. Amended Pleadings due by 7/12/2006. Discovery due by 11/17/2006. Discovery Conference set for 11/21/2005 04:30 PM in Courtroom 6B before Honorable Sue L. Robinson. 2nd Discovery Conference set for 2/7/2006 04:30 PM in Courtroom 6B before Honorable Sue L. Robinson. Daubert motions due 2/15/07. Dispositive Motions due by 12/11/2006. Answering Brief due 1/15/2007. Reply Brief due 1/31/2007. Motion Hearing set for 2/23/2007 09:30 AM in Courtroom 6A before Honorable Sue L. Robinson. Claims Construction Opening Brief due by 1/8/2007,

responsive briefs due 1/31/07. Pretrial Conference set for 4/9/2007 04:30 PM in Courtroom 6B before Honorable Sue L. Robinson. Jury Trial set for 4/23/2007 09:30 AM in Courtroom 6B before Honorable Sue L. Robinson. Signed by Judge Sue L. Robinson on 10/12/05. (rld, )

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=10/13/2005] [FileNumber=111680-0
] [c3562d163e1887d4e1edd19493d7106a7b48f0fbe0ceb524cb4e331e315b7ece23c
c5b261b1f65248e11f98b505dd458e1333e51194ab624ecc0f040ec61244d]]

**1:05-cv-418 Notice will be electronically mailed to:**

Josy W. Ingersoll    jingersoll@ycst.com, corporate@ycst.com;cglover@ycst.com;corpcal@ycst.com

Philip A. Rovner    provner@potteranderson.com,
mstackel@potteranderson.com;nmcmenamin@potteranderson.com

**1:05-cv-418 Notice will be delivered by other means to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ALCATEL USA RESOURCES, INC.,        )
   a Delaware Corporation, and        )
ALCATEL INTERNETWORKING, INC.,      )
   a California Corporation,        )
                      )
       Plaintiffs,        )
                      )        Civil Action No. 05-418-SLR
       v.        )
                      )
FOUNDRY NETWORKS, INC.,             )
   a Delaware Corporation,            )
                      )        (JURY TRIAL DEMANDED)
       Defendant.        )

ORDER

     This ⸺day of _____October_____ 2005, the parties having satisfied their obligations under Fed. R. Civ. P. 26(f), and the court having conducted a pretrial scheduling conference pursuant to Fed. R. Civ. P. 16 and D. Del. LR 16.2(a) and (b).

     IT IS ORDERED that:

     1.  **Pre-Discovery Disclosures.**  The parties will exchange by October 18, 2005 the information required by Fed. R. Civ. P. 26(a)(1) and D. Del. LR 16.2.

     **Discovery.**  This case will be divided into two phases for purposes of discovery and trial. Phase One will involve four of the Alcatel patents-in-suit, to be selected by Alcatel from among the patents asserted in its Amended Complaint according to the procedure set forth below, and will also involve the Foundry patent-in-suit. Phase Two will commence after the end of the trial in Phase One, will follow a schedule to be set by the court at a later time (with all relevant discovery from Phase One being usable in Phase Two), and will relate to the remaining five Alcatel patents-in-suit identified in Alcatel's Amended Complaint. There will be two stages of discovery during Phase One. During the first stage ("Stage One"), defendant will produce all technical documents necessary to understand the structure and operation of the relevant features

of the accused Foundry products. This production will be completed by November 1, 2005. To guide defendant's production of documents, plaintiffs will serve defendant with document requests directed to the accused products promptly after the entry of this Order. Plaintiffs will complete Stage One depositions related to the structure and operation of the relevant features of the accused Foundry products between November 1, 2005 and December 31, 2005. Based upon the assumption that Foundry promptly and fully provides the foregoing discovery, by January 20, 2006, plaintiffs will choose the four (4) Alcatel patents to pursue during Phase One of this case. During Stage One, Alcatel may also serve written discovery related to the structure and operation of the relevant features of the accused Foundry products. All other discovery will be stayed during Stage One. Stage Two shall commence on January 23, 2006 and shall include discovery on all relevant issues related to the Phase One patents.

(a) Discovery will be needed on the following subjects: infringement, willfulness, validity, damages, estoppel, laches, and any additional issues that may arise.

(b) All Phase One fact discovery shall be commenced in time to be completed by September 1, 2006.

(1) Phase One document production shall be completed on or before February 24, 2006.

(2) Maximum of 50 interrogatories by each side to the other side during Phase One; maximum of 25 interrogatories by each side to the other side during Phase Two.

(3) In the absence of agreement among the parties, contention interrogatories, if served, shall first be served by the party with the burden of proof no later than the date established for the completion of document production, with the responsive answers due within thirty (30) days thereof. The adequacy of all such interrogatory answers shall be judged by the level of detail each party provides; i.e., the more detail a party provides, the more detail a party shall receive.

(4) Maximum of 100 requests for admission by each side to the other side during Phase One, 50 of which will be solely for the purposes of authentication of

documents. Maximum of 50 requests for admission by each side to the other side during Phase Two, 25 of which will be solely for the purposes of authentication of documents.

(5) In the absence of agreement among the parties or by order of the court, no deposition shall be scheduled prior to the completion of document production, except as set forth above in connection with Stage One.

(6) Maximum of 275 hours for fact depositions during Phase One, split evenly between the two sides. Maximum of 210 hours for fact depositions during Phase Two, split evenly between the two sides.

(c)    Expert discovery shall be commenced in time to be completed by November 17, 2006, but shall not commence before October 16, 2006 absent agreement of the parties or order of the court.

(1) Expert reports on issues for which the parties have the burden of proof due September 18, 2006. Rebuttal expert reports due October 13, 2006.

(2) Expert depositions to be limited to a maximum of seven (7) hours per witness unless extended by agreement of the parties for reasons such as technical experts opining on more than one patent.

(3) All Daubert motions shall be filed on or before February 15, 2007.

(d)  If willfulness has been asserted and absent agreement among the parties, the defendant must inform plaintiffs as to whether it intends to rely upon advice of counsel within two (2) months after the time that plaintiffs advise defendant of the patents that will be tried during Phase One. If the decision is to rely on such advice, plaintiffs' position is that the scope of discovery shall include the advice and materials provided by defendant to its counsel and whatever other materials related to the issues in dispute that defendant had in its possession at the time the advice was sought, while defendant's position is that the scope of discovery shall include the materials covered by the waiver of privilege associated with the decision to rely on the advice of counsel.

(e) Supplementations under Rule 26(e) due every three months during the fact discovery period.

(f) **Discovery Disputes.**

(1) The court shall conduct in-person discovery status conferences on November 21, 2005 at 4:30 p.m. and on February 7, 2006 at 4:30 p.m., the time to be allocated equally among the parties.

(2) The court shall remain available to resolve by telephone conference disputes that arise during the course of a deposition and disputes over the terms of a protective order.

(3) Absent express approval of the court following a discovery conference, no motions pursuant to Fed. R. Civ. P. 37 shall be filed.

(g) **Fact Witnesses to be Called at Trial.**  Within one (1) month following the close of expert discovery, each party shall serve on the other parties a list of each fact witness (including any expert witness who is also expected to give fact testimony), who has previously been disclosed during discovery and that it intends to call at trial. Within one (1) month of receipt of each such fact witness list, each party shall serve a list of each rebuttal fact witness that it intends to call at trial. The parties shall have the right to depose any such fact witnesses who have not previously been deposed in this case. Such depositions shall be held within one (1) month after service of the list of rebuttal fact witnesses and shall be limited to twenty (20) hours per side in the aggregate unless extended by agreement of the parties or upon order of the court upon good cause shown.

2.  **Joinder of other Parties and Amendment of Pleadings.**  All motions to join other parties shall be filed on or before March 10, 2006, and motions to amend the pleadings in connection with the Phase One patents shall be filed on or before July 12, 2006.

3.  **Settlement Conference.**   Pursuant to 28 U.S.C. § 636, this matter is referred to Magistrate Judge Thynge for the purposes of exploring ADR.

4.  **Claim Construction Issue Identification.**  If the court does not find that an earlier claim construction would be helpful in resolving the case, on November 20, 2006, the parties shall exchange lists of those claim terms that they believe need construction and their

proposed claim construction of those terms. This document will not be filed with the court. Subsequent to exchanging such lists, the parties will meet and confer to prepare a Joint Claim Construction Statement to be submitted pursuant to paragraph 7 below.

5. **Summary Judgment Motions.** All summary judgment motions shall be served and filed with an opening brief on or before December 11, 2006. All briefs in opposition to summary judgment shall be served and filed on or before January 15, 2007. All replies shall be served and filed on or before January 31, 2007. Briefing shall be pursuant to D. Del. LR 7.1.2, except as set forth in this paragraph. No summary judgment motion may be filed more than ten (10) days from the above date without leave of the court.

6. **Claim Construction.** The parties shall agree upon and file the Joint Claim Construction Statement on January 4, 2007, with the claim chart separately docketed. The parties will file simultaneous opening claim construction briefs on January 8, 2007. Simultaneous reply briefs should be filed by January 31, 2007. Issues of claim construction shall be considered by the court in conjunction with summary judgment motion (s). The hearing on the claim construction and motion (s) for summary judgment will be heard on February 23, 2007 at 9:30 a.m.

7. **Applications by Motion.** Any application to the court shall be by written motion filed with the clerk. **The court will not consider applications and requests submitted by letter or in a form other than a motion,** absent express approval by the court.

(a) **Any non-dispositive motion shall contain the statement required by D. Del. LR 7.1.1.**

(b) No telephone calls shall be made to chambers.

(c) Any party with an emergency matter requiring the assistance of the court shall e-mail chambers at: slr_civil@ded.uscourts.gov. The e-mail shall prove a short statement describing the emergency. NO ATTACHMENTS shall be submitted in connection with said e-mails.

8. **Motions in Limine.** No motions in limine shall be filed; instead the parties shall be prepared to address their evidentiary issues at the pretrial conference and during trial (before and after the trial day).

9.  **Pretrial Conference.** A pretrial conference will be held on April 9, 2007 at 4:30 p.m. in Courtroom No. 6B, Sixth Floor Federal Building, 844 King Street, Wilmington, Delaware.  The Federal Rules of Civil Procedure and D. Del. LR 16.4 shall govern the pretrial conference.

10. **Trial.** This matter is scheduled for a twenty (20) day jury trial commencing on April 23, 2007 in Courtroom No. 6B, Sixth Floor Federal Building, 844 King Street, Wilmington, Delaware.  For purposes of completing pretrial preparations, the parties should plan on being allocated a total number of hours in which to present their respective cases.

_____
United States District Judge

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ALCATEL USA RESOURCES, INC.          )
    a Delaware Corporation, and          )
ALCATEL INTERNETWORKING, INC.,          )
    a California Corporation,          )
                           )
        Plaintiffs,          )
                          )          Civil Action No. 05-418-SLR
        v.          )
                          )          (JURY TRIAL DEMANDED)
FOUNDRY NETWORKS, INC.,          )
    a Delaware Corporation,          )
                           )
        Defendant.          )

## FIRST AMENDED SCHEDULING ORDER

WHEREAS, in its Order of June 14, 2006 (D. I. 73), the Court amended the

discovery schedule in this case, setting certain of the new dates and directing the parties to reach

agreement regarding the remaining dates; now therefore,

IT IS HEREBY ORDERED that, the Scheduling Order entered on October 12,

2005 (D.I. 25) is amended as follows but otherwise shall remain in full force and effect:

        1.     All fact discovery shall be commenced in time to be completed by October

16, 2006.

        2.     Expert discovery shall be commenced in time to be completed by

December 18, 2006, but shall not commence before November 27, 2006, absent agreement of the

parties or order of the Court.

        (a)     Expert reports on issues for which the parties have the burden of

proof due October 30, 2006. Rebuttal expert reports due November 22, 2006.

        (b)     All *Daubert* motions shall be filed on or before February 23, 2007.

3.    **Discovery Disputes.** The Court shall conduct an in-person discovery status conference on September 14, 2006 at 3:30 p.m., the time to be allocated equally among the parties.

4.    **Amendment of Pleadings.** All motions to amend the pleadings in connection with the Phase One patents shall be filed on or before August 25, 2006.

5.    **Claim Construction Issue Identification.** If the Court does not find that an earlier claim construction would be helpful in resolving the case, on October 16, 2006, the parties shall exchange lists of those claim terms that they believe need construction and their proposed claim construction of those terms. This document will not be filed with the Court. Subsequent to exchanging such lists, the parties will meet and confer to prepare a Joint Claim Construction Statement to be submitted pursuant to paragraph 7 below.

6.    **Summary Judgment Motions.** All summary judgment motions shall be served and filed with an opening brief on or before January 16, 2007. All briefs in opposition to summary judgment shall be served and filed on or before February 9, 2007. All replies shall be served and filed on or before February 20, 2007. Briefing shall be pursuant to D. Del. LR 7.1.2, except as set forth in this paragraph. No summary judgment motion may be filed more than **ten (10)** days from the above date without leave of the Court.

7.    **Claim Construction.** The parties shall agree upon and file the Joint Claim Construction Statement on January 8, 2007, with the claim chart separately docketed. The parties will file simultaneous opening claim construction briefs on January 16, 2007. Simultaneous reply briefs should be filed by February 9, 2007. Issues of claim construction shall be considered by the Court in conjunction with summary judgment motion (s).

2

The hearing on the claim construction and motion (s) for summary judgment will be heard on March 2, 2007 at 1:00 p.m.

SO ORDERED, this _____14th_____ day of _____July_____, 2006.

_____
United States District Judge

740486

3

# EXHIBIT C

Alcatel v. Foundry                    CondenseIt™                    CA No. 05-418 SLR)

**Page 1**

```
1          IN THE UNITED STATES DISTRICT COURT
2         IN AND FOR THE DISTRICT OF DELAWARE
3                      - - -
4   ALCATEL USA RESOURCES, INC.,   :   CIVIL ACTION
    a Delaware corporation, and    :
5   ALCATEL INTERNETWORKING, INC., :
    a California corporation,      :
6                                  :
        Plaintiffs                 :
7                                  :
        vs.                        :
8                                  :
    FOUNDRY NETWORKS, INC.,        :
9   a Delaware corporation         :
                                   :
10      Defendant              :   NO. 05-418 (SLR)
11                     - - -
12                        Wilmington, Delaware
13                        Wednesday, October 4, 2006
                          9:33 o'clock, a.m.
14                     - - -
15  BEFORE:  HONORABLE SUE L. ROBINSON, Chief Judge
16                     - - -
17  APPEARANCES:
18      YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
        BY:  KAREN L. PASCALE, ESQ.
19
20                    -and-
21
22
23
24                        Valerie J. Gunning
                          Official Court Reporter
25
```

**Page 2**

```
1   APPEARANCES (Continued):
2
3       NIRO, SCAVONE, HALLER & NIRO
        BY:  TIMOTHY J. HALLER, ESQ. and
4            ROBERT GREENSPOON, ESQ.
             (Chicago, Illinois)
5
6            Counsel for Plaintiffs
7
8       POTTER, ANDERSON & CORROON
        BY:  PHILIP A. ROVNER, ESQ.
9
10                   -and-
11
        HOWREY
12      BY:  K.T. CHERIAN, ESQ. and
             CONSTANCE F. RAMOS, ESQ.
13           (San Francisco, California)
14               and
15
        ORRICK
16      BY:  MATTHEW H. POPPE, ESQ.
             (Menlo Park, California)
17
18           Counsel for Defendant
19                   - - -
20
21  ALSO PRESENT:  DR. STEVEN WASLIEW
22
23                   - - -
24
25
```

October 4, 2006

**Page 3**

```
1
2              PROCEEDINGS
3
4       (Proceedings commenced in the courtroom,
5   beginning at 9:33 a.m.)
6
7       THE COURT: Good morning, counsel.
8       (Counsel respond, "Good morning, your Honor.")
9       THE COURT: I think today is the day that I have
10  set aside to help you bring discovery to a close and to
11  discuss scheduling, et cetera.
12      So why don't we start with counsel for the
13  plaintiff, and if you could give me just a brief overview
14  of the issues that you think that we should be addressing
15  today, then I will go to defendant's counsel for the brief
16  overview of the issues you think we should be addressing
17  today, and then we are going to prioritize those issues and
18  see which of those I need to hear about and which of those
19  you simply need to talk about before I hear about it to make
20  sure that you have had a bona fide productive discussion
21  among yourselves.
22      So let's do it that way, one step at a time, and
23  then we will go forward.
24      Yes, sir?
25      MR. HALLER: Good morning, Judge. Tim Haller,
```

**Page 4**

```
1   for Alcatel.
2       Before coming here today, Judge, we -- I think I
3   speak for both parties. We did try to have a private
4   session, to try and see what we could resolve, just get it
5   off the table before coming here, and I think it's fair to
6   say the weather, plane delays, the fact that these people had
7   to come from the West Coast, it just made it impossible, so I
8   think at some point, you know, we both intended, we're going
9   to privately try and get some of these things out of the
10  way. I am hopeful we can do that. We just have not had a
11  chance to talk.
12      THE COURT: My home is your home.
13      MR. HALLER: Okay. We anticipated that.
14      In terms of an overview, again, I don't want to
15  be presumptuous and speak for both sides, but --
16      THE COURT: Just speak for yourself. What do you
17  want to accomplish today?
18      MR. HALLER: Okay. And I can give you that very
19  quickly and our view on why we are here today.
20      The source code handling of both sides seems to
21  be a burning issue and seems to be number one on the plate,
22  and I won't bore you with the details at this point. There
23  is a very clear discovery protective order as to how that has
24  been handled. I think it's fair to say each party has a very
25  significant investment in the development of their source
```

Page 1 - Page 4

Alcatel v. Foundry                    CondenseIt™                    CA No. 05-418 SLR)

Page 5

1  codes. This is not anything new to you.
2       In terms of what is handled, what has occurred in
3  terms of the loading of that on to computers and the security
4  measures that have been implemented, which were implemented
5  and laid down by Foundry at the beginning of the case, in
6  fact, they are the ones that drafted the discovery protective
7  order language, and and what has really happened here, and I
8  will move on, is the Orrick firm, which is representing
9  Foundry on the Count 1 defense of our claim against Foundry,
10 came up with the protective order language, came up with the
11 implementation of it in terms of what is called, what we'll
12 call lockdown ports on laptop computers and unilaterally
13 giving just slivers of the source code as opposed to all of
14 the source code, and a very minimal search engine for the
15 excised source code, and we went along with that, and we went
16 along with it because of the anticipation that those ground
17 rules were going to apply to us when we, in a reciprocal
18 sense, gave Alcatel source code back to Foundry, in terms of
19 their infringement claim against us.
20      The difficulties that we have here today on
21 all of this are the fact that Foundry is represented by the
22 Howrey firm on Foundry's infringement claim against Alcatel,
23 different law firms, and the Howrey firm, in terms of
24 prosecuting Foundry's claim against Alcatel, completely
25 changed the ground rules in terms of how source code should

Page 6

1  be produced, the scope of the source code that should be
2  produced, et cetera, et cetera.
3       To cut through things, and so you don't have
4  to listen to the blather of lawyers and everything, if
5  your Honor wishes, we've brought with us today Mr. Steven
6  Wasliew. I would like to introduce to the Court Dr.
7  Wasliew. He's a technical consultant to our law firm,
8  has a Ph.D. in Computer Science from the University of
9  Michigan, has been in the telecommunications industry his
10 entire career. He has personally had responsibility for
11 overseeing the handling of these computers and the source
12 code. I offer to your Honor, so you don't have to listen to
13 the lawyers speak directly, Dr. Wasliew. You can put him on
14 the stand. You can swear him in, whatever. I'm not sure
15 where we are going on all of this.
16      So that's certainly number one.
17      Number two, in terms of a patent owner's claim,
18 Alcatel's claim, our main concern and what we don't have at
19 this very late date, is information about Foundry's sales.
20 Obviously, there cannot be anything much more important to a
21 patent owner's claim than that.
22      All that we have to date, we have given them long
23 ago financial summaries of our sales, which sets forth a
24 format in which the sales revenue information could be
25 provided. You're going to hear a lot from Foundry about what

Page 7

1  they don't have. We're sitting here today, telling you,
2  Judge, that what they've given us is a dump of 130,000
3  individual invoices. That's it, period.
4       Now, Mr. Greenspoon recently took the deposition
5  of Foundry's Chief Financial Officer, the number two person
6  in the company as we understand it, and he acknowledged that
7  they have databases that could regurgitate all of the sales
8  revenue information in exactly the format that we gave it to
9  Foundry a long time ago. So that is a priority issue for
10 us. We still don't have it. There's no commitment as to
11 when we will get it.
12      On that score, we have the same situation with
13 the source code that we're looking for from Foundry. No
14 commitment as to when we're going to get it. As I stand here
15 today, we have nothing in our hands. We've had to return the
16 laptops they've given us.
17      The third area -- those are what I would call
18 core central issues: Source code and financial summaries.
19      The third area would be what I would call a
20 litany of discrete document requests on both sides. That is
21 what I'm hopeful, that a lot of that can be resolved
22 privately. We just have not had a chance to get together to
23 go over that.
24      But here's the problem at the 10,000-foot level.
25 The problem is reciprocity, and what I mean by reciprocity is

Page 8

1  we have Foundry represented by the two different law firms,
2  and what we keep running into is we talked with the Orrick
3  firm like we did on the source code. We talked to the Orrick
4  firm about, okay, this is what we're going to do in terms of
5  the level of documentation, et cetera, that we're going to
6  produce, and as long as we can expect the same thing back
7  from you, because each side have infringement claims against
8  the other, we will do it.
9       Then, what happens, we turn around to look for
10 the reciprocity from Foundry from the Howrey firm, and the
11 Howrey firm has a totally different view of the world in
12 terms of what the ground rules are. Howrey has a totally
13 different view of the ground rules when it comes to the
14 handling of source code than the Orrick firm did. And so
15 this is the fundamental problem in terms of getting these
16 things off the table, is reciprocity.
17      I think it's fair to say that what's good for
18 the goose is good for the gander. That is all we're asking
19 for. That's what we're looking for. I would think in any
20 case, if there's going to be discovery rules, they cut both
21 ways.
22      That's our concern. If we can get reciprocity in
23 place, I'm confident that going through this laundry list of
24 discrete things can very quickly be resolved.
25      Okay. I have overstayed my time, probably.

