

# Potter
# Anderson
# & Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

**Philip A. Rovner**
Partner
provner@potteranderson.com
302 984-6140 Direct Phone
302 658-1192 Fax

November 14, 2006

**PUBLIC VERSION – November 15, 2006**

**BY E-FILE**

The Honorable Sue L. Robinson
Chief Judge
United States District Court
  for the District of Delaware
U.S. Courthouse
844 N. King Street
Wilmington, DE 19801

        Re:    *Alcatel USA Resources, Inc. et al. v. Foundry Networks, Inc.*
              D. Del., C.A. No. 05-418-SLR

Dear Chief Judge Robinson:

      We write on behalf of Defendant/Counterclaim Plaintiff Foundry Networks, Inc. ("Foundry"), in response to the letter filed on November 6, 2006, by Alcatel Internetworking, Inc. ("Alcatel") (D.I. 204). The Court's initial request to Foundry for a letter memorandum did not envision a Rule 7.1.2 briefing schedule but, because one of the numerous inaccuracies in Alcatel's letter goes well beyond the bounds of even aggressive advocacy in that it falsely accuses Foundry of taking inconsistent positions and its counsel of being less than forthright with the Court, we feel compelled to bring it to Your Honor's attention.

      Specifically, on page 4 of its November 6 letter to the Court, Alcatel took statements I made at the October 4, 2006 discovery conference and, by deliberately quoting them out-of-order (and out-of-context), made it appear that: (1) as of October 4, Foundry believed that August 25, rather than March 10, was the operative date to add parties; and (2) as Foundry's counsel, I was unresponsive to direct questions from the Court. *See* Exhibit A hereto (Alcatel's November 6 letter). Both accusations are false.

      Alcatel accomplishes this sleight-of-hand by inexplicably *excising* 30 lines of dialogue between Foundry's counsel and the Court, including the very portion of the

The Honorable Sue L. Robinson
November 14, 2006
Page 2

transcript in which Foundry's counsel explained its position regarding the March 10 deadline to add parties (excised portion identified in italics below):

> THE COURT: ... With respect to adding this party, though, what I am going to do, and I hate to do it and I hope to get it turned around, is for each of you to -- I mean, the question is: Why wasn't this aspect added in the formal motion by August 25th?
>
> *MR. ROVNER: Your Honor, I can answer that very quickly, and I think there will be no disagreement. The date to amend parties was in March of '06. Howrey was still -- was not able to participate because we were -- there was a pending motion to disqualify. That March 10 date was set very early. We hadn't even gotten through initial document production because we had Phase 1 patent I.D. It just was very early, and by the time Howrey got involved in late June, that date had already passed.*
>
> *So Mr. Cherian and Mr. Greenspan [sic] and I were on one call. We were discussing the adding of all parties and we were all, I thought, working to see if we could figure it out, knowing that the deadline had passed.*
>
> *So it really is not our fault that we did not add parties by March 10, and now we've got some time. It should be, we think -- my request was to give us a date to move to amend -- that's all -- to include an additional party.*
>
> THE COURT: Well, I mean, I have to go back and look at how we ended up at amending the August 25th date.
>
> MR. ROVNER: We had a teleconference with your Honor and -- and you gave us until -- the one month to do that.
>
> We did not add the parties because we had been talking with Alcatel and that deadline had passed long ago and we thought we could work it out. And I was on a call with Mr. Greenspoon where we discussed that very issue.

Exhibit B hereto (October 4, 2006 Tr. at 68:2-6 (included in Alcatel's letter); 68:7-69:11 (excised from the excerpt in Alcatel's letter)).[1]

---

[1] Rather than include the italicized passage identified above (my direct response beginning at 68:7, immediately following the court's question), Alcatel's letter partially quotes a statement I made later in the hearing (beginning at 69:12), as if it were my response to the Court's question from the preceding page. See Alcatel November 6 letter, at p. 4.

The Honorable Sue L. Robinson
November 14, 2006
Page 3

      Alcatel's failure to include my direct response to Your Honor's question regarding the operative date to add parties was not merely an oversight; indeed, by including only a snippet of my response to a later question from the Court, it is clear that Alcatel's conduct was intentional; as a sanction, its November 6 letter should be stricken.

