IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALCATEL USA RESOURCES, INC. )<br>a Delaware Corporation, and )<br>ALCATEL INTERNETWORKING, INC., )<br>a California Corporation, )<br> )<br>Plaintiffs/Counterclaim Defendants, )<br> )<br>v. )<br> )<br>FOUNDRY NETWORKS, INC., )<br>a Delaware Corporation, )<br> )<br>Defendant/Counterclaim Plaintiff. ) | Civil Action No. 05-418-SLR<br><br>(JURY TRIAL DEMANDED) |

**FOUNDRY NETWORKS, INC.'S SECOND NOTICE OF DEPOSITION
UNDER FED. R. CIV. P. 30(b)(6) - REGARDING COUNT II AND COUNTERCLAIM**

PLEASE TAKE NOTICE that, Defendant/Counterclaim Plaintiff Foundry Networks, Inc. ("Foundry"), by its counsel, will take the deposition upon oral examination of the person or persons designated by Plaintiffs/Counterclaim Defendant Alcatel Internetworking, Inc. ("Alcatel Internetworking"), pursuant to Federal Rule of Civil Procedure 30(b)(6). The deposition will take place at the offices of Howrey LLP, 525 Market Street, Suite 3600, San Francisco, California 94105, on December 12, 2006, or at such other time and location as mutually agreed upon in writing, and will continue from day to day until completed.

The deposition will be taken before an officer authorized to administer an oath. Testimony will be recorded by stenographic, real time (e.g. Live Note), and audio/video means. The deposition will be taken for purposes of discovery, for use at trial in this matter, and for any other purpose permitted under the Federal Rules of Civil Procedure.

In accordance with Federal Rule of Civil Procedure 30(b)(6), Alcatel Internetworking shall designate one or more officers, directors, managing agents, employees, or other persons to

testify on its behalf as to matters known or reasonably available to it considering the subject matter described in Exhibit A attached hereto. Alcatel Internetworking is requested to advise counsel for Foundry of the identity of the individual(s) who will testify regarding each topic of examination at least one week in advance of the deposition.

|  |  |
|---|---|
| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
| K.T. Cherian<br>Constance F. Ramos<br>HOWREY LLP<br>525 Market Street, Suite 3600<br>San Francisco, CA 94105 | By: ___/s/Philip A. Rovner___<br>Philip A. Rovner (#3215)<br>Hercules Plaza<br>P. O. Box 951<br>Wilmington, DE 19899<br>(302) 984-6000<br>E-mail: provner@potteranderson.com |
| (As to Count II of the Amended Complaint and Counterclaim) | |
| Dated: November 27, 2006 | *Attorneys for Defendant/Counterclaim Plaintiff Foundry Networks, Inc.* |

## **EXHIBIT A**

## **DEFINITIONS**

As used herein and in all further discovery requests, unless specified otherwise, the terms listed below shall be defined as follows:

1.  "Alcatel," "you," and "your" means plaintiff Alcatel Internetworking, Inc., its parents, subsidiaries, divisions, affiliates, predecessors, assigns, successors, and acquired assets or business units, including but not limited to, Alcatel USA Resources, Inc., and any present or former officers, directors, trustees, employees, agents, representatives, attorneys, patent agents and/or all other persons acting, or purporting to act, on their behalf.

2.  "Foundry" means Defendant and Counterclaimant Foundry Networks, Inc.

3.  "Person" shall mean individual, individuals, business entity or entities, including but not limited to, associations, corporations, partnerships, or business trusts, any federal, state, or local government or governmental agency, and any foreign government or foreign government agency or other organization recognizable at law and the "acts" of a Person, are defined to include the acts of directors, officers, owners, members, employees, agents or attorneys acting on the Person's behalf.

4.  The terms "documents" or "document" means any original and every non-identical copy or reproduction of any document, writing or record within the broad context of Rule 34 of the Federal Rules of Civil Procedure, in the possession, custody or control of Alcatel, including, for example, but not limited to: any written, printed, typed, or other graphic matter of any kind or nature; any physical object or thing, animate or inanimate; all mechanical, magnetic, digital, or electric sound or video recordings or transcripts thereof, any retrievable data, communication (including but not limited to, electronic mail and web site information), information, or statistics contained on any memory device or other information storage and