October 4, 2006

Alcatel v. Foundry      CondenseIt™      CA No. 05-418 SLR)

Page 9

1 That's our overview.
2     THE COURT: All right. Thank you very much.
3     Let's hear from counsel for Foundry.
4     MR. ROVNER: Your Honor, Phil Rovner, from Potter
5 Anderson.
6     With me is Sunny Cherian and Connie Ramos. I
7 don't think you've seen Ms. Ramos before. She is from Howrey
8 and works with Mr. Cherian, and Matt Poppe is on my far
9 right.
10     We are going to take your Honor at your word and
11 give you a very brief overview, attempt to, and we'll have
12 Mr. Cherian and Mr. Poppe do that.
13     I did want to make one comment. We take our
14 meet-and-confer obligations very, very seriously, and
15 Mr. Haller said something at the outset, saying that we have
16 not met and conferred. We've met and conferred repeatedly
17 and we -- through letters, through phone calls. We were
18 unable to meet yesterday because of travel issues, but we
19 have vetted these issues repeatedly and we took your Honor to
20 heart after the last conference and we did try to resolve
21 these issues. So to say we have not met and conferred on
22 every issue we are going to present today is wrong. We
23 certainly have.
24     So I will introduce Mr. Cherian and he'll talk
25 about the Count 2 issues.

Page 10

1     THE COURT: All right. Thank you.
2     MR. CHERIAN: Good morning, your Honor.
3     THE COURT: Good morning.
4     MR. CHERIAN: Your Honor, this may not be the
5 appropriate time, but in view of the Court's comments from
6 last time, what we've done, your Honor, is prepared two
7 binders for the Court. Not that we want to burden the Court,
8 but to the extent that any discrepancies that rise today, we
9 have the evidence for the Court. We have binders that have
10 all the correspondence, correspondence between the sides.
11 We also have, your Honor, the two depositions that they
12 have allowed us to take so we can point out to you the
13 severe and extraordinary discovery abuses that we face and
14 we're not going to be just -- just telling you that. We
15 will prove it to you, your Honor. It's in the deposition
16 transcripts.
17     Furthermore, your Honor, what I have done,
18 both sides, for Count 1 and Count 2, we have presented
19 presentations for the Court like the last time. This may be
20 not the appropriate time for it.
21     THE COURT: It is not.
22     MR. CHERIAN: Then I will just proceed.
23     Your Honor, with regard to the source code, the
24 issue with the source code is as follows. As we speak today,
25 we do not have source code that we can use.

Page 11

1     On the 15th, they sent us some computers with not
2 the Omni PCX, but the source code for some Omni switches.
3 They were not in the searchable format. What we found was
4 that certain features of the computers were disabled,
5 intentionally disabled.
6     When we asked Mr. Haller -- I got on the phone,
7 talked to Mr. Haller about it. Mr. Haller said, this is tit
8 for tat, so I said let's get rid of the tit for tat, we're
9 both respectable law firms. You can have my source code, I
10 can have your source code. You don't have to lock things
11 down.
12     I volunteered to him that Foundry would make
13 available its source code with no lockdown after I was told
14 that certain -- that the Foundry code initially had been
15 provided with certain lockdown features.
16     Mr. Haller said he was not in a position to
17 accept that because -- for a variety of reasons.
18     Yesterday we talked and I think we have
19 agreement, and I don't want to speak for Mr. Haller, but I
20 think we have agreement that both sides will produce source
21 code with no lockdown, so we can actually search the code.
22     So where are we today? The first code came in on
23 the 15th of September.
24     THE COURT: Well, I have to say this is more than
25 a 10,000-foot view. This is what I wanted. I just want the

Page 12

1 issues. And what I want to do before you tell me what you
2 think the agreement is, is that I want to identify the
3 issues, I want to leave you alone. I want you to see whether
4 you actually have agreement or not, and if you don't, I want
5 to know specifically what the disagreements are so that I can
6 come in and make decisions.
7     MR. CHERIAN: Sure.
8     THE COURT: So I want to give you the same time
9 that Mr. Haller gave you, but my take from Mr. Haller was
10 that you didn't really have agreement yet, not only between
11 the parties, but between the two law firms and the parties.
12 So if you think you've got agreement, that's terrific. I'm
13 going to let you --
14     MR. CHERIAN: I will take two minutes, your
15 Honor.
16     THE COURT: Well, I don't want you to tell me
17 what the agreement is until you actually confirm when I'm not
18 here that you have an agreement and then you can go through
19 the agreement on the record to make sure that everyone lives
20 by what you say.
21     So those are basically the ground rules at this
22 point.
23     So you think you've got agreement not only
24 between your law firm representing Foundry and Alcatel, but
25 with the other law firm and -- I mean, there's general

Alcatel v. Foundry                CondenseIt™                CA No. 05-418 SLR)

Page 13

1  agreement, is what you think?
2        MR. CHERIAN: We have agreement and we've always
3  had agreement between the Orrick firm and the Howrey firm,
4  your Honor, in this case. We take exception, accommodating
5  what Mr. Haller said.
6        But, more importantly, your Honor, I will just go
7  through and summarize. I think we have agreement on the
8  source code, at least with respect to the source code that
9  has been produced to date and we will work on that.
10        But let me just summarize for the Court, then,
11  what the issues are with regard to Count 2.
12        With regard to Count 2, we only have a portion of
13  the source code. The vast majority of the source code has
14  yet to be produced. That's the first issue, your Honor.
15        Second, with regard to all system level
16  configurations, and like the last time, your Honor, we spoke,
17  the claims -- most of the claims go to system level
18  configurations. We virtually have no documentation.
19        I took the deposition of an Alcatel executive. I
20  have now learned that there are significant, very significant
21  documentation, system level documentation that Alcatel has.
22  I understand it's going to be produced. We're going to work
23  on that later this morning,.
24        So as far as we are concerned, your Honor, we do
25  not have the documentation for the system level claims, which

Page 14

1  are the majority of the claims for Count 2. We don't have
2  the vast majority of the source code that they say they will
3  not give us, but we do have some source code that is not
4  searchable, and we hope to be able to work that out so that
5  we can search the source code. That is my 30,000-foot
6  analysis, your Honor.
7        THE COURT: All right.
8        MR. CHERIAN: Mr. Poppe?
9        THE COURT: And those are all the issues with
10  respect to Count --
11        MR. CHERIAN: I spoke on Count 2, your Honor.
12        THE COURT: Count 2. All right. Thank you very
13  much.
14        MR. CHERIAN: Thank you, your Honor.
15        MR. POPPE: Good morning, your Honor.
16        THE COURT: Good morning.
17        MR. POPPE: To, very briefly, address Mr.
18  Haller's comments, he identified two areas that he believes
19  are lacking in terms of discovery: First, source code, and,
20  second, financial documents.
21        On the source code, we produced, as he said,
22  source code for specific features back in June. We believed
23  that was everything that was requested, and rather than dump
24  the entire quantity of all source code, we produced the
25  relevant source code and there was no request for anything

Page 15

1  further until Mr. Cherian requested broader source code
2  production from Alcatel, and then they came back and said,
3  okay. Well, we want it, too, from Foundry.
4        So we agreed to produce that. We're getting it,
5  but it's obviously not something that can be produced in a
6  day or two, when they are asking for the full quantity of
7  source code for essentially every Foundry product over a
8  period of about six years.
9        On the financial summaries, we are also producing
10  the requested summaries. They had been requested on a
11  product-by-product basis with revenues, costs, things of that
12  nature for, again, a six-year period. So as you know, the
13  Court broadened the scope of discovery last month with
14  respect to products, so it has taken additional time to pull
15  that together. And another complication is that Foundry has
16  had different accounting systems over different periods, so
17  the older information is more difficult to compile and pull
18  together than the more recent stuff, but we've been working
19  on this for the last several weeks and we expect to have the
20  production very shortly.
21        With respect to Foundry's own issues on Count 1,
22  they fall into several categories. One has to do with the
23  foreign affiliate issue that has been before your Honor on a
24  couple of occasions.
25        At the last hearing, we raised our issues with

Page 16

1  the production on the two discrete areas that you had asked
2  us to identify, one being conception and implementation
3  documents for accused -- for the patents in suit, and the
4  other being licensing documents. At that time, we disputed
5  plaintiffs' assertion that they had made a complete
6  production. The Court suggested that we may want to actually
7  bring the documents that had been produced with us, and, if
8  necessary, go through those.
9        We've done that. We reiterated our assertion
10  that the production is extremely thin and incomplete and that
11  there has been no representation that a proper -- that things
12  that we believe should have been done to do a thorough search
13  have been done.
14        In fact, on the licensing documents in
15  particular, I believe last week, a U.S. Attorney who has
16  participated in licensing negotiations made a substantial
17  last-minute production. They included many license
18  negotiation documents. We received no license negotiation
19  documents from Alcatel itself, even though a couple weeks ago
20  they produced about 20 or 30 license agreements for the first
21  time.
22        So we believe that there is additional document
23  production that needs to be done in that area and, in
24  addition, depositions of Alcatel employees that we understand
25  now were involved in these license negotiations as well as

Alcatel v. Foundry           CondenseIt™           CA No. 05-418 SLR)

Page 17

1 patent prosecution issues, that it is going to be necessary
2 follow-up discovery.
3      Patent prosecution is another area where we have
4 some issues. We've taken depositions of several of the
5 patent prosecutors inthe last several weeks. For example, on
6 Monday, I took the deposition of one gentleman who we had
7 subpoenaed with respect to six different patents. He
8 testified that he provided his files and all six patents to
9 Alcatel's counsel. They only produced one of them. So we
10 need the rest of the subpoenaed documents and we're going to
11 need a follow-up deposition on that.
12      He also testified that he essentially made no
13 independent decisions in connection with the patent
14 prosecution and he took his instruction on everything from
15 patent prosecutors in France, who had all the contact with
16 the inventor, who did all the prior art searching, who
17 drafted all the papers, so we need follow-up discovery
18 there. This is the first time this was ever identified to us
19 as an issue.
20      There are several other deposition issues that
21 have come up. One is a number of months ago, we took the
22 deposition of one of the inventors on the '090 patent, a man
23 named Leo Sangroniz. At the time we indicated, because he
24 was the first of several inventors on that particular patent,
25 we might need more time. We were not permitted beyond the

Page 18

1 minimum seven hours. We're requesting more time on that.
2 And then there are some follow-up issues on other depositions
3 based on our document production requests that we're asking
4 for.
5      One other patent prosecution issue that has been
6 raised and is critical for us is that some documents were
7 produced by one of the patent prosecution firms. A month
8 after the production and after we had reviewed the documents
9 and identified certain documents that we believed to be
10 critical to an inequitable conduct argument, Alcatel's
11 counsel, who is representing that firm, asked for the
12 documents to be returned.
13      THE COURT: This is getting down to about the
14 1500-feet level.
15      MR. POPPE: Okay.
16      THE COURT: So --
17      MR. POPPE: So there's another patent prosecution
18 issue with document production involving a privilege issue,
19 and then there are miscellaneous other issues, which, again,
20 hopefully, some can be resolved in the off-line discussion
21 we'll be having, but that is the 1500-foot view.
22      Thank you, your Honor.
23      THE COURT: All right. Good. Now, this is what
24 we're going to do.
25      The first issue we're going to address is source

Page 19

1 code. I, and Valerie, are going to leave the courtroom, and
2 I expect you all to take however long it takes to make sure
3 that you all either reach agreement or at least reach
4 agreement as to the discrete disputes that are left in
5 connection with this.
6      Obviously, what is good for the goose is good for
7 the gander. The rules apply both ways, not only to the
8 extent of the source code provided, but how it is provided.
9 It has to be provided in a searchable format. Otherwise,
10 this whole exercise is a waste of our time. It has to be
11 provided in a protected way.
12      I've got a default mechanism in place. If you
13 all cannot agree today on what is going on, I am not going to
14 take the time. That is why I have a default standard. If
15 you do not have it, I have it on-line. I will make a copy.
16 I will bring it in, but that's why I have a default. If
17 parties cannot agree, you are stuck with what I've given you
18 with the help of some lawyers' input in other cases.
19      So the first issue is source code. When you are
20 ready to talk to me about it, either because you've reached
21 agreement as to everything, which will be put on the record,
22 or because at least you've narrowed the issue to something
23 discrete that isn't addressed by my default standard, then I
24 will come in, resolve it, and we will move on to financial
25 information.

Page 20

1      Now, with respect to financial information,
2 let me just give you my 10,000-foot or 36,000-foot,
3 depending on what kind of plane we're in, view, and that
4 is that if financial discovery is so difficult for you all,
5 for whatever reason, then the easy answer is to simply
6 bifurcate damages and stop discovery on financials at this
7 point. The bad news is that that means that if we get to the
8 point where damages are relevant, we have got to start up
9 discovery again. Obviously, damages will be heard by a
10 different jury, which is not unusual in our court at this
11 point.
12      So if you all -- and, again, that's not
13 what we're addressing first, but if it seems as though
14 the financial information is getting in the way of that
15 discovery, is impeding your ability to bring to closure
16 discovery on the liability issues, then I am not going
17 to spend time on it. That is just going to be taken out.
18 All right?
19      So those are my two thoughts. I am going to
20 leave you alone.
21      Do you need a copy of my default standard on
22 source code discovery or do you think you can work it out and
23 not have to resort to that?
24      MR. ROVNER: I think we can work it out.
25      MR. HALLER: Sounds like we're going to take a

Alcatel v. Foundry                    CondenseIt™                    CA No. 05-418 SLR)

---

**Page 21**

1    crack at it without the default.
2        THE COURT: All right. Good enough. Just
3    someone knock on my door when you are ready.
4        MR. ROVNER: Can I make one comment, your Honor?
5        THE COURT: Yes.
6        MR. ROVNER: Our concern is something that we
7    wanted to raise with you today: That based on what has
8    happened to date, we're concerned that even if Alcatel
9    were to give us all of the discovery that we've asked for in
10   Count 2, that we're going to have trouble making the existing
11   deadlines. And your Honor has already extended the fact
12   discovery deadlines implicitly because you extended the time
13   that we had to file our last set of discovery because it
14   would have been -- we had to file it a couple Fridays ago to
15   make the deadline for all discovery to be concluded. So you
16   extended that a bit, but we're concerned even if we get all
17   the source code and all the documents tomorrow, we'll still
18   have trouble with existing deadlines.
19       I wanted to make sure everyone was aware of our
20   position and our concern.
21       THE COURT: I understand that scheduling is going
22   to be the last issue we address today.
23       MR. ROVNER: Okay. Thank you.
24       MR. HALLER: Could I just throw in -- I think
25   it's consistent with what you just heard. I think it might

---

**Page 22**

1    be helpful in terms of we're not trying to pull a stampede
2    here in terms of cramming them in the last two weeks or
3    anything of that nature.
4        There has been a lot of talk about a bifurcation
5    or a -- the Foundry claim for infringement getting kicked
6    into a second phase, and this plays right into it, and I
7    raised it when I was before you on September 14th.
8        The Foundry -- more specifically, the Howrey
9    opinion with this adoption of the standard by the IEEE
10   and the fact that the Howrey firm authored this opinion,
11   and you have not acted on their motion to amend, but we have,
12   again, had correspondence with the author at the Howrey firm
13   about whether he stands ready to cooperate and support their
14   opinion. And we have not heard back, but the prior answer
15   was, Don't call me again.
16       But I point your Honor to Foundry's reply memo
17   in support of their motion to amend. And on Page 2, where
18   they talk about, that there be a separate proceeding, where
19   the Foundry -- the Howrey lawyers supposedly could testify in
20   support of his opinion in Alcatel's claim against Foundry,
21   and that the Howrey lawyers would not be in the law firm for
22   that trial, but that the Howrey lawyers then would be in a
23   subsequent separate trial.
24       So for what it's worth, that's in their reply
25   memorandum.

---

**Page 23**

1        THE COURT: All right. We will be addressing all
2    of that once we get through the discovery issues.
3        All right? All right. Good luck, folks.
4        (Recess taken at 10:05 a.m.)
5                        - - -
6        (Proceedings resumed in the courtroom, beginning
7    at 12:40 p.m.)
8        THE COURT: I will let you tell me.
9        MR. HALLER: Well, Judge, I told you it was a
10   burning issue.
11       THE COURT: Yes.
12       MR. HALLER: I guess three hours later, we're
13   99 percent there. Mr. Chernian has been the scrivener here
14   for our agreement. I could give you my version of the one
15   issue, but maybe, Sunny, why don't you rattle it off and I
16   would like to have the opportunity to sharpen it up, if
17   necessary.
18       MR. CHERIAN: Your Honor, trying to be precise
19   here as much as we can, what we want -- we've reached some
20   understanding. I think we can get to most of it, but not all
21   of it, today.
22       First, to be clear, your Honor, there are 24
23   Alcatel devices that we have charged with infringement. We
24   are talking about seven of them today, because that's the
25   only code that has been produced.

---

**Page 24**

1        Regarding that code, the parties have agreed that
2    each party can designate that the -- a laptop or desktop be
3    loaded up with the source code that the other party seeks,
4    that the desktop or laptop would be quote locked down such
5    that the only available capability of the printer, of the
6    computer would be to print and to connect it to a monitor,
7    meaning you could not, for example, copy the entire source
8    code on to a drive and walk away with it, so it's an
9    extraordinary amount of security.
10       Third, your Honor, each party will guarantee the
11   other that the search -- that the code is fully searchable
12   when it leaves the party -- the producing party's facility.
13   At the moment, both parties believe that perhaps a particular
14   kind of search engine called Understanding C-Plus might
15   work. However, the parties recognize that we don't know what
16   problems might be encountered downstream.
17       And to be able to plan in that regard, we've
18   agreed that each party would be willing to install additional
19   search engines upon request. So somebody could install
20   an additional search engine upon request with two
21   conditions: The receiving party would bear the costs,
22   and what we talked about is, for example, if we needed
23   something, then the Niro firm's Dr. Wasliuw would
24   theoretically, or somebody, or his designee would come
25   out to do work for them or the Howrey firm and assist with

---

October 4, 2006                                      Page 21 - Page 24

Alcatel v. Foundry                    CondenseIt™                    CA No. 05-418 SLR)

Page 25

1 the installation of that search engine. There would be no
2 unreasonable delay. Those costs would be borne by the
3 receiving party as long as no one asks for a search engine
4 that would interfere with the premise of security, so that
5 there would be no going around and asking for a search engine
6 that would open up or take away the security that at this
7 time Alcatel believes is necessary.
8        There are two issues that we need some guidance
9 from the Court, your Honor. The first issue is with regard
10 to what do we do in instances where we want to use the code
11 in depositions? There are three possible exhibits here: Two
12 advanced by Foundry, one advanced by Niro, the Niro firm, or
13 Alcatel.
14        The first suggestion we have is that the witness
15 in those instances where source code is going to be used,
16 that the witness appear at the location where the source code
17 is. That would be one. And that is, for example, that if
18 the Howrey firm were taking the deposition, the witness
19 appear at the Howrey firm.
20        Two, that the source -- if the witness was
21 going to be produced at the Niro firm, that the Niro
22 firm have available for the Howrey lawyers a computer
23 with that source code so that it can be searched and
24 that the witness can identify various modules or respond
25 to questions.

Page 26

1        And the last proposal is that we do it with
2 paper, meaning that the party who wants to ask questions
3 prints out in advance a whole bunch of paper, sends it to the
4 other side, gets its number and the like, which is what we
5 have to do now, gets it back and then carts it to the site of
6 the deposition. That's one thing where the Court's guidance
7 would be appreciated.
8        And the last thing, your Honor, is that, with
9 regard to the Omni PCX, our understanding is that it is the
10 current version. Nobody here knows whether it is the current
11 version or there are additional versions.
12        One way to respond to it, to handle it, would
13 be to have a stipulation that says the current source code is
14 applicable for all Omni devices sold in the United States
15 beginning with their introduction in the year 2001 or
16 something along those lines, or the other alternative would
17 be to produce all versions of the software. That would be
18 reciprocal. Foundry would be required to do the same, which
19 is produce all versions of software or come to some
20 stipulation with regard to all products.
21        I think I have addressed it fairly, counsel, or
22 did I misspeak?
23        MR. HALLER: I'm not disagreeing. There are a
24 couple things I'd like to amplify on, clarify.
25        You asked for a conciseness and discreteness, and

Page 27

1 that's what we're trying to do. I'm not taking these in any
2 particular order.
3        On the deposition procedure, Mr. Chernian gave
4 you three possibilities, one being the witness goes to their
5 office in San Francisco, two being that our law firm produce
6 an operating computer and monitor wherever the witness is
7 going to be. Those are their two proposals.
8        THE COURT: Just before you finish, I mean, I
9 have never had anyone have a problem with this, so I assume
10 that people have dealt with this issue before, and it just
11 strikes me as there cannot be, I wouldn't think there would
12 be -- I mean, how many witnesses are we talking about? It
13 cannot be scads of witnesses that you are going to show
14 source code to? I mean, is that part of the problem? You
15 are talking about a number of witnesses or are you talking
16 about one?
17        MR. HALLER: We're talking about -- how many?
18        MR. GREENSPOON: Well, your Honor, with respect
19 to the Omni switch code, which we view -- it's their case,
20 but we view the Omni switch product as very peripheral to the
21 Count 2 infringement contentions.
22        We have access to the entire development team at
23 Calabasas. That's probably a sum of about 100 to 150 people
24 who are a pool of people who might be knowledgeable about
25 fragments of the code that they are personally responsible

Page 28

1 for. There might be a few individuals who have an overview
2 perspective on how the code works.
3        The short answer to your question is: There's
4 probably no single witness at either of our organizations
5 who's completely knowledgeable about a complete body of
6 source code. To date, I don't think they've identified any
7 individuals.
8        THE COURT: As I said, I can't believe -- I mean,
9 I, frankly, always thought that source code was an expert
10 witness issue and that you didn't bring in scads of fact
11 witnesses to talk about source code because experts can look
12 at source code and pretty much figure out what it means and
13 how it impacts the issue. So, again, what I decide about the
14 deposition is, to some extent -- and I thought experts always
15 had access to source code anyway because they are the ones
16 who are going to be dealing with it.
17        So I get the impression that you all are doing
18 things really differently than other cases.
19        MR. HALLER: Judge, we are willing -- we would
20 welcome to have the experts be the one to opine on the source
21 code. We've been dealing with this, these allegations and
22 contentions, though, of how -- there's no sense getting into
23 the frustrations that have been encountered. We would
24 welcome the opportunity of simply having the experts deal
25 with the source code.