      For the reasons set forth in its October 23 letter, Foundry requests that it be permitted to join the four Alcatel entities identified as additional counterclaim codefendants. Should Your Honor have any questions, counsel is available at the Court's convenience.

                                              Respectfully,

                                              /s/ Philip A. Rovner
                                              Philip A. Rovner
                                              provner@potteranderson.com

PAR/kgm/762259
cc:    Karen L. Pascale, Esq. -- by e-mail and hand delivery
        Timothy J. Haller, Esq. -- by e-mail

# EXHIBIT A

THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT B

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
 2           IN AND FOR THE DISTRICT OF DELAWARE
 3                         - - -
 4   ALCATEL USA RESOURCES, INC.,    : CIVIL ACTION
     a Delaware corporation, and     :
 5   ALCATEL INTERNETWORKING, INC.,  :
     a California corporation,       :
 6                                   :
               Plaintiffs            :
 7                                   :
          vs.                        :
 8                                   :
     FOUNDRY NETWORKS, INC.,         :
 9   a Delaware corporation          :
                                     :
10             Defendant             : NO. 05-418 (SLR)
11                         - - -
12                         Wilmington, Delaware
                           Wednesday, October 4, 2006
13                         9:33 o'clock, a.m.
14                         - - -
15   BEFORE: HONORABLE SUE L. ROBINSON, Chief Judge
16                         - - -
17   APPEARANCES:
18        YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
          BY: KAREN L. PASCALE, ESQ.
19
20             -and-
21
22
23
24                         Valerie J. Gunning
                           Official Court Reporter
25
```

Page 2