-2-

retrieval systems (whether stored, encoded, taped, or coded electrostatically, electromagnetically, optically, digitally, or otherwise); and also without limitation, agreements, books, catalogs, charts, compilations, conversations, correspondence, descriptions, diagrams, diaries, directives, drawings, electronic recordings, facsimile transmissions, files, films, graphs, inspection reports, interoffice memoranda, instructions, letters, maps, measurements, memoranda, minutes, motion pictures, notes, notebooks, notices, pamphlets, periodicals, photocopies, photographs, plans, plats, proposals, publications and published or unpublished speeches or articles, recordings, records, sampling results, laboratory reports, reports, reproductions, samples, schedules, sketches, specifications, statements, studies, summaries, surveys, telecopies, telegrams, telephone call slips, and transcripts of telephone conversations, test results, transcripts, videotapes, worksheets, and working papers that are in the possession, custody or control of the Plaintiff, wherever located. "Documents" and "document" shall also mean all copies of documents, by whatever means made (including but not limited to, carbon, handwritten, microfilmed, telecommunicated, photostatic or xerographic copies), and include all non-identical copies (whether different from the original because of any alterations, notes, comments or other material contained thereon or attached thereto, or otherwise). "Documents" and "document" shall also include any and all data compilations from which information can be obtained, including, for example, information from an Internet or Intranet web site.

5. The terms "and" and "or" shall be understood as either conjunctive or disjunctive whichever is more inclusive in content.

6. The terms "any" and "all" shall be considered to include "each and every."

7. The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of a noun or pronoun so used, and vice versa.

8. The term "Complaint" means the Amended Complaint filed by Alcatel in this action, dated July 27, 2005.

9. The term "employee" means any director, trustee, officer, employee, partner, corporate parent, subsidiary, affiliate or servant of the designated entity, whether active or retired, full-time or part-time, current or former, and compensated or not.

10. The term "'864 patent" means U.S. Patent No. 6,118,864.

11. The term "independent claims of the '864 patent" means claims 1, 32, 53, 78 and 85 of the '864 patent.

12. The term "prosecution" shall mean or refer to proceedings before any patent office, either the United States Patent and Trademark Office or a foreign patent office, in connection with the filing, issuance, reexamination, reissue or review of, or opposition to, a particular patent.

13. The term "public use" shall mean or refer to any public or private use or demonstration, whether experimental or otherwise, of the alleged invention, or any use that disclosed the alleged invention to anyone other than an employee, agent or attorney of Alcatel, including without limitation existing or potential investors, licensees, customers or distributors.

14. The term "sale" shall mean or refer to public or private efforts of any sort in connection with the commercialization of an alleged invention, whether experimental or otherwise, including without limitation any offers for sale or license, actual sales or licenses, or any advertising of or price quotations for the alleged invention.

15. The term "prior art" shall mean or refer to any U.S. or foreign patent or patent application, publication, reference, process, machine, manufacture, or composition of matter, item or information that predates the filing of the '864 patent and relates to the subject matter of

one or more claims of the '864 patent, regardless of whether Alcatel contends that such prior art either anticipates or renders obvious, under 35 U.S.C. § 102 and/or 35 U.S.C. § 103, the inventions claimed in the '864 patent.

16. The term "PTO" means the United States Patent and Trademark Office.

17. The term "PBX" means private branch exchange.

18. The term "VOIP" means voice-over-IP.

19. The term "Alcatel Accused Product" means any product under development, made, used, sold, offered for sale, licensed, distributed or marketed as "OmniPCX Enterprise," "OmniPCX Office," "OmniPCX 4400," "OmniSwitch 8800," "OmniSwitch 7800," "OmniSwitch 6600," "OmniSwitch 7700," "Alcatel 1540 Litespan," "Alcatel 5020 Softswitch," "Alcatel 7750 SR," "Alcatel 7450 ESS," "Alcatel 7505 Media Gateway," "Alcatel SCP 8690 Application Server," "Sylantro Application feature server," "Alcatel 7670 Routing Switch Platform," "Alcatel 7450 Ethernet Service Switch," "Alcatel 7510 Media Gateway," "Alcatel 7515 Media Gateway," "Alcatel 5620 Management Portfolio," "Alcatel 1350 Management Suite," "Alcatel Open Path to Enhanced Networking (OPEN) Softswitch," "Omni Switch/Router," "OmniAccess 512," "Alcatel VOIP H323 Gateway," including but not limited to all predecessors and successors of these products, and all other products under development, made, sold, offered for sale, licensed, distributed or marketed by Alcatel for incorporation into any telecommunications system that is intended to deliver private branch exchange ("PBX") services, such as call hold, call forwarding, call transfer, call conferencing and the like, VOIP services and/or Centrex services to end-users of such telecommunication system.