Alcatel v. Foundry  CondenseIt™  CA No. 05-418 SLR)

Page 29

1 We've come to an arrangement on how the source
2 codes can be produced with security. There are a couple
3 little embellishments that I think have to be clarified, but
4 we're there. And with that understanding, we could have the
5 experts deal with it and we're done with it.
6 MR. CHERIAN: Mr. Haller, I forgot to set forth
7 the option that you had talked about.
8 MR. HALLER: I know. I haven't had a chance to
9 add that.
10 MR. CHERIAN: Which is, your Honor, the other
11 option is for the party who's taking the deposition to carry
12 with that party in that party's personal possession the
13 computer. So you go there, you hook it up and you can ask
14 questions. And the reason, your Honor, is I am somewhat
15 familiar with these PBX-type machines, and the answer, these
16 are state machines and large quantities.
17 So if you are asking a question, for example, in
18 this particular instance, my understanding, taking a
19 deposition is -- coding might be taking place in six or seven
20 different countries, so the annotations might be in different
21 languages. We don't know that. We've not had an opportunity
22 to verify that. So there may be instances where you want to
23 have clarification on certain modules and the like, your
24 Honor. But you are right, your Honor. More than likely it's
25 going to be 30(b)(6) witnesses, a specific 30(b)(6) category

Page 30

1 where somebody specified a specific module or expert
2 witnesses. That's what I would basically think would be the
3 case, your Honor.
4 THE COURT: Well, and, again, the way that I have
5 thought about this issue was that there's a secure place,
6 wherever it is, as opposed to a traveling laptop, where the
7 source code is provided and on equipment that makes it
8 useful to an expert witness, and that I had always thought
9 that if there needed to be a deposition, and I have never
10 heard that there had to be a deposition with the source
11 code right there, but assuming, I guess that makes sense,
12 that you go where the source code is because it wasn't a
13 mobile thing.
14 The whole point of it was to have it in a secure
15 place because, as far as I am concerned, having it on -- if
16 you read the paper, and laptops are still on all the time,
17 having it on a mobile laptop does not strike me as
18 particularly secure.
19 So my feeling is you go where the source code
20 is, because that's in a secure place, not just on a secure
21 computer.
22 Now, if we're talking about 150 people, that
23 might be a problem, but you shouldn't be. You should be
24 talking about an expert, maybe one or two 30(b)(6)
25 witnesses.

Page 31

1 MR. HALLER: Judge, you've got the gist of the
2 problem.
3 THE COURT: Well, I think I've just resolved the
4 problem. If there's another issue on top of that, I'm happy
5 to talk about it.
6 MR. HALLER: If we are talking about one expert,
7 and the problem I'm sensing with one 30(b)(6) witness,
8 because I think you heard a glimmer of what they wanted to
9 do, is bring in who know how many people to talk about all
10 the bits and pieces of this program or the source code.
11 THE COURT: Well, it seems to me as though you
12 have your expert look at it first. If your expert is unable,
13 and God knows you pay him enough, they ought to be able. If
14 your expert is unable to figure out something, then we will
15 talk about other fact witnesses.
16 MR. HALLER: Fine.
17 THE COURT: So we will take it one step at a
18 time.
19 MR. HALLER: Okay.
20 THE COURT: Expert witness, where the source
21 code is located, and no 30(b)(6) or other fact witnesses
22 unless there's a discrete issue that the expert cannot
23 figure out.
24 MR. HALLER: Okay. That takes care of that.
25 One thing that didn't get mentioned was put in

Page 32

1 the correct search engine software. There was the other
2 one.
3 MR. CHERIAN: Yes. We are willing to put -- your
4 Honor, we have no problem putting on as many search engines
5 as the other side wants. We've never had -- this is not our
6 creation. We'll put on any search engines for them, your
7 Honor. We're willing to produce those computers with no
8 lockdown, for the record, but this is something that for the
9 other side, we're trying to work through it.
10 THE COURT: All right.
11 MR. HALLER: Judge, I was simply trying to
12 correct, there's mutual use of this VIM. It is VIM plus the
13 other one. I didn't mean to open up the whole argument
14 again.
15 THE COURT: Right. And I think perhaps the other
16 issue that is out there is for you all to agree that you
17 either provide source code for every accused product and
18 agree to kind of an exemplar source code that can be used.
19 Right?
20 MR. HALLER: If I could take a crack at trying to
21 explain where we are right now, both sides are going to give
22 all current source code, 100 percent.
23 THE COURT: All right.
24 MR. HALLER: Now, they're also going to endeavor
25 to work out stipulations as to that source code being

Alcatel v. Foundry                    CondenseIt™                    CA No. 05-418 SLR)

| Page 33 | Page 35 |
|---|---|
| 1 representative of earlier products and how far back that<br>2 goes.<br>3     THE COURT: That's good, because certainly, if<br>4 you're talking about getting to a jury, we shouldn't be<br>5 talking about that level of information.<br>6     MR. HALLER: And that if there are still<br>7 unanswered questions at that point and we can't resolve it by<br>8 stipulation, neither one of us know what that problem may<br>9 be.<br>10     THE COURT: Right.<br>11     MR. HALLER: That we would, then, I guess if we<br>12 can't resolve it, come to you.<br>13     THE COURT: All right. And, hopefully, you'll<br>14 have the help of your experts in working through this.<br>15     MR. HALLER: I would think so.<br>16     THE COURT: All right.<br>17     MR. HALLER: Now, with all that said, what<br>18 we don't have is a commitment from Foundry when we're<br>19 going to -- we have not seen, we don't have their source<br>20 code, when we're going to get their source code. That's<br>21 all.<br>22     THE COURT: All right. Well, it's five of 1:00,<br>23 at least by that clock. It's around 1:00 o'clock. I have<br>24 a commitment between 1:00 and 2:00. You certainly should<br>25 take some time to eat, drink. But the next issues that you | 1     MR. HALLER: Good for the goose, good for the<br>2 gander, that you mentioned this morning?<br>3     THE COURT: Absolutely.<br>4     MR. HALLER: Thank you.<br>5     THE COURT: Absolutely.<br>6     All right. I will see you all no later than<br>7 3:30. All right.<br>8     MR. HALLER: Thank, you judge.<br>9     (Recess taken at 1:00 p.m.)<br>10     - - -<br>11     (Proceedings recommenced in the courtroom.<br>12 beginning at 3:30 p.m.)<br>13     MR. ROVNER: Your Honor, if I may start the<br>14 session?<br>15     THE COURT: Sure.<br>16     MR. ROVNER: Mr. Haller always starts, so I<br>17 figured I would at this point.<br>18     We came back from lunch and, to discuss the<br>19 remaining issues, and to say that we reached an impasse I<br>20 think would be somewhat of a misstatement or an<br>21 understatement, I should say.<br>22     When we came back, we -- a proposal was waiting<br>23 for us. Mr. Greenspoon proposed that, here's the solution.<br>24 Why don't we -- you say you need a lot of discovery on Count<br>25 2 and your counterclaim. Why don't we agree to push back the |
| **Page 34** | **Page 36** |
| 1 should be working on is, number one, whatever discrete<br>2 problems you have with documents, that you should work<br>3 through, and, second, the whole question of scheduling.<br>4 And that is whether there's a way to salvage the trial date<br>5 for at least some part of this case so that everyone can<br>6 focus their energy on concluding discovery on that portion<br>7 and we can basically adjust a schedule for the other -- not<br>8 have it at a stay or a standstill, but make better<br>9 adjustments for that.<br>10     So I think I will take my break. I have a 4:30<br>11 telephone conference. So, certainly, by 3:30 or 4:00, maybe<br>12 3:30, I would like you all to have your best efforts with<br>13 respect to those two issues. All right?<br>14     MR. HALLER: One piece of guidance?<br>15     THE COURT: Yes.<br>16     MR. HALLER: Is it fair to assume, because<br>17 there's infringement claims going both ways --<br>18     THE COURT: Right.<br>19     MR. HALLER: -- same types of documents being<br>20 requested both ways --<br>21     THE COURT: Right.<br>22     MR. HALLER: -- that there will be consistency,<br>23 or that we can expect consistency in whatever the ground<br>24 rules are in the reciprocal sense?<br>25     THE COURT: Oh, sure. | 1 trial on your patent and go forward at the end of April on<br>2 our four patents.<br>3     And we respectfully declined that invitation.<br>4 We don't think that is at all the way to go. We think that,<br>5 as the Court ordered, that we divided this case into two<br>6 phases. The first phase was four of their patents and one<br>7 of ours. That's why we agreed to it. That's why we agreed<br>8 to take this case from a ten-patent case to a five-patent<br>9 case.<br>10     To then take our patents, take our patent out of<br>11 the mix during Phase 1 does not seem at all fair because we<br>12 believe that the issues that have caused Count 2 to lag<br>13 behind were not -- are not of our doing.<br>14     So it would be, in effect, rewarding Alcatel<br>15 for not giving us the discovery that we need, and they<br>16 may say that it's not their fault or, for whatever reasons,<br>17 we are behind. And by Mr. Greenspoon proposing that Count<br>18 2 be moved behind Count 1, he's implicitly recognizing<br>19 that.<br>20     But for whatever reason, these cases, these five<br>21 patents, should be tried together.<br>22     In June, we were before your Honor and you said<br>23 we're not going to try these cases before the same jury, but<br>24 we have a Phase 1 trial of 20 days. We're going to try Phase<br>25 1 patents first, and then my understanding was the Chang |

October 4, 2006                                              Page 33 - Page 36

Alcatel v. Foundry                    CondenseIt™                    CA No. 05-418 SLR)

**Page 37**

1  patent, Foundry's patent, in that same 20-day period, likely
2  in front of a second jury, and we were fine with that.
3      At this point in time, we feel that the best
4  solution, and we really spent most of our time this
5  afternoon talking about alternative schedules. And
6  Foundry's proposal is that we push this trial from April,
7  if your Honor has any time in the corresponding four to
8  five-month period, and give everyone a fair shake and all
9  of this discovery done.
10      We'd still need some rulings because we
11  still are involved in some foreign discovery that we
12  cannot get and that's with respect to Counts 1 and 2.
13  And it's not just that we can go forward on Count 1, as
14  Alcatel proposes, and lag behind in Count 2. We need
15  discovery, and we believe a new schedule for this entire
16  case, and that's, I think, what the intent of the parties
17  was. It's clearly the intent of the parties, and as your
18  Honor ordered in the October 2005 scheduling order, that
19  these be tried at the same time.
20      And that's our proposal, and we're hoping
21  that your Honor would have some time to try the case,
22  the entire case, the entire Phase 1 case, I should say,
23  some time later in 2006. And in our discussions, and Alcatel
24  is going to disagree with some of this, but we do believe
25  that based on comments from Alcatel's counsel and our own

**Page 38**

1  conference, that we think we can try the four patents, the
2  four Alcatel patents and the one Foundry patent in three
3  weeks rather than four.
4      So we would be looking for some time, a schedule
5  four to five months out for a three-week trial.
6      That's our proposal.
7      THE COURT: All right. Thank you.
8      MR. HALLER: Judge, I think it sort of creates a
9  rigid posture, supposedly, that Alcatel is in. That's just
10  not the case. A motivation for our suggestion was your
11  comments that, hey, we're going to try -- can we salvage
12  anything in terms of the present schedule, and that was the
13  driver for our suggestion. And another tweak to that
14  suggestion is that perhaps there could be a Phase 2, which
15  would be just the trial on the Foundry patent, and a Phase 3,
16  which would be the remaining, if we ever get to that point,
17  the remaining four Alcatel patents.
18      None of that is cut in stone. It was trying to
19  salvage something out of what we have as opposed to
20  jettisoning everything, which is what you've heard, and
21  pushing everything out four or five months.
22      I don't know if there's something in between
23  there that could be done. This business of, you know, having
24  the different trials, but back-to-back trials, or different
25  juries, excuse me, and back-to-back trials, I think that

**Page 39**

1  starts to get into your schedule.
2      So there's flexibility. Alcatel is not crazy
3  about just pushing everything up four or five months, and
4  particularly if that is going to be used by Foundry to come
5  in and want to move to add additional parties, this type of
6  thing.
7      So I mean we're flexible. We are not as rigid as
8  you heard and the backdrop to our thinking is what I've
9  said.
10      THE COURT: All right. Well, I appreciate the
11  fact that what I said led to your discussion, which
12  apparently led to a waste of a lot of time.
13      One question I have is whether bifurcating
14  damages on both counts, on all patents, whether that does
15  anything, not necessarily to save the trial for April, but at
16  least to make the discovery issues that are left a little
17  less complicated.
18      MR. HALLER: From Alcatel's point of view, it
19  doesn't. The damages portion should be very
20  straightforward. We don't have anything at this point in
21  terms of the summaries. They have been promised.
22  Apparently, informal discussions, we just heard this
23  afternoon, we'll have them by the end of next week. It's a
24  reasonable royalties case, not lost profits.
25      So with the summaries in hand, and being a

**Page 40**

1  reasonable royalty case, quite simple in the relative scheme
2  of things. The real, more sticky things are the nondamage
3  issues.
4      THE COURT: All right. Thank you.
5      And, Mr. Rovner, do you have the same view as to
6  the damages on both --
7      MR. ROVNER: Bifurcating the damages and staying
8  the damages discovery, unfortunately, is not going to allow
9  us the time, we feel, to discover what we need on the two
10  counts with respect to liability issues. As Mr. Haller said,
11  we do agree that it would be, you know, at most, a deposition
12  or two, and it's not going to give us the time. It won't
13  free up the time to get liability done.
14      We have -- the end of discovery is October 16.
15  We have claim construction issues due on the 16th. I mean,
16  these deadlines are now not months ahead of time; these are
17  on us right now.
18      THE COURT: Well, I guess I did not mean -- I
19  don't think anyone thinks you all are going to be done
20  discovery by October 16th.
21      I guess what I am saying about damages, whether
22  in the scheme of things, assuming I am going to move
23  something, whether -- I am thinking about your remaining
24  discovery disputes. If 90 percent of them are damages
25  related, and, quite frankly, I'm tired of your damages

Alcatel v. Foundry                CondenseIt™                    CA No. 05-418 SLR)

| Page 41 | Page 43 |
|---|---|
| 1 disputes, I would just kick them out of here and hope they go | 1 everything together. We've got to break this up some way or |
| 2 away because I am an eternal optimist, for whatever reason, | 2 another. |
| 3 because a lot of times parties can resolve damages once | 3        Yes? |
| 4 liability has been resolved by the Federal Circuit. | 4        MR. HALLER: Your Honor, I didn't make it clear. |
| 5        So that is really my focus, is how much of the | 5 I forget whether I mentioned or not, but I do want to make it |
| 6 remaining discovery disputes are related to damages. | 6 clear, in our proposal, one of the carrots to sort of |
| 7        MR. ROVNER: Very little is related to damages. | 7 splitting our claim and the Foundry claim was that in the |
| 8        THE COURT: All right. | 8 guise of this action as opposed to a new suit or something, |
| 9        MR. ROVNER: That's the bottom line. | 9 that we would not object to them amending in or adding in new |
| 10       THE COURT: All right. | 10 parties, they could do whatever discovery they wanted of a |
| 11       MR. HALLER: To eliminate any uncertainty, I | 11 new party. |
| 12 don't agree with Mr. Rovner on too many things, but I agree | 12       In terms of, if we had a revised Phase 1, just of |
| 13 with him now. | 13 just the Alcatel claim, we think we could put our |
| 14       MR. ROVNER: Thank you. | 14 case-in-chief in in three-and-a-half days or so, damages |
| 15       MR. HALLER: Hopefully, that was taken as an | 15 included, if that helps with the thinking on the schedule. |
| 16 attempt at some levity. | 16 Four days, max. |
| 17       THE COURT: So taken. | 17       THE COURT: I thought I was optimistic. |
| 18       (Pause.) | 18       MR. ROVNER: Your Honor, that leads me to believe |
| 19       THE COURT: Well, my problem is that from August | 19 we would need less than three weeks, and so it could be done, |
| 20 through the remaining of the year 2007, I am double-booked | 20 if you had anything, even less than three weeks, later in the |
| 21 with trials. I mean mean, I might have one week here | 21 year, that would be acceptable. Again, Mr. Haller's proposal |
| 22 and there where I don't have two trials scheduled, but | 22 continues to be trying the four Alcatel patents first, and |
| 23 I don't have even three weeks scheduled together where I | 23 that's what we view as not what the deal was. |
| 24 have only one trial scheduled and could accommodate a second | 24       THE COURT: Well, I guess I'm not really sure |
| 25 trial. | 25 what -- I mean, I know most of the concerns that lawyers have |

| Page 42 | Page 44 |
|---|---|
| 1        So the question is: How we can use our time? | 1 have to do with business and not with law, and they are not |
| 2 If there's any way to salvage a trial date in April, even if | 2 concerns that I necessarily understand because they are not |
| 3 we have to push some part of it, whatever part of it is out, | 3 shared with me in full detail and I am not confident I should |
| 4 I mean, I can accommodate a second half of a trial, whether | 4 be concerned about them. I mean, certainly, the fact that |
| 5 it is a week for Count 2 or whether it is a week for damages | 5 Alcatel would try its case and get a verdict one way or |
| 6 or whatever. I can do that, but I can't accommodate a | 6 another before Foundry, whether it's a day before or a week |
| 7 three-week trial in 2007, except where I have you now. | 7 before or a month before, I guess I am not sure exactly what |
| 8        MR. ROVNER: Your Honor, I may have miscounted a | 8 Foundry's concern is and where irritation with having it |
| 9 bit. I don't know what your schedule is. Earlier than -- | 9 tried second becomes a real concern of whatever sort if we're |
| 10 four or five months is beginning or end of August. I know | 10 talking about separating, because it will be before two |
| 11 the summer is not great months for anyone, but we could move | 11 juries, because I am not going to keep -- that's just what I |
| 12 it up a little bit if you had a couple weeks, nothing between | 12 do. |
| 13 even late June, July. | 13       So, Mr. Rovner, I guess you can let me know. If |
| 14       THE COURT: No. I always take the first couple | 14 we're talking about it's a concern even if it's a day, or if |
| 15 of weeks of July off. I have the last week in July that I | 15 it's a concern if it's a week later or a month later, then |
| 16 actually am scheduled for trial, but then I go right into | 16 that would help me try to find time for you. |
| 17 double-booking through December, except for a week or two | 17       MR. ROVNER: Well -- excuse me. |
| 18 here and there. | 18       MR. HALLER: Go ahead. |
| 19       So that is my problem. I want to accommodate | 19       MR. ROVNER: What we contemplated in the |
| 20 you, particularly if we are talking about allowing Foundry | 20 beginning -- |
| 21 to amend, to add issues which will add some discovery, I | 21       THE COURT: Yes? |
| 22 don't know how much, but I think it makes sense in this case | 22       MR. ROVNER: -- was the four patents. They |
| 23 to make sure that everyone is satisfied they have had a fair | 23 started with ten, one of which was the Chang patent, and the |
| 24 opportunity to close the record, to make a record. I just | 24 second Count 2, the D.J. action. We spent a lot of time |
| 25 don't know how to accommodate you in 2007 by trying | 25 trying to figure out a way to make this case manageable not |

Alcatel v. Foundry                     CondenseIt™                     CA No. 05-418 SLR)

Page 45

1  only for your Honor, but for us.
2          THE COURT: Right.
3          MR. ROVNER: And we proposed what I thought was a
4  very intriguing situation and one that really did work: Four
5  of theirs, one of ours, tried in this 20-day period.
6          What's crucial about the 20-day period and
7  understanding that your Honor was going to go with two juries
8  is that it was going to be back to back, immediate, because
9  let's make no -- let's not pretend in terms of whether you
10 talk about business. The threat of a patent infringement
11 trial is the threat ultimately that you're going to be
12 enjoined and with the parties going back to back on patents
13 that Alcatel brought, we all have the same risk, the same
14 reward.
15         For Alcatel to proceed with their patents and
16 with the threat of an injunction and then for Foundry to go
17 weeks, months later, we all -- we bargained for the right
18 that all parties would, in very short order, be in the same
19 position based on whether they won or they lost.
20         And here, if you stagger our group, our patent,
21 we've lost that leverage, and Alcatel walks into the first
22 trial with no threat of their own, a threat against them of
23 an injunction. And that's why your Honor ordered, I believe,
24 the Phase 1 that we had and that's why we feel that's what we
25 bargained for.