```
 1   APPEARANCES (Continued):
 2
          NIRO, SCAVONE, HALLER & NIRO
 3        BY: TIMOTHY J. HALLER, ESQ. and
              ROBERT GREENSPOON, ESQ.
 4            (Chicago, Illinois)
 5
               Counsel for Plaintiffs
 6
 7
          POTTER, ANDERSON & CORROON
 8        BY: PHILIP A. ROVNER, ESQ.
 9
               -and-
10
11        HOWREY
          BY: K.T. CHERIAN, ESQ. and
12            CONSTANCE F. RAMOS, ESQ.
              (San Francisco, California)
13
14             and
15
          ORRICK
16        BY: MATTHEW H. POPPE, ESQ.
              (Menlo Park, California)
17
18             Counsel for Defendant
19                         - - -
20
21   ALSO PRESENT: DR. STEVEN WASLIEW
22
                           - - -
23
24
25
```

Page 3

1    PROCEEDINGS
2
3    (Proceedings commenced in the courtroom,
4    beginning at 9:33 a.m.)
5
6    THE COURT: Good morning, counsel.
7    (Counsel respond, "Good morning, your Honor.")
8    THE COURT: I think today is the day that I have
9    set aside to help you bring discovery to a close and to
10   discuss scheduling, et cetera.
11       So why don't we start with counsel for the
12   plaintiff, and if you could give me just a brief overview
13   of the issues that you think we should be addressing
14   today, then I will go to defendant's counsel for the brief
15   overview of the issues you think we should be addressing
16   today, and then we are going to prioritize those issues and
17   see which of those I need to hear about and which of those
18   you simply need to talk about before I hear about it to make
19   sure that you have had a bona fide productive discussion
20   among yourselves.
21       So let's do it that way, one step at a time, and
22   then we will go forward.
23       Yes, sir?
24       MR. HALLER: Good morning, Judge. Tim Haller,

Page 4

1    for Alcatel.
2        Before coming here today, Judge, we -- I think I
3    speak for both parties. We did try to have a private
4    session, to try and see what we could resolve, just get it
5    off the table before coming here, and I think it's fair to
6    say the weather, plane delays, the fact that these people had
7    to come from the West Coast, it just made it impossible, so I
8    think at some point, you know, we both intended, we're going
9    to privately try and get some of these things out of the
10   way. I am hopeful we can do that. We just have not had a
11   chance to talk.
12       THE COURT: My home is your home.
13       MR. HALLER: Okay. We anticipated that.
14       In terms of an overview, again, I don't want to
15   be presumptuous and speak for both sides, but --
16       THE COURT: Just speak for yourself. What do you
17   want to accomplish today?
18       MR. HALLER: Okay. And I can give you that very
19   quickly and our view on why we are here today.
20       The source code handling of both sides seems to
21   be a burning issue and seems to be number one on the plate,
22   and I won't bore you with the details at this point. There
23   is a very clear discovery protective order as to how that has
24   been handled. I think it's fair to say each party has a very
25   significant investment in the development of their source

Page 65

1　to you. What he said was --
2　　　MR. CHERIAN: He said it was produced, look for
3　it, and it was never produced.
4　　　THE COURT: All right.
5　　　MR. CHERIAN: Look for it. Do a database search
6　and it's there. It's not there, your Honor.
7　　　So we've been going back and forth asking him,
8　since the time to amend the pleadings came and went, since he
9　did not give us this information, we asked that he
10　voluntarily let us do that, and I don't think I have an
11　unequivocal answer from him, and if I do, it is just in the
12　very recent time.
13　　　Up to now, it has been a debate back and forth,
14　because in June he says, Please let me know if I should
15　consider your request for Omni PCX and 5020 source code,
16　Request Nos. 1 and 2 of the 20 document requests that the
17　court ordered.
18　　　So, your Honor, we've been operating under the --
19　under the understanding that these documents are going to be
20　produced. Now at this late stage we're told, no, you've got
21　the wrong party. You don't have the right party. And the
22　request here is: Can we file a motion if you want us to file
23　a motion to permit us to add these new parties? They told us
24　informally that, you know, if we had agreed to their Phase 2,
25　they'd have no objection to us adding these new parties

Page 66

1　without motion practice.
2　　　So that's where we are, your Honor. I hope I've
3　explained it correctly.
4　　　THE COURT: Well, let me understand from
5　Alcatel's lawyers whether in fact -- I take it there is an
6　objection to adding this party, and without the party being
7　added, there's also an implicit objection to any further
8　discovery or discussion about this product, which seems like
9　if there have been ongoing discussions about all of this,
10　that I am not sure how fair it is.
11　　　I hate to go back through the record to determine
12　whether adding this party is a fair thing or not, but I
13　suppose I will have to if you all cannot work it out
14　consensually. I mean, the deadline has passed.
15　　　MR. CHERIAN: Yes.
16　　　THE COURT: So there is either enough discussion
17　going on that everyone thought they were going to work it
18　out consensually or something else is going on, a real
19　lack of communication and understanding about everyone's
20　goals here.
21　　　MR. GREENSPOON: At the beginning of August,
22　Judge, I think it might have been August 2 or August 4, I
23　offered to Mr. Cherian what I guess you would consider a
24　standstill agreement. I gave him some information that he
25　had been requesting of me and I was trying to convince him,

Page 67

1　which I don't think I had by the time, that Alcatel
2　Internetworking has no responsibility for this product, and
3　therefore we're unable as a company to provide discovery to
4　you.