20. The term "identify" as applied to a document means that the following information shall be provided: (1) the date of the document, (2) the number of pages of the

document, (3) the identity of all persons who prepared or signed a copy of the document, (4) the identity of all persons designated as addressees of the document, (5) the identity of all persons designated as copy recipients of any copy of the document, (6) the type of document (e.g. memorandum, pamphlet, report, e-mail), and (7) the general subject matter of the document. Alternatively, the production number(s) of the document for this litigation may be provided.

21. The term "identify" as applied to factual or legal bases means to state in detail each and every fact, and each and every legal proposition or interpretation, upon which a belief or contention is based, provide a claim chart (when factual and/or legal bases are requested on an element-by-element basis), and identify all documents, persons and events that lend support to that belief or contention.

22. The term "identify" as applied to a person or entity means a description sufficient to identify (a) in the case of a natural person, that person's: (i) full name; (ii) present or last known home and business address and telephone number; (iii) current employer, position and job description; (iv) responsibilities with respect to the subject matter of the interrogatory and the periods of time that person had such responsibilities; and (v) relevant knowledge or participation; or (b) in the case of corporations, partnerships, proprietorships, and unincorporated associations: (i) the full name, including any additional name under which it does business; (ii) form and place of organization or incorporation; and (iii) principal place of business.

23. The term "identify" as applied to events means to provide a description of the event, the date of the event, the location of the event, and the individual and organizational entities participating in or observing the event.

24. The term "identify" as applied to products means to state the name of the product, the product type, the product number (for those products with product numbers), the model

number (for those products with model numbers), the marketing name, sales name, internal development name, revision level (for those products with revision levels), manufacturer and any other designation known to Alcatel.

25.     The terms "regarding" "relating to," "referring to," "relates," "refers," "concerns" and "concerning" any given subject means, without limitation, identifying, describing, discussing, referencing, concerning, assessing, stating, reflecting, constituting, containing, embodying, tending to support or refute, or referring to, directly or indirectly, in any way, the particular subject matter identified.

26.     The term "communication" or "communications" means any transmission of information from one person to another, including personal meeting, memorandum, telephone, facsimile, electronic mail, instant message, internet relay chat, news group and teleconference.

27.     The term "person" means any natural person and any other cognizable entity, including corporations, proprietorships, partnerships, joint ventures, business, consortiums, clubs, associations, foundation, governmental agencies, or instrumentalities, societies and orders.

## DEPOSITION TOPICS

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Alcatel's designee(s) shall be prepared to testify regarding the following subjects:

**TOPIC NO. 1**:

Alcatel's use sale, license, lease, offer for sale, offer to license, offer to lease, or distribution of all Alcatel Accused Products in the United States, including, but not limited to:

   a) The identities of all persons to whom each use, sale, license, lease, offer for sale, offer to license, offer to lease, or distribution was directed;

   b) The date of each such use, sale, license, lease, offer for sale, offer to license, offer to lease, or distribution;

   c) The quantity of units used, sold, licensed, leased, or distributed;

   d) The consideration paid or to be paid in exchange for each Alcatel Accused Products used, sold, licensed, leased or distributed;

   e) The identities of Alcatel personal who participated in each use, sale, license, lease, offer for sale, offer to license, offer to lease, or distribution;

   f) The location that each such use, sale, license, lease, offer for sale, offer to license, offer to lease, or distribution;

   g) The payment terms, including but not limited to, the issuance of invoices and the payment terms for each such use, sale, license, lease, offer for sale, offer to license, offer to lease, or distribution;

   h) Any agreements discussed, negotiate, or executed relating to each use, sale, license, lease, offer for sale, offer to license, offer to lease, or distribution; and

   i) The identities of all documents relating to each use, sale, license, lease, offer for sale, offer to license, offer to lease, or distribution.

**TOPIC NO. 2**:

Documents disseminated to Alcatel's business partners, affiliated companies, customers or prospective customers concerning any Alcatel Accused Product made, used, sold, offered for sale, leased, offered for lease, licensed, or offered for license or distributed in the Untied States or imported into the Untied States, including but not limited to instructions, user guides, manuals, product updates, technical notes, release notes, specifications, white papers, read-only files, training materials, product descriptions and trade show materials regarding the Alcatel Accused Products.