Page 46

1          And we understand the situation of scheduling,
2  but we just hate to see where we believe that Alcatel, we
3  are not saying deliberate, but we don't have the discovery
4  we need on Count 2. We really don't have it on Count 1,
5  and to reward them by allowing their patents to go ahead
6  of ours by even weeks is really what's going to prejudice
7  us.
8          THE COURT: Well --
9          MR. ROVNER: If we're ever going to settle this
10 case before trial, it really decreases the odds if you let
11 them go first.
12         THE COURT: Well, first of all, I don't enter
13 injunctions -- at the very earliest, I enter injunctions
14 after post-trial briefing and decisions.
15         MR. ROVNER: I understand that.
16         THE COURT: Which means that, if we are talking
17 about a matter of weeks, then I would make sure I issue
18 post-trial decisions at the same time.
19         So in terms of that, that is not really an
20 issue. That's a nonissue about the entry of an injunction
21 first. Obviously, if you get a jury verdict first and you
22 have to wait for your jury verdict, there's the issue of news
23 and all that business, and I understand that, but in terms of
24 legal ramifications, that is really a nonissue.
25         But let's get back to, do we still need -- I

Page 47

1  am not sure what I'm looking for anymore. Am I looking for a
2  week for each case? Two weeks for the four-patent case and a
3  week for the one-patent case? I mean, I don't --
4          MR. ROVNER: It seems to me a little less than
5  two weeks for the Alcatel case and a little less than a
6  week for our case. That would seem to be somewhere between
7  two-and-a-half and three weeks, total, because you have to
8  pick two juries. You know, I'm aware of that. You have to
9  wait for one to finish deliberations.
10         THE COURT: No, you don't.
11         MR. ROVNER: Okay.
12         THE COURT: We just stick them in another jury
13 deliberation room. We have had many instances where we have
14 gone from one case to another.
15         MR. ROVNER: The problem is, though, one thing I
16 did forget to say is, we talked about whether a week or a few
17 weeks between the two trials. We don't believe that we can
18 get Count 2 ready by the first week of May, and so if you
19 allow them to try their case in April, the end of April, as
20 scheduled, and you could have a week, a week for us in a week
21 or two, our problem is still, the cause of all of this is
22 that we don't have the discovery that would allow us to go
23 forward the end of April, I don't think we could be ready
24 in the middle of May. That's why we've asked for a four or
25 five-month window.

Page 48

1          MR. HALLER: Well, I cringe at the idea of
2  opening up the subject of why they can't have their case
3  ready, but obviously what I've been saying is with the idea
4  of trying to make things work and salvage what you have
5  available or some of what's available in April. It's that
6  simple. In terms of the projections of the Alcatel case
7  being done in two weeks, I've said what I've said, in terms
8  of when we could put our case-in-chief in and it seems to be
9  consistent with what Mr. Rovner says.
10         (Pause.)
11         THE COURT: Of course, the problem is that you
12 never know how many of these trials are going to go forward.
13 Judge Thynge has done a miraculous job of settling all my
14 trials for the last two months, but then I will go through a
15 stage where I go from trial to trial to trial to trial, and I
16 just don't -- I have, on occasion, scheduled three trials and
17 triple-booked, but then if all three go forward, that becomes
18 very troublesome.
19         (Pause.)
20         THE COURT: I don't know what to tell you. We
21 can do one of two things. We can do what I do in some of my
22 other cases, which is take this up to summary judgment and
23 get those resolved. It would be easier for me to schedule a
24 trial for you all in the next two months than it is a year
25 from now because cases do resolve.

October 4, 2006                                              Page 45 - Page 48

Alcatel v. Foundry                CondenseIt™                CA No. 05-418 SLR)

### Page 49

1     The other thing I can do is I can triple-book and
2  just hope that things work out.
3     Now, I would like to have one week where I am
4  not triple-booked, so I'm looking at -- I have one or two
5  weeks where I only have one thing booked and then I would
6  have to triple-book for the next two weeks.
7     So these are the time schedules I have: One is
8  the week of July 23rd, I have only one trial scheduled. The
9  next two weeks I already have two trials scheduled. The
10  third week, the second trial is another patent case.
11     The next time that I only have one trial
12  scheduled isn't a whole week. It's the week after Labor Day,
13  so it's the Tuesday through Thursday, September 4th, and then
14  again I am double-booked in trials.
15     Now, here's an interesting week. The week of
16  October 1, I am double-booked for the first two days of that
17  week, but then it falls off to just one patent case, so
18  that's basically I would be double-booking that.
19     The next week, the 8th, is a holiday, but I still
20  only have the one patent case.
21     So for those two weeks, the weeks of October 1
22  and October 8, I'm essentially not triple-booking for the
23  most part. The following week, I would be. The week of
24  October 15th, I already have two trials scheduled.
25     That is about as far out as I want to take it.

### Page 50

1     MR. ROVNER: Well, the October 1 date we think
2  would be the best, or if we could do the September 4,
3  whatever you think is best in terms of your schedule with
4  those triple-bookings in mind.
5     THE COURT: I think the October date would
6  be better for me because I am kind of double-booking two
7  weeks and triple-booking a third whereas the other two weeks,
8  I am double-booking one and triple-booking two.
9     MR. HALLER: Just a further thought.
10     THE COURT: Yes?
11     MR. HALLER: Trying to be imaginative.
12     THE COURT: Yes?
13     MR. HALLER: As I've heard it, the concern is the
14  ultimate appeals and everything being on different tracks in
15  terms of trying to salvage something out of your April time
16  frame. We'd be willing to stipulate that any appeals would
17  commence the same time.
18     THE COURT: Well, in that regard, I mean --
19     MR. HALLER: To alleviate their concerns about
20  we're going to be quicker to get to the Federal Circuit than
21  they are.
22     THE COURT: My concern, though, is that discovery
23  is over next week and it's my understanding that no one is
24  really going to be prepared to be done with discovery by next
25  week.

### Page 51

1     MR. HALLER: Well, we're willing to make -- I
2  don't know about next week.
3     THE COURT: Well, October 16th.
4     MR. HALLER: Right. But we had talked about a
5  short extension for fact discovery from Alcatel's point of
6  view, which would still keep us in the April trial time
7  frame, and we think we could do it.
8     We don't think it's necessary to be going out and
9  deposing 20 further witnesses, as Foundry wants to do. We
10  think that could be -- certainly, from our point of view, cut
11  back quite a bit.
12     Just to give you a feel for what has happened so
13  far, Foundry has, what is it, taken --
14     MR. GREENSPOON: 14.
15     MR. HALLER: -- 14 depositions?
16     MR. GREENSPOON: Alcatel in Phase 1 has taken
17  four.
18     MR. HALLER: So to dispel any notion it has been
19  Alcatel out taking all the discovery to date and not Foundry
20  is simply not the case, and we are simply saying, in short
21  order, we could pull everything together, if we get the
22  financial summaries at the end of next week, which has
23  been -- we've been told, if we're given a date certain to get
24  the source code, which we still have not heard, we can pull
25  it together and we'll still stipulate to any appeals could

### Page 52

1  start at the same time frame.
2     MR. GREENSPOON: Judge, in the private
3  discussions, before your Honor came back in, we and Alcatel
4  had proposed for the extension was to November 16, for the
5  next upcoming deadline, instead of October 16.
6     MR. HALLER: For the fact discovery.
7     MR. ROVNER: Your Honor, we could go through the
8  whole afternoon -- we could go through all the discovery
9  issues that we have and that we have not done, but I guess
10  we'll give you one example. The present schedule calls for
11  rebuttal experts, expert reports to be due on 11/22. They
12  are giving us the inventor of two of the four patents in suit
13  on 11/21.
14     I mean, these are just, you know -- it's just
15  impractical to keep this schedule even with a 30-day
16  extension. That is why we came to you and asked for
17  this case to be moved for everyone's sake and there are
18  any number of examples. I just gave you the one that was
19  most obvious.
20     (Pause.)
21     THE COURT: All right. I am going to move the
22  trial of both -- the whole kit and caboodle out to October.
23  I am going to let -- well, I don't know. I have half an
24  hour. We can work out the details of that schedule if you
25  don't think you can do that.

Alcatel v. Foundry      CondenseIt™      CA No. 05-418 SLR)

**Page 53**

1 Well, I guess I'm going to give you some details
2 because I want to make sure I still have time for my summary
3 judgment motions and that you are not pushing me on that to
4 give you more time. And then I would need a date certain for
5 exchanges of source code, and then I'm going to give you one
6 more discovery conference towards what you think will be the
7 end of discovery so that it may be -- I thought this was
8 going to be the last time, but for the last time I meet with
9 you all and make sure that discovery is going to be resolved
10 in a timely fashion.
11 So trial will now start on October 1, and I'm
12 going to schedule it for the following three weeks.
13 Depending on what happens with the other cases, there might
14 have to be some wiggle room in there, but I will put you down
15 for three weeks.
16 The pretrial would be September 17th, at 4:30.
17 Identify your motions for summary judgment by May 15th of '07
18 so that I have June, July, August, basically, to work on it.
19 Actually, I will make it May 21, just to keep it all on a
20 Monday, and I'm going to give you an oral argument date, and
21 then after that, I'm going to let you work it out and craft
22 something for me to sign. And we're going to have oral
23 argument on Friday, June 22nd, starting at 1:30.
24 Now, I don't know. I need a date certain to make
25 sure that source codes from all parties have been exchanged

**Page 54**

1 and I need some idea of when, sitting here now, without going
2 through a schedule, you think a final discovery conference
3 would be helpful.
4 You basically have to be done discovery by,
5 what? April, end of April. All right?
6 MR. ROVNER: Right. We'd also like a date -- we
7 will be amending the pleadings, as you mentioned, to add
8 parties to Count 2. One of the things you said you were
9 going to give us was time to be able to add parties, if we
10 had to.
11 THE COURT: I don't think I said that.
12 MR. HALLER: I didn't quite understand that,
13 Judge.
14 THE COURT: When I said you could amend, I did
15 not know that meant adding parties. I had all the papers out
16 here. Was that mentioned in your motion for leave to file
17 the Amended Complaint?
18 MR. ROVNER: No. That was the amended answer on
19 Count 1. This was a Count 2 issue. There was a party that
20 was identified after the date to add parties that had long
21 since passed. Mr. Cherian can describe it in better detail
22 than I can.
23 MR. HALLER: Judge, that's exactly our concern.
24 We raised this in our offer to create a new Phase 2 that they
25 could add an additional party if they wanted to, but what's

**Page 55**

1 happening is this extension, the intention is to apparently
2 escalate the whole action by adding new parties.
3 THE COURT: Yes. I didn't --
4 MR. ROVNER: I'm sorry. I thought your Honor
5 said it was to give us time to add our -- amend the
6 pleadings, which I thought meant add parties as well.
7 THE COURT: Well, I was looking at your motion
8 to amend --
9 MR. ROVNER: Oh.
10 THE COURT: -- the answer. I was not looking at
11 any other motions. I apologize.
12 MR. ROVNER: We already filed that. That's why I
13 didn't understand, because we did file that within the
14 existing deadline.
15 THE COURT: Well, all right. Let me -- everyone
16 sit down. You make me nervous when you hover.
17 I don't know what party you are talking about. I
18 don't know what, because I don't recall -- I saw affirmative
19 defenses. I don't have it off the top of my head exactly
20 what you are talking about terms of expanding it and creating
21 more discovery disputes for me.
22 Honestly, this case I've had more problems with
23 than any other case I've had in my 15 years on the bench, and
24 I don't have much patience at my age anyway, but I can see
25 new defenses because, generally, you waited to amend because

**Page 56**

1 you basically had some information, and I assume there will
2 be some information that, some discovery that needs to go
3 forward.
4 I don't understand the new party business.
5 MR. CHERIAN: Your Honor, may I?
6 THE COURT: Yes, you may.
7 MR. CHERIAN: I think, your Honor, in short
8 order, we can resolve many of these issues that have taken
9 this case, put this case into the present posture.
10 For example, your Honor, when they tell the Court
11 that they are going to give us the Omni PCX source code, what
12 they don't tell the Court is that they are the exclusive
13 distributor for Alcatel Business Systems in Paris and that
14 they have always been the exclusive distributor. We just
15 learned that. And that they are not really doing us any
16 favors.
17 Now, what we wanted to do with them, and I tried
18 to work it out with them is, what I said was, after you give us
19 the code, if there are certain issues that we can identify,
20 we would like to have people from Alcatel Business Systems
21 come and answer those questions. I think I had agreement on
22 that. I may be wrong.
23 Second, your Honor, when I spoke this morning, I
24 said, they've only given us source code on seven of the 24
25 devices we have identified.

Alcatel v. Foundry        CondenseIt™        CA No. 05-418 SLR)

Page 57

1      Now, one of these devices is a Soft Switch 5020,
2 Soft Switch 5020. That, apparently, they have -- initially,
3 they told us they were going to give us the documents.
4 Initially -- we have letters. Initially, they told us they
5 would get us the source code for the 5020.
6      Now they tell us, well, it's not Alcatel
7 Internetworking. It's another Alcatel entity in Antwerp,
8 Belgium, that makes the device. There are two other Alcatel
9 entities that distribute the device in America.
10      The question is: To resolve all the issues,
11 does it make sense to, once and for all, add these parties
12 quickly, get the source code, put on the proofs and move on,
13 your Honor, because otherwise, your Honor, what we have, we
14 have an incomplete situation. We have some devices that will
15 be there in October and some devices that won't.
16      It is not a large -- it's not going to be very
17 burdensome. Alcatel Business Systems, for all practical
18 purposes, is here because they have given us the code. It's
19 here because they have given us some documents. It just
20 guarantees us that we will get the necessary discovery to
21 finish off the Omni PCX devices.
22      With regard to the 5020, where they told us they
23 would give us the source code, which they now tell us, well,
24 I was mistaken. If you allow us to add two U.S. parties, we
25 believe, and the Antwerp entity that is doing business in

Page 58

1 America, just like Alcatel Business Systems is doing business
2 in America, through that exclusive distributor agreement that
3 they don't produce, we can probably get all this discovery
4 very quickly, your Honor, and move this case, get it all
5 complete in October.
6      THE COURT: So I think what I understood you are
7 saying is that you are adding the parties in order to get
8 discovery that you have already requested but somehow can't
9 seem to get?
10      MR. CHERIAN: We have not gotten. That's right,
11 your Honor. And that will just eliminate that situation
12 where they stand up and say, you've got the wrong party, we
13 told you we'd give it to you, but now we have changed our
14 minds. We're mistaken. We're sorry. That just changes all
15 of it.
16      There's enough time, your Honor, if I get my --
17 if I'm allowed to amend, I can serve all these people in
18 seven days. I can get -- they're all doing business in
19 America.
20      Two of them, entities in Texas, I'm told, counsel
21 has identified both those -- those entities. Serve them, get
22 the discovery. It's with regard to those other switches, and
23 we'll have a complete presentation for the Court.
24      THE COURT: All right. Let's hear from Alcatel.
25      MR. GREENSPOON: Judge, the last time I spoke to

Page 59

1 you on this topic, I brought you back to the history of the
2 pleadings of the case, how the party who filed their
3 declaratory judgment action was Alcatel Internetworking.
4 The part mentioned in that declaratory judgment Count 2 was
5 Omni PCX, and then I brought your Honor back to the
6 counterclaim that came back and as a result of that Count 2
7 declaratory judgment complaint.
8      In the counterclaim, the only part mentioned
9 there was Omni PCX. So when the pleadings closed, the only
10 part was Omni PCX. And the proper parties, who I believe are
11 the parties who record the revenue for the sales, were part
12 of the case, that is Alcatel Internetworking records the
13 revenues for the Omni PCX sales.
14      So at the time the pleadings were closed, the
15 proper parties were in the case.
16      Now I'd like to just recap for your Honor
17 information you didn't have before. There's a history before
18 the case was filed, where there was a time when Foundry's
19 licensing representatives and licensing negotiations were
20 mentioning two parts that they were interested in to factor
21 in with potential cross license. It was the Omni PCX part,
22 which ended up being part of this lawsuit, and then a 5020
23 part, 5020 Soft Switch.
24      What we just learned as a result of a third-party
25 witness giving testimony a few days ago is that Foundry's

Page 60

1 licensing lawyers told Alcatel's licensing lawyers, in the
2 midst of this negotiation, don't worry about the Soft Switch
3 when the Foundry lawyers learn what the sales revenues were
4 for that.
5      So, in other words, there was discussion, perhaps
6 it's a Rule 408 context, so I leave it to others to decide
7 whether it's appropriate to bring it before you in the court
8 and consider. But there were discussions where Foundry's
9 licensing representatives said, in these exact words, don't
10 worry about the Soft Switch. And then the paper record that
11 followed on after that in terms of contention presentations
12 and the license negotiations only focused thereafter on the
13 Omni PCX.
14      Again, whether that raises for the proper party
15 for the Soft Switch, whether that raises an equitable
16 estoppel defense I leave for the other part to decide on
17 another day.
18      Here's my point. At the time the counterclaim
19 was filed, the mirror image counterclaim to the declaratory
20 judgment complaint, Foundry had sufficient information to
21 know that they were interested in worrying about the Soft
22 Switch, that they had enough information that they could go
23 ahead and add that to their counterclaims, any party, or
24 whoever they felt was appropriate.
25      So what happened later on in the case, months and

Alcatel v. Foundry                    CondenseIt™                    CA No. 05-418 SLR)

Page 61

1  months later, we started hearing about the Soft Switch, the
2  5020, in the context of allegations that our discovery
3  responses, Alcatel Internetworking's responses were
4  insufficient. We got back to them and we clarified to them,
5  and we backed this up by giving them the records of every
6  sale made by Alcatel Internetworking that they are simply not
7  the right party if that's their contention and we are quietly
8  wondering to ourselves if they're really interested in that,
9  why didn't they just simply add that to the counterclaim when
10  the pleadings were put in.
11       So Mr. Cherian mentioned some promise that,
12  probably referring to me, some promise that I might have
13  allegedly made about giving them discovery on the Soft
14  Switch, the 5020. I don't recall that. I'm happy to discuss
15  with Mr. Cherian, to see what he's talking about.
16       The bottom line is the proper party for that part
17  for a United States lawsuit would be Alcatel USA Marketing,
18  Inc., and that is the legal entity that records the sales for
19  the Soft Switch.
20       So, your Honor, the real bottom line is that
21  there was a time when that part could have been made part of
22  the lawsuit in the pleadings, and it just did not happen, and
23  we didn't hear mention about how our discovery obligations
24  were unfulfilled until much, much later.
25       THE COURT: All right. I guess I'm still

Page 62

1  confused. This aspect -- I know I've got an outstanding
2  motion for leave to filed amended answer and counterclaim
3  that was filed on August 25th by Foundry that adds a couple
4  of affirmative defenses, et cetera. I guess I'm just really
5  confused about adding Alcatel USA Marketing, Inc. and where
6  in the record that is.
7       MR. GREENSPOON: The only thing I can answer,
8  your Honor, is that this issue is not addressed in any form
9  whatsoever in the papers in front of you.
10       THE COURT: All right.
11       MR. GREENSPOON: This is not something that
12  has been presented to your Honor in the form of a motion.
13       THE COURT: And are you saying that the switch,
14  the 5020 Soft Switch, shouldn't be included in the case
15  absent that party or are you saying we cannot, we, being the
16  named plaintiffs at this point or counterclaim defendants,
17  this might be an appropriate part of the case, but we simply
18  cannot get the discovery or that we can get -- I mean, I'm
19  not sure what your position is.
20       MR. GREENSPOON: Yes. Two things: The first I
21  think is as you stated: The parties in the case are not the
22  proper parties for litigating that part.
23       THE COURT: You shouldn't be held -- the named
24  entity shouldn't be held liable for --
25       MR. GREENSPOON: Correct. I mean, for example,

Page 63

1  if there were an injunction entered against Alcatel
2  Internetworking on the 5020, it would really be a meaningless
3  piece of paper in the context of that legal entity because
4  they don't have any support or sales activities with regard
5  to the 5020.
6       The second part of the question or the second
7  answer to your question is: It's also too late. It's simply
8  too late.
9       First of all, there were representations made
10  which led Alcatel not to make any effort to bring it in the
11  case, in the declaratory judgment phase of it, in the
12  pleadings, and then, subsequent to that, they certainly had
13  ample opportunity to perform whatever investigation they
14  needed to do and either add it in their counterclaims or file
15  a motion for leave to amend before the deadline for adding
16  parties passed.
17       THE COURT: All right. Well, let's hear from
18  Mr. Cherian.
19       MR. CHERIAN: Your Honor, very early on we
20  served interrogatories to them, specifically setting forth
21  the accused products.
22       Now, going through the Alcatel family, it's like
23  a web that no one can figure out. I took the deposition of
24  Internetworking.
25       THE COURT: Well, before you start on that

Page 64

1  long, incredibly complicated history, the question is:
2  What is there in front of me that I should be considering
3  to allow you to add a party as opposed to granting your
4  motion for leave to file an amended answer and counterclaim,
5  which adds affirmative defenses, because if you have not
6  filed anything, I am not sure what it is you are asking me
7  to do.
8       MR. CHERIAN: Clearly, your Honor, we have not
9  filed anything, and I will explain to you in two minutes or
10  less why we didn't file anything.
11       We asked them in interrogatories to identify the
12  various players involved with the 5020 specifically. They
13  blew us off.
14       But let me just read you two real quick excerpts
15  from a letter from Mr. Greenspoon. It will take me 60
16  seconds. Concerning Foundry's request for system
17  configurations and call flow diagrams, here's what he said:
18  "Information of that type can probably be found throughout
19  the Alcatel document production. I recommend you perform a
20  key word search in your OCR base for Alcatel documents
21  related to the Omni PCX and the 5020 Soft Switch."
22       That was in June. So he told us he's going to
23  give it to us.
24       Second, again, in June: "Please let me know" --
25       THE COURT: He didn't say he was going to give it

October 4, 2006                                    Page 61 - Page 64

Page 65

to you. What he said was --

MR. CHERIAN: He said it was produced, look for it, and it was never produced.

THE COURT: All right.

MR. CHERIAN: Look for it. Do a database search and it's there. It's not there, your Honor.

So we've been going back and forth asking him, since the time to amend the pleadings came and went, since he did not give us this information, we asked that he voluntarily let us do that, and I don't think I have an unequivocal answer from him, and if I do, it is just in the very recent time.

Up to now, it has been a debate back and forth, because in June he says, Please let me know if I should consider your request for Omni PCX and 5020 source code, Request Nos. 1 and 2 of the 20 document requests that the court ordered.

So, your Honor, we've been operating under the -- under the understanding that these documents are going to be produced. Now at this late stage we're told, no, you've got the wrong party. You don't have the right party. And the request here is: Can we file a motion if you want us to file a motion to permit us to add these new parties? They told us informally that, you know, if we had agreed to their Phase 2, they'd have no objection to us adding these new parties

Page 66

without motion practice.