5　　　So in the context of that conversation, I wrote
6　him an offer where I basically said, Well, why don't we have
7　a standstill agreement on this so that, for the 5020 or
8　whatever other products that are not the responsibility of
9　Alcatel Internetworking, if you think that your Chang patent
10　touches on them, you can certainly feel free to do that, but
11　just let's not distract ourselves by adding that issue right
12　now to this matter where we have enough on our plate with the
13　Omni PCX.
14　　　And the response to the offer for a standstill
15　agreement, which implicitly means you'll get the credit for
16　earlier filing date of the lawsuit, you know, even if you
17　formally add the parties some other date, the response was
18　just a thud. There was just no interest at all in that, just
19　interest in continuing to berate us for not producing the
20　discovery that belongs to another legal entity.
21　　　THE COURT: All right. So this is what we are
22　going to do. I believe that part of this whole deal -- well,
23　the objection to the motion to file an amended answer and
24　counterclaim was prejudiced because of the timing. I think
25　that objection has been resolved and so the motion is

Page 68

1　granted.
2　　　With respect to adding this party, though, what I
3　am going to do, and I hate to do it and I hope to get it
4　turned around, is for each of you to -- I mean, the question
5　is: Why wasn't this aspect added in the formal motion by
6　August 25th?
7　　　MR. ROVNER: Your Honor, I can answer that
8　very quickly, and I think there there will be no
9　disagreement. The date to amend parties was in March of
10　'06. Howrey was still -- was not able to participate
11　because we were -- there was a pending motion to disqualify.
12　　　That March 10 date was set very early. We hadn't
13　even gotten through initial document production because we
14　had Phase 1 patent I.D. It just was very early, and by the
15　time Howrey got involved in late June, that date had already
16　passed.
17　　　So Mr. Cherian and Mr. Greenspan and I were on
18　one call. We were discussing the adding of all parties and
19　we were all, I thought, working to see if we could figure it
20　out, knowing that the deadline had passed.
21　　　So it really is not our fault that we did
22　not add parties by March 10, and now we've got some time.
23　It should be, we think -- my request was to give us a date
24　to move to amend -- that's all -- to include an additional
25　party.

Page 69

1  THE COURT: Well, I mean, I have to go back
2  and look at how we ended up at amending the August 25th
3  date.
4  MR. ROVNER: We had a teleconference with your
5  Honor and -- and you gave us until -- the one month to do
6  that.
7  We did not add the parties because we had
8  been talking with Alcatel and that deadline had passed
9  long ago and we thought we could work it out. And I was on
10  a call with Mr. Greenspoon where we discussed that very
11  issue.
12  I think this is the time -- at least I would
13  ask for the opportunity to show you why we should be able
14  to add these parties.
15  THE COURT: Well, I mean, that's what I am asking
16  you to do.
17  MR. ROVNER: Okay.
18  THE COURT: And the question is: What was the
19  state of the record on August 25th? Were the defendants
20  moving forward promptly and reasonably and was there a true
21  misunderstanding or did defendants just let the ball slip?
22  So that's really the question.
23  And I will let you -- I mean, you file enough
24  paper with me that I certainly do not need a lot of paper.
25  I just need a memorandum of law. I mean, it's actually no

Page 70

1  law, it's just fact. So if you want to give me copies of
2  whatever e-mails or whatever went back and forth, that's
3  fine.
4  Someone will need to craft a revised scheduling
5  order with the dates I have given you and, hopefully, you can
6  work out other dates.
7  Source code. I mean, it seems to me that, what,
8  two weeks, you all should be able to have source code
9  exchanged?
10  MR. HALLER: We're ready to do it tomorrow.
11  We've got two problems: One, Mr. Cherian still has not
12  decided whether he wants them on laptops that he's going to
13  provide or desktops that he's going to provide.
14  And, number two, Foundry has not been able to
15  commit when they can produce the source code. We'll do it on
16  a simultaneous basis, whenever they're ready.
17  THE COURT: All right. Well, I'm going to
18  say no later than October 18th, and if there's a problem
19  and something isn't done by October 18th, I guess you can
20  e-mail me because, as I said, I am getting tired of these
21  discovery disputes.
22  Now, with respect to one final conference, and
23  then I've got a telephone conference I've got to attend to.
24  Just thinking ahead, I frankly, don't think I want to --
25  well, let me see. If summary judgment motions are in May,

Page 71

1  your expert discovery will be March, April. Fact discovery
2  should be done by February.
3  So I don't want to see you the rest of the year.
4  As much as I appreciate you, I really don't want to have
5  anything to do with this case for the rest of the year, so
6  I'm going to give you a date in early January and, hopefully
7  by then, you will be done the source code part. You will be
8  done document production and you will be swimming along with
9  whatever other depositions you need. And I'm looking at
10  Wednesday, January 17th, at 4:30. And you can include that
11  in your new scheduling order and you can call it the final
12  discovery conference.
13  However, although I said I did not want to see
14  you, if the source codes are not at least exchanged
15  consistent with the agreement and your expectations, then you
16  can e-mail me and I will get you on the phone.
17  Okay? All right. Thank you, counsel, very
18  much.
19  (Counsel respond, "Thank you, your Honor.")
20  THE COURT: You all can go. It takes me a while
21  to get out of my computer.
22  (Court recessed at 4:30 p.m.)
23  - - -