**TOPIC NO. 3**:

All services marketed, promoted, advertised, licensed, sold, offered for sale, or provided by Alcatel relating to or regarding each Alcatel Accused Product, including, but not limited to:

a) The identities of all Alcatel employees involved in the marketing, promoting, advertising, licensing, selling, offering for sale or providing of each such service;

b) The specific nature of each such service (e.g., whether such service includes implementation, consulting, troubleshooting, maintenance, training, installing, hosting, and/or support services) and the terms of any agreements regarding such services;

c) All agreements, whether written or oral, communicated, negotiated, or executed relating to such services, and the identities of all Alcatel employees who participated in those communications; and

d) An identification of all documents concerning or relating to such services.

**TOPIC NO. 4**:

All communications (both internal to Alcatel Internetworking personnel and external with any third party) concerning, regarding, or relating to the collection of any technical information, technical assessments, technical analyses, reverse engineering analyses, compatibility analyses, engineering notes and/or source code relating to any Alcatel Accused Product, in response to requests for documents propounded by Foundry in this litigation.

**TOPIC NO. 5**:

All documents concerning, regarding, or relating to technical information, technical assessments, technical analyses, reverse engineering analyses, compatibility analyses, and engineering notes concerning any Alcatel Accused Product, including but not limited to documents produced at ABS 000001-9068.

**TOPIC NO. 6**:

Market demand for the Alcatel Accused Products and the features and/or functionality of the Alcatel Accused Products, including but not limited to:

    a) The identities of all Alcatel employees involved in monitoring, identifying, quantifying, or reporting on the market demand of the Alcatel Accused Products and/or product features; and

    b) An identification of all documents concerning or relating to the market demand for the Alcatel Accused Products and the features and/or functionality of the Alcatel Accused Products.

**TOPIC NO. 7**:

Alcatel's past, present, and projected future market share in any market in which any Alcatel Accused Product is marketed, promoted, advertised, licensed, leased, sold, distributed or offered for sale.

**TOPIC NO. 8**:

The identity of each competitor in each market into which Alcatel markets, promotes, advertises, sells, licenses, leases, distributes or offers for sale the Alcatel Accused Products.

**TOPIC NO. 9**:

All communications and documents concerning any actual or potential business plan, projection, market analysis, or study concerning the design, development, manufacture, licensed, advertising, promotion, sale, testing, or use of any Alcatel Accused Product.

**TOPIC NO. 10**:

Alcatel's actual and projected sales for each Alcatel Accused Product, and all documents relating thereto.

**TOPIC NO. 11**:

Alcatel's actual and projected costs and variances for each Alcatel Accused Product, and all documents relating thereto.

**TOPIC NO. 12**:

Alcatel's actual and projected gross margins and profits for each Alcatel Accused Product, and all documents relating thereto.

**TOPIC NO. 13**:

Alcatel's actual and projected net margins and profits for each Alcatel Accused Product, and all documents relating thereto.

**TOPIC NO. 14**:

Alcatel's total sales revenue for each of Alcatel's 25 largest customers for each Alcatel Accused Product, and all documents relating thereto.

**TOPIC NO. 15**:

Alcatel's actual and proposed pricing structure for each of the Alcatel Accused Products and how such pricing structure was established, including any discount offered to any of Alcatel's 25 largest customers of each such Alcatel Accused Product, and all documents relating thereto.

**TOPIC NO. 16**:

The derivation of revenues from all licenses, leases and/or sales relating to each Alcatel Accused Product, and all documents relating thereto.

**TOPIC NO. 17**:

The derivation of revenues of any products and/or services that have not been accused of infringement by Foundry but which are sold, leased or licensed in conjunction with any Alcatel Accused Products, and all documents relating thereto.

**TOPIC NO. 18**:

Alcatel's internal records and accounts for all revenues relating to the Alcatel Accused Products, including Alcatel's derivation of profit margins relating to each Alcatel Accused Product and any other products and/or services leased or sold in conjunction with each Alcatel Accused Product, and all documents relating thereto.

**TOPIC NO. 19**:

The organization and function of the source code produced on Alcatel's Source Code Inspection Computers, including, but not limited to, the identity, functionality, and organization

of all source code modules that provide, facilitate, enable, or are in any way related to or involved in the delivery of Centrex, PBX and/or VOIP features or services.

**TOPIC NO. 20**:

The identity, structure, function, operation and use of any software leased or sold in combination with, offered for sale in combination with, distributed with, installed on, or capable of being executed by each Alcatel Accused Product made, leased, sold, licensed, offered for sale, distributed, used, or imported by Alcatel, including the identities of persons knowledgeable about the structure, function and operation of such software.