So that's where we are, your Honor. I hope I've explained it correctly.

THE COURT: Well, let me understand from Alcatel's lawyers whether in fact -- I take it there is an objection to adding this party, and without the party being added, there's also an implicit objection to any further discovery or discussion about this product, which seems like if there have been ongoing discussions about all of this, that I am not sure how fair it is.

I hate to go back through the record to determine whether adding this party is a fair thing or not, but I suppose I will have to if you all cannot work it out consensually. I mean, the deadline has passed.

MR. CHERIAN: Yes.

THE COURT: So there is either enough discussion going on that everyone thought they were going to work it out consensually or something else is going on, a real lack of communication and understanding about everyone's goals here.

MR. GREENSPOON: At the beginning of August, Judge, I think it might have been August 2 or August 4, I offered to Mr. Cherian what I guess you would consider a standstill agreement. I gave him some information that he had been requesting of me and I was trying to convince him,

Page 67

which I don't think I had by the time, that Alcatel Internetworking has no responsibility for this product, and therefore we're unable as a company to provide discovery to you.

So in the context of that conversation, I wrote him an offer where I basically said, Well, why don't we have a standstill agreement on this so that, for the 5020 or whatever other products that are not the responsibility of Alcatel Internetworking, if you think that your Chang patent touches on them, you can certainly feel free to do that, but just let's not distract ourselves by adding that issue right now to this matter where we have enough on our plate with the Omni PCX.

And the response to the offer for a standstill agreement, which implicitly means you'll get the credit for earlier filing date of the lawsuit, you know, even if you formally add the parties some other date, the response was just a thud. There was just no interest at all in that, just interest in continuing to berate us for not producing the discovery that belongs to another legal entity.

THE COURT: All right. So this is what we are going to do. I believe that part of this whole deal -- well, the objection to the motion to file an amended answer and counterclaim was prejudiced because of the timing. I think that objection has been resolved and so the motion is

Page 68

granted.

With respect to adding this party, though, what I am going to do, and I hate to do it and I hope to get it turned around, is for each of you to -- I mean, the question is: Why wasn't this aspect added in the formal motion by August 25th?

MR. ROVNER: Your Honor, I can answer that very quickly, and I think there there will be no disagreement. The date to amend parties was in March of '06. Howrey was still -- was not able to participate because we were -- there was a pending motion to disqualify.

That March 10 date was set very early. We hadn't even gotten through initial document production because we had Phase 1 patent I.D. It just was very early, and by the time Howrey got involved in late June, that date had already passed.

So Mr. Cherian and Mr. Greenspan and I were on one call. We were discussing the adding of all parties and we were all, I thought, working to see if we could figure it out, knowing that the deadline had passed.

So it really is not our fault that we did not add parties by March 10, and now we've got some time. It should be, we think -- my request was to give us a date to move to amend -- that's all -- to include an additional party.

Alcatel v. Foundry                    CondenseIt™                    CA No. 05-418 SLR)

**Page 69**

1    THE COURT: Well, I mean, I have to go back
2  and look at how we ended up at amending the August 25th
3  date.
4    MR. ROVNER: We had a teleconference with your
5  Honor and -- and you gave us until -- the one month to do
6  that.
7    We did not add the parties because we had
8  been talking with Alcatel and that deadline had passed
9  long ago and we thought we could work it out. And I was on
10 a call with Mr. Greenspoon where we discussed that very
11 issue.
12    I think this is the time -- at least I would
13 ask for the opportunity to show you why we should be able
14 to add these parties.
15    THE COURT: Well, I mean, that's what I am asking
16 you to do.
17    MR. ROVNER: Okay.
18    THE COURT: And the question is: What was the
19 state of the record on August 25th? Were the defendants
20 moving forward promptly and reasonably and was there a true
21 misunderstanding or did defendants just let the ball slip?
22 So that's really the question.
23    And I will let you -- I mean, you file enough
24 paper with me that I certainly do not need a lot of paper.
25 I just need a memorandum of law. I mean, it's actually no

**Page 70**

1  law, it's just fact. So if you want to give me copies of
2  whatever e-mails or whatever went back and forth, that's
3  fine.
4    Someone will need to craft a revised scheduling
5  order with the dates I have given you and, hopefully, you can
6  work out other dates.
7    Source code. I mean, it seems to me that, what,
8  two weeks, you all should be able to have source code
9  exchanged?
10    MR. HALLER: We're ready to do it tomorrow.
11 We've got two problems: One, Mr. Cherian still has not
12 decided whether he wants them on laptops that he's going to
13 provide or desktops that he's going to provide.
14    And, number two, Foundry has not been able to
15 commit when they can produce the source code. We'll do it on
16 a simultaneous basis, whenever they're ready.
17    THE COURT: All right. Well, I'm going to
18 say no later than October 18th, and if there's a problem
19 and something isn't done by October 18th, I guess you can
20 e-mail me because, as I said, I am getting tired of these
21 discovery disputes.
22    Now, with respect to one final conference, and
23 then I've got a telephone conference I've got to attend to.
24 Just thinking ahead, I frankly, don't think I want to --
25 well, let me see. If summary judgment motions are in May,

**Page 71**

1  your expert discovery will be March, April. Fact discovery
2  should be done by February.
3    So I don't want to see you the rest of the year.
4  As much as I appreciate you, I really don't want to have
5  anything to do with this case for the rest of the year, so
6  I'm going to give you a date in early January and, hopefully,
7  by then, you will be done the source code part. You will be
8  done document production and you will be swimming along with
9  whatever other depositions you need. And I'm looking at
10 Wednesday, January 17th, at 4:30. And you can include that
11 in your new scheduling order and you can call it the final
12 discovery conference.
13    However, although I said I did not want to see
14 you, if the source codes are not at least exchanged
15 consistent with the agreement and your expectations, then you
16 can e-mail me and I will get you on the phone.
17    Okay? All right. Thank you, counsel, very
18 much.
19    (Counsel respond, "Thank you, your Honor.")
20    THE COURT: You all can go. It takes me a while
21 to get out of my computer.
22    (Court recessed at 4:30 p.m.)
23    - - -
24
25

October 4, 2006                                        Page 69 - Page 71

Alcatel v. Foundry                                CondenseIt™                                '06 – backed

'06 [1]    68:10
'07 [1]    53:17
'090 [1]   17:22
-and [2]   1:20    2:9
00 [6]     33:22   33:23
33:24   33:24   34:11
35:9
05 [1]    23:4
05-418 [1]         1:10
1 [25]    5:9     10:18
15:21   33:22   33:23
33:24   35:9    36:11
36:18   36:24   36:25
37:12   37:13   37:22
43:12   45:24   46:4
49:16   49:21   51:16
53:11   53:23   54:19
65:16   68:14
10 [3]    23:4    68:12
68:22
10,000-foot [3] 7:24
11:25   20:2
100 [2]   27:23   32:22
11/21 [1]         52:13
11/22 [1]         52:11
12 [1]    23:7
130,000 [1]       7:2
14 [2]    51:14   51:15
14th [1]  22:7
15 [1]    55:23
150 [2]   27:23   30:22
1500-feet [1]     18:14
1500-foot [1]     18:21
15th [3]  11:23   49:24
53:17
16 [3]    40:14   52:4
52:5
16th [3]  40:15   40:20
51:3
17th [2]  53:16   71:10
18th [2]  70:18   70:19
2 [28]    9:25    10:18
13:11   13:12   14:11
14:12   21:10   22:17
27:21   33:24   35:25
36:12   36:18   37:12
37:14   38:14   42:5
44:24   46:4    47:18
54:8    54:19   54:24
59:4    59:6    65:16
65:24   66:22
20 [4]    16:20   36:24
51:9 .  65:16
20-day [2]        45:5
45:6
2001 [1] 26:15
2005 [1] 37:18
2006 [2] 1:12    37:23
2007 [3] 41:20   42:7
42:25
21 [1]    53:19
22nd [1] 53:23
23rd [1] 49:8
24 [2]    23:22   56:24
25th [4] 62:3    68:6

69:2    69:19
3 [5]    34:11   34:12
35:7    35:12   38:15
30 [15]  16:20   29:25
29:25   30:24   31:7
31:21   34:10   34:11
34:12   35:7    35:12
53:16   53:23   71:10
71:22
30,000-foot [1] 14:5
30-day [1]        52:15
33 [2]    1:13    3:5
36,000-foot [1] 20:2
4 [8]    1:12    34:10
34:11   50:2    53:16
66:22   71:10   71:22
40 [1]    23:7
408 [1]  60:6
4th [1]   49:13
5020 [14]         57:2
57:5    57:22   59:22
59:23   61:2    61:14
62:14   63:2    63:5
64:12   64:21   65:15
67:7
6 [5]    29:25   29:25
30:24   31:7    31:21
60 [1]    64:15
8 [1]    49:22
8th [1]   49:19
9 [2]    1:13    3:5
90 [1]    40:24
99 [1]    23:13
a.m [3]   1:13    3:5
23:4
ability [1]       20:15
able [8]  14:4    24:17
13:31   54:9    68:10
69:13   70:8    70:14
absent [1]        62:15
Absolutely [2]  35:3
35:5
abuses [1]        10:13
accept [1]        11:17
acceptable [1]   43:21
access [2]        27:22
28:15
accommodate [5]
41:24   42:4    42:6
42:19   42:25
accommodating [1]
13:4
accomplish [1] 4:17
accounting [1] 15:16
accused [3]       16:3
32:17   63:21
acknowledged [1]
7:6
acted [1] 12:11
action [5]        1:4
43:8    44:24   55:2
59:3
activities [1]    63:4
add [21] 29:9    39:5
42:21   42:21   54:7

54:9    54:20   54:25
55:5    55:6    57:11
57:24   60:23   61:9
63:14   64:3    65:23
67:17   68:22   69:7
69:14
added [2]         66:7
68:5
adding [12]       43:9
54:15   55:2    58:7
62:5    63:15   65:25
66:6    66:12   67:11
68:2    68:18
addition [1]      16:24
additional [8]   15:14
16:22   24:18   24:20
26:11   39:5    54:25
68:24
address [1]       14:17
18:25   21:22
addressed [3]    19:23
26:21   62:8
addressing [3]   3:14
3:16    20:13
adds [2]  62:3    64:5
adjust [1]        34:7
adjustments [1] 34:9
adoption [1]      22:9
advance [1]       26:3
advanced [2]     25:12
25:12
affiliate [1]     15:23
afternoon [3]    37:5
39:23   52:8
again [14]        4:14
15:12   18:19   20:9
20:12   22:12   22:15
28:13   30:4    32:14
43:21   49:14   60:14
64:24
against [7]       5:9
5:19    5:22    5:24
8:7     22:20   45:22
age [1]   55:24
ago [7]   6:23    7:9
16:19   17:21   21:14
59:25   69:5
agree [3] 19:13   19:17
32:16   32:18   35:25
40:11   41:12   41:12
agreed [5]        15:4
24:18   36:7    36:7
agreement [23] 11:19
11:20   12:2    12:4
12:10   12:12   12:17
12:18   12:19   12:23
13:2    13:3    13:7
19:3    19:4    19:21
23:14   56:21   58:2
66:24   67:7    67:15
71:15
agreements [1] 16:20
ahead [5]         40:16
44:18   46:5    60:23
70:24
Alcatel [53]      1:4
1:5     5:18    5:22

5:24    12:24   13:19
13:21   15:2    16:19
16:24   21:8    23:23
25:7    25:13   36:14
37:14   37:23   38:2
38:9    38:17   39:2
43:13   43:22   44:5
45:13   45:15   45:21
46:2    47:5    48:6
51:16   51:19   52:3
56:13   56:20   57:6
57:7    57:8    57:17
58:24   59:3    59:12
61:3    61:6    61:17
62:5    63:10   63:22
64:19   64:20   67:9
69:8
Alcatel's [8]    45:4
17:9    18:10   22:20
37:25   39:18   51:5
66:5
allegations [2] 28:21
61:2
allegedly [1]    61:13
alleviate [1]    50:19
allow [5]         46:8
47:19   47:22   57:24
64:3
allowed [2]       10:12
58:17
allowing [2]      42:20
46:5
alone [2]         12:3
20:20
along [4]         5:15
5:16    26:16   71:8
alternative [2]  26:16
37:5
always [7]        13:2
28:9    28:14   30:8
35:16   42:14   56:14
amend [2]         22:11
22:17   42:21   54:14
55:5    55:8    55:25
58:17   63:15   65:8
amended [5]       54:17
54:18   62:2    64:4
67:23
amending [3]     43:9
54:7    69:2
America [2]       57:9
58:2    58:19
among [1]         3:21
amount [1]        24:9
ample [1]         63:13
amplify [1]       26:24
analysis [1]      14:6
Anderson [2]     2:7
9:5
annotations [1] 29:20
answer [14]       20:5
22:14   28:3    29:15
54:18   55:10   56:21
62:2    62:7    63:7
64:4    65:11   67:23
68:7
anticipated [1] 4:13

anticipation [1] 5:16
Antwerp [2]      57:7
57:25
anyway [2]        28:15
55:24
apologize [1]     55:11
appeals [3]       50:14
50:16   51:25
appear [2]        25:16
25:19
APPEARANCES [1]
1:17
applicable [1]   26:14
apply [1]         5:17
19:7
appreciate [2]   39:10
71:4
appreciated [1] 26:7
appropriate [5] 10:5
10:20   60:7    60:24
62:17
April [11]        37:6
39:15   42:2    47:19
47:19   47:23   48:5
50:15   51:6    54:5
54:5
area [4]  7:17    7:19
16:23   17:3
areas [1] 14:18
argument [4]     18:10
32:13   53:20   53:23
art [1]   17:16
aside [1] 3:10
asks [1]  25:3
aspect [1]        68:5
assertion [2]    16:5
16:9
assist [1]        24:25
assume [2]        27:9
34:16
assuming [2]     30:11
40:22
attempt [2]       9:11
41:16
attend [1]        70:23
Attorney [1]     16:15
August [10]       41:19
42:10   53:18   62:3
66:21   66:22   66:22
68:6    69:2    69:19
author [2]        22:12
authored [1]     22:10
available [5]    11:13
24:5    25:22   48:5
48:5
aware [2]         21:19
47:8
away [3]  24:8    25:6
41:2
b [5]     29:25   29:25
30:24   31:7    31:21
back-to-back [2]
38:24   38:25
backdrop [1]     39:8
backed [1]        61:5

Alcatel v. Foundry                    CondenseIt™                    bad – Count

| | | |
|---|---|---|
| bad [1]   20:7 | burdensome [1] 57:17 | changes [1]        58:14 |
| ball [1]   69:21 | burning [1]      4:21 | charged [1]       23:23 |
| bargained [2]    45:17 | 23:10 | Cherian [33]      2:11 |
| 45:25 | business [9]       38:23 | 9:6      9:8      9:12 |
| base [1] 64:20 | 45:10   46:23   56:4 | 9:24    10:2    10:4 |
| based [4]          18:3 | 56:13   56:20   57:17 | 10:22   12:7    12:14 |
| 21:7    37:25   45:19 | 57:25   58:18 | 13:2    14:8    14:11 |
| basis [2] 15:11   70:16 | C [1]        3:2 | 14:14   23:18   29:6 |
| bear [1] 24:21 | C-Plus [1]        24:14 | 29:10   32:3    54:21 |
| becomes [2]       44:9 | caboodle [1]     52:22 | 56:5    56:7    58:10 |
| 48:17 | Calabasas [1]   27:23 | 61:11   61:15   63:19 |
| beginning [8]      3:5 | California [3]     1:5 | 63:19   64:8    65:2 |
| 5:5     23:6    26:15 | 2:12    2:16 | 65:5    66:15   66:23 |
| 35:12   42:10   44:20 | calls [2] 9:17    52:10 | 68:17   70:11 |
| 66:21 | cannot [10]        6:20 | Chernian [2]      23:13 |
| behind [4]        36:13 | 19:13   19:17   27:11 | 27:3 |
| 36:17   36:18   37:14 | 27:13   31:22   37:12 | Chicago [1]       2:4 |
| Belgium [1]       57:8 | 62:15   62:18   66:13 | Chief [2]        1:15 |
| believes [2]      14:18 | capability [1]    24:5 | 7:5 |
| 25:7 | care [1] 31:24 | Circuit [2]       41:4 |
| belongs [1]       67:20 | career [1]         6:10 | 50:20 |
| bench [1]         55:23 | carrots [1]       43:6 | CIVIL [1]        1:4 |
| berate [1]        67:19 | carry [1] 29:11 | claim [13]        5:9 |
| best [4] 34:12    37:3 | carts [1] 26:5 | 5:19    5:22    5:24 |
| 50:2    50:3 | case [49] 5:5      8:20 | 6:17    6:18    6:21 |
| better [3]        34:8 | 13:4    27:19   30:3 | 22:5    22:20   40:15 |
| 50:6    54:21 | 34:5    36:5    36:8 | 43:7    43:7    43:13 |
| between [10]      10:10 | 36:8    36:9    37:16 | claims [5]        8:7 |
| 12:10   12:11   12:24 | 37:21   37:22   37:22 | 13:17   13:17   13:25 |
| 13:3    33:24   38:22 | 38:10   39:24   42:22 | 34:17 |
| 42:12   47:6    47:17 | 44:5    44:25   46:10 | clarification [1] |
| beyond [1]        17:25 | 47:2    47:2    47:3 | 29:23 |
| bifurcate [1]     20:6 | 47:5    47:6    47:14 | clarified [2]     29:3 |
| bifurcating [2]  39:13 | 47:19   48:2    48:6 | 61:4 |
| 40:7 | 49:10   49:17   49:20 | clarify [1]       26:24 |
| bifurcation [1] 22:4 | 51:20   52:17   55:22 | clear [4] 4:23    23:22 |
| binders [1]       10:7 | 55:23   56:9    56:9 | 43:4    43:6 |
| 10:9 | 58:4    59:2    59:12 | clearly [2]       37:17 |
| bit [4]   21:16   42:9 | 59:15   59:18   60:25 | 64:8 |
| 42:12   51:11 | 62:14   62:17   62:21 | clock [1]         33:23 |
| bits [1]  31:10 | 63:11   71:5 | close [2] 3:10    42:3 |
| blather [1]        6:4 | case-in-chief [2] | closed [1]        59:9 |
| blew [1] 64:13 | 43:14   48:8 | 59:14 |
| body [1] 28:5 | cases [7] 19:18   28:18 | closure [1]       20:15 |
| bona [1] 3:20 | 16:20   36:23   48:22 | Coast [1]        4:7 |
| booked [1]        49:5 | 48:25   53:13 | code [85]         4:20 |
| bore [1] 4:22 | categories [1]   15:22 | 5:13    5:14    5:15 |
| borne [1]         25:2 | category [1]     29:25 | 5:18    5:25    6:12 |
| bottom [3]        41:9 | caused [1]        36:12 | 7:13    7:18    8:3 |
| 61:16   61:20 | central [1]        7:18 | 8:14    10:23   10:24 |
| break [1]         34:10 | certain [9]       11:4 | 10:25   11:2    11:9 |
| brief [3] 3:13   3:15 | 11:14   11:15   18:9 | 11:10   11:13   11:14 |
| 9:11 | 29:23   51:23   53:4 | 11:21   11:21   11:22 |
| briefing [1]      46:14 | 53:24   56:19 | 13:8    13:8    13:13 |
| briefly [1]       14:17 | certainly [10]    6:16 | 13:13   14:2    14:3 |
| bring [3] 3:10    16:7 | 9:23    33:3    33:24 | 14:5    14:19   14:21 |
| 19:16   20:15   28:10 | 34:11   44:4    51:10 | 14:22   14:24   14:25 |
| 31:9    60:7    63:10 | 63:12   67:10   69:24 | 15:7    19:8    19:19 |
| broadened [1]     15:13 | cetera [5]        3:11 | 20:22   21:17   23:25 |
| brought [3]       6:5 | 6:2     6:2     8:5 | 24:3    24:8    24:11 |
| 45:13   59:5 | 62:4 | 25:10   25:15   25:16 |
| bunch [1]         26:3 | chance [3]        4:11 | 25:23   26:13   27:14 |
| burden [1]        10:7 | 7:22    29:8 | 27:19   27:25   28:2 |
| | Chang [3]        36:25 | 28:6    28:9    28:11 |
| | 44:23   67:9 | 28:12   28:15   28:21 |
| | changed [1]      5:25 | 28:25   30:7    30:11 |
| | 58:13 | 30:12   30:19   31:10 |
| | | 31:21   32:17   32:18 |
| | | 32:22   32:25   33:20 |

| | |
|---|---|
| 33:20   51:24   53:5 | 44:3 |
| 56:11   56:19   56:24 | configurations [3] |
| 57:5    57:12   57:18 | 13:16   13:18   64:17 |
| 57:23   65:15   70:7 | confirm [1]       12:17 |
| 70:8    70:15   71:7 | confused [1]      62:5 |
| codes [3]         29:2 | connect [1]       24:6 |
| 53:25   71:14 | connection [2]    17:13 |
| coding [1]        29:19 | 19:5 |
| coming [2]        4:2 | Connie [1]        9:6 |
| 4:5 | consensually [2] |
| commence [1]      50:17 | 66:14   66:18 |
| commenced [1] 3:4 | consider [2]      60:8 |
| comment [2]       9:13 | 65:15   66:23 |
| 21:4 | considering [1] 64:2 |
| comments [4]      10:5 | consistency [2] 34:22 |
| 14:18   37:25   38:11 | 34:23 |
| commit [1]        70:15 | consistent [3]    21:25 |
| commitment [1] | 48:9    71:15 |
| 7:10    7:14    33:18 | CONSTANCE [1] |
| 33:24 | 2:12 |
| communication [1] | construction [1] |
| 66:19 | 40:15 |
| company [2]       7:6 | consultant [1]    6:7 |
| 67:3 | contact [1]       17:15 |
| compile [1]       15:17 | contemplated [1] |
| complaint [3]    54:17 | 44:19 |
| 59:7    60:20 | contention [2]    60:11 |
| complete [4]      16:5 | 61:7 |
| 28:5    58:5    58:23 | contentions [3] 27:21 |
| completely [1]    5:24 | 28:22 |
| 28:5 | context [4]       60:6 |
| complicated [1] | 61:2    63:3    67:5 |
| 39:17 | continues [1]     43:22 |
| complication [1] | continuing [1] 67:19 |
| 15:15 | conversation [1] |
| computer [7]      6:8 | 67:5 |
| 24:6    25:22   27:6 | convince [1]      66:25 |
| 29:13   30:21   71:21 | cooperate [1]     22:13 |
| computers [5]     5:3 | copy [3] 19:15   20:21 |
| 5:12    6:11    11:4 | 24:7 |
| 32:7 | core [1] 7:18 |
| CONAWAY [1] | corporation [3] 1:4 |
| 1:18 | 1:5     1:9 |
| conception [1]   16:2 | correct [2]       32:12 |
| concern [1]       6:18 | 62:25 |
| 8:22    21:6    21:20 | correctly [1]     66:3 |
| 44:8    44:9    44:14 | correspondence [3] |
| 44:15   50:13   50:22 | 10:10   10:10   22:12 |
| 54:23 | 37:7 |
| concerned [5]     13:24 | CORROON [1] 2:7 |
| 21:8    21:16   30:15 | costs [3] 15:11   24:21 |
| 44:4 | 25:2 |
| Concerning [1] 64:16 | counsel [14]      2:5 |
| concerns [3]     43:25 | 2:18    3:7     3:8 |
| 44:2    50:19 | 3:12    3:15    9:3 |
| conciseness [1] 26:25 | 17:9    18:11   26:21 |
| concluded [1]    21:15 | 37:25   58:20   71:17 |
| concluding [1]    34:6 | 71:19 |
| conditions [1]    24:21 | Count [28]        5:9 |
| conduct [1]       18:10 | 9:25    10:18   10:18 |
| conference [7]    9:20 | 13:11   13:12   14:10 |
| 34:11   53:6    54:2 | 14:11   14:12   15:21 |
| 70:22   70:23   71:12 | 21:10   27:21   35:24 |
| conferred [1]     9:16 | 36:12   36:17   36:18 |
| 9:16    9:21 | |
| confident [2]     8:23 | |