**TOPIC NO. 21**:

The research, development, or design of each version of any software leased, licensed or sold in combination with, offered for sale in combination with, distributed with, or capable of being executed by each Alcatel Accused Product made, leased, sold, licensed, offered for sale, distributed, used, or imported by Alcatel, including the identities of persons knowledgeable about the research, development and design of such software.

**TOPIC NO. 22**:

Software leased or sold in combination with, offered for sale in combination with, distributed with, installed on, or capable of being executed by each Alcatel Accused Product, including, but not limited to:

    a) The name under which such software is marketed, promoted, made, used, sold, offered for sale, leased, offered for lease, licensed, or offered for license or distributed;

    b) The release/version number or each release or version of any such software;

    c) The identities and locations of the manufacturers and/or developers of any such software, including but not limited to the identities of individuals who supervise the design, development and/or manufacture of such software;

    d) Any designations used internally by Alcatel of any such software;

    e) The design, functionality and architecture of the source code from which any such software was compiled;

    f) The identities of all documents relating to any such software.

**TOPIC NO. 23:**

Alcatel's knowledge of the existence of the '864 patent, including when and how Alcatel first became aware of the existence of the '864 patent, and all documents relating thereto.

**TOPIC NO. 24:**

The identification of all actions, meetings, and/or business decisions or directives concerning or regarding any response or action that has been taken or was considered or contemplated to be taken by Alcatel as a result of becoming aware of the '864 Patent, including but not limited to the identities of all persons directly involved in those actions, meetings, and/or business decisions or directives, and all documents relating thereto.

**TOPIC NO. 25:**

The identification of all actions, meetings, and/or business decisions or directives concerning or regarding any response or action that has been taken or was considered or contemplated to be taken by Alcatel as a result of Foundry's pre-litigation allegations that Alcatel infringes the '864 patent, including but not limited to the identities of all persons directly involved in those actions, meetings, and/or business decisions or directives, and all documents relating thereto.

**TOPIC NO. 26**:

Any efforts, attempts, implementation or consideration, by or for Alcatel, to design around any claims of the '864 patent, including but not limited to, the feasibility, cost, customer acceptance and time for any such design around, including but not limited to the identities of all persons directly involved in those efforts, attempts, implementation or consideration to design around any claims of the '864 patent, and all documents relating thereto.

**TOPIC NO. 27**:

Any steps taken by or an behalf of Alcatel to investigate any allegations made by Foundry against Alcatel concerning infringement of the '864 patent by Alcatel.

**TOPIC NO. 28**:

All identities and contents of documents that Alcatel relied upon in filing its declaratory judgment action against Foundry, and the identities and contents of all documents Alcatel intends to use in support of its noninfringement allegations with respect to the '864 patent.

**TOPIC NO. 29**:

All communications between Alcatel and any third party concerning or relating to the '864 patent or the above captioned litigation, and the identities of all individuals directly involved in those communications and all documents relating to thereto.

**TOPIC NO. 30**:

Every factual allegation set forth in Alcatel's written responses, served prior to this notice (including in its original and supplemental responses), to Foundry's Count II Interrogatory No. 7, and the identities of all documents, individuals and entities relied upon in support of those factual allegations.

**TOPIC NO. 31**:

Every factual allegation set forth in Alcatel's written responses, served prior to this notice (including in its original and supplemental responses), to Foundry's Count II Interrogatory No. 8, and the identities of all documents, individuals and entities relied upon in support of those factual allegations

**TOPIC NO. 32**:

Every factual allegation set forth in Alcatel's written responses, served prior to this notice (including in its original and supplemental responses), to Foundry's Count II Interrogatory No. 9, and the identities of all documents, individuals and entities relied upon in support of those factual allegations.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, Philip A. Rovner, hereby certify that on November 27, 2006, the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

**BY HAND DELIVERY AND E-MAIL**

> Josy W. Ingersoll, Esq.
> Karen L. Pascale, Esq.
> Young Conaway Stargatt & Taylor, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19899-0391

I hereby certify that on November 27, 2006 I have sent by E-mail the foregoing document to the following non-registered participants:

> Timothy J. Haller, Esq.
> Robert Greenspoon, Esq.
> Sally Wiggins, Esq.
> Niro, Scavone, Haller & Niro
> 181 W. Madison Street, Suite 4600
> Chicago, IL 60602

>         /s/ Philip A. Rovner
> Philip A. Rovner (#3215)
> Potter Anderson & Corroon LLP
> Hercules Plaza
> P.O. Box 951
> Wilmington, Delaware 19899
> (302) 984-6000
> E-mail: provner@potteranderson.com

706008v1