October 4, 2006                                         Index Page 2

| Alcatel v. Foundry | CondenseIt™ | counterclaim - entity |
|---|---|---|

**Column 1 — Alcatel v. Foundry**

37:13  37:14  42:5
44:24  46:4  46:4
47:18  54:8  54:19
54:19  59:4  59:6
**counterclaim** [10]
35:25  59:6  59:8
60:18  60:19  61:9
62:2  62:16  64:4
67:24
**counterclaims** [2]
60:23  63:14
**countries** [1]  29:20
**counts** [3]  37:12
39:14  40:10
**couple** [8]  15:24
16:19  21:14  26:24
29:2  42:12  42:14
62:3
**course** [1]  48:11
**court** [112]  1:24
3:7  3:9  4:12
4:16  6:6  9:2
10:3  10:7  10:7
10:9  10:19  10:21
11:24  12:8  12:16
13:10  14:7  14:9
14:12  14:16  15:13
16:6  18:13  18:16
18:23  20:10  21:2
21:5  21:21  23:8
23:11  25:9  25:5
28:8  30:4  31:3
31:11  31:17  31:20
32:10  32:15  32:23
33:3  33:10  33:13
33:16  33:22  34:15
34:18  34:21  34:25
35:3  35:5  35:15
36:5  38:7  39:10
40:4  40:18  41:8
41:10  41:19  42:14
43:17  43:24  44:21
45:2  46:8  46:12
46:16  47:10  47:12
48:11  48:20  50:5
50:10  50:15  50:18
50:22  51:3  52:21
54:11  54:14  55:3
55:7  55:10  55:15
56:6  56:10  56:12
58:6  58:23  58:24
60:7  61:25  62:10
62:13  62:23  63:17
63:25  64:25  65:4
65:17  66:4  66:16
67:21  69:15  69:18
70:17  71:20  71:22
**Court's** [2]  10:5
26:6
**courtroom** [3]  3:4
23:6  35:11
**crack** [1]  32:20
**craft** [2] 53:21  70:4
**cramming** [1]  22:2
**crazy** [1]  39:2
**create** [1]  54:24
**creates** [1]  38:8
**creating** [1]  55:20
**creation** [1]  32:6

**credit** [1]  67:15
**critical** [2]  18:6
18:10
**cross** [1] 59:21
**crucial** [1]  45:6
**current** [4]  26:10
26:10  26:13  32:22
**cut** [4]  6:3  8:20
38:18  51:10
**D** [1]  3:2
**D.J** [1]  44:24
**damages** [16]  20:6
20:8  20:9  39:14
39:19  40:6  40:7
40:8  40:21  40:24
40:25  41:3  41:6
41:7  42:5  43:14
**database** [1]  65:5
**databases** [1]  7:7
**date** [23] 6:19  6:22
13:9  21:8  28:6
34:4  42:2  50:5
51:19  51:23  53:4
53:20  53:24  54:6
54:20  67:16  67:17
68:9  68:12  68:15
68:23  69:3  71:6
**dates** [2] 70:5  70:6
**days** [6] 36:24  43:14
43:16  49:16  58:18
59:25
**deadline** [7]  21:15
52:5  55:14  63:15
66:14  68:20  69:8
**deadlines** [1]  21:11
21:12  21:18  40:16
**deal** [4]  28:24  29:5
43:23  67:22
**dealing** [2]  28:16
28:21
**dealt** [1] 27:10
**debate** [1]  65:13
**December** [1]  42:17
**decide** [3]  28:13
60:6  60:16
**decided** [1]  70:12
**decisions** [4]  12:6
17:13  46:14  46:18
**declaratory** [1] 59:3
59:4  59:7  60:19
63:11
**declined** [1]  36:3
**decreases** [1]  46:10
**default** [5]  19:12
19:14  19:16  19:23
20:21
**Defendant** [2]  1:10
2:18
**defendant's** [1] 3:15
**defendants** [3]  62:16
69:19  69:21
**defense** [2]  5:9
60:16
**defenses** [4]  55:19
55:25  62:4  64:5
**Delaware** [4]  1:2

**Column 2 — CondenseIt™**

1:4  1:9  1:12
**delay** [1]  25:2
**delays** [1]  4:6
**deliberate** [1]  46:3
**deliberation** [1] 47:13
**deliberations** [1]
47:9
**depending** [2]  20:3
53:13
**deposing** [1]  51:9
**deposition** [17]  7:4
10:15  13:19  17:6
17:11  17:20  17:22
25:18  26:5  27:3
28:14  29:11  29:19
30:9  30:10  40:11
63:23
**depositions** [7] 10:11
16:24  17:4  18:2
25:11  51:15  71:9
**describe** [1]  54:21
**designate** [1]  24:2
**designee** [1]  24:24
**desktop** [2]  24:2
24:4
**desktops** [1]  70:13
**detail** [1]  44:3
54:21
**details** [2]  4:22
52:24
**determine** [1]  66:11
**development** [2]
4:25  27:22
**device** [2]  57:8
57:9
**devices** [6]  23:25
26:14  56:25  57:14
57:15  57:21
**diagrams** [1]  64:17
**different** [12]  5:23
8:11  8:13  15:16
15:16  17:7  20:10
29:20  29:20  38:24
38:24  50:14
**differently** [1]  28:18
**difficult** [1]  15:17
20:4
**difficulties** [1] 5:20
**directly** [1]  6:13
**disabled** [1]  11:4
11:5
**disagree** [1]  37:24
**disagreeing** [1] 26:23
**disagreement** [1]
68:9
**disagreements** [1]
12:5
**discover** [1]  40:9
**discovery** [62]  3:10
4:23  5:6  8:20
10:13  14:19  15:13
17:2  17:17  20:4
20:6  20:9  20:15
20:16  20:22  21:9
21:12  21:13  21:15
23:2  34:6  35:24

36:15  37:9  37:11
37:15  39:16  40:8
40:14  40:20  40:24
41:6  42:21  43:10
46:3  47:22  50:22
50:24  51:5  51:19
52:6  52:8  53:6
53:7  53:9  54:2
54:4  55:21  56:2
57:20  58:3  58:8
58:22  61:2  61:13
61:23  62:18  66:8
67:3  67:20  70:21
71:12
**discrepancies** [1]
10:8
**discrete** [5]  7:20
8:24  19:4  19:23
31:22
**discreteness** [1]
26:25
**discuss** [3]  3:11
35:18  61:14
**discussed** [1]  69:10
**discussing** [1]  68:18
**discussion** [6]  3:20
18:20  39:11  60:5
66:8  66:16
**discussions** [3] 37:23
39:22  52:3  60:8
66:9
**dispel** [1]  51:18
**disputed** [1]  16:4
**disputes** [5]  19:4
40:24  41:6  55:21
70:21
**disqualify** [1]  68:11
**distract** [1]  67:11
**distribute** [1]  57:9
**distributor** [3]  56:13
56:14  58:2
**DISTRICT** [1]  1:2
**divided** [1]  36:5
**document** [8]  7:20
16:22  18:3  18:18
64:19  65:16  68:13
71:8
**documentation** [5]
8:5  13:18  13:21
13:21  13:25
**documents** [19] 14:20
16:3  16:14  16:7
16:14  16:18  16:19
17:10  18:6  18:8
18:9  18:12  21:17
34:2  34:19  57:3
57:19  64:20  65:19
**doesn't** [1]  39:19
**done** [21]  10:6
10:17  16:9  16:12
16:13  16:23  29:5
37:9  38:23  40:13
40:19  43:19  48:7
48:13  50:24  52:9
54:4  70:19  71:2
71:7  71:8
**door** [1]  21:3

**Column 3 — counterclaim - entity**

**double-booked** [3]
41:20  49:14  49:16
**double-booking** [4]
42:17  49:18  50:6
50:8
**down** [6]  5:5
11:11  18:13  24:4
53:14  55:16
**downstream** [1] 24:16
**Dr** [4]  2:21  6:6
6:13  24:12
**drafted** [2]  5:6
17:17
**drink** [1]  33:25
**drive** [1] 24:8
**driver** [1]  38:13
**due** [2]  40:15  52:11
**dump** [1]  7:2
14:23
**during** [1]  36:11
**E** [2]  3:2  3:2
**e-mail** [2]  70:20
71:16
**e-mails** [1]  70:2
**earliest** [1]  46:13
**early** [4] 65:19  68:12
68:14  71:6
**easier** [1]  48:23
**easy** [1]  20:5
**eat** [1]  33:25
**effect** [1]  36:14
**effort** [1]  63:10
**efforts** [1]  34:12
**either** [6]  19:3
19:20  28:4  32:17
63:14  66:16
**eliminate** [2]  41:11
58:11
**embellishments** [1]
29:3
**employees** [1]  16:24
**encountered** [2] 24:16
28:23
**end** [8]  39:23  40:14
42:10  47:19  47:23
51:22  53:7  54:5
**endeavor** [1]  32:24
**ended** [2]  59:22
69:2
**energy** [1]  34:6
**engage** [1]  5:14
**engine** [2]
24:14  24:20  25:3
25:5
**engines** [3]  24:19
32:4  32:6
**enjoined** [1]  45:12
**enter** [2] 46:12  46:13
**entire** [7]  6:10
14:24  24:7  27:22
37:15  37:22  37:22
**entities** [1]  57:9
58:20  58:21
**entity** [5]  57:7
57:25  61:18  62:24

Alcatel v. Foundry    CondenseIt™    entry - helpful

63:3    67:20
entry [1] 46:20
equipment [1]    30:7
equitable [1]    60:15
escalate [1]    55:2
ESQ [7] 1:18    2:3
2:3    2:8    2:11
2:12    2:16
essentially [3]    15:7
17:12    49:22
estoppel [1]    60:16
et [5]    3:11    6:2
6:2    8:5    62:4
eternal [1]    41:2
everyone's [2] 52:17
66:19
evidence [1]    10:9
exact [1] 60:9
exactly [4]    7:8
44:7    54:23    55:19
example [8]    17:5
24:7    24:22    25:17
29:17    52:10    56:10
62:25
examples [1]    52:18
except [2]    42:7
42:17
exception [1]    13:4
excerpts [1]    64:14
exchanged [3]    53:25
70:9    71:14
exchanges [1]    53:5
excised [1]    5:15
exclusive [3]    56:12
56:14    58:2
excuse [2]    38:25
44:17
executive [1]    13:19
exemplar [1]    32:18
exercise [1]    19:10
exhibits [1]    25:11
existing [3]    21:10
21:18    55:14
expanding [1]    55:20
expect [4]    8:6
15:19    19:2    34:23
expectations [1]
71:15
expert [10]    28:9
30:8    30:24    31:6
31:12    31:13    31:14
31:20    31:22    52:11
experts [1]    28:11
28:14    28:20    28:24
29:5    33:14    52:11
explain [3]    32:21
64:9
explained [1]    66:3
extended [3]    21:11
21:12    21:16
extension [1]    51:5
52:4    52:16
extent [3]    10:8
19:8    28:14

extraordinary [2]
10:13    24:9
extremely [1]    16:10
F [1]    2:12
face [1] 10:13
facility [1]    24:12
fact [14] 4:6    5:6
5:21    16:14    21:11
22:10    28:10    31:15
31:21    39:11    44:4
51:5    52:6    66:5
factor [1]    59:20
fair [9]    4:5    4:24
8:17    34:16    36:11
37:8    42:23    66:10
66:12
fairly [1]    26:21
fall [1]    15:22
falls [1] 49:17
familiar [1]    29:15
family [1]    63:22
far [5]    9:8    13:24
30:15    49:25    51:13
fashion [1]    53:10
fault [2] 36:16    68:21
favors [1]    56:16
features [3]    11:4
11:15    14:22
February [1]    71:2
Federal [2]    41:4
50:20
feeling [1]    30:19
felt [1]    60:24
few [2]    47:16    59:25
fide [1]    3:10
figure [6]    28:12
31:14    31:23    44:25
63:23    68:19
figured [1]    35:17
file [1] 21:13    21:14
54:16    55:13    63:14
64:4    64:10    65:22
65:22    67:23    69:23
filed [8] 55:12    59:2
59:18    60:19    62:2
62:3    64:6    64:9
files [1] 17:8
filing [1]    67:16
final [3] 54:2    70:22
71:11
financial [9]    6:23
7:5    7:18    14:20
15:9    19:24    20:4
20:14    51:22
financials [1]    20:6
fine [1] 31:16    37:2
70:3
finish [1]    27:8
47:9    57:21
firm [24] 5:8    5:22
5:23    6:7    8:3
8:4    8:10    8:11
8:14    12:24    12:25
13:3    13:3    18:11
22:10    22:12    22:21

24:25    25:12    25:18
25:19    25:21    25:22
27:5
firm's [1]    24:23
firms [4]    5:23
11:9    12:11    18:7
first [26] 11:22    13:14
14:19    16:20    17:18
17:24    18:25    19:19
20:13    23:22    25:9
25:14    31:12    36:6
36:25    42:14    43:22
45:17    46:11    46:12
46:21    46:21    47:12
49:16    62:20    63:9
five [6]    33:22    36:20
38:5    38:21    39:3
42:10
five-month [2] 37:8
47:25
five-patent [1]    37:8
flexibility [1]    39:2
flexible [1]    39:7
flow [1] 64:17
focus [2]    34:6
41:5
focused [1]    60:12
folks [1] 23:3
follow-up [4]    17:2
17:11    17:17    18:2
followed [1]    60:11
following [2]    49:23
53:12
follows [1]    10:24
foreign [1]    15:23
6:24
forget [2]    43:5
47:16
forgot [1]    29:6
form [2] 62:8    62:12
formal [1]    68:5
formally [1]    67:17
format [4]    7:8
7:8    11:3    19:9
forth [6] 6:23    29:6
63:20    65:7    65:13
70:2
forward [7]    3:23
37:13    47:23    48:17
48:17    56:3    69:20
found [1]    11:3
64:18
Foundry [38]    1:8
5:5    5:9    5:9
5:18    5:21    6:25
7:9    7:13    8:10
9:3    11:12    11:14
12:24    15:3    15:7
15:15    22:5    22:8
22:19    22:20    25:12
23:10    33:18    38:2
38:15    39:4    42:20
43:7    44:6    45:16
51:9    51:13    51:19
60:3    60:20    62:3
70:14
Foundry's [12]    5:22

5:24    6:19    7:5
15:21    22:16    37:6
44:8    59:18    59:25
60:8    64:16
four [17] 36:2    36:6
37:7    38:2    38:3
38:5    38:17    38:21
39:3    42:10    43:16
43:22    44:22    45:4
47:24    51:37    52:12
four-patent [1] 47:2
fragments [1]    27:25
frame [2]    50:16
51:7
France [1]    17:15
Francisco [2]    2:12
27:5
frankly [3]    28:9
40:25    70:24
free [2]    40:13    67:10
Friday [1]    53:23
Fridays [1]    21:14
front [3] 37:2    62:9
64:2
frustrations [1] 28:23
full [2]    15:6    44:3
fully [2] 24:11
fundamental [1]
8:15
Furthermore [1]
10:17
G [1]    3:2
gander [3]    8:18
19:7    35:2
general [1]    12:25
generally [1]    55:25
gentleman [1]    17:6
given [3]    6:22
7:2    7:16    19:17
51:23    56:24    57:18
57:19    70:5
giving [1]    5:13
36:15    52:12    59:25
61:5    61:13
glimmer [1]    31:8
goals [1] 66:20
God [1] 31:13
goes [2] 27:4    33:2
gone [1] 47:14
good [15]    3:7
3:8    3:25    8:17
8:18    10:2    10:3
14:15    14:16    18:23
19:6    19:6    21:2
22:3    33:3
goose [2]    8:18
19:6
granting [1]    64:3
great [1] 42:11
Greenspan [2]    68:17
Greenspoon [16]
2:3    7:4    27:18
35:23    36:17    51:14
51:16    52:2    58:25
62:7    62:11    62:20

62:25    64:15    66:21
69:10
ground [6]    5:16
5:25    8:12    8:13
12:21    34:23
group [6]    45:20
guarantee [1]    24:10
guarantees [1] 57:20
guess [13]    23:12
30:11    33:11    40:18
40:21    43:24    44:7
44:13    52:9    61:25
62:4    66:23    70:19
guidance [3]    25:8
26:6    34:14
guise [1] 43:8
Gunning [1]    1:24
H [1]    2:16
half [2]    42:4    52:23
Haller [60]    2:2
2:3    3:25    3:25
4:13    4:18    9:15
11:6    11:7    11:7
11:16    11:19    12:9
12:9    13:5    20:25
21:24    23:9    23:12
26:23    27:17    28:19
29:6    29:8    31:6
31:16    31:19    31:24
32:11    32:20    32:24
33:6    33:11    33:15
33:17    34:14    34:16
34:19    34:22    35:4
35:8    35:16    38:8
39:18    40:10    41:11
41:15    43:4    44:18
50:9    50:11    50:13
50:19    51:4    51:15
51:18    52:6    54:12
54:23    70:10
Haller's [2]    14:18
43:21
hand [1] 39:25
handle [1]    26:12
handled [2]    4:24
5:2
handling [3]    4:20
6:11    8:14
hands [1]    7:15
happy [2]    31:4
61:14
hate [3] 46:2    66:11
68:3
head [1] 55:19
hear [7] 3:18    3:19
6:25    9:3    58:24
61:23    63:17
heard [10]    20:9
21:25    22:14    30:10
31:8    38:20    39:8
39:22    50:13    51:24
hearing [1]    15:25
heart [1] 9:20
held [2] 62:23    62:24
help [4] 3:10    19:18
33:14    44:16
helpful [1]    54:3

Alcatel v. Foundry | CondenseIt™ | helps – looking

helps [1] 43:15
hey [1] 38:11
history [1] 59:17
holiday [1] 49:19
home [2] 4:12
4:12
Honestly [1] 55:22
Honor [76] 3:8
6:5 6:12 9:4
9:10 9:19 10:2
10:4 10:6 10:11
10:15 10:17 10:23
12:15 13:4 13:6
13:14 13:16 13:24
14:6 14:11 14:14
14:15 15:23 18:22
21:4 21:11 22:16
23:18 23:22 24:10
25:9 26:8 27:18
29:10 29:14 29:24
29:24 30:3 32:4
32:7 35:13 36:22
37:7 37:18 37:21
42:8 43:4 43:18
45:7 45:23 52:3
52:7 55:4 56:5
56:7 56:10 56:23
57:13 57:13 58:4
58:11 58:16 59:5
59:16 61:20 62:8
62:12 63:19 64:8
65:6 65:18 66:2
68:7 69:5 71:19
HONORABLE [1]
1:15
hook [1] 29:13
hope [4] 14:4 49:2
66:2 68:3
hopeful [2] 4:10
7:21
hopefully [5] 18:20
33:13 41:15 70:5
71:6
hoping [1] 37:20
hour [1] 52:24
hours [1] 23:12
hover [1] 55:16
Howrey [20] 2:11
5:22 5:23 8:10
8:11 8:12 9:7
12:3 22:8 22:10
22:12 22:19 22:21
22:22 24:25 25:18
25:19 25:22 68:10
68:15
I.D [1] 68:14
idea [1] 48:3
identified [7] 14:18
17:18 18:9 28:6
54:20 56:25 58:21
identify [6] 12:2
16:2 25:24 53:17
56:19 64:11
IEEE [1] 22:9
Illinois [1] 2:4
image [1] 60:19
imaginative [1] 50:11
immediate [1] 45:8

impacts [1] 28:13
impasse [1] 35:19
impeding [1] 20:15
implementation [2]
5:11 16:2
implemented [2]
5:4 5:4
implicit [1] 66:7
implicitly [3] 21:12
36:18 67:15
important [1] 6:20
importantly [1] 13:6
impossible [1] 4:7
impractical [1] 52:15
impression [1] 28:17
Inc [5] 1:4 1:5
1:8 61:18 62:5
include [2] 68:24
71:10
included [1] 16:17
43:15 62:14
incomplete [2] 16:10
57:14
independent [1]
17:13
indicated [1] 17:23
individual [1] 7:3
individuals [1] 28:7
industry [1] 6:9
inequitable [1] 18:10
informal [1] 39:22
informally [1] 65:24
information [14]
6:19 6:24 7:8
15:17 19:25 20:14
33:5 56:2 59:17
60:20 60:22 64:18
65:9 66:24
infringement [8]
5:19 5:22 8:7
22:5 23:23 27:21
34:17 45:10
initial [1] 68:13
injunction [3] 45:16
45:23 46:20
injunctions [2] 46:13
input [1] 19:18
install [2] 24:18
24:19
instance [1] 29:18
instances [4] 25:10
25:15 29:22 47:13
instead [1] 52:5
instruction [1] 17:14
insufficient [1] 61:4
intended [1] 4:8
intent [2] 37:16
37:17
intentionally [1]
11:5
interest [2] 67:18
67:19
interested [3] 59:20

60:21 61:8
interesting [1] 49:15
interfere [1] 25:4
Internetworking [9]
1:5 57:7 59:3
59:12 61:6 63:2
63:24 67:2 67:9
Internetworking's [1]
61:3
interrogatories [2]
63:20 64:11
inthe [1] 17:5
intriguing [1] 45:4
introduce [2] 6:6
9:24
introduction [1]
26:15
inventor [2] 17:16
52:12
inventors [1] 17:22
17:24
investigation [1]
63:13
investment [1] 4:25
invitation [1] 36:3
invoices [1] 7:3
involved [4] 16:25
37:11 64:12 68:15
involving [1] 18:18
irritation [1] 44:8
issue [31] 4:21
7:9 9:22 10:24
13:14 15:23 17:19
18:5 18:18 18:18
18:25 19:19 19:22
21:22 23:10 23:15
25:9 27:10 28:10
28:13 30:5 31:4
31:22 32:16 46:17
46:20 46:22 54:19
62:8 67:11 69:11
issues [33] 3:14
3:16 3:17 7:18
9:18 9:19 9:21
9:25 12:3 13:11
14:9 15:21 15:25
17:4 17:20 18:2
18:19 20:16 23:2
25:8 33:25 34:13
35:19 36:12 39:16
40:3 40:10 40:15
42:21 52:9 56:8
56:19 57:10
itself [1] 16:19
J [2] 1:24 2:3
January [2] 71:6
71:10
jettisoning [1] 38:20
job [1] 48:13
judge [15] 1:15
3:25 4:2 7:2
23:9 28:19 32:11
35:8 38:8 48:13
52:2 54:13 54:23
58:25 66:22
judgment [9] 48:22
53:3 53:17 59:3

60:21 61:8
July [5] 42:13 42:15
42:15 49:8 53:18
June [9] 14:22 36:22
42:13 53:18 53:23
64:22 64:24 65:14
68:15
juries [4] 38:25
44:11 45:7 47:8
jury [7] 20:10 33:4
36:23 37:2 46:21
46:22 47:12
K.T [1] 2:11
KAREN [1] 1:18
keep [5] 8:2 44:11
51:6 52:15 53:19
key [1] 64:20
kicked [1] 22:5
kind [4] 20:3 24:14
32:18 50:6
kit [1] 52:22
knock [1] 21:3
knowing [1] 68:20
knowledgeable [2]
27:24 28:5
knows [3] 26:10
31:9 31:13
L [2] 1:15 1:18
Labor [1] 49:12
lack [1] 66:19
lacking [1] 14:19
lag [2] 36:12 37:14
laid [1] 5:5
language [2] 5:7
5:10
languages [1] 29:21
laptop [5] 5:12
24:2 24:4 30:6
30:17
laptops [3] 7:16
30:16 70:12
large [2] 29:16 57:16
last [18] 9:20 10:6
10:19 13:16 15:13
15:19 15:25 16:15
17:5 21:13 21:22
22:2 26:8 42:15
48:14 53:8 53:8
58:25
last-minute [1] 16:17
late [6] 6:19 42:13
63:7 63:8 65:20
68:15
laundry [1] 8:23
law [9] 5:23 6:7
11:9 12:11 12:24
12:25 22:21 27:5
69:25
lawsuit [4] 59:22
61:17 61:22 67:16
lawyers [5] 6:4
6:13 22:19 22:21
22:22 23:25 43:25
60:3 66:5

lawyers' [1] 19:18
leads [1] 43:18
learn [1] 60:3
learned [3] 13:20
56:15 59:24
least [8] 13:8 19:3
19:22 33:23 34:5
39:16 69:12 71:14
leave [8] 12:3 20:20
54:16 60:6 60:16
62:2 63:15 64:4
leaves [1] 24:12
led [3] 39:11 39:12
63:10
left [2] 19:4 39:16
legal [4] 46:24 61:18
63:3 67:20
Leo [1] 17:23
less [6] 39:17 43:19
43:20 47:4 47:5
64:10
letter [1] 64:15
letters [1] 9:17
57:4
level [8] 7:24 8:5
13:15 13:17 13:21
13:25 18:14 33:5
leverage [1] 45:21
levity [1] 41:16
liability [4] 20:16
40:10 40:13 41:4
liable [1] 62:24
license [6] 16:17
16:18 16:20 16:25
59:21 60:12
licensing [6] 16:4
16:14 16:16 59:19
59:19 60:9
likely [1] 29:24
line [3] 41:9 61:16
61:20
lines [1] 26:16
list [1] 8:23
listen [2] 6:4
6:12
litany [1] 7:20
litigating [1] 62:22
lives [1] 12:19
LLP [1] 1:18
loaded [1] 24:3
loading [1] 5:3
located [1] 31:21
location [1] 25:16
lock [1] 11:10
lockdown [5] 5:12
11:13 11:15 11:21
32:8
locked [1] 24:4
look [5] 8:9 28:11
31:12 65:2 65:5
69:2
looking [7] 7:13
8:19 38:4 49:4
55:7 55:10 71:9

October 4, 2006

Alcatel v. Foundry                    CondenseIt™                            lost – Paris

lost [3] 39:24 45:19
45:21
luck [1] 23:3
lunch [1] 35:18
machines [2] 29:15
29:16
main [1] 6:18
majority [2] 13:13
14:2
makes [4] 30:7
30:11 42:22 57:8
man [1] 17:22
manageable [1] 44:25
March [3] 68:9
68:12 68:22
Marketing [2] 61:17
62:5
Matt [1] 9:8
matter [2] 46:17
67:12
MATTHEW [1]
2:16
max [1] 43:16
may [17] 10:4 10:19
16:6 29:22 33:8
35:13 36:16 42:8
47:18 47:24 53:7
53:17 53:19 56:5
56:6 56:22 70:25
mean [26] 7:25
12:25 27:8 27:12
27:14 28:8 32:13
39:7 40:15 40:18
41:21 41:21 42:4
43:25 44:4 47:3
50:18 52:14 62:18
62:25 66:14 68:4
69:15 69:23 69:25
70:7
meaning [2] 24:7
26:2
meaningless [1]
63:2
means [4] 20:7
28:12 46:16 67:15
meant [2] 54:15
55:6
measures [1] 5:4
mechanism [1] 19:12
meet [2] 9:18 53:8
meet-and-confer [1]
9:14
memo [1] 22:16
memorandum [1]
22:25 69:25
Menlo [1] 2:16
mention [1] 61:23
mentioned [8] 31:25
35:2 43:5 54:7
54:16 59:4 59:8
61:11
mentioning [1] 59:20
met [3] 9:16 9:16
9:21
Michigan [1] 6:9
middle [1] 47:24

midst [1] 60:2
might [13] 17:25
21:25 24:14 24:16
27:24 29:19 29:20
30:23 41:21 53:13
61:12 62:17 66:22
mind [1] 50:4
minds [1] 58:14
minimal [1] 5:14
minutes [2] 12:14
64:9
miraculous [1] 48:13
mirror [1] 60:19
miscellaneous [1]
18:19
miscounted [1] 42:8
misspeak [1] 26:22
misstatement [1]
35:20
mistaken [2] 57:24
58:14
misunderstanding [1]
69:21
mix [1] 36:11
mobile [1] 30:13
30:17
modules [2] 25:24
29:23
moment [1] 24:13
Monday [2] 17:6
53:20
monitor [2] 24:6
27:6
month [5] 15:13
18:7 44:7 44:15
69:5
months [11] 17:21
38:5 38:21 39:3
40:16 42:10 42:11
45:17 48:14 48:24
60:25
morning [10] 30:7
3:8 3:25 10:2
10:3 13:23 14:15
14:16 35:2 56:23
most [7] 13:17 23:20
37:4 40:11 43:25
49:23 52:19
motion [1] 22:11
22:17 54:16 55:7
62:2 62:12 63:15
64:4 65:22 65:23
67:23 67:25 68:5
68:11
motions [1] 53:3
53:17 55:11 70:25
motivation [1] 38:10
move [9] 5:8
19:24 39:5 40:22
42:11 52:21 57:12
58:4 68:24
moved [2] 36:18
52:17
moving [1] 69:20
Ms [1] 9:7
mutual [1] 32:12

N [1] 3:2
named [3] 17:23
62:16 62:23
narrowed [1] 19:22
nature [1] 15:12
22:3
necessarily [2] 39:15
44:2
necessary [5] 16:8
23:17 25:7 51:13
57:20
need [21] 3:18
3:19 17:10 17:11
17:17 17:25 20:21
25:8 35:24 36:15
37:10 37:14 40:9
43:19 46:4 46:25
53:4 53:24 69:24
69:25 70:4 71:5
needed [1] 24:22
30:9 63:14
needs [1] 16:23
56:2
negotiation [3] 16:18
16:18 60:2
negotiations [4]
16:16 16:25 59:19
60:12
neither [1] 33:8
nervous [1] 55:16
NETWORKS [1]
1:8
never [5] 27:9
30:9 32:5 48:12
65:3
new [11] 37:15 43:8
43:9 43:11 54:24
55:2 55:25 56:4
65:23 65:25 71:11
news [2] 20:7 46:22
next [12] 31:25 39:23
48:24 49:6 49:9
49:11 49:19 50:23
50:24 51:2 51:22
52:5
Niro [7] 2:2 2:2
24:23 25:12 25:12
25:21 25:21
Nobody [1] 26:10
nondamage [1] 40:2
None [1] 38:18
nonissue [2] 46:20
46:24
Nos [1] 65:16
nothing [2] 7:15
42:12
notion [1] 51:18
November [1] 52:4
now [29] 7:4 13:20
16:25 18:23 26:5
30:22 32:21 32:24
33:17 40:16 40:17
41:13 42:7 48:25
49:3 49:15 53:11
53:24 56:17 57:6
57:23 58:13 59:16
63:22 65:13 65:20

67:12 68:22 70:22
number [9] 4:21
6:16 6:17 7:5
17:21 26:4 27:15
52:18 70:14
O [1] 3:2
o'clock [2] 1:13
33:23
object [1] 43:9
objection [5] 65:25
66:6 66:7 67:23
67:25
obligations [2] 9:14
61:23
obvious [1] 52:19
obviously [6] 6:20
15:5 19:6 20:9
46:21 48:3
occasion [1] 48:16
occasions [1] 15:24
occurred [1] 5:2
OCR [1] 64:20
October [17] 1:12
37:18 40:14 40:20
49:16 49:21 49:22
49:24 50:5 51:3
52:5 52:22 53:11
57:15 58:5 70:18
70:19
odds [1] 46:10
off [6] 4:5 8:16
23:15 42:15 49:17
55:19 57:21 64:13
off-line [1] 18:20
offer [4] 6:12 54:24
67:6 67:14
offered [1] 66:23
office [1] 27:5
Officer [1] 7:5
Official [1] 1:24
older [1] 15:17
Omni [17] 1:12
11:2 26:9 26:14
27:19 27:20 56:11
57:21 59:5 59:9
59:10 59:13 59:21
60:13 64:21 65:15
67:13
on-line [1] 19:15
once [3] 23:2 41:3
57:11
one [64] 3:22 4:21
6:16 9:13 15:22
16:2 17:6 17:9
17:21 17:22 18:5
18:7 21:4 23:14
25:3 25:12 25:17
26:6 26:12 27:4
27:16 28:20 30:24
31:6 31:7 31:17
31:25 32:2 32:13
33:8 34:14 36:6
38:2 39:13 41:21
41:24 43:6 44:5
44:23 45:4 45:5
47:9 47:14 47:15
48:21 49:3 49:4

49:5 49:7 49:8
49:11 49:17 49:20
50:8 50:23 52:10
52:18 53:5 54:8
63:23 68:18 69:5
70:11 70:22
one-patent [1] 47:3
ones [2] 5:6 28:15
ongoing [1] 66:9
open [2] 25:6 32:13
opening [1] 48:2
operating [2] 27:6
65:18
opine [1] 28:20
opinion [4] 22:9
22:10 22:14 22:20
opportunity [6] 23:16
28:24 29:21 42:24
63:13 69:13
opposed [3] 5:13
30:6 38:19 43:8
64:3
optimist [1] 41:2
optimistic [1] 43:17
option [1] 29:7
29:11
oral [2] 53:20 53:22
order [11] 4:23
5:7 5:10 27:2
37:18 45:18 51:21
56:8 58:7 70:5
71:11
ordered [1] 36:5
37:18 45:23 65:17
organizations [1]
28:4
Orrick [6] 2:15
5:8 8:2 8:3
8:14 13:3
otherwise [1] 19:9
57:13
ought [1] 31:13
ours [3] 36:7 45:5
46:6
ourselves [2] 61:8
67:11
outset [1] 9:15
overseeing [1] 6:11
overstayed [1] 8:25
overview [4] 3:13
3:16 4:14 9:11
own [3] 15:21 37:25
45:22
owner's [2] 6:17
6:21
P [1] 3:2
p.m [4] 23:7 35:9
35:12 71:22
Page [1] 22:17
paper [7] 26:2
26:3 30:16 60:10
63:3 69:24 69:24
papers [3] 17:17
54:15 62:9
Paris [1] 56:13

Alcatel v. Foundry                    CondenseIt™                    Park - rebuttal

Park [1] 2:16
part [21] 27:14    34:5
   42:3    42:3    49:23
   59:4    59:8    59:10
   59:11   59:21   59:22
   59:23   60:16   61:16
   61:21   61:21   62:17
   62:22   63:6    67:22
   71:7
participate [1] 68:10
participated [1] 16:16
particular [5]    16:15
   17:24   24:13   27:2
   29:18
particularly [3] 30:18
   39:4    42:20
parties [37]       4:3
   12:11   12:11   19:17
   24:13   24:15   37:16
   37:17   39:5    41:3
   43:10   45:12   45:18
   53:25   54:8    54:9
   54:15   54:20   55:2
   55:6    57:11   57:24
   58:7    59:10   59:11
   59:15   62:21   62:22
   63:16   65:23   65:25
   67:17   68:9    68:18
   68:22   69:7    69:14
parts [1] 59:20
party [31]         4:24
   24:2    24:3    24:10
   24:12   24:18   24:21
   25:3    26:2    29:11
   29:12   43:11   54:19
   54:25   55:17   56:4
   58:12   59:2    60:14
   60:23   61:7    61:16
   62:15   64:3    65:21
   65:21   66:6    66:6
   66:12   68:2    68:25
party's [2]        24:12
   29:12
PASCALE [1]   1:18
passed [6]        54:21
   63:16   66:14   68:16
   68:20   69:8
patent [22]        6:17
   6:21    17:3    17:5
   17:13   17:15   17:22
   17:24   18:5    18:7
   18:17   36:10   38:2
   38:15   44:23   45:10
   45:20   49:10   49:17
   49:20   67:9    68:14
patents [17]       16:3
   17:7    17:8    36:2
   36:6    36:10   36:21
   36:25   38:2    38:17
   39:14   43:22   44:22
   45:12   45:15   46:5
   52:12
patience [1]      55:24
Pause [4]         41:18
   48:10   48:19   52:20
pay [1] 31:13
PBX-type [1]     29:15
PCX [13]          11:2
   26:9    56:11   57:21

59:5    59:9    59:10
59:13   59:21   60:13
64:21   65:15   67:13
pending [1]       68:11
people [8]         4:6
   27:10   27:23   27:24
   30:22   31:9    56:20
   58:17
percent [3]       23:13
   32:22   40:24
perform [2]       63:13
   64:19
perhaps [4]       24:13
   32:15   38:14   60:5
period [6]         7:3
   15:8    15:12   37:8
   45:5    45:6
periods [1]       15:16
peripheral [1]    17:20
permit [1]        65:23
permitted [1]     17:25
person [1]         7:5
personal [1]      29:12
personally [2]     6:10
   27:25
perspective [1]   28:2
Ph.D [1] 6:8
phase [15]        22:6
   36:6    36:11   36:24
   36:24   37:22   38:14
   38:15   43:12   45:24
   51:16   54:24   63:11
   65:24   68:14
phases [3]        60:14
Phil [1] 9:4
PHILIP [1]         2:8
phone [3]          9:17
   11:6    71:16
pick [1] 47:8
piece [2] 34:14   63:3
pieces [1]        31:10
place [6] 8:23    19:12
   29:19   30:5    30:15
   30:20
plaintiff [1]      3:13
plaintiffs [3]     1:6
   2:5    62:16
plaintiffs' [1]   16:5
plan [1] 24:17
plane [2]          4:6
   20:3
plate [2] 4:21    67:12
players [1]       64:12
plays [1]         22:6
pleadings [9]     54:7
   55:6    59:2    59:9
   59:14   61:10   61:22
   63:12   65:8
plus [1] 32:12
point [17]         4:8
   4:22    10:12   12:22
   20:7    20:8    20:11
   22:16   30:14   33:7
   35:17   37:3    38:16
   39:18   39:20   51:5

51:10   60:18   62:16
pool [1] 27:24
Poppe [8]          2:16
   9:8    9:12    14:8
   14:15   14:17   18:15
   18:17
portion [1]       13:12
   34:6    39:19
ports [1] 5:12
position [4]      11:16
   21:20   45:19   62:19
possession [1]    29:12
possibilities [1]
   27:4
possible [1]      25:11
post-trial [2]    46:14
   46:18
posture [1]       38:9
   56:9
potential [1]     59:21
Potter [2]         2:7
   9:4
practical [1]     57:17
precise [1]       23:18
prejudice [1]     46:6
prejudiced [1]    67:24
premise [1]       25:4
prepared [2]      10:6
   50:24
present [5]        2:21
   9:22    38:12   52:10
   56:9
presentation [1]
   58:23
presentations [2]
   10:19   69:21
presented [2]     10:18
   62:12
presumptuous [1]
   4:15
pretend [1]       45:9
pretrial [1]      53:16
pretty [1]        28:12
print [1] 24:6
printer [1]       24:5
prints [1]        26:3
prioritize [1]    3:17
priority [1]       7:9
private [2]        4:3
   52:2
privately [2]      4:9
   7:22
privilege [1]     18:18
problem [17]      7:24
   7:25    8:15    27:9
   27:14   30:23   31:2
   31:4    31:7    32:4
   33:8    41:19   42:19
   47:5    47:21   48:11
   70:18
problems [4]      24:16
   34:2    55:22   70:11
procedure [1]     27:3
proceed [2]       10:22

45:15
proceeding [1]    22:18
Proceedings [3] 3:4
   23:6    35:11
produce [9]        8:6
   11:20   15:4    26:17
   26:19   27:5    32:7
   58:3    70:15
produced [17]      6:2
   13:9    13:14   13:22
   14:21   14:24   15:5
   16:7    16:20   17:9
   18:7    23:25   25:21
   29:2    65:2    65:3
   65:20
producing [3]     15:9
   24:12   67:19
product [5]       15:7
   27:20   32:17   66:8
   67:2
product-by-product
   [1]    15:11
production [12] 15:2
   15:20   16:6    16:10
   16:17   16:23   18:3
   18:8    18:18   64:19
   68:13   71:8
productive [1]    3:20
products [4]      15:14
   26:20   63:21   67:8
profits [1]       39:24
program [1]       31:10
projections [1]   48:6
promise [1]       61:11
   61:12
promised [1]      39:21
promptly [1]      59:21
proofs [1]        57:12
proper [6]        11:11
   59:10   59:15   60:14
   61:16   62:22
proposal [1]      35:22
   37:6    37:20   38:6
   43:6    43:21
proposals [1]     27:7
proposed [3]      35:23
   45:3    52:4
proposes [1]      37:14
proposing [1]     36:17
prosecuting [1]  5:24
prosecution [1] 17:3
   17:14   18:5    18:7
   18:17
prosecutors [2] 17:5
   17:15
protected [1]     19:11
protective [1]    4:23
   5:6    5:10
prove [1]         10:15
provide [4]       32:17
   67:3    70:13   70:13
provided [8]      6:25
   11:15   17:8    19:8
   19:8    19:9    19:11
   30:7
pull [4]  15:14   15:17

51:21   51:24
purposes [1]      57:18
push [3] 35:25    37:6
   42:3
pushing [3]       38:21
   39:3    53:3
put [11]  6:13    19:21
   31:25   32:3    32:6
   43:13   48:8    53:14
   56:9    57:12   61:10
putting [1]       32:4
quantities [1]    29:16
quantity [2]      14:24
   15:6
questions [5]     25:25
   26:2    29:14   33:7
   56:21
quick [1]         64:14
quicker [1]       50:20
quickly [5]       4:19
   8:24    57:12   58:4
   68:8
quietly [1]       61:7
quite [3] 40:25   51:11
   54:12
quote [1]         24:4
R [1]    3:2
raise [1] 21:7
raised [4]        15:25
   18:6    22:7    54:24
raises [2]        60:14
   60:15
ramifications [1]
   46:24
Ramos [3]         2:12
   9:6    9:7
rather [1]        14:23
   38:3
rattle [1] 23:15
reach [1]         19:3
   19:3
reached [3]       19:20
   23:19   35:19
read [2] 30:16    64:14
ready [8]         19:20
   21:3    22:13   47:18
   47:23   48:3    70:10
   70:16
real [4]  40:2    44:9
   61:20   64:14   66:18
really [20]       5:7
   12:10   28:18   37:4
   41:5    43:24   45:4
   46:4    46:6    46:10
   46:19   46:24   50:24
   56:15   61:8    62:4
   63:2    68:21   69:22
   71:4
reason [2]        20:5
   29:14   36:20   41:2
reasonable [1]   39:24
reasonably [1]   69:20
reasons [2]       11:17
   36:16
rebuttal [1]      52:11

Alcatel v. Foundry                         CondenseIt™                              recap - source

recap [1] 59:16
received [1] 16:18
receiving [2] 24:21 25:3
recent [2] 15:18 65:12
recently [1] 7:4
Recess [2] 23:4 35:9
recessed [1] 71:22
reciprocal [3] 5:17 26:18 34:24
reciprocity [5] 7:25 7:25 8:10 8:16 8:22
recognize [2] 24:15
recognizing [1] 36:18
recommend [1] 35:11
recommended [1] 64:19
record [10] 12:19 19:21 32:8 42:24 42:24 59:11 60:10 62:6 66:11 69:19
records [3] 59:12 61:5 61:18
referring [1] 61:12
regard [12] 10:23 13:11 13:12 13:15 24:17 25:9 26:9 26:20 50:18 57:22 58:22 63:4
regurgitate [1] 7:7
reiterated [1] 16:9
related [4] 40:25 41:6 41:7 64:21
relevant [1] 14:25 20:8
remaining [6] 35:19 38:16 38:17 40:23 41:6 41:20
repeatedly [2] 9:16 9:19
reply [2] 22:16 22:24
Reporter [1] 1:24
reports [2] 52:11
representation [1] 16:11
representations [1] 63:9
representatives [2] 59:19 60:9
represented [1] 5:21
representing [1] 5:8 12:24 18:11
request [8] 14:25 24:19 24:20 64:16 65:15 65:16 65:22 68:23
requested [2] 14:23 15:10 15:10 34:20 58:8
requesting [1] 66:25
requests [3] 7:20 18:3 65:16

required [1] 26:18
resolve [9] 4:4 9:20 19:24 33:7 33:12 41:3 48:25 56:8 57:10
resolved [8] 7:21 8:24 18:20 31:3 41:4 48:23 53:9 67:25
resort [1] 20:23
RESOURCES [1] 1:4
respect [11] 13:8 14:10 15:14 15:21 17:7 27:18 34:13 37:12 40:10 68:2 70:22
respectable [1] 11:9
respectfully [1] 36:3
respond [4] 3:8 25:24 26:12 71:19
response [2] 67:14 67:17
responses [2] 61:3 61:3
responsibility [3] 6:10 67:2 67:8
responsible [1] 27:25
rest [3] 17:10 71:3 71:5
result [2] 59:6 59:24
resumed [1] 23:6
return [1] 7:15
returned [1] 18:12
revenue [3] 6:24 7:8 59:11
revenues [3] 15:11 59:13 60:3
reviewed [1] 18:8
revised [2] 43:12 70:4
reward [2] 45:14 46:5
rewarding [1] 36:14
rid [1] 11:8
right [52] 9:2 9:9 14:7 14:12 18:23 20:18 21:2 22:6 23:3 23:3 29:24 30:11 32:10 32:15 32:19 32:21 32:23 33:10 33:13 33:16 33:22 34:13 34:18 34:21 35:6 35:7 38:7 39:10 40:4 40:17 41:8 41:10 42:16 45:2 45:17 51:4 52:21 54:5 54:6 55:15 58:10 58:24 61:7 61:25 62:10 63:17 65:4 65:21 67:11 67:21 70:17 71:17
rigid [2] 38:9 39:7
rise [1] 10:8
risk [1] 45:13

ROBERT [1] 2:3
ROBINSON [1] 1:15
room [2] 47:13 53:14
Rovner [38] 2:8 9:4 9:4 20:24 21:4 21:6 21:23 35:13 35:16 40:5 40:7 41:7 41:9 41:12 41:14 41:17 42:8 43:18 44:13 44:17 44:19 44:22 45:3 46:9 46:15 47:4 47:11 47:15 48:9 52:7 54:6 54:18 55:4 55:9 55:12 68:7 69:4 69:17
royalties [1] 39:24
Rule [1] 60:6
rules [8] 5:17 5:25 8:12 8:13 8:20 12:21 19:7 34:24
rulings [1] 37:10
running [1] 8:2
S [1] 3:2
sake [1] 52:17
sale [1] 61:6
sales [9] 6:19 6:23 6:24 7:7 59:11 59:13 60:3 61:18 63:4
salvage [6] 34:4 38:11 38:19 42:2 48:4 50:15
San [2] 2:12 27:5
Sangroniz [1] 17:23
satisfied [1] 42:23
save [1] 39:15
saw [1] 55:18
says [3] 26:13 48:9 65:14
scads [2] 27:13 28:10
SCAVONE [1] 2:2
schedule [13] 34:7 37:15 38:4 38:12 42:9 43:15 48:23 50:3 52:10 52:15 52:24 53:12 54:2
scheduled [10] 41:22 41:23 41:24 42:16 42:17 48:16 49:8 49:9 49:12 49:24
schedules [2] 37:5 49:7
scheduling [6] 3:11 21:21 34:3 37:18 70:4 71:11
scheme [1] 40:22
Science [1] 6:8
scope [1] 15:13
score [1] 7:12
scrivener [2] 23:13
search [1] 5:14 11:21 14:5 16:12

24:11 24:14 24:19 24:20 25:3 25:5 32:4 32:6 64:20 65:5
searchable [4] 11:3 14:4 19:9 24:11
searched [1] 25:23
searching [1] 17:16
second [14] 13:15 14:20 22:6 34:3 37:2 41:24 42:4 44:9 44:24 49:10 56:23 63:6 63:6 64:24
seconds [1] 64:16
secure [3] 30:5 30:14 30:18 30:20
security [5] 5:3 24:9 25:4 25:6 29:2
see [11] 3:18 4:4 12:3 35:6 46:2 55:24 61:15 68:19 70:25 71:3 71:13
seeks [1] 24:3
seem [3] 36:11 47:6 58:9
sends [1] 26:3
sense [6] 5:18 28:22 30:11 34:24 42:22 57:11
sensing [1] 31:7
separate [2] 22:18 22:23
separating [1] 44:10
September [5] 17:23 22:7 49:13 50:2 53:16
seriously [1] 9:14
serve [2] 58:17 58:21
served [1] 63:20
session [2] 4:4 35:14
set [4] 3:10 21:13 29:6 68:12
sets [1] 6:23
setting [1] 63:20
settle [1] 46:9
settling [1] 48:13
seven [4] 23:24 29:19 56:24 58:18
several [6] 15:19 15:22 17:4 17:5 17:20 17:24
severe [1] 10:13
shake [1] 37:8
shared [1] 44:3
sharpen [1] 23:16
short [5] 28:3 45:18 51:5 51:20 56:7
shortly [1] 15:20
show [2] 27:13 69:13
side [4] 8:7 26:4 32:5 32:9

sides [7] 4:15 4:20 7:20 10:10 10:18 11:20 32:21
sign [1] 53:22
significant [3] 4:25 13:20 13:20
simple [1] 48:6
simply [10] 3:19 20:5 28:24 32:11 51:20 51:20 61:6 61:9 62:17 63:7
simultaneous [1] 70:16
single [1] 28:4
sit [1] 55:16
site [1] 26:5
situation [4] 7:12 45:4 57:14 58:11
six [4] 15:8 17:7 17:8 29:19
six-year [1] 15:12
slip [1] 69:21
slivers [1] 5:13
SLR [1] 1:10
Soft [10] 57:2 59:23 60:2 60:10 60:15 60:21 61:13 61:19 62:14 64:21
software [2] 26:17 26:19
sold [1] 26:14
solution [2] 35:23 37:4
someone [2] 21:3 70:4
somewhat [2] 29:14 35:20
somewhere [1] 47:6
sorry [2] 55:4 58:14
sort [3] 38:8 43:6 44:9
Sounds [1] 20:25
source [79] 4:20 4:25 5:13 5:14 5:15 5:18 5:25 6:11 7:13 7:18 8:3 8:14 10:23 10:24 10:25 11:2 11:9 11:10 11:13 11:20 13:8 13:8 13:13 13:13 14:2 14:3 14:5 14:19 14:21 14:22 14:24 14:25 15:7 19:8 19:19 20:22 21:17 24:3 24:7 25:15 25:16 25:20 25:23 26:13 27:14 28:6 28:9 28:11 28:12 28:15 28:20 28:25 30:7 30:10 30:12 30:19 31:10 31:20 32:17 32:18 32:22 32:25 33:19 33:20 51:24 53:5 53:25 56:11 56:24 57:5 57:12 57:23 65:15 70:7 70:8

Alcatel v. Foundry                    CondenseIt™                    speak – used

| | | | |
|---|---|---|---|
| 70:5  71:7  71:14 | substantial [1] 16:16 | 48:6  48:7  50:3 | tit [2]  11:7  11:8 | turn [1] 8:9 |
| speak [6]  4:3 | such [1] 24:4 | 50:15  55:20  60:11 | today [18]  3:9 | turned [1]  68:4 |

70:5 71:7 71:14
speak [6] 4:3
4:15 4:16 6:13
10:24 11:19
specific [2] 14:22
29:25
specifically [4] 12:5
22:8 63:20 64:12
spend [1] 20:17
spent [2] 37:4
44:24
splitting [1] 43:7
spoke [4] 13:16
14:11 56:23 58:25
stage [2] 48:15 65:20
stagger [1] 45:20
stand [3] 6:14
7:14 58:12
standard [4] 19:14
19:23 20:21 22:9
stands [1] 22:13
standstill [4] 34:8
66:24 67:7 67:14
STARGATT [1]
1:18
start [5] 3:12 20:8
35:13 53:11 63:25
started [1] 44:23
starting [1] 53:23
starts [1] 35:16
state [2] 29:16 69:19
States [2] 26:14
61:17
stay [1] 34:8
staying [1] 40:7
step [2] 3:22 31:17
Steven [2] 2:21
6:5
stick [1] 47:12
sticky [1] 40:2
still [16] 7:10 21:17
30:16 33:6 37:10
37:11 46:25 47:21
49:19 51:6 51:24
51:25 53:2 61:25
68:10 70:11
stipulate [2] 50:16
51:25
stipulation [3] 26:13
26:20 33:8
stipulations [1] 32:25
stone [1] 38:18
stop [1] 20:6
straightforward [1]
39:20
strike [1] 30:17
strikes [1] 27:11
stuck [1] 19:17
stuff [1] 15:18
subject [1] 48:2
subpoenaed [2] 17:7
17:10
subsequent [2] 22:23
63:12

substantial [1] 16:16
such [1] 24:4
SUE [1] 1:15
sufficient [1] 60:20
suggested [1] 16:6
suggestion [4] 25:14
38:10 38:13 38:14
suit [3] 16:3 43:8
52:12
sum [1] 27:23
summaries [7] 6:23
7:18 15:9 15:10
39:21 39:25 51:22
summarize [2] 13:7
13:10
summary [4] 48:22
53:2 53:17 70:25
summer [1] 42:11
Sunny [1] 9:6
23:15
support [4] 22:13
22:17 22:20 63:4
suppose [1] 66:13
supposedly [2] 22:19
38:9
swear [1] 6:14
swimming [1] 71:8
switch [13] 27:19
27:20 57:2 59:23
60:2 60:10 60:15
60:22 61:14 61:19
62:13 62:14 64:21
switches [1] 11:2
58:22
system [5] 13:15
13:17 13:21 13:25
64:16
systems [4] 15:16
56:13 56:20 57:17
table [2] 4:5 50:8
takes [3] 19:2 31:24
71:20
taking [5] 25:18
29:11 29:18 29:19
51:19
tat [2] 11:8 11:8
TAYLOR [1] 1:18
team [1] 27:22
technical [1] 6:7
telecommunications
[1] 6:9
teleconference [1]
69:4
telephone [2] 34:11
70:23
telling [1] 10:14
ten [1] 44:23
ten-patent [1] 36:8
terms [25] 4:14
5:2 5:3 5:11
5:18 5:23 5:25
6:17 8:4 8:12
8:15 14:19 22:2
38:12 39:21 43:12
45:9 46:19 46:23

48:6 48:7 50:3
50:15 55:20 60:11
terrific [1] 12:12
testified [2] 17:8
17:12
testify [1] 22:19
testimony [1] 59:25
Texas [1] 58:20
Thank [12] 9:2
14:12 14:14 18:22
21:23 35:4 55:8
38:7 40:4 41:14
71:17 71:19
theirs [1] 45:5
theoretically [1]
24:24
thereafter [1] 60:12
therefore [1] 67:3
they've [4] 7:2
7:16 28:6 56:24
thin [1] 16:10
thinking [2] 67:10
40:23 43:15 70:24
thinks [1] 40:19
third [5] 7:17 7:19
24:10 49:10 50:7
third-party [1] 59:24
thorough [1] 16:12
thought [13] 28:9
28:14 30:5 30:8
43:17 45:3 50:9
53:7 55:4 55:6
66:17 68:19 69:9
thoughts [1] 20:19
threat [5] 45:10
45:11 45:16 45:20
45:22
three [12] 23:12
25:11 27:4 38:2
41:23 43:19 43:20
47:7 48:16 48:17
53:12 53:15
three-and-a-half [1]
43:14
three-week [2] 38:5
42:7
through [22] 6:3
8:23 9:17 9:17
12:18 13:7 16:8
23:2 32:9 33:14
34:3 44:24 52:7
48:14 49:13 52:7
52:8 54:2 58:2
63:22 66:11 68:13
throughout [1] 64:18
throw [1] 21:24
thud [1] 67:18
Thursday [1] 49:13
Thynge [1] 48:13
Tim [1] 3:25
timely [1] 53:10
times [1] 41:3
timing [1] 67:24
TIMOTHY [1] 2:3
tired [2] 40:25 70:20

tit [2] 11:7 11:8
today [18] 3:9
3:15 3:17 4:2
4:17 4:19 5:20
6:5 7:15 9:22
10:8 10:24 11:22
19:13 21:7 21:22
23:21 23:24
together [7] 7:22
15:15 15:18 36:21
41:23 51:21 51:25
tomorrow [2] 21:17
70:10
too [4] 15:3 41:12
63:7 63:8
took [7] 7:4 9:19
13:19 17:6 17:14
17:21 63:23
top [2] 31:4 55:19
total [1] 47:7
totally [2] 8:11
8:12
touches [1] 67:10
towards [1] 53:6
tracks [1] 50:14
transcripts [1] 10:16
travel [1] 9:18
traveling [1] 30:6
trial [28] 22:12 22:23
34:4 36:24 37:6
38:5 38:15 39:15
41:24 41:25 42:2
42:4 42:7 42:16
45:11 45:22 46:10
48:15 48:15 48:15
48:15 48:24 49:8
49:10 49:11 51:6
52:22 53:11
trials [12] 38:24
38:24 38:25 41:21
41:22 47:17 48:12
48:14 48:16 49:9
49:14 49:24
tried [5] 36:21 37:19
44:9 45:5 56:17
triple-book [1] 49:6
triple-booked [2]
48:17 49:4
triple-booking [3]
49:22 50:7 50:8
triple-bookings [1]
50:4
trouble [2] 21:10
21:18
troublesome [1]
48:18
true [1] 69:20
try [4] 4:3 4:4
4:9 9:20 36:23
36:24 37:21 38:11
44:5 44:16 47:19
trying [12] 23:18
32:9 32:11 32:20
38:18 42:5 43:22
44:25 48:4 50:11
50:15 66:25
Tuesday [1] 49:13

turn [1] 8:9
turned [1] 68:4
tweak [1] 38:13
two [55] 6:17 7:5
10:6 10:11 12:11
12:14 14:18 15:6
20:19 22:2 24:20
25:8 25:11 25:20
27:5 27:7 30:24
34:13 36:5 40:9
40:12 41:22 42:17
44:10 45:7 47:2
47:5 47:8 47:17
47:21 48:7 48:14
48:21 48:24 49:4
49:6 49:9 49:9
49:16 49:21 49:24
50:6 50:7 50:8
52:12 57:8 57:24
58:20 59:20 62:20
64:9 64:14 70:8
70:11 70:14
two-and-a-half [1]
47:7
type [2] 39:5 64:18
types [1] 34:19
U.S [2] 16:15 57:24
ultimate [1] 50:14
ultimately [1] 45:11
unable [4] 9:18
31:12 31:14 67:3
unanswered [1] 33:7
uncertainty [1] 41:11
under [2] 65:18
65:19
understand [11] 7:6
13:22 16:24 21:21
44:2 46:15 46:23
54:12 55:13 56:4
66:4
understatement [1]
35:21
understood [1] 58:6
unequivocal [1]
65:11
unfortunately [1]
40:8
unfulfilled [1] 61:24
unilaterally [1] 5:12
United [2] 26:14
61:17
University [1] 6:8
unless [1] 31:22
unreasonable [1]
25:2
unusual [1] 20:10
up [19] 5:10 5:10
17:21 20:8 23:16
24:3 25:6 29:13
32:13 39:3 40:13
42:12 48:2 48:22
58:12 59:22 61:5
65:13 69:2
upcoming [1] 52:5
USA [3] 1:4 61:17
62:5
used [3] 25:15 32:18

Alcatel v. Foundry                          CondenseIt™                        useful - yourselves

| | | | | |
|---|---|---|---|---|
| 39:4 | | welcome [2] | 28:20 | |
| useful [1] | 30:8 | 28:24 | | |
| Valerie [1] | 1:24 | West [1] 4:7 | | |
| variety [1] | 11:17 | whatsoever [1] 62:9 | | |
| various [2] | 25:24 | whereas [1] | 50:7 | |
| 64:12 | | wherever [2] | 27:6 | |
| vast [2] 13:13 | 14:2 | 30:6 | | |
| verdict [3] | 44:5 | whole [10] | 19:10 | |
| 46:21    46:22 | | 26:3     30:14 | 32:13 | |
| verify [1] | 29:22 | 34:3     49:12 | 52:8 | |
| version [3] | 23:14 | 52:22    55:2 | 67:22 | |
| 26:10    26:11 | | wiggle [1] | 53:14 | |
| versions [3] | 26:11 | willing [5] | 24:18 | |
| 26:17    26:19 | | 28:19    32:3 | 32:7 | |
| vetted [1] | 9:19 | 50:16 | | |
| view [14] | 4:19 | Wilmington [1] 1:12 | | |
| 8:11 ·    8:13 | 10:5 | window [1] | 47:25 | |
| 11:25    18:21 | 20:3 | wishes [1] | 6:5 | |
| 27:19    27:20 | 39:18 | within [1] | 55:13 | |
| 40:5     43:23 | 51:6 | without [1] | 66:6 | |
| 51:10 | | witness [13] | 25:14 | |
| VIM [2] 32:12 | 32:12 | 25:16    25:18 | 25:20 | |
| virtually [1] | 13:18 | 25:24    27:4 | 27:6 | |
| voluntarily [1] 65:10 | | 28:4     28:10 | 30:8 | |
| volunteered [1] 11:12 | | 31:7     31:20 | 59:25 | |
| vs [1]    1:7 | | witnesses [10] | 27:12 | |
| wait [2] 46:22 | 47:9 | 27:13    27:15 | 28:11 | |
| waited [1] | 55:25 | 29:25    30:2 | 30:25 | |
| waiting [1] | 35:22 | 31:15    31:21 | 51:9 | |
| walk [1] 24:8 | | won [1] 45:19 | | |
| walks [1] | 45:21 | wondering [1] | 61:8 | |
| wants [4] | 26:2 | word [2] 9:10 | 64:20 | |
| 32:5     51:9 | 70:12 | words [2] | 60:5 | |
| Wasliew [5] | 2:21 | 60:9 | | |
| 6:6      6:7 | 6:13 | works [2] | 9:8 | |
| 24:23 | | 28:2 | | |
| waste [2] | 19:10 | world [1] | 8:11 | |
| 39:12 | | worry [2] | 60:2 | |
| ways [4] 8:21 | 19:7 | 60:10 | | |
| 34:17    34:20 | | worrying [1] | 60:21 | |
| weather [1] | 4:6 | worth [1] | 22:24 | |
| web [1] 63:23 | | wrong [4] | 9:22 | |
| Wednesday [2] 1:12 | | 56:22    58:12 | 65:21 | |
| 71:10 | | wrote [1] | 67:5 | |
| week [32] | 16:15 | year [6] 26:15 | 41:20 | |
| 39:23    41:21 | 42:5 | 43:21    48:24 | 71:3 | |
| 42:5     42:15 | 42:17 | 71:5 | | |
| 44:6     44:15 | 47:2 | years [2] 15:8 | 55:23 | |
| 47:3     47:6 | 47:16 | yesterday [2] | 9:18 | |
| 47:18    47:20 | 47:20 | 11:18 | | |
| 47:20    49:3 | 49:8 | yet [2]    12:10 | 13:14 | |
| 49:10    49:12 | 49:12 | YOUNG [1] | 1:18 | |
| 49:15    49:15 | 49:17 | yourself [1] | 4:16 | |
| 49:19    49:23 | 49:23 | yourselves [1] | 3:21 | |
| 50:23    50:25 | 51:2 | | | |
| 51:22 | | | | |
| weeks [28] | 15:19 | | | |
| 16:19    17:5 | 22:2 | | | |
| 38:3     41:23 | 42:12 | | | |
| 42:15    43:19 | 43:20 | | | |
| 45:17    46:6 | 46:17 | | | |
| 47:2     47:5 | 47:7 | | | |
| 47:17    48:7 | 49:5 | | | |
| 49:6     49:9 | 49:21 | | | |
| 49:21    50:7 | 50:7 | | | |
| 53:12    53:15 | 70:8 | | | |

# Exhibits D-H
# REDACTED
# In their entirety